Case 1:07-cv-00166-CSO   Document 61-1   Filed 11/03/08   Page 1 of 4

*The Consumer Credit and Sales Legal Practice Series*

CONSUMER LITIGATION LIBRARY

# COLLECTION ACTIONS

Defending Consumers and Their Assets

FIRST EDITION



WITH COMPANION WWW WEBSITE

National Consumer Law Center

reasonable or even illegal attorney fees. Because most cases end in unexamined default judgments, there is little incentive for the collector to limit the amount requested over and above the original debt.

The bottom line is that attorneys, judges, and the public must readjust their expectations. When consumers are sued the operating assumption should be that they owe either nothing or less than is being sought. Certainly the assumption should not be that they owe the amount the collector is seeking.

## 2.1.2 Stopping Systematic Abuse of the Justice System

Debt buyers today are using the courts to engage in wholesale litigation abuse. They sue huge numbers of consumers with no real knowledge whether the consumer owes the debt or whether the statute of limitations has run. Debt buyers sue with little or no evidence to prove that the consumer owes the money, that the debt buyer in fact owns the debt, or even that they are suing the right consumer. This litigation strategy is effective because very few consumers obtain legal representation, and the overwhelming majority of consumer defendants default in the collection action.

When the consumer contests an action the collector utilizes various techniques to win without having to produce admissible evidence to prove its claim. The collector may take advantage of the unrepresented consumer by working out a stipulated judgment without disclosing that the collector can not prove the debt. Another technique is to send the consumer a long list of requests for admission to which the consumer does not timely respond. The requests are deemed admitted, and the collector needs no other evidence to prove its case.[4] Alternatively, collectors seek summary judgment on junk evidence—attachments that are not attached, affidavits from debt buyer employees (or even non-employees) who state conclusory facts about which the affiant has no personal knowledge, or about pretend business records created years after the fact.

Consumers fare much better in court when they obtain legal representation. Many debt buyers will not even pursue the case once they realize the consumer has legal representation. Such an individual consumer victory has no adverse impact on a debt buyer that has purchased the debt for pennies on the dollar. But that strategy may educate the court as to the shoddy practices of certain debt buyers and collection attorneys. The next time the collector or collection attorney brings a series of cases asking that court to enter default judgments the court may look more closely at the collector's evidence, throw out large numbers of uncontested collection actions, or establish standards for when default judgments will be allowed in uncontested consumer collection matters.

Individual collection litigation can be the vehicle that creates a jurisdiction's controlling standards. A collector or collection attorney who brings cases that are clearly not actionable under those established standards runs a significant risk that a Fair Debt Collection Practices Act (FDCPA) class action will succeed in producing a large award for the class.

For example, individual litigation in a collection case may establish the state's rule recognizing, for example, a three-year limitations period for an account stated claim or barring an account stated claim on an "account statement" that the debt buyer created and sent to the consumer years after the creditor wrote off the account, thereby resulting in FDCPA liability for future actions.[5]

## 2.1.3 Counterclaims Can Result in the Recovery of Damages and Attorney Fees

In many collection actions the consumer will have significant counterclaims. Being able to raise consumer claims as counterclaims has both advantages and disadvantages. Some of the advantages are that filing fees are avoided and federal claims can stay in state court. Disadvantages include that the collector may be less willing to dismiss its claims and may prosecute the collection case more aggressively in order to vigorously contest the counterclaim.

A good example of a collection case that raises numerous potential counterclaims is when the collector is seeking to recover a deficiency after a car repossession and sale. The consumer may have counterclaims under Uniform Commercial Code (UCC) Article 9 and other state laws relating to the repossession and sale or to the original sale and performance of the vehicle. Consumers can also raise in many collection cases counterclaims based upon the FDCPA and related debt harassment theories. It may even be possible to raise counterclaims related to the collector's litigation misconduct. Legal representation can thus result not only in dismissal of the collector's case but also in the consumer's recovery of significant damages and attorney fees.

## 2.1.4 Prevailing in the Collection Action Can Improve a Consumer's Credit Rating

Consumers are rightfully concerned about their credit rating, and prevailing in the collection action can have an impact on their credit record. If the case is dismissed the consumer can take action to insure that credit reports indicate that the current balance of that debt is now reported as

---

4 *See* § 4.2.2, *infra*.

5 *See* § 14.4, *infra*.

# Chapter 4  The Collector's Proof of the Merits

## 4.1 Introduction

This chapter examines the debt collector's proof as to the merits of its causes of action. As the burden is on the plaintiff to prove its claims no recovery can be had, either at trial or on summary judgment, unless the debt collector presents proper evidence satisfying the elements of the collector's cause of action. As a general rule, debt buyers assume virtually all complaints will end in a default judgment. As a result debt buyers will not produce this level of evidence, and the consumer is in a strong position to defend against the claim.

This chapter first analyzes various general challenges to a collector's offer of evidence.[1] Then the chapter turns to the application of these evidentiary rules to the various elements of the collector's claims. When a debt buyer is bringing the action, the first and often most important issue is whether the collector can prove that it owns the debt being sued upon.[2]

Assuming the collector can establish standing, it can only recover under one or more delineated causes of action. Section 4.4, *infra*, explains that the collector must clearly specify which causes of action it is bringing in a case, and that the court should rule only on those claims and not on any others.

The chapter then turns to the collector's proof of the nature of the credit contract. The collector's failure to produce this proof will not only defeat its breach of contract cause of action, but will also limit its recovery under other causes of action.[3] Proof of the balance due is then examined, being essential to any claim on an open-end account for breach of contract, "on account," or "open account."[4] "Account stated" is another common collector cause of action, being based not upon the contract or proof of individual charges, but upon the allegation that the consumer has explicitly or implicitly agreed to pay an amount owed.[5] The chapter concludes with a brief analysis of other possible causes of action, such as *quantum meruit*, money lent, or materials and services supplied.

## 4.2 Sufficiency of the Collector's Evidence

### 4.2.1 Introduction

Most contested consumer collection actions do not involve extensive testimony, but are largely decided based upon documents submitted to the court. The collector may move for summary judgment, attaching admissions, affidavits, and purported business records. Even when small claims court rules do not allow for summary judgment motions, the collector will typically seek to prevail at trial using similar documentation, without relying on witness testimony.

This section focuses on three forms of evidence collectors commonly use: the consumer's admissions, affidavits in support of a summary judgment motion, and business records. This section provides merely an overview of the subject as it relates to collection actions. It does not replace a thorough knowledge of a state's rules of evidence. The discussion should also be supplemented with review of general treatises on evidence.

### 4.2.2 Collector's Request for Admissions

#### 4.2.2.1 General

Debt buyers in particular may have little evidence to establish their case, and little interest in obtaining the evidence. Instead they may try to win their case using the consumer's own admissions. Along with the complaint, or shortly thereafter, the collector will send the consumer a lengthy list of statements, asking the consumer to admit to them, hoping the consumer will not respond in a timely manner. Failure to respond is treated as an admission of all the requested statements.[6] The collector then appends those statements to a summary judgment motion and seeks to

---

1 See § 4.2, *infra*.
2 See § 4.3, *infra*.
3 See § 4.5, *infra*.
4 See § 4.6, *infra*.
5 See § 4.7, *infra*.

6 See McLane v. MRC Receivables Corp., 2007 WL 29435 (Ky. Ct. App. Jan. 5, 2007); Great Seneca Fin. Corp. v. Lee, 2006 WL 1132473 (Ohio Ct. App. Apr. 26, 2006); Asset Acceptance, L.L.C. v. Rees, 2006 WL 416373 (Ohio Ct. App. Feb. 23, 2006); Luke v. Unifund CCR Partners, 2007 WL 2460327 (Tex. App. Aug. 31, 2007).

prevail in the case although presenting little or none of its own evidence.[7] By serving requests for admission collectors prey on unrepresented consumers' lack of legal knowledge, attempting to prove their cases by sleight of hand when they can not do so by evidence.

This section examines two related questions: first, how to respond to requests for admission when there is still an opportunity to timely do so;[8] second, what should be done if the consumer has failed to timely respond to the requests.[9]

The rules as to requests for admissions vary by state and even by court within the same state. This section focuses on the rules set out by Federal Rules of Civil Procedure 36 and 37, as many state rules of procedure are patterned after the federal rules. But practitioners must compare the federal rule with their own state's rules and the procedures that apply for the court in which the action is brought. For example, small claims courts may not even allow requests for admission or will not provide for any negative consequences if the consumer fails to respond. If a court's rules do not establish any negative consequences, there will be little reason to respond.

Federal Rule of Civil Procedure 36 states that parties can seek admissions as to the facts, the application of law to the facts, and the genuineness of described documents. Matters are admitted unless there is a response within thirty days.[10] If the consumer admits to the statement then the collector need not prove that statement in court by its own evidence, and the matter is deemed proven. If the consumer timely responds to the requests but denies the statement without good cause to do so, Federal Rule of Civil Procedure 37(c)(2) provides that, if the collector later proves the statement to be true, the consumer is liable for the reasonable expenses of the collector's proof—which would include attorney fees and other expenses.

### 4.2.2.2 How to Respond to Requests for Admissions

If a request for admissions contains statements meeting all the elements of the causes of action the collector is raising, the collector can prevail on summary judgment based solely upon the consumer's failure to respond.[11] Consequently, the worst thing that the consumer can do is fail to respond to the request for admissions. The consumer's options as to each requested admission are to admit (in whole or in part), deny (in whole or in part), neither admit nor deny (with explanation), or object.

In responding, the consumer does not want to admit to matters that are not true or that the collector could not prove or will not seek to prove. On the other hand, there is risk in denying matters which are true and that the collector will be able to prove to be true. The consumer can be ordered to pay the costs required to prove those matters—both attorney fees and other costs associated with developing that evidence.

One option is to neither admit nor deny the matter. Federal Rule of Civil Procedure 36 allows the consumer to state in detail why the answering party can not truthfully admit or deny the matter, such as no records or no recollection. Lack of knowledge can be a basis for the inability to admit or deny only if the party states he or she has first made a reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny the matter.[12] The consumer can not be expected to admit or deny information outside the consumer's control, or about which the consumer has no personal knowledge.[13]

If the lack of knowledge is reasonable, then the consumer is not liable under Rule 36 for the collector's expenses in proving that fact.[14] For example, the consumer does not have to go to the trouble or expense of trying to get records from the original creditor; that is up to the debt buyer that has to prove its case.

The consumer can also reasonably state she is neither admitting nor denying that a debt buyer is the owner of an indebtedness, because to do so would require knowledge of facts not known to the consumer. The consumer can also deny that the collector's "predecessor in interest" made the loan, because the consumer does not know who is being referred to or even if the collector has an interest in the debt. The consumer should also be able to reasonably refuse to admit or deny that a standard form contract is identical to the one the consumer received, if the consumer no longer possesses the consumer's copy. Likewise, the consumer can also state that she is neither admitting nor denying that various documents generated by the debt buyer are genuine business records of the debt buyer. For all of these requests, the consumer has no ability to obtain sufficient information on which to base a response.

The consumer is also allowed to object to a request for admissions, stating the grounds for the objection.[15] At that point, the collector can request that the court determine the sufficiency of the objection and the court, if it overrules the

---

7  *See* Great Seneca Fin. Corp. v. Lee, 2006 WL 1132473 (Ohio Ct. App. Apr. 26, 2006).

8  *See* § 4.2.2.2, *infra*.

9  *See* § 4.2.2.3, *infra*.

10  Fed. R. Civ. P. 36; *see also* McLane v. MRC Receivables Corp., 2007 WL 29435 (Ky. Ct. App. Jan. 5, 2007); Great Seneca Fin. Corp. v. Lee, 2006 WL 1132473 (Ohio Ct. App. Apr. 26, 2006); Asset Acceptance, L.L.C. v. Rees, 2006 WL 416373 (Ohio Ct. App. Feb. 23, 2006); Luke v. Unifund CCR Partners, 2007 WL 2460327 (Tex. App. Aug. 31, 2007).

11  *See* Great Seneca Fin. Corp. v. Lee, 2006 WL 1132473 (Ohio Ct. App. Apr. 26, 2006); Luke v. Unifund CCR Partners, 2007 WL 2460327 (Tex. App. Aug. 31, 2007).

12  Fed. R. Civ. P. 36.

13  United States *ex rel.* England v. Los Angeles County, 235 F.R.D. 675 (E.D. Cal. 2006).

14  Fed. R. Civ. P. 36.

15  Fed. R. Civ. P. 36(a)(5); *see also* ADC Telecommunications Inc. v. Telect, Inc., 143 F.R.D. 214 (D. Minn. 1992).