John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>      Plaintiff,<br> vs.<br><br>JOHNSON, RODENBURG & LAUINGER.<br><br>      Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – DEFENDANT'S "BONA FIDE ERROR" DEFENSE** |

## INTRODUCTION

Defendant JRL has raised an affirmative "bona fide error" defense under the FDCPA, claiming that it justifiably relied upon the statements of its client in filing and prosecuting the underlying state court debt collection lawsuit. Unfortunately for JRL, the Ninth Circuit's recent decision in *Reichert v. National Credit Systems, Inc.*, 571 F.3d 1002, 1007 (9th Cir. 2008) (hereafter *Reichert*[1]) makes absolutely plain that this defense is not available to JRL under the facts of this case as JRL

---

[1] Attached hereto for the Court's convenience as Exhibit "1."

cannot satisfy its burden of showing that its reliance on its creditor client was reasonable.  Pursuant to *Reichert*, JRL simply cannot maintain a bona fide error defense, summary judgment should therefore be granted to Plaintiff on this issue.

## FACTS

The factual background of this matter is set forth in greater detail in Plaintiff's previously filed Statement of Undisputed Facts (Docket No. 39), which Plaintiff incorporates by reference herein.

On April 17, 2007, JRL filed a lawsuit against Mr. McCollough on behalf of its client CACV of Colorado ("CACV"), in Yellowstone County district court, entitled *CACV of Colorado v. Tim McCollough,* Cause No. DV 07-0523 ("the state court action.")  CACV is not a credit card lender, but rather a debt buyer which purchases old, charged off credit card accounts and then attempts to collect them at face value.  (SUF ¶¶ 2 and 7.)  CACV and its subsidiaries have been sued dozens of times for violations of the FDCPA in its conduct as a debt collector.  (PACER search attached hereto as Exhibit "1.")

Pursuant to its contract with JRL, CACV expressly makes "no warranty as to the accuracy or validity of the data" it provides to JRL and imposed on JRL the responsibility "to determine your legal and ethical ability to collect these accounts."  (SUF ¶ 7.)

JRL does not require CACV to provide it with any particular documents before filing a lawsuit. (SGI ¶ 8.) Prior to suing Mr. McCollough, JRL had not received any documents whatsoever from CACV regarding Mr. McCollough or his alleged debt- not a contract application, a single credit card statement, a check receipt, nothing. (SGI ¶ 8.) Instead, all CACV gave JRL was electronic information consisting of Mr. McCollough's name, address, previous creditor, amount claimed, and date of last payment.

JRL knew prior to filing the lawsuit that Mr. McCollough's account was part of "THE COLLECT AMERICA BATCH THAT WE ARE HAVING PROBLEMS WITH." (SUF at Exhibit "5", pg. 2) (capitalization in original.) JRL questioned CACV prior to filing the lawsuit whether the claim was time-barred. CACV responded by claiming that it appeared Mr. McCollough had made a payment in June of 2004, but did not provide JRL with any documentation to substantiate this statement. (SUF ¶ 8.) In August of 2007, CACV advised JRL that Mr. McCollough had not, in fact, made a payment in June of 2004 as previously asserted. (*Id.* at ¶ 10.)

Even after JRL was told by CACV that there had not been a payment in June of 2004, JRL continued to attempt to "win" the lawsuit against Mr. McCollough, defending himself *pro se*, and collect the alleged debt. Consequently, JRL propounded requests for admissions which contained statements JRL knew to be

false, including that McCollough "made a payment on said Chase Manhattan Bank credit card on or about June 30, 2004 in the amount of $75.00." (SUF at ¶ 11.)

In November of 2007, Mr. McCollough obtained the undersigned legal counsel, who entered an appearance and served written discovery on CACV. (SUF at ¶ 12.) In December of 2007, in response to the fact that Mr. McCollough had retained counsel, JRL attorney emailed his contact at CACV and requested:

> Please provide me with copies of everything you can get for documentation as soon as possible. We need to request everything available from the original creditor, not just the things that you normally request, etc. Application, statements, cardmember agreement, copies of payments, copies of any correspondence. Please have the request expedited if possible.

(*Id.* at ¶ 13.) CACV responded that it had no documentation to send. (*Id.*) Also subsequent to the undersigned's appearance on behalf of Mr. McCollough, Mr. Dendy served a subpoena duces tecum on the original creditor seeking documents regarding Mr. McCollough's claimed credit card account. On December 17, 2007, JP Morgan Chase responded to the subpoena and advised Mr. Dendy that "[a]s a result of an initial search of our records we have noted that under the requested account … is found not to have any credit card accounts in Chase Bank USA, N.A systems." (*Id.* at ¶ 14.) (emphasis in original.) On August 28, 2008, JPMorgan Chase responded to another subpoena request from JRL's counsel in this lawsuit that it had no credit card accounts referencing Mr. McCollough. (JRL's Responses to Pl.'s Fourth Combined Discovery attached hereto as Exhibit "2.")

## **LEGAL STANDARD**

Under Rule 56(c), F.R.Civ.P., summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

## **LEGAL ARGUMENT**

The FDCPA provides that a debt collector "may not be held liable in any action brought under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."  15 U.S.C. § 1692k(c).

The Ninth Circuit, in *Reichert*, recently examined in detail the bona fide error defense, explaining:

> In concluding that the FDCPA imposes strict liability, we reasoned in Clark that allowing a debt collector to escape liability for unintentional violations would render the bona fide error defense superfluous. The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof.  The defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable.  The defense requires the defendant to show that it maintains procedures to avoid errors.  We have held that a debt collector failed to meet its burden under the defense when it did not produce evidence of "reasonable preventive procedures" aimed at avoiding the errors.

*Reichert*, 531 F.3d at 1006 (citations omitted).

Thus, under *Reichert*, JRL is required here to both: (1) demonstrate that it reasonably relied on its client, and (2) maintained reasonable preventative measures to avoid FDCPA violations. JRL can prove neither.

**A.     JRL's Reliance on its Debt Buyer Client was Unreasonable.**

In *Reichert*, the debt collection agency argued it was entitled to rely upon the information submitted by its creditor client because the creditor had supplied accurate information to it in the past. *Id.* at 1005. The Court rejected the debt collector's argument:

> The fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes. The declaration submitted by NCS said only that the creditor "has never previously given NCS incorrect information." The fact that the creditor had not made errors in calculating amounts due does not speak to the problem here, the addition of the attorney's fee. NCS did not give reason to justify its reliance on the creditor for the erroneous premise that the attorney's fee could properly be added. As a result, NCS failed to carry its burden of establishing that its reliance upon the creditor was reasonable.

*Id.* at 1007.

Here, JRL cannot possibly make a prima facie showing that it justifiably relied on CACV's unsubstantiated representations in filing suit. Unlike in *Reichert*, CACV is not an original creditor, but rather a debt buyer which purchases old, charged off credit card accounts and then attempts to collect them at face value. (SUF ¶¶ 2 and 7.) Thus, unlike an original creditor, CACV had no

personal knowledge about Mr. McCollough or his alleged debt. JRL knows that its debt buyer clients, when they purchase debts, often get no documentation from the debt seller. (Deposition of Lorraine Kunkle dated Nov. 6, 2008, *Cole v. Johnson, Rodenburg & Lauinger, et. al.*, CV-08-36-GF-RKS).[2]

Further, CACV has been sued dozens of times for FDCPA violations, something JRL should have reasonably taken into consideration in determining whether it would be appropriate to rely on its representations regarding particular accounts. (Exhibit "1.")

JRL also knew the McCollough account was part of the "Collect America [CACV] batch" that it was having problems with.

Most critically, any arguable justification JRL had for relying upon CACV was contracted away by the parties, with CACV expressly making "no warranty as to the accuracy or validity of the data" it provides to JRL and imposing on JRL the responsibility "to determine your legal and ethical ability to collect these accounts." (SUF ¶ 7.) In the face of this contractual "waiver" by its client, CACV, JRL had an absolute, non-delegable duty to independently verify its ability to collect the purported debt prior to filing the lawsuit. This would have consisted of nothing more than requiring CACV to provide it with documents (evidence) of the alleged debt prior to filing suit. But, because JRL, as a business practice, files

---

[2] The deposition transcript has not been received, and the record will be supplemented upon receipt.

dozens of lawsuits a day and thousands a year, it had neither the time nor the patience to independently verify its legal ability to collect the debt.  The only time JRL made this effort is after Mr. McCollough found an attorney to represent him, well into the lawsuit and after JRL already knew the lawsuit against Mr. McCollough was frivolous.  The fact that JRL, in the face of the contractual limits imposed by CACV, admits that as a business practice it routinely files lawsuits against Montanans without any documentation substantiating the alleged debt whatsoever is troubling indeed, and proof that it would sooner or later find itself in the place it is now, called to account for its violations of the FDCPA.

> **B.    JRL Cannot Demonstrate that it Maintained *Reasonable* Preventative Measures to Avoid FDCPA Violations.**

In *Reichert,* the Court explained:

> If the bona fide error defense is to have any meaning in the context of a strict liability statute, then a showing of "procedures reasonably adapted to avoid any such error" must require more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error.

*Id.* at 1007.

Here, JRL's Statement of Undisputed Facts demonstrates that it has no reasonable procedure in place to avoid the filing of time-barred debts.  JRL receives no documentation from CACV regarding the alleged accounts-- it gets only a line of entries in a computer spreadsheet consisting of nothing more than the alleged debtor's name, address, original creditor, amount owed, and, <u>sometimes</u>,

date of last payment.  (SGI at ¶ 7.)  Put simply, all of the information JRL gets is names and numbers that could fit on a sticky note.  JRL gets no documents which it could independently scrutinize prior to filing suit.  Plaintiff's expert, attorney James A. Patten, has explained:

> The policies and procedures of Johnson, Rodenburg & Lauinger are designed for a mass production of complaints and discovery. The attorneys are provided inadequate documentation to support the claims asserted. …
>
> From the information provided and my experience as described above, it is clear that the Johnson, Rodenburg & Lauinger is a "factory" whose product is debt collection complaints. These complaints are prepared by a staff of non-professionals based upon the barest of information provided by CACV of Colorado and hastily reviewed by the attorneys.

(Exhibit "1" to Sept. 11, 2008 Reply Brief in Support of Partial Summary Judgment.)  Not only does JRL get no documents prior to filing suit, but it is expressly told, by contract, that JRL should not rely upon the accuracy of anything CACV says.  (SUF at ¶ 7.)

By its own admission, the only "procedures" JRL employs is making sure the unsubstantiated names and numbers downloaded on its computer match up with the names and numbers in the complaint to be filed.  Put another way, JRL's attorneys do nothing more than "spell check" the extremely limited, undocumented names and numbers its debt buyer client electronically transmits to it.  In Montana, this is a violation of Rule 11 of the Rules of Civil Procedure, and in the context of a debt collector, it is hardly the basis for a bona fide error defense.

Reasonable preventative measures by a debt collection attorney to avoid violating the FDCPA in filing a time-barred debt would and should consist of, at a bare minimum, requiring documentation from the debt buyer that a payment was actually made on the date claimed, or corroboration from the original creditor that a payment was, in fact, made on the date asserted.

## **CONCLUSION**

Plaintiff respectfully requests that the Court apply the law as set forth in *Reichert* and reach the same result under the even more compelling facts of this case.

DATED this 12th day of November, 2008.

                         HEENAN LAW FIRM

                         */s/ John Heenan*
                         John Heenan
                         Attorney for Plaintiff