John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile: (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>Plaintiff,<br>vs.<br><br>JOHNSON, RODENBURG & LAUINGER.<br><br>Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The predominant themes and legal underpinnings of this case are best summarized by reference to the Montana Supreme Court's *Seltzer* decision:

> The "essence" of our judicial system is not simply the resolution of disputes; rather, it is the resolution of *legitimate* disputes. Baseless lawsuits prosecuted in furtherance of ulterior motives have no place in our courts. … For ordinary citizens who are the victims of such a lawsuit, it may be the most horrific experience of their lives. … [T]he defendants in such cases are the innocent casualties of the war. That is why the "essence of the system" with respect to such lawsuits is to provide recourse for the victim and levy punishment against the

> perpetrator by way of actions for abuse of process and malicious prosecution.

*Seltzer v. Morton*, 2007 MT 62, ¶ 64, 336 Mont. 225, 154 P.3d 561 (emphasis in original). Or, as put by Mr. McCollough:

> It was always my understanding that when you go into a law firm, you have evidence and have an idea what happened before. You've got some documentation on your side; otherwise, you wouldn't be suing. It'd be a waste of time, and the courts would get upset with you. … As far as I was concerned, the law firm [Johnson, Rodenburg & Lauinger] was as guilty as the company they were representing. It was ridiculous. Matter of fact, the law firm should be more guilty. They knew better. They're the ones who are supposed to know the law. It was just pure aggravation.

(McCollough Depo. excerpt attached as Exhibit "1" at pgs. 75-76.)[1]

In Montana, "legal thuggery" is not condoned, and those who do so do it at their peril. This case is about a debt collection law firm which, as a business practice and as evidenced in spades in this case, commits legal thuggery against Montanans which cannot be condoned.

## FACTUAL BACKGROUND

Mr. McCollough has previously set forth the factual circumstances of this case in his Brief in Support of Motion for Partial Summary Judgment- FDCPA Violations dated August 1, 2008, his Statement of Undisputed Facts dated August 1, 2008, and his Brief in Support of Motion for Partial Summary Judgment-

[1] As Plaintiff has already filed a Statement of Undisputed Facts, and because the factual basis for Plaintiff's Brief herein has already been set forth in that prior filing, Plaintiff includes herewith the few supplemental exhibits in an effort to simplify the record.

Defendant's Bona Fide Error Defense dated November 12, 2008. Plaintiff incorporates by reference the factual statements contained in those documents.

## LEGAL ARGUMENT

### I. THE KNOWING AND INTENTIONAL EMPLOYMENT OF FALSE REQUESTS FOR ADMISSIONS BY A DEBT COLLECTOR IS AN FDCPA VIOLATION.

The FDCPA broadly prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt" and prohibits a debt collector from using "any false, deceptive or misleading representation" in the collection of a debt. 15 U.S.C. § 1692e and § 1692f; *see also Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) (the enumerated list of § 1692e and § 1692f violations is non-exhaustive); SENATE REPORT NO. 95-382 ON THE FDCPA (previously attached as Exhibit "3" to Plaintiff's Sept. 10, 2008 summary judgment reply brief) ("[i]n addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.") Consequently, it is well-settled that Congress expressly made the FDCPA broad in scope so courts could proscribe improper conduct by debt collectors.

As set forth in the recently published National Consumer Law Center's[2] Collection Actions manual:

> Debt buyers in particular may have little evidence to establish their case, and little interest in obtaining the evidence. Instead they may try to win their case using the consumer's own admissions. Along with the complaint, or shortly thereafter, the collector will send the consumer a lengthy list of statements, asking the consumer to admit to them, hoping the consumer will not respond in a timely manner. Failure to respond is treated as an admission of all the requested statements. The collector then appends those statements to a summary judgment motion and seeks to prevail in the case although presenting little or none of its own evidence. <u>By serving requests for admission collectors prey on unrepresented consumers' lack of legal knowledge, attempting to prove their cases by sleight of hand when they cannot do so by themselves.</u>

NCLC Collection Actions § 4.2.2.2 (previously attached as Exhibit "1" to Plaintiff's Notice of Supplemental Authority dated November 11, 2008) (emphasis added.)

To be clear, Plaintiff is not contending that the use of Rule 36 requests for admission is a *per se* FDCPA violation. Quite to the contrary, what Plaintiff contends, in the <u>specific context</u> of this case, is whether it is an FDCPA violation for a debt collector (which JRL is) to serve requests for admission on an unrepresented debtor (which Mr. McCollough was), which: (1) ask the debtor to admit as true statements JRL knew to be false, and (2) fail to apprize the

[2] Federal courts, including the Federal District Court for the District of Montana, have cited NCLC manuals as persuasive authority in rendering decisions regarding consumer law and the FDCPA. *See, e.g.*, Order Denying Defendant's Motion to Dismiss (Docket No. 6), *Kunda v. CBB Collections*, CV 08-44-BLG-RFC attached hereto as Exhibit "2" (citing NCLC's Fair Debt Collection Practices manual).

unrepresented debtor that failure to respond to the requests within 30 days will be considered an admission of the statement by law.

As to the first point, the record is undisputed that JRL knew several of the statements it asked Mr. McCollough to admit were patently false. Specifically, JRL asked McCollough to admit he had made a payment in 2004, when its own client had advised JRL this was not the case. Likewise, JRL asked Mr. McCollough to admit "[t]here are no facts upon which Defendant Tim M. McCollough relies as a basis for defense in this action" when McCollough had specifically averred in his answer that "the statute of limitations is up." (Plaintiff's Aug. 1, 2008 SUF hereafter "Plaintiff SUF" at ¶¶ 9-11.) Plaintiff's expert, James A. Patten, has opined:

> The issuance of request for admission, including admission of a fact that Johnson, Rodenburg & Lauinger knew was not true and which was critical to the issue of the statute of limitations, is either an indication of malfeasance, or more likely, under the factory approach to litigation adopted by Johnson, Rodenburg & Lauinger, a matter of misfeasance.

(Exhibit "1" to Plaintiff's Sept. 9, 2008 Reply Brief.) Mr. Patten's opinion is further buttressed by Rule 3.4(d) of the Montana Rules of Professional Conduct, which states a lawyer "shall not … in pretrial procedure, make a frivolous discovery request." JRL's requests for admission were, indisputably, a frivolous discovery request as they had no basis in fact.

JRL misrepresents the record when it tells this Court JRL partner Lisa Lauinger "was the only person to testify on the issue." The self-serving testimony of JRL's partner that JRL uses requests for admission "to seek additional information from defendants" is dubious at best, and contrary to the testimony of Plaintiff's experts. As set forth above, Mr. Patten considers JRL's use of false requests for admission in this case malfeasance. Legal Services attorney Michael Eakin, who will be called by Plaintiff as a hybrid fact/expert witness as to JRL's collection practices, has testified:

> Q. All right. Any other types of conduct by Johnson, Rodenburg & Lauinger that you've seen that you believe constitutes a violation of the FDCPA?
>
> A. Yes. I've seen them send out discovery requests to pro se litigants, that will come in seeking help with answers, and without a sort of full explanation of how to respond. And there are times when they send out requests that, like -- like admit that there is no defense when a defense has been set out in the answer. And I think often it is sent out not to clarify issues, but to try to obtain admission, rather than -- without regard to the actual facts. I think it'd be an unfair debt collection practice to request an admission that you do not have some basis for asserting the fact in the request for admission.

(Eakin Depo. excerpt attached as Exhibit "3" at pg. 52.) JRL was not "searching for the truth," it was acting as a debt collector preying on an unrepresented consumer's lack of legal knowledge. *See* NCLC Collection Actions § 4.2.2.2, *supra*.

Second, JRL, in this case and as a collection practice, fails to disclose to unrepresented debtors the ramifications of failing to timely respond to requests for admission. Mr. Patten testified:

> I've got to tell you, I think it's deceptive the way that they [JRL] do it, by having some fairly detailed instructions about the request for admission, then sort of omitting the very most critical part of the request for admissions.

(Patten Depo. excerpt attached as Exhibit "4" at pg. 57.) At trial, Mr. Eakin will testify as to his knowledge, as a legal services lawyer, of JRL's business practice of using requests for admission against unrepresented consumers. Plaintiff will also impeach Ms. Lauinger's testimony through the dozens of public court files in Yellowstone County alone where JRL has obtained summary judgment through the use of requests for admission. Finally, Plaintiff will call as witnesses two of these unrepresented defendants who JRL sought summary judgment against through requests for admission which contained statements JRL knew or should have known were false.

JRL has offered this Court no authority for the proposition that employing misleading requests for admission in the collection of a debt is not an FDCPA violation. The fact that no Court has yet ruled on this exact issue certainly does not mean such conduct does not fall under the type of unfair or unconscionable means of debt collection practice which Congress specifically passed the FDCPA to prevent. Under the specific and undisputed facts of this particular case, Plaintiff is

entitled to summary judgment that JRL's employment of requests for admission containing false statements is an FDCPA violation.

## II. PLAINTIFF'S UNFAIR TRADE PRACTICES ACT CLAIM IS WELL-STATED.

The Montana Unfair Trade Practices Act ("Montana UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. "The Montana UTPA is broad and scope and should not be narrowly construed." *Baird v. Norwest Bank*, 255 Mont. 317, 327, 843 P.2d 327, 333 (1993).

JRL argues that its debt collection conduct does not fall under the umbrella of Montana UTPA protection. JRL offers this Court no authority for its position in this regard. Instead, it cites the Court to cases in which a particular consumer transaction was found to constitute a Montana UTPA violation. One of the cases JRL cites in this regard is *Baird v. Norwest Bank*, 255 Mont. 317, 843 P.2d 327, which held the collection of debts can constitute a Montana UTPA violation.

JRL attempts to limit the *Baird* holding by contending that because it did not directly provide Mr. McCollough with a good or service, it is not subject to the Act. But, JRL fails to advise this Court that Judge Cebull and Judge Strong have both recently rejected this exact same argument.

In *Kunda v. CBB Collections, Inc.*, the plaintiffs brought an FDCPA suit against a debt collector who sued them on a legally barred claim as the assignee to

medical debt. *CBB Collections* argued that because it had not provided the medical services, it was not subject to the Montana UTPA. Judge Cebull, citing *Baird*, rejected this argument:

> The Montana UTPA is broad in scope and should not be narrowly construed. The Montana Supreme Court specifically held the Act applies to consumer loans by banks in the lending and *collecting of such loans*. Plaintiff was provided medical services by Billings Clinic and Defendants are the assignees of Billings clinic.

(*Kunda* order, *supra*, at pg. 5) (emphasis in original).

In *Cole v. Johnson, Rodenburg & Lauinger et. al.*, JRL raised the exact same argument it does here[3]- that it was not subject to the Montana UTPA because it is a collector and did not provide the debtor with any goods or services. Judge Strong rejected JRL's argument, holding:

> Plaintiff has alleged that JR&L is in the business of debt collection as part of its legal practice and includes litigation as a part of its debt collection business. That allegation, at least at the pleading stage, places JR&L well within [the Act].[4]

(Order Denying JRL Motion to Dismiss (Docket No. 37), *Cole v. Johnson, Rodenburg & Lauinger et. al.* CV 08-36-GF-RKS) (attached hereto as Exhibit "5.")

---

3 It is inexplicable that JRL would fail to alert this Court to Judge Strong's Order in *Cole.*

4 In *Cole*, JRL is alleged to have violated the FDCPA by filing a forged affidavit in a state court lawsuit in an attempt to collect a debt.

The rulings of Judge Cebull and Judge Strong are in line with the majority of other courts to have addressed the issue of whether debt collection falls under state unfair trade practices statutes. As explained in NCLC's Unfair and Deceptive Acts and Practices manual:

> Where there is a sale, there is no requirement that the consumer purchase the good or service from the defendant. … One is a consumer not by one's relation to the defendants, but by the terms of the original transaction.
>
> …
>
> It is the connection with the original sale that makes the subsequent collection covered by the UDAP statute; if the debt was not based on the sale of goods or services, the subsequent debt collection practices would not be covered.

(NCLC Unfair and Deceptive Acts and Practices Manual attached hereto as Exhibit "6" at § 2.2.3.2.) In the context of an attorney sued under a state UDAP statute:

> It is the lawyer-client relationship that is outside the statute's scope; there is no blanket immunity for deceptive conduct for those graduating from law school. … If the UDAP statute covers debt collection, an attorney collecting a debt may be covered even if the relationship with his or her own client is exempt.

*Id.* at § 2.3.9 *citing Daniels v. Baritz*, 2003 WL 21027238 (E.D. Pa. 2003) and *Rachoza v. Gallas & Schultz*, 1998 U.S. Dist. LEXIS 5018 (D. Kan. 1998).

In light of the broad scope of the Montana UTPA and the persuasive authority from this District and beyond declaring that debt collection activities are subject to the Act, JRL's motion for summary judgment should be denied.

## III. PLAINTIFF'S MALICIOUS PROSECUTION CLAIM IS WELL-STATED.

In Montana, "a lawyer shall always pursue the truth," and "legal thuggery" is not condoned. *Seltzer* at ¶¶ 62-64. To prove a malicious prosecution claim under Montana law, a plaintiff must prove the following elements: (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing the proceeding; (3) the defendant acted without probable cause; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for plaintiff; and (6) the plaintiff sustained damages. *Seipel v. Olympic Coast Investments*, 2008 MT 237, ¶ 10, 344 Mont. 415, 188 P.3d 1027.

JRL contends that Plaintiff has not raised a genuine issue of fact as to the third element (probable cause) and the fourth element (actuated by malice). Thus, JRL does not take issue with the remaining elements of a malicious prosecution claim, at least at this stage. Unfortunately for JRL, its conduct in this case is exactly the type of conduct which gives rise to a malicious prosecution in Montana, and Plaintiff can demonstrate more than enough factual issues to preclude summary judgment in favor of JRL.

### A. JRL Lacked Probable Cause.

The determination of whether the party that instituted a legal proceeding lacked probable cause "turns on the facts known to the suing party at the time the

lawsuit was filed." *Seltzer v. Morton*, *supra* at ¶ 15. The determination of this issue is necessarily factually intensive, and requires the jury "to consider whether defendant could or should have made further inquiry or investigation as an ordinary prudent person would have made in the same circumstances before initiating such a lawsuit. *Id.*

JRL contends it had probable cause to sue Mr. McCollough based upon the unsubstantiated representation of its debt buyer client, CACV. First, a genuine issue of fact exists as to whether such a reliance by JRL would be "reasonable" as required by Montana law. *Hughes v. Lynch*, 2007 MT 177, ¶ 8, 338 Mont. 214, 164 P.3d 913 (examination of lack of probable cause element requires inquiry into whether defendant had reasonable belief in the existence of facts.)

CACV is not an original creditor, but rather a debt buyer which purchases old, charged off credit card accounts and then attempts to collect them at face value. (Plaintiff SUF ¶¶ 2 and 7.) Thus, unlike an original creditor, CACV had no personal knowledge about Mr. McCollough or his alleged debt. CACV has been sued dozens of times for FDCPA violations, something JRL should have reasonably taken into consideration in determining whether it would be appropriate to rely on its representations regarding particular accounts.[5]

---

[5] JRL's entire argument would eviscerate Rule 11 of the Montana Rules of Civil Procedure and, taken to its extreme, would allow an attorney to file suit on behalf of a convicted con man who claimed the Pope owed him money on a debt.

JRL does not require CACV to provide it with any particular documents before filing a lawsuit. (Defendant's Aug. 9, 2008 SGI ¶ 8.) Prior to suing Mr. McCollough, JRL had not received any documents whatsoever from CACV regarding Mr. McCollough or his alleged debt- not a contract application, a single credit card statement, a check receipt, nothing. *Id.* Instead, all CACV gave JRL was electronic information consisting of Mr. McCollough's name, address, previous creditor, amount claimed, and date of last payment. *Id.*

CACV, by contract with JRL, expressly made "no warranty as to the accuracy or validity of the data" it provided to JRL and imposed on JRL the responsibility "to determine your legal and ethical ability to collect these accounts." (Plaintiff SUF ¶ 7.)

JRL knew the McCollough account was part of the "Collect America [CACV] batch" which JRL was having problems collecting. (Plaintiff SUF ¶ 5.)

With no documents which would constitute evidence in a court of law and with a client JRL knew, contractually, it could not rely upon, JRL sued Mr. McCollough. JRL undertook no factual inquiry to determine whether such a suit was justified. Had it done so, it would have learned, among other things, that the original creditor had no record of Mr. McCollough or his account.

As soon as Mr. McCollough retained counsel, JRL immediately dismissed the lawsuit, which demonstrates the prosecution was malicious.[6] *Seipel, supra* at ¶ 15 (there is a "natural assumption that one does not simply abandon a meritorious action once instituted.") Mr. Patten has testified:

> Q. What's the standard of care, for a Montana attorney filing a lawsuit in Montana, under Rule 11 of the Montana Rules of Civil Procedure, the Montana Rules of Ethics, and otherwise, what's the standard of care that you have in filing a collection action in Montana?
>
> MR. SIMPSON: Objection; foundation.
>
> A: I think the standard of care is probably, in my view, is that set by Rule 11. You have to do a diligent inquiry into the facts, or a reasonable inquiry into the facts, to determine what the facts are. And you need to be in a position to actually prove it. You can't just make allegations and hope that they fly without any ability to back them up.
>
> Q. In your opinion, did Johnson, Rodenburg & Lauinger, as a law firm practicing law in the state of Montana, meet that standard of care?
>
> A. Not in connection with the McCollough case; not in connection with the cases that I've been involved with. With the exception of the one case that actually went to trial and they actually had some evidence.
>
> …
>
> Q. In your opinion, did Johnson, Rodenburg & Lauinger file and/or maintain a frivolous lawsuit against Mr. McCollough?
>
> A. Yes.

(Exhibit "4" at pgs. 75-78.)

---

6 Plaintiff SUF at ¶ 15.

Second, even if JRL's blind reliance on CACV somehow constituted a reasonable basis for filing suit, it is undisputed that JRL continued to prosecute the suit against McCollough even after CACV retracted its claim that McCollough had made a payment in 2004. Thus, although Plaintiff strongly disputes that JRL had probable cause at the outset of the underlying suit, it certainly had none when its own client retracted the bare factual assertion JRL had previously "relied upon." In light of all of this overwhelming evidence, genuine issues of fact certainly exist.

**B. JRL's Conduct was Malicious Under Montana Law.**

Malice under Montana law, in the context of a malicious prosecution claim, can include either: (a) a "wish to vex, annoy, or injure another person or an intent to do a wrongful act," or (b) an instance where the defendant deliberately process to act in conscious disregard or indifference to the high probability of injury to the plaintiff. *Plouffe v. Montana Dept. of Public Health and Human Services*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10.

JRL files thousands of lawsuits a year against Montanans with nothing more than the unsubstantiated statements of debt buyer clients. Here, JRL filed suit against Mr. McCollough without any documents to prove its case, and in the face of a client who told JRL, essentially, "don't believe anything we say." JRL then disregarded the express direction of its client and continued to prosecute a lawsuit

against Mr. McCollough it knew was time-barred, hoping to win anyway against a *pro se*, mentally disabled defendant.

JRL's "factory" approach to debt collection further demonstrates a deliberate indifference by JRL as to the affect its debt collection practices have on people like Mr. McCollough, as will be testified to by Mr. Patten:

> The policies and procedures of Johnson, Rodenburg & Lauinger are designed for a mass production of complaints and discovery. The attorneys are provided inadequate documentation to support the claims asserted. … From the information provided and my experience as described above, it is clear that the Johnson, Rodenburg & Lauinger is a "factory" whose product is debt collection complaints. These complaints are prepared by a staff of non-professionals based upon the barest of information provided by CACV of Colorado and hastily reviewed by the attorneys.

(Exhibit "1" to Plaintiff's Sept. 10, 2008 brief.) JRL's entire factory approach, as displayed in the underlying suit against Mr. McCollough, demonstrates, at a minimum, a deliberate indifference to a high probability of injury to Mr. McCollough. JRL's continued prosecution of the underlying suit, even though CACV retracted its claim that McCollough had made a payment in 2004, raises a genuine issue of fact as to whether JRL's intent was to annoy, vex or harass Mr. McCollough. JRL's employment of false and misleading requests for admission further creates an issue as to whether JRL's conduct was malicious. For all of these reasons, a genuine issue of fact exists as to whether JRL's conduct was malicious, the resolution of which should be reserved for the trier of fact at trial.

## IV. PLAINTIFF'S ABUSE OF PROCESS CLAIM IS WELL-STATED.

The elements of the tort of abuse of process are: (1) that the process though properly instituted was predicated on an ulterior motive, and (2) that such process was put to an illegal use or perverted beyond its intended purpose. *Brault v. Smith*, 209 Mont. 21, 679 P.2d 236 (Mont. 1984).[7]

The most current, and thus binding, decision regarding abuse of process in Montana is the *Seipel* decision.[8] In *Seipel*, an appraiser brought an abuse of process case against a former client after the client sued him for overvaluing an RV park. *Seipel* at ¶¶ 4-5. The Montana Supreme Court reversed the trial court's grant of summary judgment, holding:

> As we recently clarified, where the record establishes that an abuse-of-process plaintiff based his claim on the defendant's purpose in bringing the prior suit, as well as the conduct of utilizing the suit as an instrument of coercion, the defendant is not entitled to summary judgment. *Seltzer*, ¶¶ 57-60. Here, Fisk's affidavit supports Seipel's allegations that Olympic had no valid legal claim against him and knew it, but filed an action against him in federal court nonetheless. This record is sufficient to remove Seipel's abuse of process action from the *Brault* "valid legal claim" framework.

---

7 In Brault, the Montana Supreme Court relied on the California case of Barquis v. Merchants Collection Assoc., 496 P.2d 817 (Cal. 1972). There, the plaintiff alleged that the defendant collection agency had filed suits against debtors, knowingly, in improper forums with the intent to impair the rights of the debtors to defend themselves. The Barquis court held that such action on the part of the collection agency, if proven at trial, would constitute an abuse of process. Thus, Montana's abuse of process case law has evolved from the actions of debt collectors.

8 Again, it is inexplicable that JRL has failed to cite this Court to the *Seipel* decision as it represents the most current statement of Montana law on this issue.

> The defendants also quote our decision in First *Bank (N.A.)-Billings v. Clark*, 236 Mont. 195, 204, 771 P.2d 84, 90 (1989), that "[r]esort to the legal process for resolution of a controversy is wrongful only upon proof that prosecution of the action was malicious." They contend the sole remedy for the filing of a baseless lawsuit is a malicious prosecution claim. That contention is simply incorrect. First Bank included a malicious prosecution claim, but did not involve an abuse of process claim. Use of the court system to file a baseless legal claim may constitute an abuse of process. *Leasing, Inc. v. Discovery Ski Corp.*, 235 Mont. 133, 136, 765 P.2d 176, 178 (1988).
>
> Here, Fisk's affidavit would permit a reasonable inference that, in filing the federal lawsuit, Olympic acted with an ulterior purpose of extracting money from Seipel that he did not owe, so as to satisfy the first element of abuse of process. Fisk's affidavit would also permit a reasonable inference that Olympic willfully filed the federal suit without a valid claim, so as to satisfy the second element of abuse of process.
>
> We conclude Seipel has raised genuine issues of material fact as to whether the defendants had an ulterior purpose in filing the federal court action against him and whether, by filing that suit, they engaged in a willful act not proper in the conduct of the proceeding. As a result, we hold that the District Court erred in granting summary judgment for the defendants on the abuse of process claim.

*Seipel* at ¶¶ 25-28 (emphasis added). Thus, under current Montana law, a party who: (a) files a baseless legal action or (b) files an action with the purpose of extracting money from a party that it does not owe can be held responsible for an abuse of process.

Here, as set forth previously, JRL: (a) filed a lawsuit against Mr. McCollough without any evidence whatsoever on behalf of a debt buyer client who, pursuant to its collection contract with JRL, told JRL it could not rely upon

anything it said, (b) maintained a lawsuit against Mr. McCollough after being expressly told by its debt buyer client that the information it previously represented to JRL was wrong and the claim was, in fact, time-barred, (c) maintained a lawsuit against Mr. McCollough after being put on notice that his only income was social security disability benefits which are not subject to collection, and (d) propounded requests for admission on Mr. McCollough asking him to admit as facts statements JRL knew to be false. All of this conduct, pursuant to the *Seipel* decision and the body of case law which has evolved in Montana regarding abuse of process claims, falls within the scope of abuse of process law as it demonstrates both: (a) JRL filed and maintained a baseless legal claim, and (b) JRL did so with the ulterior purpose of extracting money from McCollough that he did not owe. *Seipel.*

Ironically, not only has JRL failed to cite this Court to the *Seipel* decision, but it relies solely on the *Seltzer* decision as support for its motion. But, *Seltzer* supports Plaintiff's claim against JRL for abuse of process here, and in particular the overarching notion that, under Montana law:

> The "essence" of our judicial system is not simply the resolution of disputes; rather, it is the resolution of *legitimate* disputes. Baseless lawsuits prosecuted in furtherance of ulterior motives have no place in our courts. … That is why the "essence of the system" with respect to such lawsuits is to provide recourse for the victim and levy punishment against the perpetrator by way of actions for abuse of process and malicious prosecution.

*Seltzer, supra* at ¶ 64. Plaintiff has asserted more than sufficient issues of fact to preclude summary judgment in JRL's favor as to this claim.

**CONCLUSION**

The facts underlying Plaintiff's FDCPA claim on JRL's abuse of requests for admission against Mr. McCollough are not in dispute. It cannot be said that JRL's conduct is anything other than "unfair or unconscionable means to collect or attempt to collect any debt" and/or a "false, deceptive or misleading representation".

As to Plaintiff's state law causes of action, Plaintiff has raised a multitude of genuine issues of fact precluding summary judgment. JRL's conduct against Mr. McCollough goes to the heart of what Montana's UTPA, malicious prosecution and abuse of process laws are designed to address and remedy.

Plaintiff respectfully requests that the Court deny JRL's Motion for Summary Judgment in its entirety and grant him partial summary judgment as to his FDCPA claim.

DATED this 21st day of November, 2008.

HEENAN LAW FIRM

*/s/ John Heenan*
John Heenan
Attorney for Plaintiff