IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

JUNE TIFT and TIMOTHY          )
McCOLLOUGH,                     )
                               )
                               )          **UNCERTIFIED**
                               )
        Plaintiffs,            )
                               )  Cause No.
    -vs-                       )  CV-07-166-BLG-RFC-CSO
                               )
JOHNSON, RODENBURG &           )
LAUINGER,                      )          **COPY**
                               )
        Defendant.             )
                               )

Taken at 222 North 32nd St., Suite 900
Billings, Montana
Thursday, September 4, 2008 - 10:35 a.m.


VIDEOTAPE DEPOSITION
OF

MARK "TIMOTHY" McCOLLOUGH


Reported by Diana Kern.  Transcribed from DVD by
Melody Jeffries Peters, RDR, CRR,
Jeffries Court Reporting, Inc., 1015 Mount Avenue,
Suite C, Missoula, Montana  59801,
(406) 721-1143, Freelance Court Reporter
residing in Missoula, Montana.

**TIFT v. JOHNSON, et al.**          **9/4/2008**          **MARK "TIMOTHY" McCOLLOUGH**

Page 74

giant frustration.

And the fact that this had already been cleared up in the first case, I was getting very ticked off. And I wasn't the only one they were doing this to that just pissed me off. It's the one thing that really gets me going is, I don't give up. I don't quit.

If I quit, I wouldn't have recovered this far. Doctors say you've only got two years of recovery with a head injury, and after that -- it's bull. You can recover forever if you keep on fighting, if you keep on working at it, if you don't give up. It's just that you don't notice improvements after two years. That's why you give up.

These people were ticking me off. I wasn't gonna give up. They were hurting me; they were hurting other people. They went out of the way to do this garbage. I know I'm not the only one they were out there doing, and I'm not gonna quit fighting. I -- They got me mad. I was not gonna give in.

Q. It's the fact -- I want to understand you correctly. It's the fact that they sued you on a debt that -- or on an issue that you thought

Page 75

had already been resolved; that was what made you frustrated.

A. Yeah.

Q. Okay.

A. And if they're coming after me three times, CVLC [sic] of Colorado, then it's time to fight. And first thing I did was go after them.

Q. So you just mentioned three times. We talked earlier about the one time that the Spencer law firm --

A. Uh-huh.

Q. -- had sued you. When was the other -- when was the other time?

A. Oh, the other time was the documents arrived during -- before the Spencer trial was over by the other law firm that I -- passing -- While you've got one in court, you don't pass it off to another law firm.

And they added, what, another $2,000 to it, and, all of a sudden, here it comes back at a ridiculous amount and almost $10,000 for something -- I was getting more and more ticked off all the time. And the fact that -- It was always my understanding that when you go into a law firm, you have evidence and have an idea of

Page 76

what happened before. You've got some documentation on your side; otherwise, you wouldn't be suing. It'd be a waste of time, and the courts would get upset with you.

So I figured, Well, they've got to have all the information from the previous lawsuits. They've got to already have the answers. And they've just, you know, tripled their, you know, interest rates and raised their prices up and everything. I got ticked.

As far as I was concerned, the law firm was as guilty as the company they were representing. It was ridiculous.

Matter of fact, the law firm should be more guilty. They knew better. They're the ones who are supposed to know the law. It was just pure aggravation.

And between the headaches, that got me even more upset. So I contacted Prepaid Legal, and they made some suggestions for me, and I met my lawyer. And after a while, he contacted me, and we went with it. And I get to right some wrongs. I feel useful again.

Q. You previously made a claim in this lawsuit against CACV of Colorado; is that right?

Page 77

A. Yes.

Q. Okay. I understand you've settled that claim.

A. Yes.

Q. What was the settlement?

MR. HEENAN: I'll object and instruct you not to answer that. It's a confidential settlement.

MR. SIMPSON: Okay. We'll have to get the judge on that, but --

Q. (BY MR. SIMPSON) You felt that CACV had wronged you.

A. Yes. But like I said, as much as CVAC [sic] -- they're just a bunch of greedy, money-grubbers -- the wrong -- the real wrong came from the law firm, because it had already been settled. They are the ones who are supposed to know the law. That's the one that ticked me off.

Q. You say it had already been settled. How was it settled?

A. It had already gone to court in the first case.

Q. Did you appear in a courtroom?

A. No. Actually, they dropped the whole thing the day -- the day before. I showed up to

**JEFFRIES COURT REPORTING, INC.**
**(406) 721-1143**