**James Patten**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

### CV-07-166-BLG-RFC-CSO

## JUNE TIFT AND TIMOTHY McCOLLOUGH

## VS.

## JOHNSON, RODENBURG, & LAUINGER

**October 30, 2008**

**Reported by:**
**Jennifer Lewis**

CHARLES FISHER COURT REPORTING, INC.
503 East Mendenhall
Bozeman, Montana 59715
Phone: (406) 587-9016
Fax: (406) 586-0926
fisherreporting@imt.net
fishercourtreporting.com

## 54

and so we always had that language on there.

And I think actually, on behalf of some banks, when we send out a letter for a bank, a demand letter, even on a commercial deal, I think we just automatically put that -- those magic words at the bottom of the letter, just so that there's no issue.

Q. Are you aware among collection attorneys what the standard is for their receipt of information prior to filing suit? What kinds of information they receive and what form it usually takes?

A. I'm aware from my practice, which was some time ago, and I'm aware that -- I mean depending on the type of collection.

Q. And I guess I want to refer to the kind of debt we're talking about here, which is consumer credit card debt.

A. Okay. I think that consumer credit card debt, the information that's probably pretty routine -- I'm guessing on this -- but probably pretty routine in the format that Johnson, Rodenburg & Lauinger get.

Q. In the electronic download?

A. Yes.

## 55

Q. Okay. In that sense, what they're doing most likely isn't any different than what other collection attorneys who represent those kind of clients do; is that fair to say?

A. In the format that they get the information?

Q. Yeah.

A. Yes. I would say that's probably true.

(Whereupon, a break was taken.)

BY MR. SIMPSON:

Q. All right. When you take in a file for a client and there aren't a lot of documents, what do you do to try to find out whether what your client is telling you about the case is true or not?

A. I guess the kind of work that I do is always document intensive. So, I get the documents. I mean, if it's a foreclosure or something like that, there's going to be, you know, mortgages or deeds of trust or whatever.

We will, a lot of times, do a UCC search. We will get into the clerk of the court's website and see about transfers of real property interest. We will get information from county assessors if -- it kind of depends what the issue is -- but if

## 56

there's certainly a claim of a lien or a debt, then we want at least a copy of it in the original documents.

And if the client doesn't have them, then we'll get them from whatever public type places that they're available, or we'll tell the client to go get them from wherever they should be found.

Q. You've taken issue in your report, page 4, with Johnson, Rodenburg & Lauinger's discovery practices. In particular, you've noted that the form utilized for request for admission contain instructions but does not advise a defendant, including pro se defendants, of the consequence of failure -- failing to answer the admissions.

Are you aware of any authority which holds that that kind of instruction is required, otherwise you're in violation of the Fair Debt Collection Practices Act?

A. No.

Q. You're aware in this case that Mr. McCollough was served with request for admission?

A. Yes.

Q. You're aware that his counsel denied the request that he took issue with?

A. I don't know that, but --

## 57

Q. Okay. Do you specifically think that Johnson, Rodenburg & Lauinger's issuance for service of request for admission in this case caused some harm to Mr. McCollough?

A. Probably caused him to incur some defense costs. Leave it at that. I got to tell you, I think it's deceptive the way that they do it, by having some fairly detailed instructions about the request for admission, then sort of omitting the very most critical part of the request for admissions.

Q. Are you aware that in this case, before serving the lawsuit on Mr. McCollough, Johnson, Rodenburg & Lauinger sent him a letter asking him if he disputed the validity of the claim at CACV?

A. I think I understand that.

Q. And what's your knowledge of what response, if any, Mr. McCollough made?

A. I guess I was -- as I sit here, I was thinking that he responded and asserted the statute of limitations as an issue.

Q. He didn't respond before the suit was served though; is that your understanding?

A. I guess I thought that he had.

Q. Based on what?