John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH, <br><br>                Plaintiff, <br><br>    vs. <br><br> JOHNSON, RODENBURG & LAUINGER. <br><br>                 Defendant. | Cause No. CV-07-166-BLG-CSO <br><br> Judge Carolyn S. Ostby <br><br> **RESPONSE TO DEFENDANT'S MOTION TO COMPEL CONFIDENTIAL SETTLEMENT AGREEMENT** |

Plaintiff filed this lawsuit against both JRL and its debt buyer client CACV alleging claims under the FDCPA, Montana UTPA, abuse of process and malicious prosecution.  CACV settled with Plaintiff prior to filing its Answer.  JRL, on the other hand, has vigorously litigated this case.  JRL now seeks to discover the terms and amount of the confidential settlement agreement which Plaintiff entered into with CACV.

JRL's argues that Mr. McCollough's settlement with CACV is relevant because JRL would be entitled to an offset for any FDCPA statutory damages

McCollough has already received through settlement with CACV.    Mr. McCollough responds as follows:

**1.     JRL's Offset Argument is not Ripe Until the Jury Accesses Statutory Damages.**

While Plaintiff strongly disputes that JRL would be entitled to any sort of offset for its conduct, it is also plain that this issue would not be ripe unless and until the jury accessed statutory damages against JRL for its violation of the FDCPA.  Offset is not applicable until a monetary judgment is imposed.  *See,* e.g. *Zivitz v. Greenberg,* 279 F.3d 536 (7th Cir. 2002).  Until such time as a monetary judgment is imposed against JRL, there is no relevance whatsoever in the confidential settlement between Plaintiff and CACV.  This Motion should be denied as moot and JRL given the opportunity to raise theses issues upon the entry of a monetary judgment against it.

**2.     JRL Must Overcome the Courts' Strong Policy Interests in Preventing the Discovery of Confidential Settlement Agreements.**

Courts maintain a strong public policy interest in enforcing the terms of a confidential settlement agreement.  *Hannah v. General Motors Corp.*, 969 F. Supp. 554,558 (D. Ar. 1996) *citing Haworth, Inc. v. Herman Miller, Inc.*, 998 F.3d 975, 978 (Fed. Cir. 1993).  Both Plaintiff and CACV contracted for confidentiality with respect to the settlement they reached.  This Court should consider the strong public policy interest against forcing Plaintiff to disclose the confidential

settlement agreement where there is no public policy benefit to disclosing it and JRL's sole basis for the motion is its unrealized assumption that it will be held responsible for a monetary judgment.

**3.    JRL Draws Mistaken Conclusions about the Substance of the Settlement Agreement.**

JRL's argument is entirely premised upon the assumption that CACV paid monies to settle Plaintiff's FDCPA claim.  As JRL is aware, this is not just an FDCPA statutory damages lawsuit, but one where Plaintiff seeks his actual damages, including emotional distress damages, and where Plaintiff has raised, in addition to his FDCPA claim, Montana state law claims for unfair trade practices, malicious prosecution and abuse of process.  Without disclosing the terms of the settlement agreement, Plaintiff can advise that the settlement with CACV addressed Plaintiff's state law claims.  (Plaintiff would suggest that, if the Court is inclined, Plaintiff would provide the settlement agreement for *in camera* review by the Court to confirm the terms/substance of the agreement either now or following the entry of judgment.)

**4.    If CACV's Settlement was Expressly Allocated to Plaintiff's State Law Tort Claims, then JRL would not be Entitled to Offset.**

As set forth, Plaintiff believes JRL's offset arguments are not ripe.  To the extent the Court is inclined to address offset at this juncture, Plaintiff addresses the issue herein under the claims Plaintiff has brought.

**A.    Intentional Tortfeasors do Not Get the Benefit of Offset for their Misconduct.**

A defendant seeking offset against a monetary judgment has the burden of proving the offset.  *Zivitz, supra.* Plaintiff's state law claims against CACV and JRL involved only intentional torts.   It is a well-settled legal principle that intentional tortfeasors have no right to offset.

The Restatement of Torts (Second) provides that "[t]here is no right of contribution in favor of any tortfeasor who has intentionally caused the harm." Restatement of Torts (Second) at § 886A(3).  The commentary to the Restatement explains:

> In the absence of statute, the courts have adhered to the original English rule that no right of contribution arises in favor of one who has intentionally caused harm to another.  The basis of the rule is the old one that the courts will not aid one who has deliberately done harm.

*Id*., comment on Subsection (3); *see also* 18 A.L.R.5th 525 (2007) (comparative negligence principles are inapplicable to intentional tort cases); *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1050 (Nev. 2000).

States have allowed for offset by statute or court rule, but only to non-intentional wrongs:

> At common law, there was no contribution among joint tortfeasors. W. Page Keeton et al., *Prosser and Keeton on the Law of Tor*ts § 50 (5th ed. 1984).    This  rule  is  deeply  rooted  in  our  national

> jurisprudential history and developed because the word "tort" was, in the non-modern context, a descriptive term for intentional misconduct amounting to a "civil wrong," not negligent misconduct.  Over time, numerous states have adopted either by court rule or by statute variant forms of contribution recover.  These contribution constructs, <u>which apply to non-intentional wrongs</u>, come from the recognition that non-negligent torts committed by multiple offenders do not evoke the same policy that justifies the prohibition of credit for complete or partial reimbursement by third parties in the intentional tort context.

*Evans*, 5 P.3d at 1051 (emphasis added).

At least two other jurisdictions which have addressed this issue have specifically held that an intentional tortfeasor is not entitled to a credit for his intentional misconduct.  *Evans, supra* and *Klosterman v. Fussner*, 651 N.E.2d 64, 68 (Ohio Ct. App. 1994).  The court in *Evans* based its holding on principles of equity:  "First, and fundamentally, payments made in settlement of an intentional tort claim and applied to reduce another tortfeasor's payment of the claim by one of the joint tortfeasors would constitute equitable relief by way of an equitable setoff."  *Evans*, 5 P.3d at 1050.  The "clean hands" doctrine provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct.  *Income Investors v. Shelton*, 3 Wash. 2d 599, 101 P.2d 973, 974 (Wa. 1940); *Evans, supra*, 5 P.3d at 1050.  This rule is universal.  *See Shelton*, 101 P.2d at 974.  "Under the maxim that one seeking equity may not do so with 'unclean hands,' an intentional tortfeasor by

definition seeks such relief from a position of ineligibility for it."   *Evans*, 5 P.3d at 1050-51 *citing Shelton*, 101 P.2d at 974.

The public policy behind these numerous cases and legal treatises is that a party found liable for intentional misconduct, such as malicious and fraudulent conduct, has "unclean hands," and therefore should not be allowed to profit from its intentional misconduct.   Consequently, JRL is precluded from any equitable right to a setoff based on its own intentional misconduct against Mr. McCollough.

**B.    Montana Law does not allow Intentional Tortfeasors the Benefit of Offset for their Misconduct.**

JRL's reliance on Montana negligence case law is severely misplaced.  The case at bar involves intentional conduct.  Negligent conduct has never been a part of this case.  On its face, Mont. Code Ann. § 27-1-703, which covers offset, applies only to negligence actions, and makes no mention of its application to intentional torts.  *See also Durden v. Hydroflame Corp.*, 1999 MT 186, ¶ 13 (§ 27-1-703 "is by its terms limited to negligence actions.")  JRL relies on *Boyken v. Steele*, 256 Mont. 419, 847 P.2d 282 (1993) in an attempt to invoke the setoff principles in negligence actions set forth in Mont. Code Ann. § 27-1-703.  Although *Boyken* involved an intentional assault, it is completely distinguishable because the settlement was a settlement of a negligence claim, not an intentional tort claim. The case arose from a barroom fight between Larry Boyken and Steven Steele. Boyken sued Steele for assault and sued Lee's Northside Bar for negligence.  Prior

to trial, Boyken settled with Lee's Northside Bar for $5,000. Boyken proceeded to trial against Steele and recovered $2,500 for the assault. The Court found that the $5,000 Boyken received in the settlement with the bar exceeded his total damages and was not entitled to any additional compensatory damages from Steele under any legal theory. *Id.* at 283 - 284. Thus, the court setoff the verdict received from the intention tortfeasor with the settlement received from the negligent tortfeasor. Here, the settlement with CACV was for intentional conduct – not negligent conduct like that of Lee's Northside Bar. Consequently, *Boyken* does not provide any support to JRL's claim that there should be a setoff for a settlement based on intentional misconduct.

In *Ammondson et. al. v. NorthWestern Corp. et. al.*, Cause No. DV-05-97 (Montana Second Judicial District Court), the plaintiffs sought damages against NorthWestern Corp. and its legal counsel, the Paul Hastings law firm, for malicious prosecution and abuse of process in the defendants' collective attempt to reject the plaintiffs' pensions in bankruptcy court. A week prior to trial, Paul Hastings settled. Following trial, NorthWestern Corp. attempted, as here, to compel disclosure of the settlement agreement, arguing that under *Boyken* it would be entitled to an offset for whatever Paul Hastings had paid as part of the settlement. Judge Newman, in a well-reasoned decision, found that NorthWestern Corp. was not entitled to offset because "equitable principles prohibit an

intentional tortfeasor from receiving a credit for a settlement paid by another intentional tortfeasor." (Order Denying Defendant's Motion to Alter Judgment dated April 9, 2007 attached as Exhibit "A" at pg. 4). Having found no offset available to NorthWestern as an intentional tortfeasor, Judge Newman denied NorthWestern's motion to compel the release of the confidential settlement agreement. (Order Denying Defendant's Motion to Compel Release of Confidential Settlement Agreement dated April 9, 2007 attached as Exhibit "B"). Plaintiff submits that the Court should adopt the persuasive authority of Judge Newman's decision in *Ammondson* and find JRL is not entitled to offset and therefore not entitled to discover the terms of the confidential settlement with CACV.

**5.     JRL Misstates the Law with Respect its Request for Attorney's Fees.**

JRL seeks its attorney's fees associated with filing this Motion, on the basis that "Fed. R. Civ. 37(a)(5)(a) provides that a court must award reasonable expenses, including attorney's fees, when a party is forced to file a motion to compel which is granted." JRL fails to cite the Court to the remainder of Rule 37, which creates an exception where: (a) the opposing party's nondisclosure, response, or objection was substantially justified; or (b) other circumstances make an award of expenses unjust. Rule 37(a)(5)(a)(ii) and (iii); *see also* Order on Plaintiff's Motion to Compel dated April 2, 2007 (Docket No. 39), *Walker v. Wal-*

*Mart Stores, Inc.*, CV 06-43-BLG-CSO (pertinent portions attached as Exhibit "C").

Here, as set forth above, the law is on Plaintiff's side with respect to this Motion as the courts take a strong public policy approach to protecting confidential agreement from disclosure, and because JRL cannot articulate a reason for why discovery of the CACV agreement has any relevance until a judgment is imposed against it. Further, JLR has sought to compel the terms of a confidential settlement agreement. By the terms of the agreement, Plaintiff would be in breach thereof if he were to simply turn it over to JRL. Plaintiff has acted conservatively in not disclosing the settlement agreement without an Order from the Court. Thus, even if the Court is not inclined to agree with Plaintiff's legal position, it would hopefully conclude that Plaintiff's position is not taken in bad faith and is substantially justified.

Additionally, Rule 37 provides an exception where "other circumstances make an award of expenses unjust." As JRL knows, Mr. McCollough is disabled and his sole source of income is social security disability. JRL's request for attorney's fees against Plaintiff McCollough in the face of this knowledge, and in light of the claims which are brought against JRL (among other things, seeking attorney's fees not allowed by law against Mr. McCollough), is mean-spirited and

contrary to Rule 37's exception for circumstances in which an award would be "unjust."

For all of these reasons, Plaintiff respectfully requests that the Court deny JRL's Motion to Compel and JRL's request for attorney's fees.

DATED this 24th day of November, 2008.

HEENAN LAW FIRM


*/s/ John Heenan*
John Heenan
Attorney for Plaintiff