NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3008-07T1


DAVID J. HOFFMAN and
CLAYTON TURNER,

    Plaintiffs-Appellants,

    v.

ENCORE CAPITAL GROUP, INC.,
a Delaware Corporation;
MIDLAND FUNDING NCC-2 CORP.,
a Delaware Corporation;
MIDLAND CREDIT MANAGEMENT,
INC., a Kansas Corporation;
and MRC RECEIVABLES CORP.,
INC., a Delaware Corporation,[1]

    Defendants-Respondents.

_____

Argued November 18, 2008 - Decided  December 18, 2008

Before Judges Graves and Grall.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No. L-1798-07.

David M. Hoffman argued the cause for
appellants (Law Office of David M. Hoffman,
attorneys; Mr. Hoffman, on the brief).

_____

[1] Because defendants refer to themselves collectively as "MRC" in
their brief, we will do the same throughout this opinion.

> Walter F. Kawalec, III, argued the cause for respondents (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Kawalec and Andrew M. Schwartz, on the brief).

PER CURIAM

Plaintiffs David J. Hoffman (Hoffman) and Clayton Turner (Turner) were initially defendants in two separate Special Civil Part actions filed by MRC to collect unpaid credit card debts. After MRC obtained a default judgment against Turner for approximately $1500, he paid the judgment.  MRC's complaint against Hoffman was dismissed because he was the victim of identify theft, and he did not incur the debt.

After MRC's claims against Hoffman and Turner were disposed of, a counterclaim filed by Hoffman was transferred to the Law Division, and it was amended to include Hoffman.  In an amended pleading (the complaint), plaintiffs alleged fraud and fraud on the court (count one); violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:3-1 to -20 (CFA) (count two); and violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to -6.2, (RICO) (count three).  Plaintiffs' complaint also included class action allegations.  Plaintiffs appeal from an order dated January 16, 2008, dismissing their complaint with prejudice for failure to state a claim upon which relief can be granted.  We affirm.

A-3008-07T1
Exh. A - 02

Our review of the order granting MRC's motion to dismiss plaintiffs' complaint is governed by the same standard applicable in the trial court.  Donato v. Moldow, 374 N.J. Super. 475, 483 (App. Div. 2005).  We therefore accept as true the facts alleged in the complaint to determine whether, when liberally viewed, they set forth a claim against MRC upon which relief can be granted.  Printing Mart-Morristown v. Sharp Electronics, Corp., 116 N.J. 739, 746 (1989).

On appeal, plaintiffs present the following arguments:

POINT I

THE COMPLAINT ADEQUATELY ALLEGES FRAUD AND FRAUD ON THE COURT.

POINT II

PLAINTIFFS' N.J. RICO AND CONSUMER FRAUD ACT ALLEGATIONS ARE WELL PLEADED, CERTAINLY FOR PURPOSES OF A MOTION UNDER RULE 4:6-2(E).

    A. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)

    B. THE NEW JERSEY CONSUMER FRAUD ACT

POINT III

HOFFMAN AND TURNER HAVE STANDING TO SUE.

POINT IV

PLAINTIFF SHOULD BE AFFORDED DISCOVERY BEFORE CONSIDERATION OF DEFENDANTS' MOTION TO DISMISS.

A-3008-07T1
Exh. A - 03

After reviewing the record and the applicable law in light of the trial court's findings and conclusions, we are satisfied that plaintiffs' contentions are without sufficient merit to warrant extended discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We affirm the order of dismissal substantially for the reasons stated by Judge Anzaldi in his written decision on January 9, 2008, with only the following comments regarding the alleged violations of the CFA.

In count two of their complaint, plaintiffs alleged they were "consumers entitled to relief" under the CFA, and MRC's "fraudulent conduct violated and continues to violate the CFA." "The CFA is intended to protect consumers 'by eliminating sharp practices and dealings in the marketing of merchandise and real estate.'"  Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255, 263 (1997) (quoting Channel Cos. v. Britton, 167 N.J. Super. 417, 418 (App. Div. 1979)).  The CFA proscribes the following conduct:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived

4

> or damaged thereby, is declared to be an unlawful practice . . . .
>
> [N.J.S.A. 56:8-2.]

"Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c). It defines "sale" as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1(e).

On appeal, plaintiffs contend that the CFA applies to the offer of credit to the public and, without citation to any relevant authority, it claims that MRC "stand[s] in the shoes" of the commercial lenders from whom it purchased delinquent debt. But plaintiffs do not allege a violation of the CFA by the original lenders. MRC argues that "MRC's collection activities cannot be construed as 'advertising' connected to acquiring 'merchandise' or the 'sale' or 'making' of a loan" even under the "broadest reading of the CFA."

Plaintiffs rely upon Lemelledo, supra, 150 N.J. 255, and Perez v. Rent-A-Center, Inc., 186 N.J. 188, modified, 188 N.J. 215 (2006), cert. denied, _____ U.S. _____, 127 S. Ct. 984, 166 L. Ed. 2d 710 (2007). These cases, however, are readily distinguishable. Lemelledo involved the extension of credit and insurance from a commercial lender to an individual. Lemelledo,

A-3008-07T1
Exh. A - 05

supra, 150 N.J. at 260-61.    "The specific issue raised in" Lemelledo concerned "whether the [CFA] applies to lenders who engage in 'loan packing.'"  Id. at 260.  "Loan packing refers to a practice on the part of commercial lenders that involves increasing the principal amount of a loan by combining the loan with loan-related services, such as credit insurance, that the borrower does not want."  Id. at 259-60.   The Court held that the CFA applied, concluding that "[b]y its terms, the CFA is applicable to the provision of credit" and that "the statute's language is ample enough to encompass the sale of insurance policies as goods and services that are marketed to consumers." Id. at 265.

Perez concerned "rent-to-own" contracts.  Perez, supra, 186 N.J. at 193-97.   Rent-to-own contracts are agreements between "dealers that rent furniture, appliances, home electronics, and jewelry [and] . . . [c]onsumers [who] enter into a self-renewing weekly or monthly lease for the rented merchandise, and are under no obligation to continue payments beyond the current weekly or monthly period."  Id. at 193.   In Perez, the defendant-lender conceded that the CFA "cover[ed] the rent-to-own transactions."  Id. at 219.  Nevertheless, there is no language in either Lemelledo or Perez suggesting that the CFA is

6

intended to cover the sale of delinquent debt from a commercial lender to a third-party debt collector, such as MRC.[2]

"The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to . . . root out consumer fraud." Lemelledo, supra, 150 N.J. 264.  However, the CFA "does not cover every sale in the marketplace.  Rather, CFA applicability hinges on the nature of a transaction, requiring a case by case analysis." Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 13 (App. Div. 2006).  The CFA's "applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J. Super. 587, 590 (Law Div. 2000).  See Kavky v. Herbalife Int'l of Am., 359 N.J. Super. 497, 506 (App. Div. 2003) (noting that the CFA "is concerned, not so much with the specific nature of the property, but rather with whether the property is generally made available to the public"); Marascio v. Campanella, 298 N.J. Super. 491, 501 (App. Div. 1997) (noting that the CFA's "focus is to compel those who sell consumer goods

---

[2]  According to plaintiffs' complaint, as of January 2006, MRC "was the owner of 14.2 [m]illion delinquent consumer credit card charge accounts with a face value of approximately 22.1 [b]illion [d]ollars, for which it paid about 582.9 [m]illion [d]ollars, or about 2.6% of face value."

A-3008-07T1
Exh. A - 07

and services to the public to develop practices that will minimize consumer fraud").

In this case, after purchasing existing debts at a discount from commercial lenders, MRC initiated collection activities. Consequently, Judge Anzaldi correctly concluded that plaintiffs' complaint failed to state a cause of action under the CFA because:   (1) MRC did not induce any person to incur an obligation as defined by the CFA; and (2) MRC did not offer to sell "anything to any consumers."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3008-07T1
Exh. A - 08