IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH, | CV-07-166-BLG-CSO |
| Plaintiff, | **ORDER** |
| vs. | |
| JOHNSON, RODENBERG & LAUINGER, | |
| Defendant. | |

Plaintiff Timothy McCollough ("McCollough") alleges that Defendant

Johnson, Rodenberg & Lauinger ("JRL") violated federal and Montana law in its

debt collection activities against him.  Pending before the Court are:

(1)  JRL's Motion for Partial Summary Judgment (*Court's Doc. No. 65*),

(2)  McCollough's Motion for Partial Summary Judgment on JRL's bona
   fide error defense (*Court's Doc. No. 69*); and

(3) Portions of McCollough's earlier Motion for Partial Summary Judgment
    (*Court's Doc. No. 36*) on which the Court previously reserved decision.
    *See Order (Court's Doc. No. 75) at 10-14.*

## I.   BACKGROUND

The parties and Court are familiar with the factual background, which is set

forth in the record and summarized in the Court's Order of November 21, 2008.

1

*Court's Doc. No. 75.*   In that Order, the Court found the following facts to be

established under Fed. R. Civ. P. 56(d)(1):

> (1)   On April 17, 2007, JRL filed a time-barred lawsuit
> against McCollough.
> (2)   By August 6, 2007, JRL had information from its
> client demonstrating that the lawsuit was time-
> barred.
> (3)   JRL prosecuted the time-barred lawsuit against
> McCollough until December 7, 2007.

*Court's Doc. No. 75 at 14.*  Additional facts are repeated below as necessary to

explain the Court's opinion.

## II.   PARTIES' ARGUMENTS

### A.   JRL's Motion

JRL moves for partial summary judgment on four issues: (1) that service of

discovery during a lawsuit does not violate the FDCPA; (2) that there is no

business-consumer relationship between JRL and McCollough for purposes of

Montana's Unfair Trade Practices and Consumer Protection Act ("UTPA/CPA");

(3) that McCollough's malicious prosecution claim fails; and (4), that no abuse of

process occurred.  *Court's Doc. No. 65.*

JRL argues, first, that serving requests for admission does not violate the

FDCPA because it does not involve a false or misleading representation.  *Br. in*

*Support of MSJ (Court's Doc. No. 66) at 6-7.*  McCollough was free to deny any

inaccurate requests for admission.  *Id. at 7.*  The discovery's purpose was simply to obtain information.  *Id. at 8.*

Second, JRL argues it did not violate the UTPA/CPA because McCollough never purchased goods or services from JRL, and thus is not a consumer as defined by that act.  *Id. at 8-10.*

Third, JRL argues that McCollough cannot establish two elements of a malicious prosecution claim.  McCollough cannot show lack of probable cause because JRL had a reasonable belief, when it sued McCollough, in the truth of its information indicating McCollough owed a debt within the statute of limitations.  *Id. at 10-14.*  McCollough also cannot show that JRL was actuated by malice, because JRL's only intent was to collect a credit card debt for its client.  *Id. at 14-15.*

Finally, JRL argues that McCollough cannot establish an abuse of process claim because he cannot show that JRL had an ulterior purpose or committed a willful act in the use of process not proper in the regular conduct of the proceeding.  *Id. at 15-19.*

McCollough responds, first, that the breadth of the FDCPA's general prohibition on deceptive or unfair collection practices proscribes JRL's use of false requests for admission in this specific context.  *Response to Def's MSJ*

*(Court's Doc. No. 76) at 3-8.*

Second, McCollough argues that under the UTPA/CPA, the consumer need not purchase goods or services from the defendant, and that two courts of this district have recently rejected the same argument JRL makes with respect to this act. *Id. at 8-10.*

Third, McCollough responds that his malicious prosecution claim is well-stated. JRL did not have probable cause to initiate its lawsuit because CACV's information was unverified and its accuracy was specifically disclaimed. *Id. at 11-15.* JRL also continued to prosecute the lawsuit after CACV retracted its claim that McCollough made a payment on the debt in 2004. *Id. at 15.* JRL's conduct was malicious because JRL showed deliberate indifference to the high probability of injury to McCollough. *Id. at 15-16.*

Finally, McCollough argues that JRL's lawsuit against him, and JRL's acts in furtherance of that lawsuit, provide sufficient fact issues to avoid summary judgment on his abuse of process claim. *Id. at 17-20.*

### B.      McCollough's Motion

McCollough argues that, under the Ninth Circuit's recent decision on the bona fide error defense, Reichert v. National Credit Systems, Inc., 571 F.3d 1002, 1007 (9th Cir. 2008), JRL must show both: (1) that it reasonably relied on its client;

4

and (2) that it maintained reasonable preventive measures to avoid FDCPA

violations. *Br. in Support of Pl's MSJ (Court's Doc. No. 70) at 5-6.* JRL can

show neither.

McCollough first asserts that JRL did not reasonably rely on CACV's

information. CACV disclaimed any warranty as to accuracy. *Id. at 6-7.* Second,

JRL's only procedures to avoid FDCPA violations are checking that the

unsubstantiated information on its computers match up with the information

asserted on the complaint to be filed. *Id. at 8-9.*

JRL responds that <u>Reichert</u> requires a showing of procedures used by the

debt collector which are designed to catch the particular error at issue. *JRL's*

*Response Opposing Pl's MSJ (Court's Doc. No. 87) at 10.* Thus, the focus is on

JRL's procedures, not whether JRL could rely on information from CACV. *Id.*

JRL argues that the FDCPA does not require an independent investigation of the

debt referred for collection. *Id. at 10-13.*

JRL argues it is not liable for filing a time-barred lawsuit because its pre-

litigation procedures include several steps designed to prevent filing time-barred

lawsuits. *Id. at 13-15.* Additionally, JRL is not liable for maintaining a time-

barred lawsuit. JRL had procedures in place to catch such errors, and there is at

least a question of fact as to whether JRL should have known its lawsuit against

McCollough was time-barred in August 2007.  *Id. at 15-18.*

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.   Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must

go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."Celotex Corp., 477 U.S. at 323.

## IV.   DISCUSSION

The Court first addresses below the portions of JRL's motion concerning state law, and then addresses the remainder of JRL's motion and McCollough's motion, which concern the FDCPA.

### A.   JRL's Motion on McCollough's State Law Claims

#### 1.   Montana UTPA/CPA

The Montana UTPA/CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mont. Code Ann. § 30-14-103.  The UTPA/CPA defines "consumer" as "a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes."  § 30-14-102(1).  It defines "trade" and "commerce" as:

> the advertising, offering for sale, sale, or distribution of any services, any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value, wherever located, and includes any trade or commerce directly or indirectly affecting the people of

this state.

§ 30-14-102(8).

The Montana Supreme Court has stated that statutes like the UTPA/CPA have been interpreted as "broad in scope and flexible in application so as to respond to human inventiveness." Baird v. Norwest Bank (1993), 255 Mont. 317, 326, 843 P.2d 327, 333 (*citing* In re Smith, 866 F.2d 576 (3rd Cir. 1989)). Accordingly, Montana's statute "should be liberally construed with a view to effect its object and to promote justice." Id. at 327, 843 P.2d at 333. In Baird, the court relied on these principles to find that the UTPA/CPA applied to the lending and collecting of consumer loans by banks. Id. at 328, 843 P.2d at 334.

Two recent decisions of courts in this District have held that the UTPA/CPA applies to debt collection. In Kunda v. CBB Collections, Inc., the Kundas sued CBB over actions it took, as the assignee of Billings Clinic, to collect a debt for medical services provided to the Kundas. *CV-08-44-BLG-RFC, Order of August 15, 2008 (Court's Doc. No. 6) at 2,5.* Chief Judge Cebull denied CBB's motion to dismiss, finding that the UTPA/CPA could apply to debt collection. *Id. (citing* Baird*).*

This case differs from Kunda because JRL is not an assignee of McCollough's alleged debt. In Cole v. Portfolio Recovery Associates, LLC,

8

however, the court denied JRL's motion to dismiss a UTPA/CPA claim without mention of JRL being an assignee of the debt. *CV-08-36-GF-RKS, Order of September 12, 2008 (Court's Doc. No. 37) at 4-5.* Judge Strong found Cole's allegations that JRL was "in the business of debt collection as part of its legal practice and includes litigation as part of its debt collection business," at the pleading stage placed JRL "well within" the UTPA/CPA. *Id. at 4-5.*

The court rulings from this District are persuasive. The Court recognizes that both Kunda and Cole were decided on motions to dismiss, where the plaintiff has a lower burden than in opposing this summary judgment motion. The burden of proof, however, does not affect the threshold legal question of whether the UTPA/CPA applies to debt collection. Likewise, though the debt collector was an assignee of the debt in Kunda, the critical fact was that the debt collector engaged in the collection of debt, rather than any contractual relationship. Finally, contrary to JRL's contention, the liberal construction given the UTPA/CPA does not require McCollough to have a consumer relationship with JRL. See also Gibbons v. J.Nuckolls, Inc., 216 S.W.3d 667, 670 n. 13 (Mo. 2007) (en banc) ("Privity of contract is not required under similar [consumer protection] statutes of numerous other states"); National Consumer Law Center, Unfair and Deceptive Acts and Practices Manual § 2.2.3.2 (6th ed. 2004) ("One is a consumer not by one's relation

9

to the defendants, but by the terms of the original transaction.").

Under the Montana law, JRL is not entitled to a ruling that its debt

collection activities were outside the scope of Montana's UTPA/CPA . JRL's

motion will be denied on this issue.

### 2. Malicious Prosecution

A plaintiff in a civil action for malicious prosecution must prove six

elements:

(1)    a judicial proceeding was commenced and
prosecuted against the plaintiff;

(2)    the defendant was responsible for instigating,
prosecuting or continuing such proceeding;

(3)    there was a lack of probable cause for the
defendant's acts;

(4)    the defendant was actuated by malice;

(5)    the judicial proceeding terminated favorably for
the plaintiff; and

(6)    the plaintiff suffered damage.

Hughes v. Lynch, 2007 MT 177, ¶12, 338 Mont. 214, ¶12, 164 P.3d 913, ¶12.

JRL argues that McCollough has not shown sufficient evidence on elements

(3) and (4) to defeat summary judgment.  The Court concludes that he has.

### a. Probable Cause

In a civil suit, a party has probable cause to initiate, continue, or procure,

civil proceedings against another "if [the party] reasonably believes in the

existence of the facts upon which the claim is based, and ... correctly or reasonably believes that under those facts the claim may be valid under the applicable law[.]" Id., ¶16 (quoting Restatement (Second) of Torts § 675 (1977)).

Probable cause is an objective standard, determined "on the basis of the facts known to the party initiating the legal action." Plouffe v. Mont. Dept. of Health & Human Services, 2002 MT 64, ¶18, 309 Mont. 184, ¶18, 45 P.3d 10, ¶18. Thus, the existence of probable cause "must be submitted to the jury for resolution when direct and circumstantial evidence related to the defendant's knowledge is susceptible to different conclusions by reasonable persons." Id. (citing Reece v. Pierce Flooring (1981), 194 Mont. 91, 96, 634 P.2d 640, 643). "Only when no evidentiary conflict exists and uncontroverted evidence admits only one conclusion does the existence of probable cause become a question of law." Id.

In Plouffe, the state's complaint in the underlying action alleged that Plouffe violated water quality and public swimming pool statutes by failing to submit water samples for testing, illegal water discharge, the pool's failure to meet bacteriological standards on seven dates, and other violations. Plouffe, ¶ 21. The state eventually dismissed the complaint. Id., ¶ 9. The Montana Supreme Court reversed the district court's determination that probable cause for the state's

11

prosecution existed as a matter of law.  Id., ¶ 26.  The court reversed even though Plouffe admitted that he did not submit all water samples within required time frames and he refused to obtain wastewater discharge permits.  Id., ¶ 25.

Here, there was a paucity of information supporting JRL's lawsuit against McCollough.  CACV expressly made "no warranty as to the accuracy or validity of the data provided ..." and required JRL to determine its "legal and ethical ability to collect" the account.  *Court's Doc. No. 39-5.*  These facts could lead a reasonable person to conclude that JRL lacked probable cause to initiate legal action against McCollough.  Accordingly, JRL has failed to show an absence of evidence supporting McCollough's case in this respect.  Whether probable cause existed is a fact question for the jury.

### b.    Defendant Actuated by Malice

Under Montana malicious prosecution law, malice includes: (a) "a wish to vex, annoy, or injure another person or an intent to do a wrongful act," or (b) when a "defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and ... deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or ... deliberately proceeds to act with indifference to the high probability of injury to the plaintiff."  Plouffe, ¶¶ 28-29.

In Plouffe, based on the standards above, the court concluded that "the plaintiff is not required to prove the subjective intent of the defendant to establish a *prima facie* case for malicious prosecution." Id., ¶ 30. Additionally, there is a rebuttable presumption of malice if the jury finds the absence of probable cause. Id., ¶ 31. Thus, Plouffe was entitled to trial on the merits of the malice allegations. Id.

 McCollough has cited sufficient evidence to defeat summary judgment on malice. Under the Plouffe standard, there is sufficient evidence to establish a fact question as to whether JRL knew of facts or intentionally disregarded facts creating a high possibility of injury to McCollough and nonetheless deliberately acted with conscious or intentional disregard of, or indifference to, the high probability of injury to McCollough. Whether JRL was actuated by malice is a fact question for the jury.

### 3.   Abuse of Process

Under Montana law, the elements of an abuse of process claim are "[1] an ulterior purpose and [2] a willful act in the use of process not proper in the regular conduct of the proceeding." Seipel v. Olympic Coast Investments, 2008 MT 237, ¶ 20, 344 Mont. 415, ¶ 20, 188 P.3d 1027, ¶ 20. In Seipel, the Montana Supreme Court concluded that a defendant was not entitled to summary judgment where

there was evidence that the defendant had no valid claim in the underlying lawsuit, knew it, and filed the action anyway.  Id., ¶ 25.  The court also rejected the defendant's argument that there must be evidence the defendant used process to coerce the plaintiff to do a collateral thing the plaintiff could not legally and regularly be compelled to do.  Id., ¶ 24.

Here, JRL's primary argument is that there is no evidence it filed suit to compel McCollough to do some collateral thing which could not be obtained through ordinary legal proceedings.  Though Montana law has required this showing, see Hughes, ¶ 21, the Montana Supreme Court most recently squarely rejected this argument in a case where the underlying claim was invalid, and apparently limited the "collateral" coercion requirement to cases where the underlying lawsuit was valid.  Seipel, ¶¶ 24-25; ¶ 33 (Warner, J. concurring and dissenting).

Here, it is uncontroverted that JRL filed and prosecuted a time-barred lawsuit, including service of discovery requests upon the *pro se* defendant after JRL's own file clearly indicated that the suit was time-barred.  There is evidence that JRL knew its claim was invalid yet continued to prosecute the case.  *Court's Doc. No. 75 at 3*.  JRL has not shown an absence of evidence supporting McCollough's abuse of process claim.  JRL's motion will be denied in this regard.

14

**B.**     **The FDCPA Motions**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Id. at § 1692e.  Additionally, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Id. at § 1692f.

Under the FDCPA, a debt collector's behavior is measured according to an objective "least sophisticated debtor" standard.  Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1171 (9th Cir. 2006).  This standard "ensures that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous."  Id. (quoting Colomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

**1.**     **JRL's Motion On Serving Requests for Admission**

The Court reserved ruling on McCollough's partial summary judgment motion, that JRL's serving requests for admission containing false information

15

violated the FDCPA, until JRL's related motion was fully briefed. *Court's Doc. No. 75 at 15.* As JRL argues, this Court cannot say that serving requests for admission in the course of a debt-collection lawsuit is a *per se* FDCPA violation. The Court concludes, however, that JRL's serving of the requests for admission under the facts of this case violated the FDCPA as a matter of law.

The FDCPA broadly limits false, deceptive, misleading, unfair, or unconscionable means of debt collection. 15 U.S.C. §§ 1692e, f. The FDCPA is broad in scope, and proscribes improper debt collection conduct even if such conduct is not specifically enumerated. See Clark, 460 F.3d at 1170 n. 4 (9th Cir. 2006) (list of prohibited practices is non-exhaustive); Senate Report No. 95-382 (bill prohibits in general terms unfair or deceptive collection practices to allow courts to apply the statute to improper conduct not specifically addressed).

In Heintz v. Jenkins, 514 U.S. 291, 299 (1995), the Supreme Court held that the FDCPA applies to lawyers regularly engaging in debt collection activities, "even when that activity consists of litigation." The Court rejected Heintz's argument that litigation activities should be exempted. The Court reasoned that, "[i]n ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts." Id. at 294. The Court also rejected Heintz's position that

16

applying the FDCPA to litigation activities would cause anomalous results, such as any lawyer who lost a claim against a debtor being automatically liable under the FDCPA.  Id. at 295.  The Court noted that the bona fide error defense could apply, and also that losing a lawsuit would not, "by itself, make the bringing of it an 'action that cannot legally be taken.'"  Id. at 296 (quoting 15 U.S.C. § 1692e(5)).

Heintz is instructive here.  JRL's argument that requests for admission are not a factual representation focuses only on the word "representation" in § 1692e and ignores the word "means".  Thus, even if JRL is correct that a request for admission is not a "representation", a "representation" is only one prohibited debt collection practice.[1]  The purpose of the FDCPA is "to eliminate abusive debt collection practices[.]"  § 1692(e).  The FDCPA proscribes "unfair or unconscionable means to collect or attempt to collect any debt."  § 1692(f).  There can be little doubt that JRL's use of requests for admission, in this factual context,

---

[1]JRL's argument implies that, under Mont.R.Civ.P. 36, an attorney may serve a written request "for the admission ... of the truth" of matters the attorney knows to be false.  But Rule 36 must be read in conjunction with Rule 11 which provides that "the signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; [and] that to the best of the signer's knowledge, information, belief formed after reasonable inquiry it is well grounded in fact...."  In other words, an attorney may not file a request for admission unless that attorney, after reasonable inquiry, believes that it is well grounded in fact.

falls within the plain meaning of abusive, unfair, or unconscionable.

Approximately three months after JRL's own file reflected that McCollough had

not made a payment on the account in 2004 (and thus that the claim was time-

barred), JRL asked McCollough to admit the following: "Defendant Tim M.

Mccollough (*sic*) made a payment on said Chase Manhattan Bank credit card

account on or about June 30, 2004 in the amount of $75.00." *Req. for Admission*

*21, Court's Doc. No. 67-8.*  And after McCollough filed his *pro se* answer in June

2007, explaining his defense that the statute of limitations had expired, the

October 2007 request for admission 14 asked him to admit: "There are no facts

upon which Defendant Tim M. Mccollough (*sic*) relies as a basis for any defense

in this action." *Id.*  Charles Dendy admits that he reviewed the answer when it

came into JRL's office. *See Statement of Genuine Issues # 2, Court's Doc. No. 88,*

*at Exhibit C (C. Dendy Depo. p. 34, ll 14-16).*  The inescapable conclusion is that

Mr. Dendy asked a *pro se* defendant to admit false information.  He either did so

knowingly, or neglected to review his minimal file before signing the requests.  He

served the requests with no ostensible reason to believe that the defendant would

understand their import.  The requests for admission appear to be designed to

conclusively establish each element of JRL's case against McCollough and to use

the power of the judicial process against a *pro se* defendant to collect a time-

barred debt.  This conduct is abusive, unfair and unconscionable.  The Court's

conclusion in this regard is strengthened when one considers that JRL's behavior

is measured by the objective "least sophisticated debtor" standard.[2]

JRL's contention, that legitimate discovery will be punished if requests for

admission are held to violate the FDCPA, is unpersuasive.  The Court's conclusion

does not prevent discovery in a valid lawsuit, or even well-grounded discovery in

an invalid one.  Also, as the Supreme Court noted in <u>Heintz</u>, a debt collector can

---

[2]JRL, replying to McCollough's arguments, correctly notes that the Preamble to the Montana Rules of Professional Conduct states that those rules are not designed to be a basis for civil liability.  *Court's Doc. No. 89 at 3.*  The preamble also states:

A lawyer shall always pursue the truth. [¶ 1]
*     *     *
A lawyer, as a member of the legal profession, is ... an officer of the legal system ... having special responsibility for the quality of justice. [¶ 2]
*     *     *
A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.  A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. [¶ 6]
*     *     *
A lawyer should be mindful of deficiencies in the administration of justice and the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance. [¶ 7]
*     *     *
Trust in the integrity of the system and those who operate it is a basic necessity of the rule of law; accordingly truthfulness must be the hallmark of the legal profession, and the stock-in-trade of all lawyers. [¶ 14]

rely on the bona fide error defense, if applicable.  JRL neither asserts that its

lawsuit against McCollough was valid, nor that the bona fide error defense applies

to the requests for admission it served.

JRL's contention that the requests for admission were a legitimate attempt at

discovery is unpersuasive.  Requests for admission numbers 1 and 2 refer to

"attached" documents (*Court's Doc. No. 39-7*), but under oath McCollough states

that no documents were attached.  *Court's Doc. No. 67-10.*  Indeed, JRL could not

have attached documents concerning the debt because it had no such documents in

its possession.[3]  Obviously, McCollough could not admit or deny these incomplete

requests, without seeing the documents referenced.

There are no material facts in dispute, and no reasonable fact-finder could

find that JRL's requests for admission did not violate the FDCPA.  Based on the

undisputed facts above, and the plain language of the FDCPA, the Court

concludes as a matter of law that JRL's requests for admission served on

McCollough were an abusive, unfair, and unconscionable means to attempt to

---

[3]JRL had no cardmember agreement for McCollough in its file and it had never been represented to JRL that the agreement existed in anyone else's file. *Dendy Depo. at p. 32, ll. 18-24.*  When JRL sought documents confirming the McCollough debt, by issuing a subpoena to the Chase Bank after McCollough retained a lawyer, JRL learned that Chase Bank had no credit card account for McCollough.  *Id. at 45, ll. 18-25.*  JRL was unable to obtain any documents regarding the alleged debt.  *Id.*

collect a time-barred debt, and thus an FDCPA violation.  McCollough's motion

will be granted in this respect, and JRL's motion denied.

### 2.    McCollough's Motion On the Bona Fide Error Defense

The FDCPA imposes strict liability on debt collectors:  "A plaintiff need not

prove an error was intentional."  <u>Reichert v. National Credit Systems, Inc.</u>, 531

F.3d 1002, 1004 (9th Cir. 2008).  The FDCPA's bona fide error defense provides a

narrow exception to this strict liability:

> A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector shows
> by a preponderance of the evidence that the violation
> was not intentional and resulted from bona fide error
> notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).   "The bona fide error defense is an affirmative defense for

which the debt collector has the burden of proof."  <u>Reichert v. National Credit</u>

<u>Systems, Inc.</u>, 531 F.3d 1002, 1006 (9th Cir. 2008).

### a.    Filing a Time-barred Lawsuit

As the Court recognized in its earlier order, a debt collector violates the

FDCPA by using the courts to attempt to collect a time-barred debt.  *See* <u>Martinez</u>

<u>v. Albuquerque Collection Services</u>, 867 F.Supp. 1495, 1506 (D. N.M. 1994)("A

collection agency's attempts to collect on time-barred accounts violate the

FDCPA."); <u>Beattie v. D.M. Collections, Inc.</u>, 754 F.Supp. 383, 393 (D.Del. 1991)("[T]he threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate."). *See also* <u>Kimber v. Federal Financial Corp.</u>, 668 F.Supp. 1480, 1487 (M.D. Ala. 1987).  In <u>Thompson v. D.A.N. Joint Venture III, L.P.</u>, 2007 WL 1625926, *2 (M.D. Ala.), the court held that the defendant's failure to move to set aside the underlying state court default judgment after a summary judgment ruling that the underlying state court action violated the FDCPA because it was time-barred constituted an additional FDCPA violation.

Here, the Court determined that JRL, on April 17, 2007, filed a time-barred lawsuit against McCollough, and that by August 6, 2007, JRL had information from CACV demonstrating that the lawsuit was time-barred, but nonetheless prosecuted the time-barred lawsuit until December 7, 2007.  JRL is strictly liable under the FDCPA for filing a time-barred lawsuit, and for maintaining a time-barred lawsuit, unless it can prevail on its bona fide error defense.  The issue is whether there are genuine issues of material fact and whether McCollough is entitled to judgment as a matter of law on the bona fide error defense.

The bona fide error defense requires the defendant to prove that it maintains

"reasonable preventative procedures." Reichert, 531 F.3d at 1006. The bona fide

error defense does not protect a debt collector whose reliance on its creditor's

representations is unreasonable. Id. In Reichert, the Ninth Circuit found that the

debt collector failed to establish the bona fide error defense where the debt

collector, after erroneously adding an attorney's fee to the debt based on the

creditor's information, argued that the creditor had never previously given

incorrect information. Id. at 1006-07. The court stated:

> [The debt collector] did not give reason to justify its
> reliance on the creditor for the erroneous premise that the
> attorney's fee could properly be added. As a result, [the
> debt collector] failed to carry its burden of establishing
> that its reliance upon the creditor was reasonable.

Id. at 1007.

In Reichert the Ninth Circuit cited approvingly the procedures maintained

by a debt collector as outlined in Jenkins v. Heintz, 124 F.3d 824 (7th Cir. 1997).

These "elaborate procedures" included:

> a requirement that the creditor verify under oath that
> each charge was accurate, as well as 'the publication of
> an in-house fair debt compliance manual, updated
> regularly and supplied to each firm employee; training
> seminars for firm employees collecting consumer debts;
> and an eight-step, highly detailed pre-litigation review
> process to ensure accuracy and to review the work of
> firm employees to avoid violating the Act.'

Reichert, 531 F.3d at 1006 (citing Jenkins, 124 F.3d at 834).

McCollough must establish the absence of a genuine issue of material fact by pointing out "an absence of evidence" supporting JRL's case.  Celotex Corp., 477 U.S. at 323.  McCollough argues that JRL has failed to show it reasonably relied on CACV's information.  CACV's contract with JRL states that CACV makes "no warranty as to the accuracy and validity of the data," provided to JRL, and that JRL has the responsibility "to determine [JRL's] legal and ethical ability to collect these accounts."  *Court's Doc. No. 39, Ex. 4.*  JRL's file reflects that McCollough's account was part of a "collect America Batch that [JRL] was having problems with."  *Court's Doc. No. 39, Ex. 5 at 2.*

McCollough also argues that JRL has not shown reasonable procedures to avoid the error in question.  JRL received no documentation from CACV prior to filing suit.  *Court's Doc. No. 39, ¶ 8; Ex. 5.*  McCollough asserts JRL's procedures are merely "spell-checking" of the undocumented information from CACV.

The Court concludes that McCollough has met his burden to show an absence of facts supporting JRL's bona fide error defense.  The burden thus shifts to JRL to set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).

JRL sets forth the following facts.  JRL receives from CACV electronic information including charge-off amount, last payment date, credit card number,

24

name of original creditor, the name, address and phone number of the debtor,

interest date, and sometimes the amount of last payment. *JRL Statement of*

*Genuine Issues, Court's Doc. No. 51, ¶ 7.* JRL does not require that CACV

provide any particular documents before JRL files suit. *Id., ¶ 8.* JRL has the

following procedures to avoid filing a time-barred lawsuit. The staff person

setting up accounts calculates the statute of limitations based on last payment date.

*Id., ¶ 9.* If there is a potential statute of limitations problem, the staff person will

diary the file for the account manager's review. *Id.* The file then goes to JRL

attorney Lisa Lauinger, who reviews the information from CACV, checks that

information against the information in the file, and makes sure the statute of

limitations is accurately calculated. *Id.* Before signing a complaint, JRL attorney

Charles Dendy checks that a demand letter has been sent, for any FDCPA dispute,

to make sure the case caption information is correct, that the creditor name is

correct, that the complaint is within the statute of limitations, and that account

number and balance information in the complaint are correct and match the

information from CACV. *Id., ¶¶ 10-11.*

JRL does not maintain documents on protocol to be followed to avoid

FDCPA violations. *Id. ¶ 12.* JRL does not indicate that either its attorneys or its

staff had procedural manuals to follow, or any regularly scheduled training on

proper debt collection practices.  It indicates only that its lawyers "acquire and maintain familiarity with the FDCPA through treatises, case research, continuing legal education seminars, conferences and the practice of law." *Id.*

 JRL has failed to set out specific facts showing a genuine issue for trial. JRL sets forth procedures that consist only of ensuring that the information in JRL's files and pleadings is consistent with the information supplied electronically by CACV.  JRL's reliance on CACV's information is entire.  JRL did not seek documentation of McCollough's debt until McCollough obtained a lawyer, months after JRL filed suit, months after McCollough asserted the statute of limitations in his answer, weeks after it served discovery on McCollough.  <u>See</u> *Order (Court's Doc. No. 75) at 3-4.*   JRL did less than did the debt collector in <u>Reichert</u>.  There, the debt-collector stated the creditor's information had been accurate in the past. Here, JRL makes no such assertion.  CACV expressly disclaimed the accuracy of its information, and JRL knew McCollough's alleged debt was from a problematic batch.  JRL simply had no basis upon which is could reasonably rely on the information provided by CACV.

 Additionally, JRL's procedures are  not reasonably adapted to avoid the specific error in question here.  The contrast with the procedures cited in <u>Jenkins</u> is stark.  JRL took no steps to assure accurate information from its client.  It

reviewed no documentation of the debt or of the payments allegedly made by

McCollough.  JRL had no formal written procedures to avoid FDCPA violations.

The Court thus must conclude that McCollough is entitled to summary judgment

on this issue.

### b.    Maintaining a Time-barred Lawsuit

McCollough also asserts that he is entitled to partial summary judgment

because JRL maintained the lawsuit after receiving facts from its client that proved

the suit was time-barred.  While reserving ruling on this issue, the Court

previously stated:

> A JRL employee was put on actual notice, on August 6,
> 2007, that McCollough had not made a payment on his
> account in 2004 as the client had previously indicated.
> *Pl's SUF, Ex. 1 at 8-9 (Grace Lauinger Depo)*.
> Nonetheless, JRL continued to prosecute its lawsuit
> against McCollough for four months.  JRL does not
> address these facts in its brief.
> 
> Maintaining a time-barred lawsuit has been held to
> violate the FDCPA.  Thompson, 2007 WL 1625926, * 2.
> In Thompson, the Court noted that the bona fide error
> defense is not available where there is actual notice of an
> FDCPA violation and the FDCPA violation continues.
> The uncontroverted evidence presented to the Court
> indicates that Grace Lauinger, a JRL employee, had
> actual notice that the lawsuit was time-barred.  She does
> not remember whether she passed this information along
> to Mr. Dendy, the attorney of record in the case.
> Nonetheless, there is no doubt that JRL had knowledge
> in August 2007 that the action was time-barred.

27

Knowledge of the employee can likely be imputed to the lawyers in the firm. *See Rest. 2nd Agency § 9.*

A debt collector answers for its employees' violations of the FDCPA. The principles of vicarious liability provide an incentive for the debt collection agency to properly instruct and train its employees to avoid actions that might impose liability. <u>Fox v. Citicorp Credit Services, Inc.,</u> 15 F.3d 1507, 1516 (9th Cir. 1994); <u>Pettit v. Retrieval Masters Creditor Bureau, Inc,</u> 211 F.3d 1057, 1059 (7th Cir. 2000). Furthermore, no evidence has been presented to the Court regarding the maintenance of any procedures by JRL to ensure that its employees properly handle such information received from a client. The problem is magnified because JRL's own file reflects that two months earlier, in June 2007, McCollough had filed an answer stating that he had not had any dealings with any credit card company for over 8 ½ years. *Pl's SUF, Court's Doc. No. 39-6 at 4.* No evidence has been offered as to JRL's procedures to investigate this allegation. It is JRL's burden to come forward with evidence that the violation can be excused. *See* <u>Reichert v. National Credit Systems, Inc.,</u> 531 f.3d 1002, 1004 (9th Cir.. 2008).

*Court's Doc. No. 75 at 12-14.*

Based on the facts outlined in the preceding section, McCollough has met his burden to show an absence of evidence to support JRL's case in this regard.

Attempting to meet its burden to show a genuine issue for trial, JRL sets forth that employee Grace Lauinger reviewed McCollough's answer and forwarded a copy to Charles Dendy who reviewed it. *Court's Doc. No. 88, ¶ 4.* On August 6, 2007, CACV informed Grace Lauinger that McCollough had not

made a 2004 payment on his account as previously reported.  Grace Lauinger does

not recall if she relayed this information to Dendy, but she did scan the e-mail into

a paperless file accessible to Dendy.  *Id., ¶ 5.*

The Court concludes that JRL has failed to meet its burden of proving a

bona fide error in maintaining the lawsuit.  JRL's did not implement procedures

reasonably adapted to avoid maintaining a time-barred suit.  Rather, the record

indicates JRL's FDCPA violation resulted from systemic problems.  JRL had

numerous warnings: McCollough's alleged debt was part of a problematic batch;

McCollough asserted the statute of limitations in his answer on June 13, 2007

(*Court's Doc. No. 39, ¶ 9*); on August 6, 2007, CACV e-mailed JRL, informing it

that McCollough had not made a payment on his account in 2004, and this e-mail

was saved in McCollough's file at JRL.  Despite these numerous red flags, JRL

did not seek to verify the debt through documentation until December 7, 2007,

shortly after McCollough retained counsel.  *Court's Doc. No. 39-3 at 6-7.*  This

indicates strongly that JRL lacks procedures reasonably adapted to avoid the error

in question.  The procedures JRL cites which directly pertain to the problem of

maintaining a time-barred lawsuit consist primarily of rechecking unverified

information for consistency; it had no process for verifying that the information

was accurate.  As McCollough's case illustrates, this proofreading could  not

29

address or prevent this FDCPA violation.  McCollough is entitled to summary

judgment on this issue.  See Clomon v. Jackson, 988 F.2d 1314, 1317-18 (2d Cir.

1993) (affirming summary judgment against lawyer who did not review each

debtor's file before misleading collection letters were sent).

## V.    CONCLUSION

Based on the foregoing, IT IS ORDERED that JRL's motion for partial

summary judgment (*Court's Doc. No. 65*) is DENIED in its entirety.

McCollough's motion for summary judgment on the bona fide error defense

(*Court's Doc. No. 69*) is GRANTED.

IT IS FURTHER ORDERED that those portions of McCollough's motion

for partial summary judgment on which ruling was reserved (*Court's Doc. No.

36*), are now hereby GRANTED as to FDCPA liability under Count I of the

Amended Complaint.

DATED this 8th day of January, 2009.


*/s/ Carolyn S. Ostby*
Carolyn S. Ostby
U.S. Magistrate Judge