John E. Bohyer
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana 59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email: mail@bstlawfirm.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

-------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| TIMOTHY McCOLLOUGH, | ) | Cause No. CV-07-166-BLG-RFC-CSO |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **THE HON. CAROLYN S. OSTBY** |
| -vs.- | ) | |
| | ) | |
| JOHNSON, RODENBURG & | ) | **BRIEF IN SUPPORT OF JRL'S** |
| LAUINGER, | ) | **MOTION IN LIMINE TO** |
| | ) | **EXCLUDE TESTIMONY OF** |
| Defendant. | | **PLAINTIFF'S EXPERTS** |

-------------------------------------------------------------------------------------------------

Defendant Johnson, Rodenburg & Lauinger, by and through its

attorneys of record, Bohyer, Simpson & Tranel, P.C., files this brief in support

of Defendant's motion *in limine* to exclude the testimony of Plaintiff's experts.

# INTRODUCTION

As the Court is well aware, Plaintiff Timothy McCollough ("McCollough") is alleging that Johnson, Rodenburg & Launiger's ("JRL") actions in an underlying debt collection lawsuit violated the Fair Debt Collection Practices Act ("FDCPA") as well as the Montana Unfair Trade Practices and Consumer Protection Act.  McCollough is also alleging JRL's conduct constituted malicious prosecution and an abuse of process.

McCollough's expert disclosure dated September 11, 2008, identified two experts, Michael Eakin and James Patten, both of whom are attorneys. Mr. Eakin's report is dated September 2, 2008.  A copy of Mr. Eakin's report is attached hereto as **Exhibit A**.  Mr. Eakin's report provides the following opinions:

- it appears the overwhelming number of lawsuits filed by JRL result in default judgments because most debtors cannot afford an attorney and do not have a sufficient understanding of the legal system to defend themselves

- the number of debt collection lawsuits filed by JRL in Montana has increased over the past few years due to a rise in the debt buyer industry

- debt buyers often lack the documents needed to prove a debt is owed if called upon to prove the debt in a court of law

• JRL is able to convert potentially worthless debt buyer claims into valid and enforceable judgments

• JRL will seek to enforce a judgment against assets that, with reasonable investigation, would be known to be exempt

• JRL's bona fide error defense is not justified by its practices

Eakin was asked to testify as someone who regularly sees people who are defending actions filed by JRL, explain their predicament, identify actions by JRL which violate the FDCPA and describe the burden of defending against a debt collection lawsuit. Depo. D. Michael Eakin 38:8-20 (Oct. 30, 2008), relevant portions of which are attached hereto as **Exhibit B**. Eakin has been licensed to practice law in Montana since 1978. He has been employed as an attorney with the Montana Legal Services Association for his entire career. He is currently the Director of Litigation for the State of Montana, a position he has held for just over one year. *Id.* at 4:24-6:19. Eakin testified that he has been involved in 20-30 lawsuits defending clients being sued by JRL. *Id.* at 11:24-12:10. However, Eakin testified that he has not reviewed McCollough's deposition, he has not met McCollough, he has never spoken to McCollough and he has never corresponded with McCollough. *Id.* at 17:5-14.

Eakin testified the overwhelming number of lawsuits filed by JRL result in default judgments. To reach this conclusion, Eakin looked at the computerized files of the Yellowstone County Justice of the Peace Court, talked with other collection attorneys in Billings and reviewed the deposition of Bruce Spencer, a collection attorney from Helena. *Id.* at 23:7 - 24:6. The Billings attorneys indicated they take defaults over 90% of the time. Mr. Spencer testified in his deposition that he defaults debtors over 95% of the time. Based on this information, Eakin testified that JRL's rate of defaults appears consistent with literature reports regarding debt collection cases. *Id.*

Eakin testified there were some cases in which Legal Services suspected there was a statute of limitations problem with some cases filed by JRL. *Id.* at 39:2 - 40:11. However, he could not identify a single case where it was suspected that JRL actually filed a lawsuit after the statute of limitations expired. *Id.* at 40:12 - 42:1. Eakin gave the opinion that filing a lawsuit which you never intended to prosecute because you didn't have the supporting documentation on hand when the case was filed would be a violation of the FDCPA. *Id.* at 42:16 - 43:4. However, Eakin admitted that he had no personal knowledge of the standard of practice for debt collection attorneys as to what

information they must have before filing suit. *Id.* at 58:2-7. This is because he has never prosecuted a debt collection lawsuit during his entire career. *Id.* at 58:8-15.

Eakin testified it would be a FDCPA violation to execute on resources that were likely to be exempt. *Id.* at 43:5 - 44:13. Eakin testified JRL may have done this in the Tift case. *Id.* at 45:14 - 46:7. Eakin was not aware of the fact that JRL never obtained a judgement against Tift and, therefore, never executed against her assets. *Id.* at 46:8-18. Eakin thinks JRL may have executed against exempt funds in the Wellnitz case but has no idea what JRL knew when executing against Wellnitz. *Id.* at 46:19 - 48:1. His "opinion" on this issue is based solely on the fact that any time you execute on a bank account of a person with modest means, you are likely to get exempt funds. *Id.* at 48:5-14.

Finally, Eakin testified it is his opinion JRL's conduct of sending out requests for admission which do not explain in full the ramifications of not answering is a violation of the FDCPA. *Id.* at 52:2-18. It is also his opinion that sending out a request for admission that the defendant does not have a defense when one is set forth in the answer is a violation of the FDCPA. *Id.*

Patten prepared an expert report dated August 18, 2008, a copy of which is attached hereto as **Exhibit C**.  Patten's report provides the following opinions:

- JRL fails to meet the standard of legal practice in Montana for debt collection activities.  JRL fails to meet the minimum standards imposed by Rule 11 of the Federal and Montana Rules of Civil Procedure in that their pleadings are not formed after a reasonable inquiry and their factual contentions do not have evidentiary support.

- JRL violated the FDCPA by seeking to collect claims barred by the statute of limitations and/or not authorized by law.

- JRL's attempts to collect amounts not owed or which are barred by the statute of limitations do not qualify as a bona fide error under the FDCPA.

Patten's rebuttal report dated October 2, 2008 is attached hereto as **Exhibit D**.  Patten's rebuttal report provides the following opinions:

- JRL did not have adequate safeguards and procedures in place to prevent violations of the Rules of Professional Conduct or to meet the standard of care for a Montana attorney

Patten testified that he was asked to give an opinion as to whether JRL met the Montana standard of practice, whether JRL violated the FDCPA and whether JRL's conduct could be considered a bona fide error under the

FDCPA.  Depo. J. Patten 9:24 - 10:8; 12:1-20 (Oct. 30, 2008), relevant portions of which are attached hereto as **Exhibit E**.  Patten was not asked to provide any opinions regarding the Montana Unfair Trade Practices and Consumer Protection Act.  *Id.* at 66:9-12.

Patten testified as to his legal practice for the past ten years.  He testified that he has not regularly represented clients to pursue a consumer debt collection action, *Id..* at 28:22-25, he has not routinely represented any client since 1990 in an attempt to collect a credit card debt, *Id.* at 29:1-12, he does not, and never has, attempted to collect a credit card debt for a bank or credit union, *Id.*, and he has never represented a debt buyer client, *Id.* at 30:11-13.  Although Patten routinely defends cases filed by debt buyers against consumer debtors, *Id.*  at 31:18-21, this usually occurs when a client gets sued by a debt buyer before a bankruptcy action is filed, *Id.* at 32:8-20.  In his defense of these clients, Patten generally only files a motion to dismiss or an answer before the bankruptcy action is filed.  *Id.* at 42:5-19.  Patten went on to testify that he has never filed a lawsuit against anyone for violation of the FDCPA.  *Id.* at 39:6-11.  Nor has he ever defended a suit alleging a violation of the

FDCPA.  *Id.* at 51:10 - 52:4.  Finally, Patten admitted that FDCPA suits are not a regular part of his practice.  *Id.*

Patten testified that JRL violated Rule 11 of the Federal and Montana Rules of Civil Procedure because it did not have supporting documents, it knew it didn't have supporting documents, knew it was not likely to get supporting documents and CACV did not warrant the information it provided.  *Id.* at 50:21 - 51:9.  When asked to identify the proper standard of practice for attorneys collecting consumer debts with regard to documentation, Patten testified that he was "guessing on this" and it was probably pretty routine to get the information electronically as JRL did with regard to McCollough.  *Id.* at 54:8 - 55:8.

Patten testified that he was not aware of any authority which holds that the failure to advise a defendant of the consequences of not answering requests for admission was a violation of the FDCPA.  *Id.* at 56:8-19.  He testified to his opinion that a creditor cannot collect attorney's fees when collecting on a credit card debt.  *Id.* at 63:22 - 65:7.  He believes JRL violated the FDCPA because CACV does not warrant the information it provides to JRL, because of the format in which information is transmitted from CACV to JRL and

JRL's inability to obtain supporting documentation. *Id.* at 73:13- 74:11.

Patten testified that it was his opinion that JRL violated the Rules of Civil

Procedure and the Rules of Professional Conduct by its actions. *Id.* at 76:19 -

77:17.  Finally, Patten testified that JRL filed and maintained a frivolous

lawsuit against McCollough. *Id.* at 78:19-22.

## ARGUMENT

The Court should exclude the testimony of Eakin and Patten for several

reasons.  First, Eakin is providing testimony on issues which do not require

"expert" testimony.  Second, neither of them are qualified to provide the

"opinions" expressed in their reports or their testimony.  Third, their

"opinions" are impermissible legal conclusions which are not admissible under

Fed. R. Evid. 704.  Finally, their testimony is irrelevant given the Court's order

dated January 8, 2009.

### 1.    Eakin is not providing "expert" opinions

Expert testimony is covered by Fed. R. Evid. 702.  Under this Rule,

expert testimony is permissible if scientific, technical or other specialized

knowledge will assist the trier of fact in understanding the evidence or

determining a fact in issue.  Fed. R. Evid. 702.  In order to give an expert

opinion, the witness must be qualified as an expert by knowledge, skill, experience, training or education. *Id.* In the case at bar, several of the "opinions" expressed by Eakin do not involve scientific, technical or other specialized knowledge. He is simply providing anecdotal testimony on past cases involving JRL as the plaintiff's attorney. Therefore, the testimony is not "expert" in nature and should be excluded.

Eakin's report letter concludes that most collection lawsuits filed by JRL result in default judgments. This is not a proper subject of expert testimony as it does not involve an opinion of any kind. This is a fact which Eakin derived from speaking with other debt collection attorneys and reviewing the deposition of Bruce Spencer. Eakin's report letter also states the number of debt collection suits filed by JRL has increased due to the rise in the debt buyer industry. Again, this is not an expert opinion; it is a fact that does not require any special knowledge. Finally, Eakin gives the opinion that JRL turns worthless claims into enforceable judgments. Again, this is not an expert opinion and does not involve any specialized knowledge. Additionally, these facts have nothing to do with the issues remaining before the Court.

Therefore, the Court should preclude Eakin from providing such testimony at trial.

### 2. Eakin and Patten are not qualified to give the opinions expressed in their reports or deposition testimony

Fed. R. Evid. 702 allows a witness to provide expert opinion testimony if the witness is qualified as an expert by knowledge, skill, experience, training or education. *McDevitt v. Guenthar*, 522 F.Supp.2d 1272, 1291 (D.Hawaii 2007). Determining whether a witness is qualified to testify as an expert is ordinarily within the discretion of the district court. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347 (9th Cir. 1996). The issues addressed by Eakin's and Patten's testimony are whether JRL's conduct in the underlying debt collection action against McCollough violated the FDCPA, Rule 11 and/or the Rules of Professional Conduct[1]. However, neither Eakin nor Patten have the qualifications to be considered experts in debt collection actions and/or violations of the FDCPA, Rule 11 or the Rules of Professional Conduct.

*McDevitt* was a legal malpractice case concerning the preparation of a pre-nuptial agreement. *McDevitt*, 522 F.Supp.2d at 1275. McDevitt hired an

---

[1]Eakin does not actually provide any testimony about the McCollough case. Instead, he was asked to testify about JRL's conduct in other cases. Thus, all of his testimony is irrelevant.

attorney as an expert and asked him to provide an opinion to measure the actions and omissions on the part of Guenther against the standards of ethical practice recognized and observed by members of the practicing Bar in Hawaii. *Id.* at 1291. Guenther sought to exclude McDevitt's expert on numerous grounds, including a lack of qualification. *Id.* at 1290. The court concluded the witness was qualified to provide expert testimony. *Id.* at 1291. He was the managing partner in a family law practice for 25 years, he had served as secretary, vice-chair, and chair of the Rules Committee of the Disciplinary Board of the Hawaii Supreme Court and he served as the vice-chair of the family law section of the Hawaii State Bar Association. *Id.* The court concluded his experience as a member of the Disciplinary Board and his lengthy experience as a family law practitioner constituted a sufficient basis for him to form an opinion as to the customary practices and standard of care among family law attorneys in Hawaii. *Id.* at 1292.

The result reached in *McDevitt* can be contrasted with the result reached in *Kranis v. Scott*, 178 F.Supp.2d 330 (E.D.N.Y. 2002). *Kranis* was a legal malpractice case in which Kranis, a disbarred attorney, filed a malpractice action against the law firm that represented him in the disbarment action

against him.  *Id.* at 333-34.  Kranis identified himself as an expert witness to testify regarding the professional standard of care for attorneys in defending malpractice actions and the defendant's deviation from that standard.  *Id.* at 332.  The defendant law firm filed a motion *in limine* to exclude Kranis from testifying as his own expert witness.  *Id.*

The court found that Kranis had practiced law for approximately 30 years.  However, there was no evidence to show that Kranis ever specialized in the area of malpractice law, that he had given expert testimony in the past, or that he had any other qualifications beyond his general practice of law.  *Id.* at 333.  Under these facts, the court concluded Kranis was not qualified to provide opinion testimony on the applicable standard in defending malpractice cases.  *Id.* at 334.

The court's decision in *McDevitt* shows that a witness must have an education, training and experience in the field of law at issue before he will be considered an expert in that field.  Similarly, the court's decision in *Kranis* shows that a lawyer who does not have the education, training and experience in the field of law at issue will not be considered an expert in that field.  A general law practice does not qualify an attorney as an expert on malpractice

issues even though the attorney had thirty years of experience. Experience as a lawyer, without more, does not qualify an attorney as an expert in areas outside his/her area of common practice.

In the case at bar, neither Eakin nor Patten are qualified to provide expert opinions on the prosecution of debt collection actions, violations of the FDCPA, violations of Rule 11 or violations of the Rules of Professional Conduct. Eakin admitted during his deposition that he has no personal knowledge of the standard of practice for debt collection attorneys as to what documentation they must have on hand before filing suit. Depo. Eakin 58:2-7. This is because he has never prosecuted a debt collection lawsuit during his entire career. *Id.* at 58:8-15. Thus, Eakin has absolutely no qualification to provide an opinion as to whether JRL's conduct violated the FDCPA or whether the bona fide error defense applies. Nor is there any evidence that Eakin has any experience determining when Rule 11 is violated and/or when the Professional Rules of Conduct are violated. Although he has practiced law in Montana for over thirty years, Eakin simply does not have any qualifications to provide the "opinions" expressed in his letter and his

testimony.  Therefore, the Court should exclude Eakin from providing expert testimony at the trial of this matter.

Patten testified as to his legal practice for the past ten years.  He testified that he has not regularly represented clients to pursue a consumer debt collection action, Depo. Patten 28:22-25, he has not routinely represented any client since 1990 in an attempt to collect a credit card debt, *Id.* at 29:1-12, he does not, and never has, attempted to collect a credit card debt for a bank or credit union, *Id.*, and he has never represented a debt buyer client, *Id.* at 30:11-13.  Although Patten routinely defends cases filed by debt buyers against consumer debtors, *Id.* at 31:18-21, this usually occurs when a client gets sued by a debt buyer before a bankruptcy action is filed, *Id.* at 32:8-20.  In his defense of these clients, Patten generally only files a motion to dismiss or an answer before the bankruptcy action is filed.  *Id.* at 42:5-19.  Thus, Patten does not have any experience in prosecuting a debt collection action and his experience in defending such an action is limited to the filing of an answer.  There is no evidence Patten has ever defended a debt collection action from beginning to end.

Patten also testified that he has never filed a lawsuit against anyone for violation of the FDCPA. *Id.* at 39:6-11. Nor has he ever defended a suit alleging a violation of the FDCPA. *Id.* at 51:10 - 52:4. Finally, Patten admitted that pursuing claims for FDCPA violations is not a regular part of his practice. *Id.* His testimony in this regard establishes that he does not have the qualifications to provide opinions as to whether RJL's conduct violated the FDCPA or whether the bona fide error defense applies.

Patten testified that JRL violated Rule 11 of the Federal and Montana Rules of Civil Procedure. *Id.* at 50:21 - 51:9. When asked to identify the proper standard of practice for attorneys collecting consumer debts with regard to supporting documentation, Patten testified that he was "guessing on this" and it was probably pretty routine to get the information electronically as JRL did. *Id.* at 54:8 - 55:8. The fact that Patten has to "guess" about the standard of practice regarding debt collection shows he is not qualified to express such an opinion. Additionally, there is no evidence that Patten has sufficient expertise to qualify him as an expert in Rule 11 violations or violations of the Rules of Professional Conduct. Therefore, the Court should exclude Patten's testimony at the trial of this matter.

3.    **Eakin and Patten are providing impermissible legal conclusions**

Pursuant to Fed. R. Evid. 704, testimony in the form of an opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704.  Under this Rule, an expert can give an opinion on an ultimate issue of fact.  *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 545 F.Supp 1314, 1372 (D.C.N.Y. 1982).  It is permissible for an expert to testify about the ordinary practices of a profession or trade to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry.  *Id.*  However, the mere qualification as an expert witness is not a license to invade the jury's function by telling the jury what result it should reach.  *Id.*  Nor is it appropriate for an expert to supplant the judge's function to instruct the jury on the law.  *Id.*

The boundary between permissible expert testimony and inadmissible testimony containing legal conclusions was discussed at length in *Marx & Co., Inc. v. Diners' Club, Inc*., 550 F.2d 505 (2nd Cir. 1977).  *See* also, *McDevitt*, 522 F.Supp.2d 1272.  In *Marx*, Diners' Club acquired the assets of Fugazy Travel in return for unregistered Diners' Club stock.  *Id.* at 507.  Under the purchase agreement, if Diners' Club received notice that the plaintiff desired

to have the stock registered, Diners' Club was required to promptly file a registration statement with the Securities and Exchange Commission ("SEC") and use its best efforts to cause the registration statement to become effective. *Id.* The plaintiff requested registration, Diners' Club filed with the SEC but the registration statement never became effective and was eventually withdrawn. *Id.* The plaintiff filed a breach of contract action alleging Diners' Club failed to use its best efforts to register the stock. *Id.* at 506.

The issue was whether testimony provided by the plaintiff's securities law expert, Stanley Friedman, was admitted in error. *Id.* at 508. The court noted that Friedman was qualified to testify as an expert in securities regulation and competent to explain the step by step practices ordinarily followed by lawyers and corporations in shepherding a registration statement through the SEC. *Id.* at 508-09. The court noted his testimony was admissible under the same theory as testimony concerning the ordinary practices of physicians, i.e., to enable the jury to evaluate the conduct of the parties against the standard or ordinary practice in the industry. *Id.* at 509. Friedman's testimony, however, did not address the customary practices in securing a registration statement from the SEC. *Id.* Instead, he gave his opinions on the

legal standards he believed to be derived from the contract between the parties. *Id.* Friedman gave conclusions as to the legal significance of facts introduced at trial. *Id.* at 510. He also testified there was no legal excuse for Diners' Club's non-performance in securing the registration statement from the SEC. *Id.* The court found such testimony amounted to "no more than an expression of the witness' general belief as to how the case should be decided." *Id.*

The court found the admission of such testimony would give the appearance that the court was shifting the responsibility to decide the case to the witnesses. *Id.* The court noted it was the jury's job to evaluate the facts in light of the applicable law and was erroneous for a witness to express an opinion on the law. *Id.* The court held it was error to permit Friedman to give his opinions as to the legal obligations under the contract at issue. *Id.* at 508.

In the case at bar, Eakin and Patten are providing opinions which amount to legal conclusions. Neither of them has provided any testimony as to the standard of practice in debt collection actions. Instead, both of them give the "opinion" that JRL's conduct violated the FDCPA, that JRL's conduct is not protected by the bona fide error defense, that JRL's conduct violated Rule 11 and that JRL's conduct violated the Rules of Professional Conduct. Instead

of providing permissible testimony as to the standard of practice, Eakin and Patten are telling the jury how it should decide the case. This is impermissible testimony. *Marx*, 550 F.2d at 510. Therefore, the Court should exclude Eakin's and Patten's testimony at the trial of this matter.

### 4.    Eakin's and Patten's testimony is now irrelevant

Eakin and Patten are providing expert opinions that JRL's conduct violated the FDCPA and the bona fide error defense does not relieve JRL of liability. This testimony became irrelevant when the Court issued its order on January 8, 2009. The Court's order held that JRL's conduct in the underlying debt collection lawsuit violated the FDCPA as a matter of law. The Court's order also held the bona fide error defense was not applicable give the facts of this case. Therefore, the Court granted McCollough's motion for summary judgment on the FDCPA claim and denied JRL's motion for partial summary judgment on this issue.

Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The testimony of Eakin and Patten is now irrelevant

since the Court has already ruled, as a matter of law, that JRL's conduct violated the FDCPA and the bona fide error defense does not apply.  The testimony of Eakin and Patten would not have any tendency to prove a fact that is of consequence to the determination of the action.  Fed. R. Evid. 402 provides that irrelevant evidence is not admissible.  The testimony of Eakin and Patten is not admissible since it is no longer relevant to any claim in dispute.  Therefore, the Court should grant JRL's motion *in limine* and exclude the testimony of Eakin and Patten.

In addition, Eakin's testimony is irrelevant since he is not providing any testimony concerning the underlying debt collection action filed against McCollough.  Eakin testified that he was asked to testify as someone who regularly sees people who are defending actions filed by JRL, explain their predicament, identify actions by JRL which violate the FDCPA and describe the burden of defending against a debt collection lawsuit.  Depo. Eakin 38:8-20.  Thus, Eakin is not going to provide any testimony relevant to the underlying debt collection action filed against McCollough.  He's simply going to provide general testimony about debt collection lawsuits filed by JRL.  This is impermissible character evidence.  Fed. R. Evid. 404.  This is another

reason why the Court should grant JRL's motion *in limine* and exclude the testimony of Eakin.

## CONCLUSION

For the foregoing reasons, the Court should exclude the testimony of Plaintiff's experts, Eakin and Patten.

DATED this 23rd day of February, 2009.

    /s/ Fred Simpson
Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)

This brief complies with the type-volume limitation of Local Rule 7.1(d)(2)(E) [6500 words for briefs; 3250 words for reply briefs], and contains 4,318 words, excluding the caption and certificates of service and compliance.

DATED this 23rd day of February, 2009.

    /s/ Fred Simpson
Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I, the undersigned, a representative of the law firm of Bohyer Simpson & Tranel, P.C., hereby certify that I served a true and complete copy of the foregoing ***Brief in Support of JRL's Motion in Limine to Exclude Testimony of Plaintiff's Experts*** on the following persons by the following means:

| | |
|---|---|
| 1,2 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   Clerk, U.S. District Court

2.   John C. Heenan, Esq.
     HEENAN LAW FIRM
     2602 1st Ave N, Suite 305
     PO Box 2278
     Billings, MT 59103
     **Attorneys for Plaintiffs**

DATED this 23rd day of February, 2009.

_____/s/ Fred Simpson_____
Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendant