# REPORT TO JOHN HEENAN

John Heenan
HENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103

Re:    *Tift & Mccollough v. Johnson, Rodenburg, & Lauinger*

The following report is made pursuant to Rule 26(a)(2)(B), F.R.Civ.P.

(i)    **Complete Statement of All Opinions and Basis Therefore.**

It is my opinion:

A.    That the law firm of Johnson, Rodenburg & Lauinger fails to meet the standard of legal practice in Montana in debt collection activities.   Johnson, Rodenburg & Lauinger fails to meet the minimum standard imposed by Rule 11 of both the Federal and Montana Rules of Civil Procedure in that their pleadings are not formed after a reasonable inquiry into the claims alleged and that their factual contentions do not have evidentiary support.

B.    That the law firm of Johnson, Rodenburg & Lauinger violate 15 U.S.C. §1692e and f by seeking to collect claims barred by the statute of limitations and/or not authorized by law.

C.    That the firm of Johnson, Rodenburg & Lauinger's attempts to collect amounts not owed or are barred by the statute of limitations are not unintentional or bona fide errors.

D.    That an hourly rate of $200 is a reasonable rate for legal services in Billings, Montana; that the time spent by John Heeman defending Tim McCollough from the claims of CACV of Colorado are reasonable.

The basis for the foregoing opinions are as follows:

1

The policies and procedures of Johnson, Rodenburg & Lauinger are designed for a mass production of complaints and discovery. The attorneys are provided inadequate documentation to support the claims asserted. The information provided by CACV of Colorado, LLC is not warranted to be accurate and the ability of Johnson, Rodenburg & Lauinger to obtain underlying documentation is limited. The business model of Johnson, Rodenburg & Lauinger is to use non-professionals for the production of complaints with little attorney oversight or review in order to file an extraordinarily high number of cases from which they recover an extraordinarily high ratio of default judgments.

My opinion is based upon my experience of 30 years of practicing law with a focus on debtor-creditor issues, my review of discovery conducted in this case, documents produced in discovery, the deposition testimony of Grace Lauinger, Lisa Lauinger, and Charles Dendy; and my experience defending claims asserted by the Johnson, Rodenburg & Lauinger firm.

From the information provided and my experience as described above, it is clear that the Johnson, Rodenburg & Lauinger is a "factory" whose product is debt collection complaints. These complaints are prepared by a staff of non-professionals based upon the barest of information provided by CACV of Colorado and hastily reviewed by the attorneys. Information is transmitted by CACV of Colorado to Johnson, Rodenburg & Lauinger electronically. Johnson, Rodenburg & Lauinger utilizes a software program named "Collection Master." Collection Master provides limited information to Johnson, Rodenburg & Lauinger; it provides the debtor's name, the initial creditor's name, the date of the charge off, and the amount at time of charge off and balance as of a certain date, and the date of last payment. Johnson, Rodenburg & Lauinger are not provided any of the underlying documents including invoices, credit card

2

agreements or contracts, or assignments or bills of sale of the account to Johnson, Rodenburg & Lauinger's client. Notably, Johnson, Rodenburg & Lauinger's client "makes no warranty as to the accuracy or validity of data provided by the client." Johnson, Rodenburg & Lauinger's client instructs Johnson, Rodenburg & Lauinger to determine its legal and ethical ability to collect the accounts and at the same time puts a deadline on filing complaints that precludes a reasonable inquiry into the facts. Further, Johnson, Rodenburg & Lauinger are aware that its client has limited ability to obtain any underlying documents from the initial creditor.

The limited information provided to them, the lack of any documentation provided, the limited ability to get documentation, the haste by which suit must be filed, and the disclaimer as to the accuracy or validity of the information prevent Johnson, Rodenburg & Lauinger from making a reasonable inquiry as to the claim. Instead, Johnson, Rodenburg & Lauinger blindly accepts the limited information and immediately commences suit upon it. If a defense is made regarding the date of last payment, regarding whether Johnson, Rodenburg & Lauinger's client actually owns the debt or if the production of any of the underlying documents is required, Johnson, Rodenburg & Lauinger's ability to meet these defenses is limited. When faced with discovery that cannot be answered, or claims that cannot be proven, Johnson, Rodenburg & Lauinger routinely moves to dismiss without prejudice.

Ninety percent of the complaints filed by Johnson, Rodenburg & Lauinger result in a default judgment; 5% are defended pro se, and 5% are defended by attorneys. Johnson, Rodenburg & Lauinger being aware that they cannot prove their claims in a substantial number of the cases that are actually defended, must also recognize that they also could not prove a substantial number of the claims in cases where they obtain a default judgment.

3

Johnson, Rodenburg & Lauinger abuse the discovery process through requests for admission. The form utilized for Request for Admission contain instructions but does not advise a defendant, including pro se defendants, of the consequence of failing to answer the admissions. The instructions are detailed but omit that the requests will be deemed admitted if not denied within 30 days of service. In the instant case, a request for admission that McCollough made a payment of a $75 on June 30, 2004 was sent to McCollough several months after Johnson, Rodenburg & Lauinger had been advised that the $75 received on June 30, 2004 was, not in fact a payment received from McCollough, but was return of costs. The issuance of request for admission, including admission of a fact that Johnson, Rodenburg & Lauinger knew was not true and which was critical to the issue of the statue of limitations, is either an indication of malfeasance, or more likely, under the factory approach to litigation adopted by Johnson, Rodenburg & Lauinger, a matter of misfeasance, in that the attorneys have insufficient time for the examination of their files, have no documentation, and simply sign pleadings developed by non-professionals.

The complaints filed by Johnson, Rodenburg & Lauinger request attorney's fees. In the default judgment cases, fees are requested up to the amount of $1,100. Johnson, Rodenburg & Lauinger demand attorney's fees, obtain judgments awarding them attorney's fees, and litigate for attorney's fees without having an underlying document that gives the debt owner a right to attorney's fees. Johnson, Rodenburg & Lauinger do not have the underlying contracts because there are no actual contracts as in nearly all credit card cases the liability on credit card is founded upon the legal theory of "account stated" for which there are no attorney's fees allowed. That is the law in Montana and has been since 1993.

4

The Johnson, Rodenburg & Lauinger Fargo office does not request attorneys fees in its complaints.

Claiming attorney's fees when none are allowed violates 15 U.S.C. §1692e in that it is a false representation of compensation that may lawfully be received. Further 15 U.S.C. §1692f prohibits a debt collector from using unconscionable means to collect or attempt to collect a debt; this includes the collections of any amount not authorized by law, such as attorney's fees.

Johnson, Rodenburg & Lauinger cannot seek safe harbor in the bona fide error provisions of the Fair Debt Collection Practice Act, 15 U.S.C. §1692k(c). There is no bona fide error in seeking and obtaining attorney's fees under legal theories when the Montana Supreme Court has held attorney's fees are not allowed. Indeed errors of law do not fall within §1692k(c). Moreover, apparently some attorneys at the Johnson, Rodenburg & Lauinger firm recognize that attorneys fees cannot be recovered since, based on my experience, Clifton Rodenburg does not seek attorney's fees for the cases he brings on the account stated theory of liability.

There is no bona fide error in submitting requests for admission with misleading instructions concerning the failure to respond. There is no bona fide error in accepting large numbers of accounts for collection electronically with little information, no documentation, little ability to get documentation, and an express disclaimer that the information may not be accurate. From my experience, Johnson, Rodenburg & Lauinger cannot prove a substantial number of cases they bring; their conduct is unconscionable particularly when applied to the 90% of the cases where they take default judgments. Their claim for attorney's fees is not isolated; every complaint I have reviewed, filed by the Bismark office, includes a demand for attorney's fees.

There can be no bona fide error when the client, CACV or Colorado expressly disclaims

5

the accuracy and reliability of the information provided. CACV of Colorado places the burden of the Fair Debt Collection Practice Act compliance on Johnson, Rodenburg & Lauinger, who implicitly agrees to assume responsibility for compliance while at the same time receives little information, no documentation, little access to documentation, and who agrees to file suit in a short time.

The actions of Johnson, Rodenburg & Lauinger in this case appear to have been made without regard to the impact on Tim McCollough. First, Johnson, Rodenburg & Lauinger has relied on information provided by CACV of Colorado which CACV of Colorado has expressly warned is not warranted to be accurate or valid. Second, Johnson, Rodenburg & Lauinger did not obtain or review any documentation to substantiate the limited information provided. Third, given the regular inability to obtain the necessary information to prove the claim, Johnson, Rodenburg & Lauinger had to have knowledge that the claim against McCollough could not be proven. Fourth, Johnson, Rodenburg & Lauinger served deceptive requests for admission some of which were untrue according to information held by Johnson, Rodenburg & Lauinger at the time the requests were proffered. Johnson, Rodenburg & Lauinger acted in disregard to the foregoing and acted with indifference to the effect it would have on McCollough.

I am familiar with the established rates of attorney's hourly fees in Montana and in Billings. A substantial portion of my legal practice relates to bankruptcy. In bankruptcy many matters require Bankruptcy Court review of attorney's fees; this review is for both debtor's counsel and creditor's counsel. Because of this, I am familiar with the hourly rates charged by various debtor's and creditor's counsel in Billings and elsewhere in the state. I am also generally aware of the prevailing hourly rates charged by attorneys in Billings as I adjust, from time to

6

Exh. C - 06

time, my hourly rate.   Based upon my knowledge of hourly rates charged by counsel in bankruptcy cases, based upon my knowledge of Mr. Heenan, and based upon my review of the pleadings he has prepared, and from my periodic inquiries as to prevailing rates, it is my opinion that the hourly rate charged by Heenan of $200.00 per hour is within the prevailing rates for attorneys with Mr. Heenan's experience, abilities, and reputation.

Based upon my review of the pleadings, correspondence, and other loan documents, it is my opinion that times charged by Mr. Heenan as reflected in the statements of services which I have reviewed are fair and reasonable.

This case is not complicated although there are disputed factual and legal issues. I have considered the complexity, or lack thereof, of the issues in this case.  Based upon my review of the pleadings and the description of services, the amount of time and character of the services rendered, and the complexity of the dispute, the amount of money involved, the character and importance of the litigation, the professional skills called for, Mr. Heenan's reputation and standing the community and the success achieved, it is my opinion that the time billed by Mr. Henan was reasonable.  Mr. Henan's hourly rate is reasonable.  This is particularly so given the success realized by Mr. Heenan.  I have considered the seven factors identified in *Plath v. Schonrock*, 2003 MT 21, ¶ 38, 314 Mont. 101, ¶38, 64 P.3d 984, ¶38.

1.      Therefore, overall, it is my opinion that Mr. Hennan's total charges of $1,520.00 are reasonable under the circumstances.

(ii)    **Information Considered.**

My opinion is based upon the discovery and documents produced in this case, depositions taken in this case, the information provided on the computer screen for the Collection Master

7

software program, the pleadings filed in this case, and my personal experience in defending claims of Johnson, Rodenburg & Lauinger, a review of my files in approximately 10 cases, and my review of the statement of time and services rendered by Mr. Heenan..

(iii)    **Exhibits Used.**

None.

(iv)    **Witness Qualifications Including all Publications Authored in the Previous 10 Years.**

I have a J.D. degree, with high honors, from the George Washington University Law School. I was admitted to practice in the state and federal courts of Montana in 1978, and am admitted to practice before the 9th Circuit Court of Appeals, the U.S. Supreme Court, the U.S. Court of Claims, and U.S. Tax Court.

My practice has been a general litigation practice with an emphasis on bankruptcy and debtor-creditor relations. I have previously represented collections agencies, debtors who have been sued by debt collectors, banks, credit unions, and others asserting claims for money owed. I practice throughout the state of Montana and am familiar with the standards of practice in Montana.

My publications are limited to outlines for continuing legal education seminars sponsored by the Bankruptcy Section of the State Bar of Montana, Lorman, and other private entities. The subject matter of these publications is generally bankruptcy, foreclosures, and other debtor-creditor issues.

I am a co-editor of the Bankruptcy Section of the State Bar of Montana's Bankruptcy Newsletter.

(v)    **List of Other Cases in Which I have Testified as an Expert.**

8

I have offered expert testimony on the matter of attorney's fees, by affidavit, in *Underriner Motors v. Bacheller,* Montana 13th Judicial District Court, Yellowstone County, DV 06-0169, and have provided expert testimony regarding bankruptcy in *Farmers State Bank of Worden v. McGimpsy,* Montana 13th Judicial District Court, Yellowstone County, (docket number unknown).

(vi)    **Statement of Compensation to be Paid.**

Plaintiff has agreed to compensate me at my hourly rate of $225.00 pre hour for all time incurred in this case.

DATED August ____, 2008.

_____
**JAMES A. PATTEN**

9

Exh. C - 09