John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON, RODENBURG &<br>LAUINGER.<br><br>Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**PLAINTIFF'S BRIEF IN RESPONSE<br>TO JRL'S MOTION IN LIMINE** |

## STATUS OF CASE

Plaintiff has asserted claims against Defendant JRL for violations of the FDCPA and the Montana Unfair Trade Practices Act, as well as common law claims of malicious prosecution and abuse of process.  Plaintiff has sought damages including compensatory damages, statutory damages, and punitive damages.

This Court, in its November 21, 2008 Order (Docket No. 75), held that JRL violated the FDCPA "by requesting attorney fees to which it was not entitled under

Montana law." (Nov. 21, 2008 Order at 18.) The Court further determined, pursuant to Rule 56(d)(1), F. R. Civ. P., that the following material facts are considered established: (1) On April 17, 2007, JRL filed a time-barred debt against McCollough; (2) By August 6, 2007, JRL had information from its client demonstrating that the lawsuit was time-barred; and (3) JRL prosecuted the time-barred lawsuit against McCollough until December 7, 2007. (*Id.* at 14.)

This Court, in its January 8, 2009 Order (Docket No. 96), ruled that JRL also violated the FDCPA by: (1) filing a lawsuit against Mr. McCollough barred by the statute of limitations in Montana; (2) continuing to maintain a lawsuit against Mr. McCollough barred by the statute of limitations in Montana; and (3) serving requests for admission which were an abusive, unfair and unconscionable means to attempt to collect a time-barred debt. The Court further granted summary judgment in favor of Plaintiff as to JRL's affirmative bona fide error defense. Pursuant to Ninth Circuit Model Instruction 2.3, it is Plaintiff's position that the jury should be instructed that the Court's rulings should be considered as true, and JRL should not be allowed to attempt to re-argue factual and legal issues which this Court has already resolved. The jury needs to determine, in light of the Court's rulings on JRL's FDCPA violations, the amount of Mr. McCollough's actual damages and statutory damages for JRL's FDCPA violations.

The Court, in its January 8, 2009 Order, further denied JRL's Motion for Summary Judgment as to Plaintiff's Montana UTPA claim, his malicious prosecution claim and his abuse of process claim, holding that issues of fact remained for the jury to resolve with respect to these claims.  Thus, Plaintiff bears the burden of proving all of the elements of his Montana UTPA,[1] malicious prosecution and abuse of process claims.  The critical distinction between the FDCPA and the tort claims, from Plaintiff's perspective, is that the FDCPA is a strict liability statute, whereas the malicious prosecution and abuse of process claims require proof, directly or circumstantially, of JRL's mental state (e.g., its intent.)  Thus, Plaintiff needs to and intends to put on evidence of JRL's lack of probable cause in filing and prosecuting the lawsuit, as well as its awareness of a high probability that individuals such as Plaintiff could be injured by its conduct.

Plaintiff has also sought punitive damages, and will bear the burden of proving by clear and convincing evidence that JRL's conduct was malicious and/or fraudulent.  As set forth below, one of the factors which the jury must consider in this regard is the defendant's reprehensibility.  The U.S. Supreme Court has made plain that pattern and practice evidence and overall business conduct is highly relevant to this inquiry.  Thus, Plaintiff has the obligation to make a record and

---

[1] Consistent with this Court's ruling, Plaintiff will be seeking a jury instruction that the Montana UTPA applies to the collection of debt.

explain to the jury JRL's overall business conduct, including its litigation conduct towards unrepresented litigants.

## LEGAL ARGUMENT ON JRL'S MOTIONS IN LIMINE

**1.    Evidence that Attorney Bruce Spencer Filed a Lawsuit Against Mr. McCollough in 2005 is Relevant and Admissible.**

Plaintiff, to prove his malicious prosecution claim, bears the burden of proving that JRL lacked probable cause in prosecuting the state court action against Mr. McCollough and that it was actuated by malice. (Jan. 21, 2009 Order at 10) (citations omitted.) "Probable cause is an objective standard determined on the basis of the facts known to the party initiating the legal action." (*Id.* at 11) (citations omitted.) There is a rebuttable presumption of malice if the jury finds an absence of probable cause. (*Id.* at 13.) Thus, what JRL knew or should have known at the time it initiated the lawsuit is highly relevant to Plaintiff's malicious prosecution claim.

JRL's internal collection master notes (which are notes shared between JRL and its collector client, CACV) contain an entry dated 9/28/05 saying "dbtr filed an answer, states SOL has expired and if they are going by an 'open account' then we are. Advised Law firm." (JRL notes excerpt attached as Exhibit "A.") This notation would have been available and accessible to JRL at the time it filed suit against Mr. McCollough in 2007, and serves as highly relevant evidence that JRL lacked probable cause as it took no steps to inquire as to why Mr. McCollough had

been sued previously through another law firm or why the previous suit was dismissed.

To be clear, and contrary to JRL's arguments, evidence of the previous 2005 lawsuit wouldn't be offered by Plaintiff as substantive proof that dismissal of the 2005 suit without prejudice precluded the 2007 suit, nor as proof that the 2005 suit was dismissed because it was time-barred.  Rather, evidence related to the 2005 would be relevant in the context of what information JRL had available or could have availed itself of at the time it sued Plaintiff in 2007, which is relevant to Plaintiff's proof of his malicious prosecution claim[2] as such evidence goes to the heart of JRL's lack of probable cause.

## 2.    Evidence of the Number of Lawsuits JRL Files is Relevant to Plainitiff's Remaining Claims.

As set forth above, Plaintiff needs to prove both a lack of probable cause and malice by JRL in order to succeed on his malicious prosecution claim.  In order to prove the malice element, Plaintiff needs to show that JRL prosecuted the lawsuit with either: (a) a wish to vex, annoy or injury another person or an intent to do a wrongful act, or (b) have knowledge of facts or intentionally disregard facts that create a high probability of injury to the plaintiff and … deliberately proceed to act

---

[2] JRL also claims this Court's Jan. 8, 2009 Order renders the evidence irrelevant to any facts still at issue.  But, Plaintiff still needs to prove his malicious prosecution claim, and this Court's Order makes plain "[w]hether probable cause existed is a fact question for the jury."  (Order at 12.)

in conscious or intentional disregard of the high probability of injury to the plaintiff, or deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Evidence of the quantity of lawsuits JRL files, and it's overall business practice is highly relevant to Plaintiff's proof of malice.   Mr. Dendy, the JRL attorney who sued Mr. McCollough, testified:

> Q:    Were there any specific documents from Chase Manhattan Bank in the file at the time the lawsuit was filed against Mr. McCollough?
>
> A:    No, not in our file.
>
> Q:    Is that unusual for Johnson, Rodenburg & Lauinger to file a lawsuit without having any documents from the original creditor?
>
> A:    We rely on the representations of our client.
>
> Q:    But is it unusual to file a lawsuit without any documentation from the original creditor in the file?
>
> A:    No.  We rely on the representations of the client.

(Dendy depo. excerpt attached hereto as Exhibit "B" at 13-14.)  This Court, in its January 8th Order, aptly summed up JRL's litigation model as the "proofreading of unverified information."  It is highly relevant, in establishing JRL deliberately proceeds to act with indifference to the high probability of injury, that it had no

less information when it sued Mr. McCollough as it usually does.[3]  The number of lawsuits the attorneys file on a daily and yearly basis demonstrates a business model designed, in the words of Mr. Patten, "to use non-professionals for the production of complaints with little attorney oversight or review in order to file extraordinarily high number of cases from which they recover an extraordinarily high ratio of default judgments."  (Patten Expert Disclosure attached to Pl.'s Brief in Opposition to Motion to Strike Plaintiff's Experts as Exhibit "A.")   This evidence is highly relevant and goes to the heart of Plaintiff's proof of malice insofar as it shows JRL deliberately proceeds to act with indifference to the high probability of injury.  JRL didn't file suit with any less information than it typically does when it sues people in Montana.

Evidence of the number of suits filed is also relevant to Plaintiff's proof of punitive damages.  As made clear by the Supreme Court, the reprehensibility of the defendant's conduct is an important factor in a jury's evaluation of punitive damages.  *See Campbell v. State Farm Mut. Auto. Ins. Co.*, 538 U.S. 408 (2003).  The Court in *Campbell* identified factors to consider in accessing reprehensibility, including whether the conduct involved repeated actions or was only an isolated incident.  *Campbell*, 538 U.S. at 419.

---

[3] Surely, if this were an isolated incident, JRL would want to provide that evidence to the jury. And, Plaintiff would be hard-pressed to stop it from doing so.

In *Philip Morris USA v. Williams,* 549 U.S. 346 (200), the Supreme Court clarified:

> We have explained why we believe the Due Process Clause prohibits a State's inflicting punishment for harm caused strangers to the litigation.  At the same time, we recognize conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few.  And a jury consequently may take this fact into account in determining reprehensibility.

*Id.,* 549 U.S. at 356; *see also In re Exxon Valdez*, 296 F. Supp. 2d 1071, 1093 (D. Alaska 2004) (out-of-state conduct is admissible to show recklessness) *vacated, remanded on other grounds,* 472 F.3d 600 (9th Cir. 2006); *Eden Elec. Ltd. V. Amana Co.*, 370 F.3d 824 (8th Cir. 2004) (no error for jury to consider out-of-state conduct that furthered in-state fraudulent scheme.)  Thus, it is wholly appropriate and relevant to Plaintiff's proof of the remaining claims that he be allowed to introduce evidence of JRL's overall business practice, including the volume of lawsuits it files both in Montana and elsewhere.  Any prejudice can be obviated with an instruction to the jury advising that they are only to award damages for this particular case and no other.

Finally, the number of suits JRL files and its overall business/litigation model is relevant to rebut any defense by JRL that its conduct towards Mr. McCollough was somehow an aberration, as that is simply not the case.  *See* F.R.E. 406 ("Evidence of the routine practice of an organization … is relevant to prove that the conduct of the … organization on a particular occasion was in conformity

with the … routine practice.")  The jury needs to hear the context of what JRL does to understand this case and determine liability and appropriate damages, including punitive damages, considering this context.

**3.      Witnesses Ken Lucero and Keri Henan should Properly be Allowed to Testify.**

As set forth above, pattern and practice evidence is generally admissible as it is relevant to a punitive damages determination.  An important limitation is the conduct must "have a nexus to the specific harm suffered by the plaintiff." *Campbell, supra* at 422.  Plaintiff, in discovery, named Jeanie Cole, Ken Lucero and Keri Henan as potential witnesses, and timely provided all documents associated with their respective cases.

Jeanie Cole was sued by JRL on behalf of a debt buyer in state court in Hill County, Montana.  Jeanie Cole filed a motion for summary judgment.  JRL, in opposition to the summary judgment motion, filed with the Court an affidavit which Ms. Cole subsequently discovered was forged.  Ms. Cole was granted summary judgment in the state court action and awarded sanctions from the debt buyer client.  Ms. Cole is now prosecuting a putative RICO class action concerning these circumstances entitled *Cole v. Johnson, Rodenburg & Lauinger, et al.*, Cause No. CV 08-036-GF-RKS (Dist. Mont.)  Although unsavory conduct, Plaintiff candidly believes that Ms. Cole's claims lack sufficient nexus to his own claims, and has therefore advised JRL that he does not intend to call Ms. Cole as a witness.

Ken Lucero was sued by JRL, on behalf of a debt buyer client, in the matter entitled *Portfolio Recovery Associates, LLC v. Lucero*, Cause No. DV 05-275 (Montana Second Judicial District Court). Mr. Lucero, like Plaintiff, is on social security disability and attempted to defend himself *pro se* against the suit. JRL propounded requests for admission on Mr. Lucero in a form substantially similar to those propounded on Plaintiff here, and asked Mr. Lucero to admit as true statements JRL knew or should have known were false. When Mr. Lucero did not timely respond to the requests for admission, JRL moved for summary judgment, representing to the court that the unanswered admissions should be deemed true for purposes of the motion. When Mr. Lucero appeared through the undersigned counsel, JRL immediately moved to dismiss the case and then withdrew as counsel. JRL's conduct towards Mr. Lucero with respect to its use of requests for admission is substantially similar to its conduct towards Plaintiff, and therefore a sufficient nexus exists to allow him to testify as part of Plaintiff's proof of reprehensibility of JRL's conduct, as well as Plaintiff's proof that JRL's conduct towards him was not an aberration but rather part of a concerted business and litigation strategy.

Ms. Henan was sued by JRL, on behalf of a debt buyer client, in the matter entitled *Portfolio Recovery Associates, LLC v. Henan*, Cause No. DV 08-120 (Montana Thirteenth Judicial District Court). JRL sought attorney's fees against

Ms. Henan in excess of $500 under an account stated theory of liability. When the undersigned counsel appeared on behalf of Ms. Henan, JRL withdrew from the case. Through discovery, Ms. Henan learned that JRL did not have a basis under Montana law to seek attorney's fees against her. Ms. Henan also discovered that JRL had nothing more than a printout of Ms. Henan's name, address, social security number and amount of debt claimed at the time it sued her, and that JRL's debt buyer client contractually limited JRL's ability to rely on the information provided to it. Ms. Henan is now prosecuting a putative class action against JRL regarding its business practice of seeking attorney's fees without a legal basis under Montana law in the matter entitled *Henan v. Johnson, Rodenburg & Lauinger, et al.*, Cause No. CV 09-02-BLG-CSO (Dist. Mont.) Ms. Henan will testify as to JRL's attempt to collect attorney's fees against her without a legal basis, which is conduct substantially similar to that displayed against Plaintiff here. Consequently, under well-established federal case law, Ms. Henan's testimony has a sufficient nexus to this case and is therefore relevant to proof of malice, punitive damages and reprehensibility.

**4.     JRL's Previous FDCPA Violation is Relevant.**

JRL was sued by a *pro se* plaintiff in the matter entitled *Forman v. Johnson, Rodenburg & Lauinger*, CV 06-40-DWM-JCL (Dist. Mont.) Judge Molloy found that JRL violated the FDCPA with respect to its conduct towards Mr. Forman.

(Order dated May 31, 2007) (Docket No. 53.)  As set forth above, evidence of whether JRL's conduct involved repeated actions or was only an isolated incident, as well as whether the harm resulted from intentional trickery, deceit or malice, or mere accident, is highly relevant to the jury's punitive damages determination. *Campbell, supra,* 538 U.S. at 419.  JRL's previous FDCPA violation is also relevant to rebut any defense by JRL that its conduct towards Plaintiff was isolated or a "mere accident."

Finally, such evidence would be relevant under F.R.E. 405(a) to the extent JRL attempts to introduce evidence of its "good business character" as a defense: "On cross-examination, inquiry is allowable into relevant specific instances of conduct."

## 5.    Evidence of Judge Fagg's Letter.

Judge Fagg felt it necessary to send a letter, carbon copying all of the other judges in the Thirteenth Judicial District Court, chastising JRL for its conduct towards a pro se defendant.  (Letter attached as Exhibit "C".)  Judge Fagg wrote "The purpose of sending copies to the other judges is to put them on notice of your actions in this case, and to request that they scrutinize all pleadings received from you in the future with extra care."  JRL attorney Charles Dendy (the same attorney who sued Plaintiff), responded by letter to Judge Fagg, writing "In this instance, as always, I thoroughly review every case to see if an answer or anything the court

might construe as an answer has been served or filed." (Letter attached as Exhibit "D") (emphasis added.)

As set forth above, Judge Fagg's letter demonstrates JRL's routine business conduct towards the people it sues in Montana. JRL's entire business model is based upon knowing that the thousands of people it sues will not be able to hire an attorney or will not otherwise be able to defend themselves against sophisticated collection lawyers. The letter is relevant to the jury's punitive damages inquiry and Plaintiff's proof of malice.

Alternatively, if the Court concludes the letter is not relevant *per se*, to the extent that JRL attempts to defend this case at trial by somehow claiming its conduct towards Plaintiff was anything other than standard operating procedure, then Judge Fagg's letter would certainly be relevant to rebut any such a defense.

## 6.    JRL's Insurance Coverage.

Plaintiff agrees that evidence of JRL's insurance coverage is generally precluded under F.R.E. 411, and therefore has no intention of introducing such evidence. To the extent JRL "opens the door" by somehow arguing a particular damage award is too high, then Plaintiff would then assert insurance coverage is relevant to rebut such a claim. In any event, Plaintiff does not intend to introduce evidence of insurance unless such circumstance arises, at which point Plaintiff will advise the Court before raising it in front of the jury.

**7.      The Film "Maxed Out."**

Plaintiff has produced in discovery a documentary film about the debt collection industry entitled "Maxed Out", and intended to introduce portions of the film as demonstrative evidence.  Upon reflection, Plaintiff has decided he does not intend to introduce this film.

Respectfully submitted this 9th day of March, 2009.

HEENAN LAW FIRM

*/s/ John Heenan*
John Heenan
Attorney for Plaintiff

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)

This brief complies with the type-volume limitation of Local Rule 7.1(d))2)(E) [6500 words for briefs; 3250 words for reply briefs], and contains 2,958 words, excluding the caption and certificates of service and compliance.

DATED this 9th day of March, 2009.

HEENAN LAW FIRM

*/s/ John Heenan*
John Heenan
Attorney for Plaintiff