John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:  (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br><br>JOHNSON, RODENBURG &<br>LAUINGER.<br><br>　　　　　　　　Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO JRL'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS** |

## INTRODUCTION

Pursuant to this Court's Scheduling Order, both parties disclosed attorneys to serve as liability experts.  Plaintiff disclosed attorney James A. Patten, a well-regarded local attorney with over 30 years experience as a Montana lawyer, and specific experience in debtor-creditor relations, including representation of "collection agencies, debtors who have been sued by debt collectors, banks, credit unions, and others asserting claims for money owed."  (Patten Expert Disclosure attached as Exhibit "C" to JRL's Brief at pg. 8.)  JRL, on the other hand, disclosed

a Minnesota collection lawyer, William Hicks, of the law firm of Messerli & Kramer. Mr. Hicks' firm has been sued dozens of times for alleged FDCPA violations (including by the Minnesota Attorney General's office), and, in a published opinion, a federal bankruptcy judge wrote:

> When the issue involves a small amount in controversy in any particular case and is posed by an opponent that has few resources for litigation, a larger problem emerges … [Messerli & Kramer's conduct] evidences a hard-bitten and passive-aggressive obstructionism, advanced in an attempt to cow and deter underfunded opponents. Ultimately, it is cynical in its attitude toward the fabric of law, and mean-spirited.

*In re Howard*, 307 B.R. 659, 665 (Bankr. D. Minn. 2004).

JRL now seeks to strike Mr. Patten, a Montana attorney with an impeccable ethical record who possesses a wealth of experience in debtor-creditor claims, including prosecuting claims on behalf of creditors. Mr. Patten is well-qualified to render expert opinions in this case. Any criticism as to Mr. Patten's testimony goes to its weight, not its admissibility.

JRL further seeks to strike Legal Services attorney Michael Eakin. Mr. Eakin will not be offering expert testimony in the same vein as Mr. Patten or Mr. Hicks. Rather, Mr. Eakin will be called to testify as to his experience as a Legal Services lawyer defending clients who have been subjected to debt collection activities by JRL. Thus, Mr. Eakin will not be offered to buttress or cover the same ground as Mr. Patten, but rather will be called to testify, just like Ms. Henan

and Mr. Lucero, as to JRL's overall business conduct and the fact that JRL's conduct in this case is far from isolated.  Mr. Eakin's testimony is relevant and admissible for the same reasons as Ms. Henan and Mr. Lucero will testify.  Under well-settled United States Supreme Court case law, Plaintiff has the absolute right and burden to put on evidence of the type Mr. Eakin will be offering to prove his punitive damages case and make a record as to JRL's reprehensibility, which includes pattern and practice evidence.

## LEGAL ARGUMENT

**I.     IT IS WELL-SETTLED UNDER MONTANA LAW THAT ATTORNEYS MAY TESTIFY IN AN ABUSE OF PROCESS/MALICIOUS PROSECUTION ACTION.**

JRL argues first that Plaintiff's attorney experts should be precluded from testifying by virtue of their status as attorneys.  First of all, JRL's argument is incongruous with the fact that it has named its own attorney expert (Mr. Hicks) to testify.

Second, JRL's arguments in this regard are contrary to well-settled Montana law on the subject.  Attorneys testify all the time in legal malpractice actions to establish accepted professional standards prevailing at the place and time the services were rendered.  The Montana Supreme Court has specifically held in the bad faith context that while attorneys may not testify as to conclusions of law, they may "appear as expert witnesses for the purpose of stating their opinion on an insurer's duty to evaluate the facts, on what constitutes a reasonable evaluation of

the facts, or on how an insurer should have approached the negotiations with the plaintiff." *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 251, 725 P.2d 217, 224-25 (1986); *see also Baird v. Norwest Bank*, 255 Mont. 317, 843 P.2d 327 (1992) (in bank bad faith action, no error in plaintiffs' former attorney testifying as to legal issues in the case and his legal opinion on the law involved in view of defendant's limited trial objection.)

As to the exact issue before this Court, whether an attorney may offer expert testimony in the context of an abuse of process case, Judge Sandefur, in the *Seltzer v. Morton* case (Montana Eight Judicial District Court, Cascade County), held that attorney Tom Lewis could offer expert testimony. Judge Sandefur's well-reasoned holding stated:

> 4.   EXPERT TESTIMONY OF TOM L. LEWIS ESQ.
>
> In their *Motion In Limine To Exclude Expert Testimony*, filed September 20, 2004 (Doc. 321), Defendants seek an order *in limine* barring Seltzer from presenting the expert testimony of Tom L. Lewis, Esq., on the asserted grounds that it will include improper legal conclusions, is speculative, lacks foundation, or is irrelevant. The subject matter of Mr. Lewis' proposed testimony is set forth in *Plaintiff's List Of Witnesses*, filed June 1, 2004 (Doc. 264), and *Plaintiff's Brief In Opposition*, filed September 30, 2004 (Doc. 338).
>
> Expert testimony is admissible if "technical or other specialized knowledge will assist the trier of fact to understand the evidence or

to determine a fact in issue." M.R.Evid. Rule 702. As recently stated by the Montana Supreme Court:

> Rule 705, M.R.Evid., allows an expert to testify as to his opinions or inferences and Rule 704, M.R.Evid., further allows an expert to present opinions and inferences that may embrace the ultimate issues to be decided by the jury. We distinguish ultimate issues of fact from ultimate issues of law because legal conclusions offered by an expert witness invade the province of the jury whose duty it is to apply the law as given in the jury instructions to the facts of the case. Such expert opinions on the law can be highly prejudicial. . . . While an expert witness may properly testify as to an ultimate issue of fact, expert opinion that states a legal conclusion or applies the law to facts is inadmissible.

Perdue v. Gagnon Farms, Inc., 2003 MT 47, ¶ 28, 314 Mont. 303, ¶ 28, 65 P.3d 570, ¶ 28.

M.R.Evid. Rule 703 "anticipates that experts form opinions and inferences based upon first-hand observations, facts presented at trial and information obtained outside the courtroom prior to trial." Perdue, ¶ 34. Accordingly, an "expert witness may rely upon inadmissible evidence when forming an opinion," but Rule 703 generally does not permit an expert to introduce otherwise inadmissible hearsay as *substantive evidence* "to bolster his or her expert opinions before the jury." Perdue, ¶ 34.

However, an expert may directly state or introduce *otherwise admissible* facts if the expert based his or her opinion on those facts. See Perdue, ¶ 35; Keus v. Brooks Drug, Inc. (Vt. 1994), 652 A.2d 475, 478-79; Turner v. Burlington No. Santa Fe R.R. Co. (9th Cir. 2003), 338 F.3d 1058, 1060-61; Genrich v. California (Cal. Ct. App. 1988), 248 Cal. Rptr. 303, 308-09; Maine v. Marques (Me. 2000), 747 A.2d 186, 190. Moreover, although an expert may not repeat or introduce otherwise inadmissible evidence as *substantive evidence* of the matter asserted, an expert may repeat or introduce otherwise

inadmissible evidence *for the limited purpose* of explaining the basis of his opinion upon sufficient foundation and the court's finding that:

    (1)   the expert reasonably relied upon the evidence;

    (2)   the evidence is of a type reasonably relied upon by experts in a particular field; and

    (3)   the evidence meets minimum standards of reliability and trustworthiness.

See Mason v. Ditzel (1992), 255 Mont. 364,372-75, 842 P.2d 707, 713; Emigh v. Consolidated Rail Corp. (W.D. Pa. 1989), 710 F.Supp. 608, 611-12; Estate of Kelly (Iowa Ct. App. 1996), 558 N.W.2d 719, 721; New Jersey v. Vandeweaghe (N.J. 2002), 799 A.2d 1, 19-20; City of Chicago v. Anthony (Ill. 1990), 554 N.E.2d 1381, 1388-89; Lovelace v. Four Lakes Devel. (Ill. App. 1988), 523 N.E.2d, 1335, 1338-40. Similarly, although an expert may not testify as to conclusions of law or an opinion of how the law applies to facts, a qualified legal expert may state an opinion as to another's "duty to evaluate the facts, on what constitutes a reasonable evaluation of the facts," or as to how another should have approached the legal dispute at issue. See Safeco, 223 Mont. at 251; 725 P.2d at 224-225.

By the nature of the claims at issue, this case involves jury consideration of facts regarding technical legal concepts typically beyond the common knowledge of lay persons. Defendants apparently do not dispute the basic qualifications of Tom L. Lewis as a lawyer and legal expert. Pursuant to M.R.Evid. Rule 702, the Court recognizes Mr. Lewis as a qualified legal expert and further concludes that his testimony will assist the jury in understanding the evidence and determining facts issue at trial.

(Nov. 3, 2004 Omnibus Order in re Motions in Limine, *Seltzer v. Morton,* attached as Exhibit "A".)

Likewise, in the case of *Ammondson et al. v. Paul, Hastings, Janofsky & Walker, LLP et al.*, Cause No. DV 05-97 (Montana First Judicial District Court), the plaintiffs asserted abuse of process and malicious prosecution claims against

NorthWestern Corp. and its legal counsel, the Paul Hastings law firm, for their attempt to breach pension contracts outside of bankruptcy.  The Paul Hastings law firm sought to exclude the testimony of Plaintiffs' attorney experts Ford Elsaesser, Joel Guthals and Wade Dahood, who were named as experts in bankruptcy conduct and litigation conduct, respectively.  Judge Whelan denied the motion without commentary and allowed Mr. Guthals and Mr. Dahood to testify at trial.  (Order Denying Paul Hastings Motion in Limine dated Dec. 19, 2006, *Ammondson et al. v. Paul, Hastings, Janofsky & Walker, LLP et al.*, along with expert disclosures at issue attached hereto as Exhibit "B".)   Judge Sandefur's decision to allow attorney Tom Lewis to offer expert testimony and Judge Whelan's decision to allow attorneys Ford Elsaesser, Joel Guthals and Wade Dahood to offer expert testimony is in line with a multitude of authority from other jurisdictions.  *See, e.g., Major v. OEC-Diasonics, Inc.,* 743 N.E.2d 276 (Ind.App. 2001) (expert opinion testimony that attorney had violated rules of professional conduct was admissible in law firm's action to foreclose attorney fee lien); *Meehan v. Michigan Bell Telephone Co.*, 436 N.W.2d 711 (Mich.App. 1989) (attorney was properly allowed to testify as an expert witness on probable cause in malicious prosecution action); *Oxford Gene Technology Ltd. v. Mergen Ltd.*, 2004 WL 2632933 (D.Del. 2004) (attorney who had served as in-house counsel for several multinational corporations qualified to give expert opinion as to corporate behavior and her opinion was

admissible since her opinion on that point was directly relevant to the issue of reasonable corporate behavior); *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523 (5th Cir. 2002) (though attorney may not testify as to purely legal matters, he or she may testify as to legal matters involving questions of fact); *McCollough v. Allen*, 449 N.E.2d 1168 (Ind. App. 1983) (in malicious prosecution action, attorney expert allowed to offer opinion as to whether attorney acted reasonably and whether claim brought was worthy of litigation).

The nature of the claims at issue in this case necessarily involves jury consideration of facts regarding technical legal concepts typically beyond the common knowledge of lay persons. *See* F.R.E. 702. Statutes of limitations and requests for admission are common terms among lawyers but are foreign concepts to the jury. Consequently, pursuant to Rule 702, F.R.E., expert testimony through a lawyer with specialized knowledge on these areas will indisputably assist the jury.

JRL's motion in limine should be denied as in *Seltzer* and *Ammondson*. The Court can then hear the expert testimony and limit it, if necessary, as trial progresses. In this regard, Plaintiff has no intention of soliciting opinions from these experts on ultimate issues, which are precluded under Rule 704, F.R.E. (e.g., "in my opinion JRL committed a malicious prosecution.")

## II.    MR. PATTEN IS QUALIFIED TO RENDER OPINION TESTIMONY.

JRL further argues that Mr. Patten is not qualified under Rule 702, F.R.E., to render expert opinions regarding JRL's conduct in this case and its overall business model.  Rule 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to offer expert opinions.  In assessing whether an expert has appropriate qualifications, courts considers whether the expert offers some special knowledge, skill, experience, training, or education on subject matter. *See Gebhardt v. Mentor Corp.,* 15 Fed. Appx. 540 (9th Cir. 2001); *see also Crom Corp. v. Crom,* 677 F.2d 48 (9th Cir. 1982) (notwithstanding his lack of experience in construction of water tanks, experienced practitioner and lecturer in field of patent law, whose bachelor degree was in electrical engineering, was qualified to testify as an expert about the interpretation and application of patent claims for water tanks); *Rogers v. Raymark Industries, Inc.*, 922 F.2d 1426 (9th Cir. 1991) (witness can qualify as expert through practical experience in particular field, as well as through academic training.)

The first case cited by JRL- *McDevitt v. Guenthar*, 522 F. Supp.2d 1272 (D. Haw. 2007) supports Plaintiff's position that Mr. Patten is qualified under Rule 702 to offer expert testimony as to JRL's litigation conduct in Montana.  In *McDevitt*, the trial court allowed a family law practitioner with experience as a member of the state's disciplinary board to testify as to the customary practices and

standards of care among family law attorneys in Hawaii. *Id.* at 1292. Here, Mr. Patten, an experienced Montana litigation attorney with particular expertise in debtor-creditor relations (including prosecuting and defending collection actions in Montana), is being offered to provide expert testimony regarding the prosecution of a collection action in Montana.

The second case cited by JRL- *Kranis v. Scott,* 178 F. Supp.2d 330 (E.D.N.Y. 2002) is a non-binding, out-of-circuit decision wherein the court refused to allow the plaintiff, a disbarred former attorney, from serving as his own expert witness in a legal malpractice claim. *Kranis* is extremely factually dissimilar from the present case.

Quite simply, JRL seeks a hyper-narrow interpretation of Rule 702 whereby only a lawyer like Mr. Hicks, who regularly files lawsuits on behalf of credit card debt purchasers, is qualified to speak to the standard of care and customary practices. This is simply not the case. Mr. Patten, as a Montana lawyer with over three decades of experience practicing law in Montana, and with a specialty in debtor-creditor relations and in prosecuting and defending collection actions, certainly has the foundation to speak to the standard of care and customary practices of Montana collection lawyers filing lawsuits in Montana.[1]  Mr. Patten

---

[1] JRL cites this Court to a portion of Mr. Patten's deposition, taken out of context, wherein he testified he was "guessing on" an answer, and seizes on this to argue "the fact that Patten has to

knows and can explain the standard for following Rule 11 of the Montana Rules of Civil Procedure, for propounding discovery under the Montana Rules of Civil Procedure, and for complying with the applicable statute of limitations governing this type of case.  At trial, Plaintiff will be able to lay adequate foundation for Mr. Patten's testimony under Rule 702.  The Court should deny JRL's Motion subject to such foundation being laid at trial.

### III.    MR. EAKIN WILL NOT TESTIFY AS TO THE STANDARD OF CARE OF A COLLECTION LAWYER, BUT RATHER IN THE CONTEXT OF A LEGAL SERVICES LAWYER EXPERIENCED IN ASSISTING CLIENTS AND PRO SE DEBTORS DEAL WITH JRL.

Mr. Eakin was disclosed by JRL as a fact witness concerning the now-dismissed June Tift matter.  Thereafter, Plaintiff disclosed Mr. Eakin as a hybrid fact/expert witness by virtue of his education, background and employment. Specifically, Mr. Eakin has defended many indigent clients in lawsuits brought by Defendant JRL and will testify that the conduct JRL displayed in dealing with Plaintiff McCollough was substantially similar to other instances in which he has had the occasion to deal with JRL.  Mr. Eakin has personal knowledge about JRL's collection and litigation practice in the State of Montana.[2]

---

'guess' … shows he is not qualified to express such an opinion."  Mr. Patten was very clear in his deposition as to his opinions and their bases, and JRL's argument in this regard is very unfair.
[2] Mr. Patten also has personal knowledge of JRL's pattern and practice based upon his personal experience defending claims asserted by JRL, and is therefore qualified to testify on these issues. *See* Patten Report at pg. 2

Plaintiff has the burden of proving punitive damages by clear and convincing evidence. Plaintiff, as part of his proof of punitive damages, is entitled to (and, indeed, must) present evidence concerning the reprehensibility of JRL's conduct in his case-in-chief, including whether JRL's conduct towards Plaintiff was isolated or part of a general business practice. *See, e.g. Campbell v. State Farm Mut. Auto. Ins. Co.*, 538 U.S. 408, 419 (2003); *BMW of North America v. Gore*, 517 U.S. 559 (1996); *Philip Morris v. Williams*, 549 U.S. 346 (2007). To this end, Mr. Eakin will be called to testify as to his experience in defending people who are sued by JRL, as well as in assisting those who are attempting to defend themselves in suits brought by JRL *pro se.* As set forth in his report, Mr. Eakin will only testify as to his experiences which are substantially similar to the conduct displayed by JRL here (e.g., treatment of *pro se* litigants, use of requests for admission). Mr. Eakin is thus largely a fact witness in this regard as he will be speaking to his personal experiences regarding JRL and its conduct towards Montanans.

Mr. Eakin, however, by virtue of his lengthy career as a Legal Services lawyer defending debtors in collection suits, is qualified to render opinion testimony under Rule 702, F.R.E., upon the laying of sufficient foundation. Consequently, it would be appropriate for Mr. Eakin to explain during his testimony what, for example, a default judgment is and how it is obtained, or what

a creditor can do to execute on a judgment once it is entered.  Although Mr. Eakin is not being compensated for his time testifying, Plaintiff, not wanting any issue of surprise to be asserted, timely disclosed Mr. Eakin as an expert witness and provided a report covering Mr. Eakin's anticipated testimony.

Mr. Eakin's testimony is highly relevant to Plaintiff's punitive damages claim and proof of JRL's reprehensibility, and he should be allowed to testify to the same extent as Mr. Lucero or Ms. Henan.  Mr. Eakin, as a lawyer focused on defending collection actions, is also sufficiently qualified to offer expert opinion testimony under Rule 702, and Plaintiff will lay adequate foundation prior to soliciting any opinions from Mr. Eakin at the time of trial.  Thus, the Court should refuse to strike Mr. Eakin's testimony and should instead rule on any specific objections to his testimony at the time of trial.

**IV.    NEITHER EAKIN OR PATTEN WILL OFFER TESTIMONY AS TO LEGAL CONCLUSIONS.  THE COURT SHOULD NOT PRECLUDE THESE WITNESSES FROM TESTIFYING ON THE SPECULATIVE BASIS THAT THEY MIGHT OFFER OPINIONS ON ULTIMATE OPINIONS OF FACT.**

Plaintiff has no intention of jeopardizing the record by soliciting testimony from either Eakin or Patten as to the ultimate legal issues to be decided by the jury.  Rule 704, F.R.E.  Plaintiff is cognizant of the limitations of Rule 704, and has no intention to solicit testimony embracing ultimate issues of fact (e.g., in your opinion, was this lawsuit malicious?).  JRL seeks to exclude these witnesses based upon their answers to questions which JRL's attorney posed to them in deposition.

The Court should refuse to strike these witnesses' entirely on the basis of questions which will not be asked at trial.

## V.    EAKIN AND PATTEN'S TESTIMONY REMAINS RELEVANT IN LIGHT OF THE REMAINING CLAIMS TO BE DECIDED.

JRL finally argues that this Court's resolution of the FDCPA claims renders Patten's and Eakin's testimony irrelevant.  This is not the case.  Plaintiff still has the burden of proving his malicious prosecution and abuse of process claims. These state law tort claims, under established Montana jurisprudence, necessarily involve jury consideration of facts regarding technical legal concepts typically beyond the common knowledge of lay persons.  Thus, expert testimony on the issues raised by the disputed malicious prosecution and abuse of process claims is relevant and helpful.  Furthermore, both Mr. Eakin and Mr. Patten, by virtue of their personal experiences with JRL, have relevant testimony to offer concerning JRL's pattern and practice, which is relevant to Plaintiff's punitive damages claim. Therefore, their testimony remains highly relevant to these remaining issues of liability as well as Plaintiff's proof of damages.

## CONCLUSION

Plaintiff respectfully requests that the Court deny JRL's Motion in Limine to Exclude Expert Testimony and resolve individual objections by JRL to either Mr. Eakin or Mr. Patten's testimony at the time of trial.

///

DATED this 10th day of March, 2009.

HEENAN LAW FIRM

*/s/ John Heenan*

John Heenan

Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)

This brief complies with the type-volume limitation of Local Rule 7.1(d))2)(E) [6500 words for briefs; 3250 words for reply briefs], and contains less than 6500 words, excluding the caption and certificates of service and compliance.

DATED this 10th day of March, 2009.

HEENAN LAW FIRM

*/s/ John Heenan*

John Heenan

Attorney for Plaintiff
