CLERK OF DISTRICT COURT

2004 NOV -3 PH 2: 01

FILED

MONTANA EIGHTH JUDICIAL DISTRICT COURT CASCADE COUNTY
DEPUTY

W. STEVE SELTZER,

                      Plaintiff,

      vs.

STEVE MORTON, FRANK MORTON,
GIBSON, DUNN & CRUTCHER, LLP,
DENNIS A. GLADWELL, ERIN M.
ALEXANDER, and OLIVER H. GOE,

                      Defendants.

Cause No.: ADV-03-173(d)

OMNIBUS ORDER IN RE MOTIONS
IN LIMINE

By miscellaneous previously-filed motions, the parties seek various evidentiary rulings *in limine*. Upon consideration of the parties' motions and briefs, the Court hereby sets forth the following rulings *in limine*, referenced by subject matter for clarity.

1.   EVIDENCE OF PAINTING AUTHENTICITY DEVELOPED AFTER FILING DATE OF UNDERLYING ACTION.

In *Plaintiff's Second Motions In Limine*, filed August 11, 2004 (Doc. 285), Plaintiff seeks a ruling barring Defendants from presenting evidence indicating that the subject painting was a Russell unless Defendants had knowledge of such evidence prior to the filing date of the underlying action on July 16, 2002. By *Defendants' Motion In Limine*, filed September 20, 2004 (Doc. 318), Defendants seek a ruling barring Plaintiff from introducing evidence regarding third-party expert opinions that the subject painting was a Seltzer and not an authentic Russell.

1

)                                    )

In his *Reply Brief*, filed October 8, 2004 (Doc. 447), Plaintiff concedes that, in regard to his malicious prosecution claim, he has abandoned any claim that Defendants maliciously continued the underlying prosecution after the filing date, July 16, 2002. Consequently, in regard to the probable cause and malice elements of the malicious prosecution claim, the only issue is whether Defendants maliciously filed the underlying action without probable cause.

In the context of a malicious prosecution claim, probable cause is "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious person to believe" that the essential facts alleged to constitute the stated claim are true. Plouffe v. Montana Dept. of Public Health & Human Services, 2002 MT 64, ¶ 18, 309 Mont. 184, ¶ 18, 45 P.3d 10, ¶ 18. Probable cause "is determined under an objective standard under the basis of facts known to the party initiating the legal action." Id. The issue of whether probable cause existed to "instigate civil litigation . . . is based on the totality of the circumstances." Plouffe, ¶ 19. Consequently, a "party may demonstrate probable cause for part of a claim, while a jury may still reasonably conclude that the party lacked probable cause to prosecute the action itself." Id. A person who initially has reason to believe that a claim has merit may nevertheless be "liable for proceeding without probable cause" if the person fails to "make such further inquiry or investigation as an ordinarily prudent man would have made in the same circumstances before instigating a proceeding." Rickman v. Safeway Stores, Inc. (1951), 124 Mont. 451, 458-459, 227 P.2d 607, 611-612. The jury may infer malice in a malicious prosecution claim

2

)                              )

if there is evidence that the Defendant instigated the underlying action without probable cause. <u>Plouffe</u>, ¶ 28;  <u>Rickman</u>, 124 Mont. at 456, 227 P.2d at 610.

In this case, as a consequence of Plaintiff's concession, evidence indicating that the subject painting <u>was</u> in fact an authentic Russell is not relevant to the issues of probable cause and malice unless Defendants had knowledge of the information prior to filing the underlying action.  Conversely, information indicating that the subject painting was <u>not</u> an authentic Russell is relevant to probable cause, malice, and ulterior motive or purpose because it tends to show what knowledge Defendants had, could have had, or should have had upon reasonable inquiry prior to instigating the underlying litigation.

Therefore, evidence indicating that the subject painting <u>was</u> in fact an authentic Russell is not admissible to prove or rebut the malicious prosecution elements of probable cause and malice unless Defendants had knowledge of the information prior to the filing date of the underlying action.  Conversely, evidence indicating that the subject painting was <u>not</u> an authentic Russell is admissible to prove the elements of probable cause, malice, and ulterior motive or purpose.

2.    <u>EVIDENCE IN RE FAVORABLE TERMINATION OF UNDERLYING PROCEEDING</u>.

In *Plaintiff's Second Motions In Limine*, filed August 11, 2004 (Doc. 285), Seltzer seeks an order *in limine* prohibiting Defendants from offering any evidence or argument contrary to the Court's prior ruling that the underlying proceeding terminated favorably for Seltzer.  In their *Response Brief*, filed October 4, 2004 (Doc. 339), Defendants do not contest Seltzer's motion, but further request an

3

)                                    )

order *in limine* barring any jury instruction, argument, or evidence related to the favorable termination element of Plaintiff's malicious prosecution claim.

In support of their motion, Defendants cite <u>Joseph Eve & Co. v. Allen</u>, 1998 MT 189, ¶ 26, 290 Mont. 175. ¶ 26, 964 P.2d 11, ¶ 26, and <u>Burk Ranches, Inc. v. State</u> (1990), 242 Mont. 300, 309, 790 P.2d 443, 448, for the proposition that it is error for the Court to instruct the jury to redetermine an issue previously resolved by the court by summary judgment.  <u>Joseph Eve</u> and <u>Burk Ranches</u> are inapplicable here because the Court has no intention of instructing the jury to redetermine the favorable termination element of the malicious prosecution claim previously determined by this Court upon summary judgment.

At trial, the Court will instruct the jury that the underlying litigation terminated in Seltzer's favor as a matter of law and that the jury is therefore precluded from finding otherwise.  This instruction is necessary to avoid redetermination of the issue by the jury, and more importantly, to avoid confusion and misapprehension of the evidence.  Consequently, except as a foundational fact for other relevant evidence, the parties may not present evidence related to the favorable termination element, but may reference the fact that the underlying action terminated in Seltzer's favor.

3.    <u>EVIDENCE OF POST-FILING PROCEDURAL AND FACTUAL MATTERS IN RE THE UNDERLYING LITIGATION</u>.

In their *Motion In Limine To Exclude All Evidence Of Procedural Matters In The Federal Action*, filed September 20, 2004 (Doc. 319), Defendants seek an order *in limine* barring Seltzer from introducing evidence regarding: (1) Defendants' discovery responses in the

4

)                                        )

underlying action; (2) a hearing in the underlying action at which Defendant Gladwell did not personally appear; (3) the federal court's initial denial of the *pro hac vice* applications of Defendants Gladwell and Heller; (4) Defendants' selection of local counsel; (5) the fact of Defendant Gladwell's inactive status as a member of the California Bar; and (6) other unspecified post-filing procedural and factual matters. In his *Brief In Opposition*, filed September 29, 2004 (Doc. 335), Seltzer asserts that evidence of these matters is not prejudicial and is probative of Defendants' malice and purpose in filing the underlying action.

The issue regarding the underlying discovery responses essentially involves the so-called Rievman letters. On their face, the two Rievman letters are highly probative insofar that they are relevant to whether one or more Defendants had direct knowledge, in advance of the underlying action, that the subject painting was in fact not an authentic Russell as previously believed. Contrary to Defendants' assertion, the Rievman letters appear to have been squarely within the scope of one or more discovery requests in the underlying action, *i.e.*, Seltzer's Interrogatory Nos. 6 and 19, and Request for Production Nos. 8, 11, and 21. Consequently, the fact that Defendants did not produce the Rievman letters in response to those discovery requests is not unduly prejudicial and is relevant to Seltzer's assertion that they maliciously filed the underlying lawsuit against him without probable cause and in furtherance of an ulterior purpose. Therefore, Defendants motion *in limine* to exclude this evidence is hereby denied. However, absent a more sufficient offer of proof, evidence regarding Gladwell's failure to appear at hearing, the

5

)                                     )

initial denial of the *pro hac vice* applications, Defendants' selection of local counsel, and Gladwell's status as a member of the California Bar is not admissible in accordance with M.R.Evid. Rules 402 and 403.

In regard to other unspecified post-filing factual and procedural matters, evidence of the entire course of conduct between the parties is relevant to show malice notwithstanding that some of the conduct occurred subsequent to the legal wrong at issue. Safeco Ins. Co. v. Ellinghouse (1986), 223 Mont. 239, 251, 725 P.2d 217, 225. Thus, although the question of what Defendants knew and intended at the time of filing of the underlying action is the crux of this case, Defendants' entire course of conduct, both before and after the filing date, is probative of their purpose, intent, and whether they acted maliciously in filing the underlying action. Accordingly, Defendants' motion to preliminarily exclude all other post-filing factual or procedural matters is hereby denied.

4.    EXPERT TESTIMONY OF TOM L. LEWIS ESQ.

In their *Motion In Limine To Exclude Expert Testimony*, filed September 20, 2004 (Doc. 321), Defendants seek an order *in limine* barring Seltzer from presenting the expert testimony of Tom L. Lewis, Esq., on the asserted grounds that it will include improper legal conclusions, is speculative, lacks foundation, or is irrelevant. The subject matter of Mr. Lewis' proposed testimony is set forth in *Plaintiff's List Of Witnesses*, filed June 1, 2004 (Doc. 264), and *Plaintiff's Brief In Opposition*, filed September 30, 2004 (Doc. 338).

Expert testimony is admissible if "technical or other specialized knowledge will assist the trier of fact to understand the evidence or

6

)                                        )

to determine a fact in issue." M.R.Evid. Rule 702. As recently

stated by the Montana Supreme Court:

> Rule 705, M.R.Evid., allows an expert to testify as to his
> opinions or inferences and Rule 704, M.R.Evid., further allows an
> expert to present opinions and inferences that may embrace the
> ultimate issues to be decided by the jury. We distinguish
> ultimate issues of fact from ultimate issues of law because legal
> conclusions offered by an expert witness invade the province of
> the jury whose duty it is to apply the law as given in the jury
> instructions to the facts of the case. Such expert opinions on
> the law can be highly prejudicial. . . . While an expert
> witness may properly testify as to an ultimate issue of fact,
> expert opinion that states a legal conclusion or applies the law
> to facts is inadmissible.

Perdue v. Gagnon Farms, Inc., 2003 MT 47, ¶ 28, 314 Mont. 303, ¶ 28,

65 P.3d 570, ¶ 28.

M.R.Evid. Rule 703 "anticipates that experts form opinions and

inferences based upon first-hand observations, facts presented at

trial and information obtained outside the courtroom prior to trial."

Perdue, ¶ 34. Accordingly, an "expert witness may rely upon

inadmissible evidence when forming an opinion," but Rule 703 generally

does not permit an expert to introduce otherwise inadmissible hearsay

as substantive evidence "to bolster his or her expert opinions before

the jury." Perdue, ¶ 34.

However, an expert may directly state or introduce otherwise

admissible facts if the expert based his or her opinion on those

facts. See Perdue, ¶ 35; Keus v. Brooks Drug, Inc. (Vt. 1994), 652

A.2d 475, 478-79; Turner v. Burlington No. Santa Fe R.R. Co. (9th Cir.

2003), 338 F.3d 1058, 1060-61; Genrich v. California (Cal. Ct. App.

1988), 248 Cal. Rptr. 303, 308-09; Maine v. Marques (Me. 2000), 747

A.2d 186, 190. Moreover, although an expert may not repeat or

introduce otherwise inadmissible evidence as substantive evidence of

the matter asserted, an expert may repeat or introduce otherwise

7

)                                    )

inadmissible evidence *for the limited purpose* of explaining the basis of his opinion upon sufficient foundation and the court's finding that:

(1)  the expert reasonably relied upon the evidence;

(2)  the evidence is of a type reasonably relied upon by experts in a particular field; and

(3)  the evidence meets minimum standards of reliability and trustworthiness.

See Mason v. Ditzel (1992), 255 Mont. 364,372-75, 842 P.2d 707, 713; Emigh v. Consolidated Rail Corp. (W.D. Pa. 1989), 710 F.Supp. 608, 611-12; Estate of Kelly (Iowa Ct. App. 1996), 558 N.W.2d 719, 721; New Jersey v. Vandeweaghe (N.J. 2002), 799 A.2d 1, 19-20; City of Chicago v. Anthony (Ill. 1990), 554 N.E.2d 1381, 1388-89; Lovelace v. Four Lakes Devel. (Ill. App. 1988), 523 N.E.2d, 1335, 1338-40.  Similarly, although an expert may not testify as to conclusions of law or an opinion of how the law applies to facts, a qualified legal expert may state an opinion as to another's "duty to evaluate the facts, on what constitutes a reasonable evaluation of the facts," or as to how another should have approached the legal dispute at issue.  See Safeco, 223 Mont. at 251; 725 P.2d at 224-225.

By the nature of the claims at issue, this case involves jury consideration of facts regarding technical legal concepts typically beyond the common knowledge of lay persons.  Defendants apparently do not dispute the basic qualifications of Tom L. Lewis as a lawyer and legal expert.  Pursuant to M.R.Evid. Rule 702, the Court recognizes Mr. Lewis as a qualified legal expert and further concludes that his testimony will assist the jury in understanding the evidence and determining facts issue at trial.

8

)                                              )

Accordingly, upon presentation of sufficient foundation testimony that Mr. Lewis examined, analyzed, and relied upon all relevant pleadings, documentary exhibits, and depositions, _and_ that such evidence is the type reasonably relied upon by legal experts to form opinions on this subject matter, he may properly testify to the following matters on direct examination:

(1)  all facts upon which he based a permissible opinion and which are otherwise admissible under M.R.Evid. Rules 702-05;

(2)  the general nature and process of a lawsuit, including alternative means of dismissal and the nature of a summary judgment motion;

(3)  the role of an attorney in a lawsuit;

(4)  the meaning and significance of status as counsel of record;

(5)  a description of the distinction between a dismissal with prejudice and one without prejudice;

(6)  an opinion as to whether Defendants should have or could have obtained expert opinion to support the underlying claims prior to filing;

(7)  an opinion as to what action or investigation Defendants could have or should have conducted prior to filing the underlying action;

(8)  an opinion as to the potential legal consequence of the Forrest Fenn deposition on the summary judgment motions pending in the underlying action;

(9)  the nature and consequences to Seltzer of Defendants' attempts to seek attorney fees from him in the underling litigation;

(10) a description or opinion as to the alternative legal means available to Defendants to discover and/or verify Seltzer's expertise as an art expert prior to filing the underlying action against him;

(11) a description of the nature of the legal threat Seltzer faced as a result of the claims asserted in the underlying litigation;

)                                    )

(12) an opinion as to why Defendants could have or should have reviewed the files of the Amon Carter Museum and Kennedy Galleries prior to commencing the underlying litigation against Seltzer;

(13) an opinion as to the impact that the Rievman letters could have or should have had on Defendants' decision to file the underlying claims against Seltzer;

(14) a description of the nature and an opinion as to whether the Morton's attorney fee agreement with Defendants Gladwell and *Gibson, Dunn, & Crutcher* was consistent with or reflected the scope of litigation threatened against Seltzer;

(15) an opinion as to the practical necessity and/or desirability of Seltzer's homestead declaration and contemplation of bankruptcy in the face of the underlying litigation;

(16) a description of the nature, function, and role of local counsel in a lawsuit such as the underlying action;

(17) a description of the nature and effect of *pro hac vice* status;

(18) an opinion as to the strategic and/or tactical advantage that a large nationally-prominent law firm would have against an individual like Seltzer;

(19) a description and opinion as to the nature and need for Seltzer's attorney fee agreement and of attorney fees incurred or claimed by Seltzer as damages;

(20) an opinion as to why settlement of the underlying litigation was or was not in Seltzer's interest at any point in the litigation;

(21) a description or opinion as to the nature of the legal mechanisms available to Defendants for compelling disclosure of any potentially relevant trade secret claimed by Seltzer in relation to the underlying litigation;

(22) a description and opinion as to the alternative legal means available to Defendants and Seltzer to balance the need to protect any claimed trade secrets and Defendant's need to compel disclosure of potentially relevant information in relation to the underlying litigation;

(23) an opinion as to the potential attorney time and cost of attorney fees required to litigate to conclusion claims such as those asserted by Defendants in the underlying action;

(24) an opinion as to whether he believes Defendants had sufficient facts to proceed with the claims asserted against Seltzer in the underlying litigation at the time of filing; and

10

)                              )

(25) an explanation of the Defendants' legal posture in the underlying summary judgment proceeding vis-à-vis Defendants' posture with Amon Carter Museum and the Kennedy Galleries.

Pursuant to M.R.Evid. Rules 402, 403, 702, and 704, the foregoing matters are admissible to prove the elements of Seltzer's abuse of process claim and probable cause and malice elements of his malicious prosecution claim. However, except as required on cross examination under M.R.Evid. Rule 705, and notwithstanding any other provision of this order, Mr. Lewis may not testify to any of the following matters:

(1)  opinions constituting conclusions of law, particularly including but not limited to conclusions regarding the elements of Seltzer's malicious prosecution and abuse of process claims;

(2)  opinion or analysis applying the law to facts;

(3)  opinion, analysis, or comment on the concept of favorable termination in relation to the malicious prosecution claim or comment upon the Court's prior ruling in regard thereto, except to explain that the federal court did not determine whether the painting was a Russell or a Seltzer;

(4)  an opinion as to whether any of Defendants' conduct constituted a violation of the M.R.Civ.P., Fed.R.Civ.P., or any other law, legal duty, or rule of court;

(5)  an opinion or comment as to Defendants' knowledge, or lack thereof, of the local rules of procedure of the U.S. District Court in relation to the underlying action;

(6)  an opinion or comment on the propriety of Defendants' efforts to obtain local counsel;

(7)  an opinion or comment on the propriety of Defendant Gladwell's failure to travel to Montana for hearings in the underlying action;

(8)  an opinion or comment on the fact and significance of Defendants' failure to plead diversity of citizenship as a jurisdictional basis for the underlying federal court action;

(9)  an opinion or comment on the fact and effect on Seltzer of his lack of insurance coverage for the claims asserted against him in the underlying action;

11

(10) an opinion or comment as to the purpose or intent of Defendants, or any of them, in filing and prosecuting the underlying action in regard to any specific act or conduct in furtherance thereof;

(11) an opinion or comment as to the reason why Defendants did or did not take formal legal action against the Amon Carter Museum and Kennedy Galleries in lieu of or in conjunction with the underlying action against Seltzer;

(12) an opinion or comment as to the hypocrisy of Defendants' attempt to seek punitive damages against Seltzer in the underlying litigation and their condemnation or criticism of the pursuit of punitive damages in marketing materials;

(13) a description or explanation of the nature of M.R.Civ.P. Rule 30(b)(6);

(14) an opinion or comment on the propriety of Defendants' efforts, if any, to·sell the subject painting to third parties upon discovery of a question as to its authenticity;

(15) an opinion or comment as to the reasonableness potential viability, or chance of success of Defendants' underlying claims at the time of filing; and

(16) any fact not admissible under M.R.Evid. Rules 702-05 or otherwise under other rules of evidence.

5.   **EXPERT TESTIMONY OF DENNIS KERN AND DUANE CHARTIER.**

In his *Second Motions In Limine*, filed August 11, 2004 (Doc. 285), Seltzer seeks an order *in limine* barring Dennis Kern from presenting expert testimony regarding the insufficiency of Seltzer's authentication methodology, the significance of deaccession of the painting by the Amon Carter Museum, the sufficiency of the painting's provenance, and the effect of Seltzer's failure to state or explain the basis of his opinion to Defendants incident to the underlying litigation.   Seltzer similarly seeks an order *in limine* barring Duane Chartier from presenting expert testimony regarding the insufficiency of Seltzer's authentication and visual inspection methodology, the sufficiency of the painting's provenance, and the reasonableness of

12