John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH, | Cause No. CV-07-166-BLG-CSO |
| Plaintiff, | Judge Carolyn S. Ostby |
| vs. | |
| JOHNSON, RODENBURG & LAUINGER. | **RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION ON MOTION TO COMPEL CONFIDENTIAL SETTLEMENT** |
| Defendant. | **AGREEMENT** |

## BACKGROUND

Plaintiff filed this lawsuit against both JRL and its debt buyer client CACV alleging claims under the FDCPA, Montana UTPA, abuse of process and malicious prosecution.  CACV settled with Plaintiff prior to filing its Answer.  JRL, on the other hand, has vigorously litigated this case, even now and still.

JRL previously moved to compel the settlement agreement on November 11, 2008, arguing the settlement was relevant to potential offset.  Plaintiff responded by arguing, among other things, that JRL's offset argument was not ripe until the

jury accesses liability and damages.  On November 21, 2008, this Court held that JRL violated the FDCPA by seeking attorney's fees against Plaintiff without a contractual basis.  (Docket No. 75 at 17-18.)  A month after the Court issued summary judgment against JRL, it issued an Order denying Defendant's Motion to Compel the Settlement Agreement.  (Docket No. 94.)  The Court specifically held:

> Having considered the parties' arguments, the Court agrees with McCollough that JRL's motion and arguments with respect to offset are premature. The discrete motion before the Court is one in which JRL seeks an order compelling McCollough to produce his confidential settlement agreement with CACV.  JRL's sole basis for seeking the agreement is to allow it to determine the amount of offset it claims it is entitled to in the event McCollough obtains a judgment against it. *JRL's Br. at 3-4.*
>
> This case has not yet been tried to a jury.  No judgment has been entered. The issue of offset of damages is not yet before the Court and, indeed, may never come before the Court in this matter.  It would be premature for the Court to address offset at this juncture.  To address offset now would be tantamount to an advisory opinion. *In re North*, 383 F.3d 871, 877 (9th Cir. 2004) (citing, *inter alia*, *Calderon v. U.S. Dist. Ct.*, 134 F.3d 981, 989 (9th Cir. 1998) (concluding that "any
>
> ruling as to the legitimacy of a step not yet taken would be tantamount to an advisory opinion"), *abrogated on other grounds* as reflected in 144 F.3d 618 (9th Cir. 1998)).  Accordingly, the Court will deny JRL's motion without prejudice to renewal of the motion as appropriate.

(*Id.* at 8-9.)  The clear import of the Court's Order was that JRL was free to renew its motion if and when damages had been assessed and a judgment entered.

Not content to wait until after trial, JRL served a subpoena on CACV seeking the settlement agreement.  CACV asked JRL (its attorneys) to withdraw the subpoena.  When JRL refused, CACV filed a Motion to Quash the Subpoena in the United States District Court for the District of Colorado.  Thus, a case file was opened entitled *McCollough v. Johnson, Rodenburg & Lauinger*, Cause No. 09-cv-00009-CMA-CBS (Magistrate Judge Craig B. Schaffer presiding).  The undersigned was then forced to be admitted into the District of Colorado so that he could protect Mr. McCollough's interests there.  The matter was fully briefed again, only this time JRL asserted as its sole argument that the settlement agreement was relevant to show potential bias by a CACV employee who JRL itself had called as a witness.  (*See* JRL Brief in Opposition to Motion to Quash attached hereto as Exhibit "A".)

A hearing on the Motion to Quash was set in the federal courthouse in Denver.  At significant cost, Mr. McCollough appeared through the undersigned. Magistrate Judge Schaffer advised that he had read this Court's Order Denying Motion to Compel Settlement Agreement, and felt JRL was attempting a second try at the same discovery through a different federal judge.  Judge Schaffer indicated that he therefore did not reach the merits of JRL's argument.  Judge

Schaffer granted the Motion to Quash and dismissed the Colorado action. (Order of Dismissal attached hereto as Exhibit "B".)

Following the denial of the settlement by the District of Colorado, JRL now moves this Court to reconsider its previous Order and compel the confidential settlement agreement, this time arguing the settlement is somehow relevant to establish Plaintiff's bias. For the reasons set forth herein, Plaintiff respectfully requests that the Motion for Reconsideration be denied, and that the Court re-visit the discoverability of the settlement agreement following the jury's verdict and this Court's entry of judgment.

## LEGAL ARGUMENT

### 1. JRL's Offset Argument is Still not Ripe Until the Jury Accesses Damages and Judgment is Entered.

This Court has previously held that issues of offset would not be ripe for resolution until a jury assesses damages and judgment is entered. In the Court's March 9th status conference, the Court indicated that its rulings on summary judgment motions might make the offset issue ripe. The Court had already assessed FDCPA liability against JRL in one regard at the time it denied JRL's Motion to Compel. No damages have been assessed, so offset issues are still not ripe. Notably, JRL has not argued that any circumstances have changed which

bolster its previous offset argument.[1]  Tellingly, JRL omits any type of concession in its Motion for Reconsideration that the settlement should be discovered because liability has now become more clear.    JRL will not be prejudiced by waiting until after trial (which is only a few short weeks away) to renew its offset argument.

**2.    JRL Must Overcome the Courts' Strong Policy Interests in Preventing the Discovery of Confidential Settlement Agreements.**

Courts maintain a strong public policy interest in enforcing the terms of a confidential settlement agreement.  *Hannah v. General Motors Corp.*, 969 F. Supp. 554,558 (D. Ar. 1996) *citing Haworth, Inc. v. Herman Miller, Inc.*, 998 F.3d 975, 978 (Fed. Cir. 1993); *see also Hudspeth v. C.I.R.*, 914 F.2d 1207 (9th Cir. 1990) (Federal Rule of Evidence 408, providing that evidence of compromise is not admissible to prove liability for or invalidity of claim or its amount, applies to cases in which party seeking to introduce evidence of compromise was not involved in original compromise.)  Thus, under the majority rule, confidential settlement agreements should be kept confidential barring some special circumstances.  No special circumstances exist here.  (Plaintiff respectfully suggests that the settlement agreement should be ordered submitted for the Court's *in camera* review to confirm as much.)

---

[1] To the extent this Court is inclined to revisit the merits of JRL's offset argument, Plaintiff would respectfully incorporate by reference his previously filed Brief in Opposition to JRL's Motion to Compel Settlement Agreement (Docket No. 78.)

**3.    The Plaintiff's Own Bias is Not a Legitimate Basis to Overcome the Public Policy Interests of Keeping Confidential Settlement Agreements Confidential.**

As set forth above, JRL argued in the Colorado proceeding that the settlement was relevant to show a CACV employee's potential bias.  (*Compare* JRL's Brief here with JRL's Brief in the Colorado action.)  The CACV witness' trial perpetuation testimony has now been taken by JRL.  With that argument gone, JRL now asserts the settlement would be relevant to show Plaintiff's own bias.  *See* JRL Brief at 9 ("If McCollough testifies that he was damaged in the amount of $500,000 but settled with CACV for $1,000, evidence of the settlement amount would be admissible to impeach McCollough's testimony as to damages.")

JRL has offered this Court no legal authority for the proposition that a settlement is admissible against the plaintiff to attack damages.  A plaintiff, by his very status and interest in the outcome in the litigation, is inherently biased. Indeed, the *Reichenbach v. Smith* decision relied upon by JRL supports Plaintiff's position in this regard.  In *Reichenbach,* the defendant contended it was error for the trial court to refuse to allow the plaintiff to be questioned as to a settlement with a former co-defendant.  528 F.2d at 1074.  The Fifth Circuit affirmed the trial court's ruling in this regard, holding in pertinent part:

> A primary reason for excluding evidence of a compromise is to encourage non-litigious solutions to disputes. Admission of evidence of the settlement could work to discourage plaintiffs and defendants from settling with one or more of several codefendants.  With today's

burgeoning dockets and the absolute impossibility of Courts ever beginning to think that they might even be able to hear every case, the cause of justice is advanced by settlement compromises sheparded by competent counsel, whose experience as advocates makes them reliable predictors of litigation were it pursued to the bitter end.

…

In deciding whether to permit or limit cross-examination of a party, here Ms. Reichenbach, concerning a settlement with a codefendant, the trial court must balance the policy of encouraging settlements with the need for evaluating the credibility of the witnesses. We appreciate possible tensions created by these policies which Rule 408 now formally recognizes. The importance of informing the jurors fully so that they can carefully judge the credibility of each witness in making their fact determination may in some situations outweigh the desire to encourage settlements. But this choice must be made in the first instance by the trial judge.

Here the trial court decided that the factfinding process would not be materially advanced by permitting cross-examination of the plaintiff about a trial-time settlement. Perhaps the trial judge concluded that the nature of the relationship between Ms. Reichenbach and Woodcock, her friend and escort which the jury knew full well, was sufficient in the jury's judging the credibility of her recitation of the facts of the collision. In addition, because the witness was also the plaintiff, her inherent interest in the outcome of the litigation may have been too manifest to require further proof through impeachment. In this instance, aware of the broad discretion of the trial judge to run the trial, we are unable to find harmful error.

*Id.* at 1075 (citations omitted, emphasis added.)  As in the *Reichenbach* decision,

Plaintiff, solely by virtue of his "plaintiff's status," is inherently interested in the

outcome of this case, and it is therefore unnecessary to impeach him with the

settlement.

The fact that JRL has raised this "Plaintiff bias" argument only after it made

and lost two different arguments (offset and CACV bias) further undercuts JRL's

newfound argument in this regard. JRL is more concerned about trying to prematurely determine the merits of its offset argument than it is about trying to impeach Plaintiff's bias.

**4.    Under No Circumstances should the Amount of the Settlement be Admitted at Trial.**

JRL's sole "bias" argument is that the amount of the settlement with CACV would be admissible to impeach the amount of damages Plaintiff claims at trial. If the Court is inclined to allow JRL to impeach Plaintiff as to the existence of a settlement between himself and CACV at trial, it should nevertheless refuse to allow the amount of the settlement to be discovered or admitted into evidence. *See Collins v. Mike's Trucking Co., Inc.,* 934 So.2d 827 (La.App.1.Cir. 2006) (while evidence of a settlement may be admissible to prove bias of a witness, the amount paid in the settlement is not admissible.)

Allowing JRL to backhandedly argue offset to the jury would be wholly improper, and would open the door to a host of issues. For instance, if JRL made the argument alluded to in its Brief, then the door would be opened, and Plaintiff would be <u>forced</u> to explain why he settled with CACV for the particular amount. This explanation could include the fact that JRL has insurance for this claim; that JRL's insurance carrier has a reputation for "playing hardball" and funds would be necessary so as not be overwhelmed by a more financially powerful opponent; that Plaintiff perceived JRL as dramatically more culpable than CACV; or other

circumstances which would not be otherwise admissible at trial, but which would necessarily become relevant once the amount of the settlement with CACV were injected into the trial.

## CONCLUSION

Plaintiff requests that the Court order Plaintiff to submit the agreement for *in camera* review prior to determining whether it must be produced to JRL.  Plaintiff respectfully submits that the circumstances regarding offset have not changed since this Court issued its December 24, 2008 Order.  The Court should reserve ruling on the offset issues until after a judgment is entered, at which point there will be no speculation.   JRL has not articulated any particular reason why Plaintiff's settlement with CACV would render him any more biased.  For all these reasons, Plaintiff requests that the Motion for Reconsideration be denied.

DATED this 19th day of March, 2009.

HEENAN LAW FIRM


*/s/ John Heenan*
John Heenan
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)

This brief complies with the type-volume limitation of Local Rule 7.1(d))2)(E) [6500 words for briefs; 3250 words for reply briefs], and contains less than 6500 words, excluding the caption and certificates of service and compliance.

DATED this 19th day of March, 2009.

HEENAN LAW FIRM


*/s/ John Heenan*
John Heenan
Attorney for Plaintiff