IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 09-cv-00009-CMA-CBS

JUNE TIFT and TIMOTHY McCOLLOUGH,

Plaintiffs,

v.

JOHNSON, RODENBURG & LAUINGER,

Defendant.

---

**DEFENDANT JOHNSON, RODENBURG & LAUINGER'S BRIEF OPPOSING CACV OF COLORADO, LLC'S MOTION TO QUASH AND SUBPOENA AND MOTION FOR PROTECTIVE ORDER**

---

Johnson, Rodenburg & Lauinger, files this brief opposing CACV of Colorado, LLC's

motion to quash subpoena and motion for protective order.

**INTRODUCTION**

Timothy McCollough ("McCollough") filed a complaint in the United States District

Court in Montana against Johnson, Rodenburg & Lauinger ("JRL") and CACV of Colorado,

LLC ("CACV") alleging they engaged in abusive, harassing and unlawful debt collection

activities.  A copy of McCollough's complaint is attached hereto as **Exhibit A**.  McCollough

alleged that CACV, by and through the Smith Law Firm, filed a debt collection action against

him on August 22, 2005, arising out of a Chase Manhattan credit card he received in the early

#1388014 v1 den

1990's.  This lawsuit was dismissed a few months after it was filed.   McCollough alleged that CACV, by and through JRL, filed a second complaint against him on April 17, 2007, arising out of the same debt.  This lawsuit was dismissed in December of 2007.

McCollough alleges JRL and CACV violated the Fair Debt Collection Practices Act ("FDCPA") in several respects: (1) engaging in harassing and abusive conduct, (2) using unfair and unconscionable means to collect a debt, (3) filing a lawsuit against him on a time-barred debt, (4) collecting debts and seeking fees not permitted by law, (5) attempting to seize on the vulnerabilities of a disabled litigant through the legal system, and (6) filing lawsuits against him after being put on notice his only source of income was Social Security Disability.  McCollough also alleged that CACV's and JRL's conduct violated the Montana Unfair Trade Practices and Consumer Protection Act, constituted malicious prosecution and an abuse of process.

Shortly thereafter, McCollough reached a settlement agreement with CACV and filed an amended complaint which left JRL as the sole defendant in the case.  The amended complaint made the same allegations as the original complaint. The only change was the removal of CACV as a defendant.

In representing CACV in its debt collection lawsuit against McCollough, JRL noticed the lawsuit appeared to be barred by the statute of limitations. *See* November 11, 2008 Statement of Undisputed Facts, ¶ 14, a copy of which is attached hereto as **Exhibit B**.  JRL informed CACV of this fact. *Id.*  CACV responded to JRL by informing it that McCollough had made a payment on the account on a date which brought the debt within the statute of limitations.  *Id.*  Based on CACV's representation, JRL filed the lawsuit against McCollough alleging he was liable for the debt to CACV.  Several months later, CACV informed JRL that McCollough had not made a

2

payment on the account as it had originally represented to JRL.  *See* Statement of Genuine Issues #2, ¶ 5, a copy of which is attached hereto as **Exhibit C**.   However, at that time nobody at JRL recognized that this lack of payment meant the debt was barred by the statute of limitations.  JRL served McCollough with written discovery which included interrogatories and requests for admission.  *Id.*, ¶ 7.  McCollough hired counsel and responded to the discovery requests by denying that he owed the debt.  *Id.*  Shortly thereafter, CACV realized that its lawsuit was barred by the statute of limitations and directed JRL to dismiss its case.  *Id.*, ¶ 6.  McCollough then filed his lawsuit against JRL and CACV.

JRL served McCollough with written discovery for production of the settlement agreement between McCollough and CACV.  McCollough objected to the discovery so JRL filed a motion to compel.  JRL argued the terms of the settlement and amount of the settlement were relevant to the issue of whether it will be entitled to an offset against any judgment entered against it.  The federal district court in Montana issued its order on December 24, 2008, denying JRL's motion to compel as premature since a jury has not yet awarded any damages.

JRL also sought to obtain the settlement agreement and release documents from CACV via a subpoena.  The subpoena was dated November 3, 2008, and served on CACV on November 14, 2008.  A copy of the subpoena and affidavit of service are attached hereto as **Exhibit D**.

JRL's subpoena commanded CACV to produce "any and all documents, related to your settlement with the Plaintiff Timothy McCollough including releases and settlement

3

agreements[1]." Thus, the subpoena was very narrow and only sought the production of the settlement agreement and releases related to the settlement between McCollough and CACV. CACV's motion to quash essentially raises four arguments: (1) relevance of the documents, (2) confidentiality of the agreement, (3) undue burden, and (4) the rules of professional conduct. As the Court will see, none of these arguments are persuasive and the subpoena should be enforced.

## ARGUMENT

Fed. R. Civ. P. 26(b)(1) sets forth the scope of discovery:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. ...

Pursuant to Rule 26(b)(1), discovery in a civil action is broad, allowing for discovery regarding any non-privileged matter that is relevant to a claim or defense. *Jackson v. CCA of Tenn., Inc.*, 254 F.R.D. 135, 138 (D.D.C. 2008). "Relevance"at the discovery stage is broadly construed to include information which is not admissible at a trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* "Relevancy" has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Streck, Inc. v. Research & Diagnostic Systems, Inc*., 250 F.R.D. 426, 436 (D.Neb.

---

[1]CACV's brief quotes different language but counsel for CACV confirmed in an e-mail that the subpoena it was seeking to quash was the subpoena dated November 3, 2008, which is attached hereto as Exhibit D.

#1388014 v1 den

2008)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 240, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)).  Discovery should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should be allowed unless it is clear the information sought can have no possible bearing on the subject matter of the action.  *Id.*

In the case at bar, the settlement agreement between McCollough and CACV is relevant to the claims being asserted by McCollough under the FDCPA.  In particular, the information is relevant to any bias or prejudice of CACV's witnesses who may testify at trial.

Numerous federal courts have recognized that settlement information is discoverable even though it may not be admissible at trial.  In *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 769-70 (10th Cir. 1997), the court concluded a settlement agreement was admissible to show a subcontractor was not at fault for construction delays.  Obviously, if the settlement information was admissible, it was discoverable.  In *Computer Assoc. International, Inc. v. American Fundware, Inc.*, 831 F.Supp. 1516, 1531 (D.Colo. 1993), the court noted that settlement information which may not be admissible at trial is still discoverable so long as the information may lead to the discovery of admissible evidence.  In *Morse/Diesel, Inc. v. Trinity Industries, Inc.*, 142 F.R.D. 80, 84 (S.D.N.Y. 1992), the court noted that consistent with Rule 26(b)(1), settlement materials are discoverable if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The settlement agreement and release are relevant to the issue of witness bias or prejudice.  Fed. R. Evid. 408 generally excludes evidence regarding settlements or offers to settle.  However, Rule 408 recognizes there are exceptions to the rule.  One of the recognized exceptions is when evidence of a settlement or offers to settle is admitted for the purpose of

5

showing a party's bias or prejudice.  Again, if evidence of a settlement is admissible to show bias or prejudice, the evidence must be discoverable.

In the case at bar, CACV is taking the position that it had nothing to do with the underlying debt collection lawsuit being filed and prosecuted against McCollough.  CACV's motion to quash and for protective order argues the subpoena is not seeking relevant documents "... where CACV has not engaged in any direct collection activity or was in any way involved in the collection activity of the party Defendants."  CACV's Motion for Protective Order, Objections and Motion to Quash, ¶ 8.  This is directly at odds with the evidence developed in discovery which shows the lawsuit against McCollough was filed only after CACV asked JRL to prosecute its debt collection lawsuit against McCollough and represented to JRL that the debt was within the statute of limitations because McCollough had made a payment within the preceding 5 year period.  Exhibit B, ¶ 14.  It was only months later, after the lawsuit had been filed, that CACV informed JRL that McCollough had not made a payment within the limitations period.  Exhibit C, ¶ 5.  However, nobody at that time realized that a lack of payment meant the lawsuit was barred by the statute of limitations so the litigation proceeded forward.  Thus, it is obvious that CACV played a primary role in the filing of the underlying debt collection lawsuit from which it now seeks to distance itself.

JRL is scheduling the trial perpetuation depositions of CACV employees located in Colorado in March of 2009 since they cannot be compelled to attend a trial in Montana.  The settlement agreement and release information are relevant to show potential witness bias or prejudice in their testimony.  JRL will not get a second chance to perpetuate the testimony of these individuals so it needs the settlement agreement and release information before the

6

depositions are taken.  Assuming these witnesses may try to downplay CACV's role in the underlying debt collection lawsuit, the settlement agreement and release would be relevant to show a potential bias or prejudice of the witnesses in their testimony.  Thus, the settlement agreement and release are relevant and discoverable.

That secretive settlement agreements can be far reaching is well illustrated by a case described in the December 27, 2008, issue of Montana Law Week [2].  A copy of this Montana Law Week is attached hereto as **Exhibit E**.  The case of *DeVries v. Guy/Braun and Jacques/Frey*, Yellowstone County Cause No. DV 07-1600, which is discussed under the "State Trial Courts" heading demonstrates how secretive settlement agreements can be manipulative if discovery is not permitted.  DeVries obtained a confession of judgment from Jacques/Frey. Guy/Braun moved to compel production of the settlement agreement which the district court ordered. The settlement agreement was produced and revealed the following: Jacques/Frey had given secretive statements which were not produced with the settlement agreement, they agreed to cooperate with DeVries' counsel and verify their secret statements at trial, they agreed their secret statements could be used for all purposes at trial at the discretion of DeVries' counsel, they agreed to hold the settlement agreement and their secret statements in the utmost confidence and not disclose any of it to Guy/Braun or their attorneys, they agreed not to communicate with Guy/Braun or their attorneys and agreed to contact DeVries' counsel if such contact was made. Additionally, DeVries agreed not to prosecute the case any further against Jacques/Frey, not to

---

[2]The Montana Law Week gives attorneys a short synopsis of recent decisions issued by the Montana Supreme Court, State Trial Courts, Federal Courts and the Workers Compensation Court.  It is not an official source such as the Pacific Reporters or the Federal Reporters.

execute on the confessed judgment and to satisfy the judgment at the conclusion of the case. Obviously, the "confidential" settlement agreement and the "secret statements" were relevant to witness bias and prejudice. This Court should enforce the subpoena served on CACV to ensure that JRL has access to all information which might bear on the credibility or bias of CACV's witnesses.

CACV also argues the settlement agreement and release documents are "confidential" because they contain a confidentiality clause. The fact that McCollough and CACV agreed that the settlement agreement would be kept confidential does not mean it is not discoverable. Fed. R. Civ. P. 26(b)(1) permits discovery of all relevant information unless the information is privileged. While the law recognizes numerous privileges, including the spousal privilege, attorney-client, doctor-patient, clergy confessional privilege and psychologist-patient privilege, generally speaking no privilege attaches to settlement agreements. Nor does CACV identify such a privilege in its brief. Several federal courts have noted that Fed. R. Evid. 408, which generally prevents settlement information from coming before the jury, does not create any kind of settlement privilege. *Computer Associates*, 831 F.Supp. at 1531 (Rule 408 is not a broad discovery privilege); *Morse/Diesel*, 142 F.R.D. at 84 (Rule 408 does not create any kind of settlement privilege for discovery purposes). The settlement agreement and release between McCollough and CACV is discoverable even though the parties to the agreement termed it "confidential" since it is not protected from discovery by any statutory privilege.

CACV also argues that enforcement of the subpoena would subject it to an undue burden in producing the subpoenaed documents. CACV's argument is misplaced since it quoted the Court to language not contained in the November 3, 2008, subpoena. The subpoena at issue

8

requests CACV produce "any and all documents, related to your settlement with the Plaintiff Timothy McCollough including releases and settlement agreements." The settlement agreement, if there is one, would likely be no more than a few pages in length. The only other documents which would fall within the scope of the subpoena would be correspondence from CACV to/from McCollough's counsel which discusses the settlement which was eventually reached. In all, CACV is arguing it is an undue burden to produce what is in all likelihood 10-20 pages of documents, most of which are likely easily accessible in its computers. CACV has not presented any evidence to show that it would actually be an undue burden to produce the subpoenaed documents. Therefore, the Court should enforce the subpoena.

Finally, CACV argues that Rules 1.2 and 1.8 of the rules of professional conduct prevent it from producing the settlement information. CACV's argument in this regard is misplaced. The rules deal with the scope of representation between an attorney and his or her client. CACV and JRL were in an attorney-client relationship with regard to the underlying debt collection lawsuit filed against McCollough. JRL also represents CACV in other debt collection lawsuits. However, CACV and JRL are not in an attorney-client relationship in the case at bar. Rule 1.2 does not apply to the case at hand since JRL is not representing CACV in this case. Rule 1.8 prevents an attorney from using information related to the representation of a client to the disadvantage of that client. CACV does not provide any guidance as to how this rule applies to preclude production of the settlement information requested in the subpoena. Since JRL did not represent CACV with respect to its settlement with McCollough, the rule does not apply. Therefore, the Court should enforce the subpoena.

9

## CONCLUSION

For the reasons and arguments set forth above, the Court should deny CACV's motion to quash and motion for a protective order. The Court should enforce the subpoena and order CACV to produce the requested documents.

Dated this 3rd day of February, 2009.

/s/ J. Fred Simpson, Jr.

J. Fred Simpson, Jr.
BOHYER, SIMPSON & TRANEL, P.C.
283 West Front, Suite 201
P.O. Box 7729
Missoula, Montana  59807
Telephone:     (406) 532-7800
Facsimmile:    (406) 549-2253
Email: fsimpson@bstlawfirm.com

Paul J. Lopach
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
Telephone:     (303) 861-7000
Facsimile:     (303) 866-0200
Email: paul.lopach@hro.com

ATTORNEYS FOR DEFENDANT

10

#1388014 v1 den

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John C. Heenan, esq.
HEENAN LAW FIRM
2602 1st Avenue North, Suite 305
Billings, Montana  59101

Manuel H. Newburger
BARRON, NEWBURGER, SINSLEY &
WIER, PLLC
1212 Guadalupe Street, Suite 102
Austin, Texas  78701

*/s/ Teri Armstrong* _____
 Teri Armstrong

#1388014 v1 den