John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:  (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>                        Plaintiff,<br><br>vs.<br><br>JOHNSON, RODENBURG & LAUINGER.<br><br>                        Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**PLAINTIFF'S TRIAL BRIEF** |

**I.    What the Case is About.**

This case is about a debt collection law firm which took advantage of and abused the legal system to try and collect an uncollectable debt from Mr. McCollough.

The Johnson, Rodenburg & Lauinger law firm is a debt collection law firm with offices in North Dakota.  It collects debts, and engages in litigation, on behalf of debt buyers.  It has lawyers licensed to practice law in several states, including Montana, so that it can file debt collection lawsuits in those states as part of its debt

collection activities. The Johnson, Rodenburg & Lauinger law firm files dozens of lawsuits a day and thousands of lawsuits a year in Montana on behalf of its debt buyer clients.

One of Johnson, Rodenburg & Lauinger's debt buyer clients is a company called CACV of Colorado ("CACV"). CACV placed the account of Tim McCollough, a Laurel, Montana resident, for collection. CACV claimed Mr. McCollough owed it money on a Chase Manhattan credit card which it had purchased in 2001. Pursuant to its collection contract with Johnson, Rodenburg & Lauinger, CACV expressly made "no warranty as to the accuracy or validity of the data" it provides to Johnson, Rodenburg & Lauinger and imposed on Johnson, Rodenburg & Lauinger the responsibility "to determine your legal and ethical ability to collect these accounts."

Johnson, Rodenburg & Lauinger does not require CACV to provide it with any particular documents before filing a lawsuit. Prior to suing Mr. McCollough, Johnson, Rodenburg & Lauinger had not received any documents whatsoever from CACV regarding Mr. McCollough or his alleged debt- not a contract application, a single credit card statement, a check receipt, nothing. Instead, all CACV gave Johnson, Rodenburg & Lauinger was electronic information consisting of Mr. McCollough's name, address, previous creditor, amount claimed, and date of last payment. This information, even in large font, would all fit on a single sticky note.

On April 17, 2007, Johnson, Rodenburg & Lauinger filed a lawsuit against Mr. McCollough on behalf of CACV in Yellowstone County district court, entitled *CACV of Colorado v. Tim McCollough*. The action was barred by the five year statute of limitations at the time Johnson, Rodenburg & Lauinger filed it.

In Montana, the only way a party can seek attorney's fees if there is a provision in a written contract whereby the parties agree to pay attorney's fees. Despite the fact that Johnson, Rodenburg & Lauinger had no such contract in its possession, it demanded attorney's fees from Mr. McCollough in the amount of $481.68.

Johnson, Rodenburg & Lauinger knew prior to filing the lawsuit that Mr. McCollough's account was part of "THE COLLECT AMERICA BATCH THAT WE ARE HAVING PROBLEMS WITH." Johnson, Rodenburg & Lauinger questioned CACV prior to filing the lawsuit whether the claim was past the statute of limitations. CACV responded by claiming that it appeared Mr. McCollough had made a payment in June of 2004, but did not provide Johnson, Rodenburg & Lauinger with any documentation to substantiate this statement.

On June 13, 2007, Mr. McCollough filed his *pro se* (without a lawyer) Answer to the state court action, writing:

> ANSWER
>
> FORGIVE MY SPELLING I HAVE A HEAD INJURY AND WRITING DOSE NOT COME EASY
>
> (1) THE STACUT OF LIMITACION'S IS UP, I HAVE NOT HAD ANY DEALINGS WITH ANY CREITED CARD IN WELL OVER 8½ YEARS
>
> (2) I AM DISABILED I GET 736.00 A MOUNTH S.S.¶, MY MORGAGE IS 724.00 A MOUNTH, I'M NOW A DIOBEDIC I HAVE NO MONEY NO INCHURANCE BUT MEDICARE
>
> 6-13-07    M Jim McCollough

In August of 2007, CACV advised Johnson, Rodenburg & Lauinger that Mr. McCollough had not, in fact, made a payment in June of 2004 as previously asserted. Thus, Johnson, Rodenburg & Lauinger knew from its own client that Mr. McCollough was right and that it could not legally prosecute the lawsuit against him because it was barred by the statute of limitations.

Even after Johnson, Rodenburg & Lauinger was told by CACV that there had not been a payment in June of 2004, Johnson, Rodenburg & Lauinger continued to attempt to "win" the lawsuit against Mr. McCollough and collect the alleged debt.

In October of 2007, two months after Johnson, Rodenburg & Lauinger was told by CACV that the lawsuit against Mr. McCollough was time-barred, Johnson,

Rodenburg & Lauinger propounded request for admissions on Mr. McCollough, asking him to admit as true the following statements:

*Prior to initiation of this suit, Defendant Tim M. Mccollough has never notified plaintiff or any other party in interest in this action of any disputes regarding said Chase Manhattan Bank credit card.*

*There are no facts upon which Defendant Tim M. Mccollough relies as a basis for defense in this action.*

*Defendant Tim M. Mccollough made a payment on said Chase Manhattan Bank credit card on or about June 30, 2004 in the amount of $75.00.*

Johnson, Rodenburg & Lauinger knew that these statements were false. The requests for admission did not advise McCollough that he had 30 days to respond to them. Johnson, Rodenburg & Lauinger served them with the hope that Mr. McCollough would not respond to them within 30 days, and Johnson, Rodenburg & Lauinger could then consider them deemed admitted by Mr. McCollough. In fact, Johnson, Rodenburg & Lauinger had already begun to draft a motion for the court to get judgment against Mr. McCollough if and when he failed to respond to the request for admissions.

In November of 2007, Mr. McCollough hired John Heenan to defend him in the lawsuit being prosecuted against him, and Mr. Heenan then made an appearance in the case.

In December of 2007, in response to the fact that Mr. McCollough had retained counsel, Johnson, Rodenburg & Lauinger's attorney emailed his contact at CACV and requested:

> Please provide me with copies of everything you can get for documentation as soon as possible. We need to request everything available from the original creditor, not just the things that you normally request, etc. Application, statements, cardmember agreement, copies of payments, copies of any correspondence. Please have the request expedited if possible.

CACV responded that it had no documentation to send.

Also after John Heenan's appearance on behalf of Mr. McCollough, Johnson, Rodenburg & Lauinger served a subpoena on the original creditor, JP Morgan Chase, seeking documents regarding Mr. McCollough's claimed credit card account. On December 17, 2007, JP Morgan Chase responded to the subpoena and advised that "[a]s a result of an initial search of our records we have noted that under the requested account … <u>is found not to have any credit card accounts in Chase Bank USA, N.A</u> systems."

On December 18, 2007, upon Johnson, Rodenburg & Lauinger's request, the lawsuit against Mr. McCollough was dismissed.

Mr. McCollough suffered a head injury in 1990 and has been on social security disability since that time. Mr. McCollough has been receiving psychiatric treatment since then. Mr. McCollough has been diagnosed with psychotic disorder with a probability of paranoid schizophrenia. The collection activities of Johnson,

Rodenburg & Lauinger caused Mr. McCollough to suffer migraine headaches which incapacitated him, sometimes for several days at a time.

Mr. McCollough subsequently filed this present action against Johnson, Rodenburg & Lauinger asserting claims under the federal Fair Debt Collection Practices Act and Montana Unfair Trade Practices Act, as well as claims for malicious prosecution and abuse of legal process.  This Court has ruled as a matter of law that Johnson, Rodenburg & Lauinger violated the federal Fair Debt Collection Practices Act in the following ways in its conduct towards Mr. McCollough: (1) by demanding attorney's fees against him which were not permitted under Montana law; (2) by filing a lawsuit against him which was barred by the statute of limitations in Montana; (3) by continuing to prosecute a lawsuit against Mr. McCollough barred by the statute of limitations in Montana; and (4) by serving on Mr. McCollough requests for admission which were an abusive, unfair and unconscionable means to attempt to collect a time-barred debt.  The Court has also ruled that Johnson, Rodenburg & Lauinger's violations of the Fair Debt Collection Practices Act were not the result of a bona fide error, and that Johnson, Rodenburg & Lauinger had no basis upon which it could reasonably rely on information provided by its debt buyer client, CACV.

**2.     The Experts.**

Plaintiff intends to call attorneys James A. Patten and D. Michael Eakin as witnesses in this case.  Mr. Patten is an experienced Montana litigator with specific expertise in debtor-creditor law.  Mr. Patten, as part of his practice, has filed lawsuits on behalf of collectors and creditors, and has also had occasion to defend against such lawsuits on behalf of debtors.  Mr. Patten will explain a lawyer's obligations pre-suit as well as post-suit.  Mr. Patten will testify that the Johnson, Rodenburg & Lauinger law firm is specifically set up and has procedures in place to serve as a "factory" for debt collection lawsuits.  Mr. Patten will testify that this factory approach to litigation is what caused, in part, the numerous violations of law committed against Mr. McCollough.

Mr. Eakin is a consumer lawyer at Montana Legal Services.  Mr. Eakin has specific knowledge of Johnson, Rodenburg & Lauinger's collection and litigation practices in the State of Montana.  Mr. Eakin will specifically discuss Johnson, Rodenburg & Lauinger's role in the burgeoning debt buyer business, whereby companies purchase charged off debt, with little or no documentation, for pennies on the dollar.  Mr. Eakin will testify that Johnson, Rodenburg & Lauinger's rapid expansion of lawsuits in Montana over the past several years is directly correlated to the rise in the multibillion dollar debt buyer industry.

Dr. Donna Veraldi performed a psychological evaluation of Mr. McCollough. She will testify that the collection process and Johnson, Rodenburg & Lauinger's conduct towards Mr. McCollough exasperated Mr. McCollough's pre-exisiting mental condition and created heightened anxiety and depression.

Dr. Joseph McElhinney performed a psychological evaluation of Mr. McCollough on behalf of Johnson, Rodenburg & Lauinger. Dr. McElhinney diagnosed Mr. McCollough as having psychosis with a probable diagnosis of paranoid schizophrenia. Dr. McElhinney is expected to concede that an individual with this diagnosis is generally less able to emotionally deal with a debt collector and an illegal debt collection lawsuit.

**3.    Legal Matters.**

   **A.    A Jury Decides FDCPA Statutory Damages.**

JRL has raised in the Final Pretrial Order the issue of whether the jury should determine Plaintiff's FDCPA statutory damages. As recently explained by the Court in *Schwarm v. Craighead*, 2008 WL 3286797 (E.D.Cal. 2008):

> While § 1692k refers only to "the court" when providing for the award of damages, courts have concluded that "a party upon timely demand is entitled to a jury trial in an action for damages under the [FDCPA]." Sibley v. Fulton DeKalb Collection Serv., 677 F.2d 830, 831- 32 (11th Cir.1982); accord Kobs v. Arrow Serv. Bureau, Inc., 134 F.3d 893, 897 (7th Cir.1998); see also Voris v. Resurgent Capital Servs., 494 F.Supp.2d 1156, 1162-63 (S.D.Cal.2007) ("Although the Ninth Circuit has apparently not addressed the issue, other circuits have found that a plaintiff has a right to a jury trial in FDCPA actions.").

*Schwarm* at*3, fn. 6; *see also Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 897 (7th Cir.1998) ("we hold that § 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory additional damages"). Thus, FDCPA statutory damages are a jury issue.

### B.     Evidence of Reprehensibility Must be Allowed in Plaintiff's Case-in-Chief.

Evidence of the reprehensibility of Johnson, Rodenburg & Lauinger's conduct is germane to the jury's determination of FDCPA statutory damages. *See* 15 U.S.C. § 1692k(b)(2) (requiring consideration of "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional"). It is also relevant to the jury's determination of punitive damages. *See, e.g., Campbell v. State Farm Mut. Auto. Ins. Co.*, 538 U.S. 408, 419 (2003) (reprehensibility among factors considered in assessing punitive damages, including whether the conduct involved repeated actions or was only an isolated incident). Johnson, Rodenburg & Lauinger has taken the legally erroneous position that the jury should not hear evidence concerning its similar treatment of others. Ninth Circuit Model Instruction 5.5 (punitive damages) suggests the appropriate context for such evidence:

> In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly

reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case].

Thus, a jury should hear evidence of Johnson, Rodenburg & Lauinger's overall business conduct, but then be instructed not to punish the defendant for harm to anyone other than the plaintiff in this case.

### C. John Heenan Should be Stricken as a Witness from Defendant's May Call Witness List.

Johnson, Rodenburg & Lauinger has included the undersigned on its witness list. Its apparent rationale for this inclusion is that the undersigned also represents Mr. Lucero and Ms. Henan, who have been called as witnesses. Johnson, Rodenburg & Lauinger's conduct in this regard reflects pure gamesmanship. Plaintiff requests that the Court strike the undersigned as a witness from Defendant's witness list prior to trial.

### 4. Conclusion.

The conduct of Johnson, Rodenburg & Lauinger towards Mr. McCollough was illegal and inexcusable. This Montana jury, which represents the conscience of the community, will determine whether Johnson, Rodenburg & Lauinger's conduct in this regard and its overall business conduct should be sheltered and protected, or whether it should be remedied. Plaintiff McCollough appreciates the opportunity to have his case heard by a jury of his peers.

DATED this 30th day of March, 2009.

                            HEENAN LAW FIRM

                            */s/ John Heenan*
                            John Heenan
                            Attorney for Plaintiff