John E. Bohyer
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana 59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| JUNE TIFT and TIMOTHY McCOLLOUGH, | ) ) ) | Cause No. CV-07-166-BLG-RFC-CSO **THE HON. CAROLYN S. OSTBY** |
| Plaintiffs, | ) ) ) | |
| -vs.- | ) ) | **DEFENDANT JOHNSON, RODENBURG & LAUINGER'S DAMAGE EXPERT WITNESS DISCLOSURE** |
| JOHNSON, RODENBURG & LAUINGER, | ) ) ) | |
| Defendant. | | |

Pursuant to this Court's Scheduling Order dated June 13, 2008, Defendant JOHNSON, RODENBURG & LAUINGER, through its counsel of record, hereby discloses the following expert:

1.    Joseph McElhinney, Psy.D.
      1643 Lewis Ave.
      Billings, MT 59102

Exh. A - 01

The subject matter on which Dr. McElhinney is expected to testify, the substance of the facts and opinions to which he is expected to testify, and the summary of the grounds for each are set forth in the report generated by Dr. McElhinney following his independent psychological evaluation of Plaintiff Timothy McCullough which took place on August 21, 2008, a copy of which report is attached hereto as **Exhibit A.** Dr. McElhinney's qualifications are set forth in his curriculum vitae, a copy of which is attached hereto as **Exhibit B.** In the preceding ten years Dr. McElhinney has not authored any publications. Attached as **Exhibit C** is a listing of cases in which Dr. McElhinney has been deposed or has testified as an expert witness within the preceding four years. Additionally, a schedule of fees charged by Dr. McElhinney is attached hereto as **Exhibit D.**

2.    Defendant reserves the right to call any and all physicians, psychiatrists, psychologists, counselors and/or other healthcare providers who have provided services or treatment to or who have examined Plaintiff or reviewed Plaintiff's health care records at any time.

The subject matter on which these experts are expected to testify, the substance of the facts and opinions to which they are expected to testify, and the summary of the grounds for each of them are set forth in the medical records and reports reflecting said treatment or examination, already in the Plaintiff's possession, and the deposition testimony, if any, of the providers.

3.    Any expert witness identified by Plaintiff to the extent such expert's testimony is admissible under the Federal Rules of Evidence and not otherwise objected

Exh. A - 02

to by Defendant.

4.    Defendant JOHNSON, RODENBURG & LAUINGER further reserves the right to supplement this disclosure as discovery in this matter is ongoing.

DATED this 15th day of September, 2008.

Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, the undersigned, a representative of the law firm of Bohyer Simpson & Tranel, P.C., hereby certify that I served a true and complete copy of the foregoing *Defendant Johnson, Rodenburg & Lauinger's Damage Expert Witness Disclosure* on the following persons by the following means:

|        |                            |
|--------|----------------------------|
| _____  | CM/ECF                     |
| _____  | Hand Delivery              |
| __1__  | Mail                       |
| _____  | Overnight Delivery Service |
| _____  | Fax                        |
| _____  | E-Mail                     |

1.    John C. Heenan, Esq.
HEENAN LAW FIRM
2602 1st Ave N, Suite 305
PO Box 2278
Billings, MT 59103
**Attorneys for Plaintiffs**

DATED ths 15th day of September, 2008.

Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendant

DEFENDANT JOHNSON, RODENBURG & LAUINGER'S DAMAGE EXPERT WITNESS DISCLOSURE    Page 3

Exh. A - 03

# Exhibit A

# Joseph K. McElhinny Psy.D.

**Neuropsychology • Clinical Psychology • Consulting**

1643 Lewis Ave - Suite #7
PO Box 20856
Billings, MT 59104-0856

(406) 252-2626
Fax (406) 294-0967

NAME: Mark "Timothy" McCollough          DATE OF EXAM: 08/21/08
DOB: 02/21/56

## PSYCHOLOGICAL CONSULTATION REPORT

REFERRAL INFORMATION: Mr. McCollough was referred by the law firm of Bohyer, Simpson & Tranel, P.C. for an independent psychological evaluation. Referral questions of Fred Simpson will be addressed at the end of this report.

PROCEDURES USED:

1) Review of the Medical Records Provided by Bohyer, et al.
2) Clinical Interview and History with Mr. McCollough
3) Beck Depression Inventory - II (BDI-II)
4) Personality Assessment Inventory (PAI)

BACKGROUND AND HISTORY:

CURRENT ISSUES: Mr. McCollough reports that he is suing a "law firm" which is also a "collections agency". He was asked to provide additional clarification and he went on to describe how "someone raided the mailbox" and apparently misused a credit card under Mr. McCollough's name. I can only guess that a debt of some sort was ascribed to Mr. McCollough which led to a collection agency's involvement, but Mr. McCollough said "they solved that case" (additional details are lacking).

I asked Mr. McCollough if there were any mental or physical issues related to this lawsuit and he responded, "Every time I deal with something like this...I get sick...migraines for a day or two." He was apparently sued and "failed in court...", then he went on to sue the company that sued him.

He's suffering from headaches every week. He has migraines once or twice a month. Anything that occurs which changes "my routine" has the potential to initiate a migraine for Mr. McCollough. He takes no prescription medications. He has not responded well to a variety of prescriptions over the years, by his report. He takes a product called "feverfew" which "opens my blood vessels" and helps him with his headaches. He uses over-the-counter Excedrin. He also makes up capsules of pure cinnamon to address his blood sugar issues. He also has "pain medications"..."if I have to". He reports that he has not taken any pain medications for quite some time.

1

NAME: Mark "Timothy" McCollough
DATE OF EXAM: 08/21/08

Mr. McCollough describes how "I'm permanently disabled" and he attributes his disability to a head injury that was incurred in 1990. This was a workmen's compensation-related head injury and it was "settled in 1995". His Social Security was "back-dated to 1993".

Since his head injury, he has had to "eliminate everything that brings on migraines". Any type of stress reportedly increases his blood sugar and heart rate which then increases his headache because of "adrenalin". He has light sensitivity. He also has decreased vision which he describes in detail, but his description is difficult to report at this time. He has decreased hearing which he describes in a relatively eccentric manner. He points out that a sound can "set-off" his stress reaction. He has hearing problems because of "years of heavy equipment and other things". When under stress, he may get violent, by his report. He has "had a military background...worked for the agencies...I've seen it and know how to do it" (referring to killing another person, I believe).

He has also been "ordained" just before his head injury. His ordination is not associated with any particular church. When asked if he remains a spiritual individual, he said that he was spiritual "in a strange way". He disagrees with the church (not any particular church), but at the same time "I'm all for religion". He is somewhat "anti-church". He also avoids places with organs because of his auditory sensitivities and "most churches have organs".

REVIEW OF MEDICAL RECORDS: Mr. McCollough's medical records for review go back to February 8, 1990. At that time, he was having some sinus congestion which he thought may have been related to some chemical elements at the place where he worked. He was diagnosed with allergic rhinitis and maxillary sinusitis. His physician, Dr. Ten, described that Mr. McCollough's congestive symptoms improved when he was away from work for several days.

NOTE: The above symptom may reflect some concerns about chemical sensitivity; but, nevertheless, this is the first sign of Mr. McCollough's somatization tendencies noted in his medical records.

On 03/09/90, he demonstrated a significant resolution of sinus disease; but, at that time, he was concerned with his hearing and an audiological assessment demonstrated a low grade hearing loss in the right ear.

On the 8th of May in 1990, he was working at the Billings Vo-

2

NAME: Mark "Timothy" McCollough
DATE OF EXAM: 08/21/08

Tech Center as a maintenance man. A metal pipe came down and hit him on the left side of the head. He went to the emergency room and was told that he probably had a concussion. Mr. McCollough reported that he saw a shadow and was struck on the left side of his head with a metal object. He was not knocked unconscious, but had a headache, dizziness, and disorientation. A CT scan of the brain at the emergency room was normal. He reported to neurologist, Dale Peterson, M.D., on June 25, 1990, that he was becoming angry easily and also seemed to be forgetful.

He was referred to Robert Tompkins, Ed.D. for a neuropsychological evaluation. Dr. Tompkins documented that Mr. McCollough reported being attacked by an intruder in the building at the time when he was hit in the head, but the police never really found any evidence of an intruder. Mr. McCollough remains angry about this circumstance and reported today that he even called the police a second time from the hospital in order to identify the person, but they were not interested.

Dr. Tompkins thought that Mr. McCollough had some mild neurocognitive changes in August of 1990. Dr. Tompkins followed up with psychotherapy for Mr. McCollough in October of 1990. He reported that Mr. McCollough was experiencing a great deal of stress in his job and was describing homicidal feelings. Dr. Tompkins had real concerns about Mr. McCollough returning to his job and suggested to Mr. McCollough that he not go back to work under those conditions (referring to Mr. McCollough's homicidal thoughts).

Dr. Tompkins re-evaluated Mr. McCollough in February of 1991. At that time, Mr. McCollough still had concerns about his memory and irritability. He continued to have rage reactions towards individuals he had previously been associated with in his work at the vo-tech center. He described how he would have no remorse if he was unable to control his rage with these people. Mr. McCollough reported to Dr. Tompkins that a number of attorneys had refused to take his case. Dr. Tompkins was "uncertain whether or not he was experiencing delusional thinking" during his evaluation. Mr. McCollough's neuropsychological performance improved and Dr. Tompkins pointed out that "he appears to have some difficulty with reality testing and severe psychopathology or brain dysfunction is suggested". Mr. McCollough reported to Dr. Tompkins that he had bullet wounds as he was shot in the back earlier in his history, but the "bullets did not puncture him".

Psychological testing revealed tendencies toward somatization as well as more serious signs of psychopathology. Dr. Tompkins, at that time, thought that any organicity that resulted from Mr.

3

NAME: Mark "Timothy" McCollough
DATE OF EXAM: 08/21/08

McCollough's concussion was more than likely "superimposed upon an individual with unrecognized psychopathology". He was referred for psychiatric support. His first psychiatrist (David Yelvington, Ph.D., M.D.) who interviewed him in September of 1993 declined to take him as a patient because of his homicidal ideations.

In October of 1993, he was seen by psychiatrist, James Whitworth, M.D. Dr. Whitworth's initial diagnosis was "1) Rule out organic affective disorder. Dysthymia. 2) Mixed personality disorder with antisocial and narcissistic features." Mr. McCollough described to Dr. Whitworth that he was a "trained killer" and that he would not be responsible if he murdered one of these men (referring to coworkers, etc. at the vo-tech school). Apparently, some individuals at the vo-tech school accused him of making up symptoms and denied that Mr. McCollough had actually been attacked by an intruder. Dr. Whitworth was not comfortable taking Mr. McCollough on as a patient, indicating that he could not be assured of his own safety in treating Mr. McCollough.

He had a sleep study conducted in February of 1994 which was "relatively unremarkable", according to Walter Fairfax, M.D. He went on to receive psychiatric treatment by psychiatrist, David Carlson, M.D. In April of 2003, Dr. Carlson described Mr. McCollough as, "He remains somewhat of an enigma. Basically, things have been about the same. He is noticing a little more problems with his allergies, as he does this time of the year. He still has quite a bit of fatigue. His sleep is still highly variable. About every six weeks or so, he'll get some shakiness, some increased sense of paranoia, and marked difficulties with his sleep. He has basically been able to function around the home, still has times where he feels very foggy and somewhat confused, times where he is moody and somewhat irritable." Dr. Carlson adds that Mr. McCollough has been reluctant to take prescription psychotropic medications and that his symptoms have remained fairly mild as long as he's in a very low stress environment.

Dr. Carlson retired and Mr. McCollough is now receiving psychiatric services from Dr. Klien. He sees Dr. Klien about one time a year and he is "late" in seeing the doctor this year.

ADDITIONAL MEDICAL HISTORY PER MR. McCOLLOUGH: He has Type 2 diabetes and treats it with his capsules of cinnamon and a special diet. He also has hypertension, but he doesn't take medications because "they make me sick as a dog".

He continues to have mood swings, anger issues, bad dreams and memories about "the face of the person who hit me", referring to the incident in 1990 described above.

4

Exh. A - 08

NAME:  Mark "Timothy" McCollough
DATE OF EXAM:  08/21/08

When asked about his mood, he repeatedly pointed out that he doesn't notice his mood until "I get real snippy". When it was pointed out that he seemed to have very low depression on his Beck Depression Inventory, he replied "I've had 18 years to deal with this head injury...if I haven't figured it out by now...I've screwed up royal."

He doesn't have an appetite. He lost his "taste buds" after his head injury in 1990. Nevertheless, his sense of smell depends upon his allergies. Sometimes his sense of smell is "great" while at other times he doesn't smell anything. (NOTE: A loss of taste is classically associated with a loss of smell after a traumatic brain injury and Mr. McCollough's report of having variable ability to smell while losing his taste buds is quite unusual.)

He has initial and middle insomnia. He lays down more frequently, but doesn't sleep.

He doesn't consume alcoholic beverages on a regular basis, but does have an occasional beer or glass of whiskey. He has never been a regular consumer of alcohol. He may have two or three drinks over the period of a week and he is "allergic to wine".

Street drug use and abuse was denied. He indicated that he "hated" street drugs.

He denied any history of suicidal ideation.

He denied any ongoing homicidal ideations, indicating that it was rare these days.

He denied any history of visual or auditory hallucinations.

ADDITIONAL PSYCHOSOCIAL HISTORY:  He grew up in California in the 1960's. His childhood was described as "great". The only stressful thing that occurred to Mr. McCollough is when his dog died.

He has one brother living in California and he has regular contact with his brother. His brother is a sergeant in the San Francisco Sheriff's office.

ACADEMIC HISTORY:  Mr. McCollough reported to Dr. Tompkins, back in 1991, that he was a good student in high school. Dr. Tompkins reviewed some of Mr. McCollough's academic records and Mr. McCollough had a 3.18 average and approximately ten college courses post-high school.

5

NAME: Mark "Timothy" McCollough
DATE OF EXAM: 08/21/08

Today, Mr. McCollough reported that he completed two years of college and that he studied light engineering for stages. He also had six years of trade school. When asked to be more specific, he reported that he had a boiler's license, that he was an apprentice electrician, and an apprentice plumber. He also has a "honorary doctorate" in religion. He studied agriculture and animal sciences in college (additional details are lacking).

VOCATIONAL HISTORY: He last worked in 1990, at the time of his head injury. He described how he returned to work after the head injury, but that "caused a lot of problems". "They were doing a lot to screw me over." (Referring to his supervisors.)

In the past, he has "worked for the agencies". His work remains a "secret"..."it didn't happen". He knows that "periodically...my phone is tapped", referring to how the "agencies" are keeping tabs on him.

Mr. McCollough reported, "I did more in the first 30 years than most people do their whole life." Apparently, Mr. McCollough has a varied and multifaceted vocational history before he went on disability in the mid 1990's.

MARITAL HISTORY: He's married to Dorleen. They were married in March of 1990, two months before his head injury. This is his first and only marriage. His wife works as a custodian at Senior High School. She is going through "rounds of surgery" at this time because of a worker's compensation injury to her ankle.

He described the marriage in positive terms, indicating it was "great". It's just the two of them at home. He pointed out that his wife makes goat cheese, he milks the goats, and they have chickens which produce eggs for the couple. They also raise turkeys.

OTHER: Mr. McCollough enjoys target shooting. His collection of firearms seems rather unusual ("a double barrel .38"). He enjoys cooking with hot chilies and peppers which "helps anything that hurts me during the day". When asked about his cooking, he described how he studied cooking "under Graham Kerr, the Galloping Gourmet". On further interview, he described how he was a regular in the live audience of Mr. Kerr's cooking program.

He and his wife do not socialize much anymore (details are lacking). His dream is to own a piece of land so "I can shoot a gun in any direction."

MENTAL STATUS AND BEHAVIORAL OBSERVATIONS: Mr. McCollough arrived on time for his appointment. He was groomed and dressed casually

6

NAME: Mark "Timothy" McCollough
DATE OF EXAM:  08/21/08

and in a somewhat eccentric manner. He wore a camouflage tee-shirt and sports shoes with no socks, yet he had a handlebar moustache and a goatee which was neatly trimmed.

His speech was clear and of normal rate. At first he appeared to be rather well-spoken, but would easily get off track. During his historical reporting, he engaged in strained logic, copious rationalization, and what seemed to be many delusions. (He noted that he has three contracts out "on my head" related to his work with the "agencies".)

Motor rates were within normal limits, with no sign of hyper- or hypoactivity. Pain behavior was absent.

Surface affect was euthymic, yet he was an overly expressive and dramatic individual. He was dramatically engaging in his conversations, but often illogical. He used poor logic to support his ideas and beliefs and asked for clarification by this examiner.

He tended to exaggerate his history and be somewhat grandiose in his self-descriptions.

He reported that he is anxious about being in this office today because "you were hired by the bad guys".

He described himself as "paranoid".

After his head injury, he had another unusual symptom and that is he developed a fear of heights which is rather extreme at this time. He added that he used to jump out of airplanes. He reported, "I've been crazy my whole life", but added that all his problems really began at the time of his head injury in 1990. When asked further about his "craziness", he reported "I never did anything normal", referring to his behavior even before his head injury in 1990.

Despite his dramatic, engaging, and expressive style, he was quite vague in his historical reporting and historical details were further masked by his strained logic, rationalization, and grandiosity.

ASSESSMENT SUMMARY:  On the BDI-II, he produced an overall score of 9 which is reflective of "minimal" depression. He did report that he doesn't have very much energy. He doesn't concentrate as well as he used to and his appetite is less than usual. He feels more irritable than usual and doesn't enjoy things as much as he used to.

7

NAME:  Mark "Timothy" McCollough
DATE OF EXAM:  08/21/08

On the PAI, which is a psychologic self-report inventory normed on "normal" individuals, he attended appropriately and responded consistently to item content; however, there did seem to be some inconsistent responses to similar items occasionally. There were indications that he endorsed items that tended to present an unfavorable impression. The possibility of mild exaggeration of complaints and problems has to be considered in reviewing his profile.

He demonstrated an unusual degree of concern about physical functioning and health matters. His only significant elevation on the clinical profile was on the Somatic Complaints scale. He is likely to report that his daily functioning is compromised by numerous and various physical problems. He has vague complaints of ill health and fatigue.

There were some subclinical signs of some mild anxiety and mild and transient depressive symptomatology.

His self-concept will fluctuate and may vary between states of pessimism and self-doubt to periods of relative self-confidence and self-satisfaction. During stressful times, he is prone to be self-critical, uncertain, and indecisive.

Interpersonally, he is self-assured, confident, and dominant, by his report. He is comfortable in most social situations, but is not likely to mix indiscriminately, preferring to interact with others in situations over which he can exercise some measure of control.

Interestingly, regarding his anger, he describes his temper as within the normal range and as fairly well-controlled and without apparent difficulty.

He is not reporting distress from thoughts of self-harm.

His interest and motivation for outpatient psychotherapy is below average compared to adults who are not being seen in a therapeutic setting. In other words, his responses suggest that he is satisfied with himself as he is and he is not experiencing any marked distress. He sees little need for changes in his behavior.

His pattern of performance on the PAI was suggestive of a mixed personality disorder with narcissistic features, as well as a somatization disorder. There was no evidence of any type of clinically relevant mood disturbance.

DIAGNOSTIC IMPRESSIONS:  Mr. McCollough has a mixed personality

8

Exh. A - 012

NAME:  Mark "Timothy" McCollough
DATE OF EXAM:  08/21/08

disorder with narcissistic, paranoid, and perhaps antisocial features. At the same time, there are many signs of delusional thinking in today's interview and in his medical history. He is a very complex individual from a psychologic standpoint, but he seems to have a history of symptoms that would be related to a paranoid schizophrenic condition. He probably is prone to having severe episodes of paranoid ideation with delusions and he evidenced some of those symptoms here today. I am going to give him a diagnosis of psychotic disorder, not otherwise specified, but I strongly suspect paranoid schizophrenia.

There is no evidence of clinically relevant mood disorder, like depression or anxiety.

DSM-IV              AXIS I:
              1.    298.9  Psychotic disorder, not otherwise specified.

                    AXIS II:
                    301.9  Mixed personality disorder with narcissistic, paranoid, and antisocial features.

## RESPONSE TO REFERRAL QUESTIONS PUT FORTH BY FRED SIMPSON

A.    Did the filing by my client of the earlier lawsuit aggravate Mr. McCollough's pre-existing medical condition and, if so, to what extent? If so, when did any such aggravation resolve or should have resolved?

There is no evidence, in Mr. McCollough's report today, that any lawsuit aggravated his preexisting mental condition. All indications are that, as of today, Mr. McCollough is at baseline, functioning pretty much as he has for a number of years.

I will speculate, however, that any lawsuit filed against Mr. McCollough would cause him stress, as it would anyone, whether they have similar psychiatric diagnoses or not. I have no evidence that the filing of the lawsuit aggravated his psychiatric disturbance.

B.    Please describe how Mr. McCollough's pre-incident condition and general health play a role in his current condition.

I think Mr. McCollough has been a paranoid schizophrenic with a mixed personality disorder throughout his adult life. His conditions appear stable at this time and I have no evidence of physical or mental symptom aggravation due to any lawsuit.

9

Exh. A - 013

NAME:  Mark "Timothy" McCollough
DATE OF EXAM:  08/21/08


I must add that any history of traumatic brain injury is highly suspect because of this man's psychiatric disturbance. He had two neuropsychological evaluations after the head injury in 1990, neither of which were convincing for any organic dysfunction that could be ascribed strictly to a mild traumatic brain injury.

Please contact me with any additional questions or comments regarding my evaluation report.

Joseph K. McElhinny, Psy.D.
Clinical Psychologist


10

# Exhibit B

Exh. A - 015

# Joseph K. McElhinny Psy.D.

### Neuropsychology • Clinical Psychology • Consulting

1643 Lewis Ave - Suite #7
P.O Box 20856
Billings, MT  59104-0856

(406) 252-2626
Fax (406) 294-0967

# CURRICULUM VITAE

## EDUCATION

**Doctoral Degree, Clinical Psychology**
University of Denver  (1985-1988)

**Education Specialist Degree, School Psychology**
University of Northern Colorado  (1980-1983)

**Bachelor of Science, Human Development**
Pennsylvania State University  (1970-1974)

### Additional Training

Neuropsychological Assessment Training

- 60 hours of classroom instruction in behavioral neurology.
- 34 hours of formal instruction in evaluation technique and interpretation
  - Presenter:  Paul Jarvis Ph. D. with additional case consultation for two years
- Post-doctoral training in neuropsychology at Fitzsimons Army Medical Center
  - Supervisors:  Robert Kinsman, Ph.D. and Paul Jarvis, Ph.D

- Individual/Group supervision with other psychologists
- Over 3000 neuropsychological evaluations conducted
- Regular attendance of national conferences and workshops

## CURRENT CLINICAL RESPONSIBILITIES
## 1988-Current

Private practice providing neuropsychological and psychological evaluations (child, adolescent and adult), specializing in:

1. Assessment and consultation re: neurobehavioral sequelae of mild/moderate head injuries, psychological aspects of physical disability and chronic pain and neurobehavioral aspects of CNS active disease/illness.
2. Independent neuropsychological/psychological evaluations, learning disability evaluations and forensic neuropsychology.
3. Consultant to Billings Clinic Hospital and St. Vincent Hospital.

Exh. A - 016

## PAST PROFESSIONAL EXPERIENCE

In private practice with Nelson F. Jones and Associates.
1988-1991

- Professional Activities Included:
    - Psychological and neuropsychological assessment (Independent Medical Exams), forensic services and disability evaluations.
    - Assessment and consultation regarding chronic pain patients and mild head injury patients (adult and child), with two outpatient rehabilitation facilities (Colorado Rehabilitation Institute and The Spalding Spine Pain Rehabilitation Program) on a weekly basis.
    - Ongoing research regarding the personality styles of chronic pain patients and other medical groups. The development of psychological instruments to assist with differential diagnosis of medical patient groups, especially chronic pain patients.

Post-doctoral training at the Infectious Disease Service of Fitzsimons Army Medical Center. 1988-1990

- Professional activities included:
    - Neuropsychological and psychological assessment of HIV+ individuals (adult and child), consultation with health care providers regarding the personalities and cognitive abilities of the patients in order to increase medical compliance and to make vocational recommendations, short term psychotherapy, staff and patient education and research.
    - Gathering and managing neuropsychological data on the HIV+ individuals who were being treated in the regional catchment area for a double-blind national drug study. The data was utilized to support quality treatment of these people.

School psychologist with Jefferson County Colorado School System
1983-1986

- Professional activities included:
    - Functioned in a premiere special education department where multidisciplinary teams, family intervention, neuropsychological and individualized planning were valued.

## RESEARCH EXPERIENCE AND INTERESTS

- Doctoral paper consisted of multi-variate analysis of the personality characteristics of male spouse abusers.
- Other interests include:

Exh. A - 017

      o  Identifying personality characteristics which enhance physical health and recovery from illness in children, families and older adults
      o  Interaction of personality and neuropsychological abilities.

## PUBLICATIONS

Dirks, J., Wunder, J., Kinsman, R., McElhinny, J., Jones, N. (1993)
    *A Pain Rating Scale and a Pain Behavior Checklist for Clinical Use.*
    Psychotherapy and Psychosomatics, 59, 41-49.

McElhinny, J. (1992) *Stress Related Disabilities.*
    Montana Lawyer, Dec.

## PROFESSIONAL ORGANIZATIONS

- National Academy of Neuropsychology
- International Neuropsychology Society

# Exhibit C

Exh. A - 019

# Joseph K. McElhinny Psy.D.

**Neuropsychology • Clinical Psychology • Consulting**

1643 Lewis Ave - Suite #7                                    (406) 252-2626
PO Box 20856                                              Fax (406) 294-0967
Billings, MT  59104-0856

LISTING OF DEPOSITION AND COURT TESTIMONIES
BY JOSEPH K. McELHINNY, PSY.D.

August 2008

Joanne Erdall vs. Singleton, Hubner, et.al. - Deposition 01/06/04 (Treating Psychologist, 2002-2003) (Attorney for Plaintiff, Lark Gould of Goetz et. al. of Bozeman, Mt.; Attorney for defense, Jesse Beaudette of Phillips and Bohyer of Missoula, Mt.)

William Mangum vs. Louisville Ladder Group - Deposition 02/17/2004

(Attorney for Plaintiff, Kevin Funyak, Billings Mt.; Attorney for Defense. Michael McMahon, Helena Mt.)

Joanne Erdall vs. Singleton, Court Testimony 2/19/04, Virginia City, Montana  (See Above).

Richard Miller vs. Liberty Northwest Insurance Co. -Deposition 03/5/04. Attorney for Plaintiff, Thomas Murphy, Great Falls, Mt.; Attorney for Defense, Larry Jones, Missoula, Mt.

Tammy Cozzens, et.al. vs. Fun-N-Sun Inc.-Deposition 09/24/04. Attorney for Plaintiff, Stephen Mackey, Billings, Mt.; Attorney for defense, Randall Nelson, Billings, Mt.

Douglas McKown vs. Burlington Northern and Santa Fe Railway Co.- Deposition 02/02/2005. Attorney for Plaintiff, Bremseth Law Firm, Wayzata,Mn.; Attorney for Defense, Hedger Moyers LLP, Billings, Mt.

Douglas McKown vs. Burlington Northern and Santa Fe Railway Co.- Court Testimony 03/11/05.

William Old Chief vs. Sowles Company, et.al.- Deposition 4/04/05. Attorney for Plaintiff, James Hunt, Helena, Mt.; Attorney for Defense, Brown Law Firm, Billings, Mt.

Harry Eldridge vs. Mazzaloni Transport et.al.- Deposition 8/11/05. Attorney for Plaintiff, The Spence Law Firm, Jackson Hole, Wy.; Attorney for Defendant, Murane and Bostwick, Casper, Wy

Parker, Marie & Robbie vs. ? - Deposition (telephone) 12/19/05. Attorney for Plaintiff, Henry Bailey, Cheyenne Wy.; Attorney for Defendant, Julie Tiedken, Cheyenne, Wy.

Exh. A - 020

William Christiansen vs. Burlington Northern and Santa Fe Railway Co. Deposition 12/20/05. Attorney for Plaintiff, Bremseth Law Firm. Wayzata, Mn.; Attorney for Defense, Hedger Moyers LLP, Billings, Mt.

Orednick vs. The State of Montana. Deposition 4/10/2006. Attorney for Defense, Calvin Stacey, Billings, Mt. Attorney for the Plaintiff, James Ragain, Billings, Mt.

Ben Kaluza vs. Mid-Century Insurance et.al. Deposition 4/27/06. Attorney for Defense, Smith, Walsh, Clarke & Gregoire, Great Falls, Mt. Attorney for Plaintiff, Cok, Wheat, Brown, & McGarry, Bozeman, Mt.

Thomas Rasch vs. ?   Deposition   06/22/2006.   Attorney   for plaintiff, James Hunt, Helena, Mt.   Attorney for defense, Lyman H. Bennett, Bozeman, Mt.

Ard vs. Malone  Deposition 7/19/06.  Attorney for plaintiff, Stan Peeler, Bozeman, Mt.  Attorney for defense, Nelson and Dahle, Billings, Mt.

M. Sadler vs. Wausau Underwriters  Deposition 08/17/06. Attorney for Defense, Larry Jones, Missoula, Mt. Attorney for plantiff, Russell Plath, Billings, Mt.

Ron Tuma vs. Burlington Northern and Santa Fe Railway Co., Deposition 9/14/06. Attorney for Plaintiff, James Towe, Missola, Mt. Attorney for Defense, Hedger and Moyers, Billings, Mt.

Larchick vs. Powers, Billings Catholic Schools, et.al., Deposition 9/29/06. Attorney for Plaintiff, Elizabeth Halverson, Billings, Mt. Attorney for Defendants, Len Smith of Crowley Law Firm, Billings, Mt.

A & B Orednick vs. State of Montana et al, Court testimony 11/01/2006 as a treating clinician. Attorney for Plaintiff, James Ragain, Billings, Mt. Attorney for Defense, Calvin Stacey, Billings, Mt.

Jeanette Manley vs. Bonnavilla Homes, Deposition October 26, 2006. Attorney for Plaintiff, Matthew Hayhurst. Missoula, Mt. Attorney for Defense, Maureen Lennon, Missoula Mt.
Tim Countryman et.al. vs. Homelands Development et.al., Deposition February 12, 2007. Defense: Crowley Law Firm, Bozeman. Poore, Roth, and Robinson of Butte, Mt. Landoe, Brown Firm, Bozeman, Mt. Plaintiff: Foust Buckley Law Office, Bozeman, Mt.

Charles Jennings vs. A-1 Traffic Control and Barricade Inc. et.al. Deposition March 14, 2007. Attorney for Plaintiff, David Legare,

Billings, Mt.    Attorney for Defense, Dewhirst and Dolven, Denver, Co.

Jeffrey Smith vs. BNSF Railway Co. Deposition April 30, 2007. Attorney for Plaintiff, Bremseth Law Firm, Minnesota.   Attorney for Defense Phillips,Bohyer,Hedger , Billings, Mt.

Wayne Osborne vs. Karan Goetz. Trial testimony 06/21/07. Plaintiff Attorney Frank Richter, Billings Mt., Attorney for Defense Randall Nelson, Billings, Mt.

Erma Rocilla Pense (Berger), Estate,  Deposition at Hendrickson, Everson,Noennig, and Woodward PC, 08/03/07.

Leah Gonzales vs. Town Pump et al, Deposition 08/06/07. Attorney for Plaintiff Jennifer Wendt Bondy, Attorney for Defense, Joe Maynard, Harlan Krogh, Mike McCarter, Steven Milch.

Jeffrey Smith vs. BNSF Railway Co. Trial testimony October 31, 2007.   Attorney for Plaintiff, Bremseth Law Firm, Minnesota. Attorney for Defense Phillips,Bohyer, Hedger. Billings, Mt.

Yancy Stewart vs. Valley County  Deposition 01/24/2008.  Plantiff Attorney, Thomas Murphy of Great Falls Mt. Defense Attorney Norman Grosfield of Helena Mt.

Rachel Strange Owl, Federal Court, Criminal case, Thomas Pardy attorney for defense.  U.S. Atorney's Office for the prosecution. Pre-trial Court testimony 02/19/08.

Korey Rogers vs John Doe et.al. Deposition 03/27/08. Pantiff attorney, Lance Cline, of Indianapolis, In.  Defense attorney,Mary Hamilton Watts of Bingham & McHale of Indianapolis, In.

J.C.Davis vs. David Williams Deposition 06/18/2008. Plantiff Attorney, Fred Paoli of Livingston, Mt.  Defense Attorney, Carey Matovich of Billings, Mt.

Melinda Gibson vs. Edward Kinion, Deposition 06/27/2008. Plantiff Attorney Benjamin Graybill of Great Falls, Mt. Defense Attorney, Scott Gratton of the Brown Law Firm, Billings, Mt.

Roger Shanor vs. Smith Oil Field Service, Deposition 07/23/2008. Plantiff attorney John Vincent of Riverton Wyoming. Defense Attorney Cameron Walker of Casper Wyoming.

                                        Joseph K. McElhinny PsyD.

# Exhibit D

Exh. A - 023

# Joseph K. McElhinny Psy.D.

### Neuropsychology • Clinical Psychology • Consulting

1643 Lewis Ave · Suite #7                                           (406) 252-2626
PO Box 20856                                                    Fax (406) 294-0967
Billings, MT 59104-0856

## POLICY REGARDING LEGAL FEES

This practice has established a policy regarding court appearances, which is based on the unpredictability of that process and its effects on my ability to schedule time.

1. All testimony time must be scheduled at least one month in advance. In this regard it is necessary that such scheduling be specific as to the exact time and dates.

2. Because of the frequency with which court cases are settled at the last minute, resulting in substantial unnecessary preparation time and disruption of professional schedules, prepayment must be received at least two weeks in advance. Such prepayment is not refundable.

3. The following fee schedule applies for IME'S:
   a. Preparation time and report are billed at $ 325.00 per hour. Pre-trial conference with attorney's are billed at $350.00 per hour, so long as all work is done in the offices of this practice. An estimate of time required will be provided in each case based on information provided by the attorney.
   b. If formal deposition is to be taken, the following rates apply:
      i. $375.00 per hour, if held in our offices
      ii. $425.00 per hour, if held elsewhere.
   c. Court time is billed at $4000.00 per full day and $2000.00 for a half day of two to four hours.
   d. Hotels, meals, (when overnight stay is required) travel expenses and travel time are billed at $200.00 per hour.
   e. Any limitations on my availability will be discussed at the time testimony is scheduled. Given the lead time requested, this should typically not be a problem; however, changes in the schedule necessitating cancellation of a prior commitment will result in additional billing.
   f. Ten (10) working day cancellation required.
   g. No-show and late cancels (see "f") are billed at $1200.00 per day plus any case preparation time.

Exh. A - 024

# Joseph K. McElhinny Psy.D.

### Neuropsychology • Clinical Psychology • Consulting

1543 Lewis Ave - Suite #7
PO Box 20856
Billings, MT  59104-0856

(406) 252-2626
Fax (406) 294-0967

## POLICY REGARDING INDEPENDENT MEDICAL EVALUATIONS, PANEL EVALUATIONS, AND WORKMAN'S COMPENSATION EVALUATIONS

1.  IME and Panel Evaluations are billed at $250.00 per hour

2.  Workman's Compensation Evaluations will be billed at $200.00 per hour.

3.  No shows for evaluations are billed at $400.00, not including file review and preparation time.

4.  Late cancels are billed at $400.00 (we will take weather conditions into consideration.)

Exh. A - 025