# Exhibit A

John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH, | Cause No.  CV-07-166-BLG-CSO |
| Plaintiff, | Judge Carolyn S. Ostby |
| vs. | |
| JOHNSON, RODENBURG & LAUNINGER. | **PLAINTIFF'S RULE 26(a)(2) DAMAGES EXPERT WITNESS DISCLOSURE** |
| Defendant. | |

Plaintiff Timothy McCollough, by and through the undersigned counsel, and pursuant to Rule 26(a)(2), herein identifies and discloses the following damages expert witnesses who may be used at trial to present testimony in this matter. Pursuant to Local Rule 26.2, this disclosure is not being filed with the Court.

1.    **Dr. Donna Veraldi, Ph.D.**

1018 North 30th St., Billings, MT 59101
(406) 256-8004

Dr. Veraldi's expert report, CV and list of cases testified in are attached hereto as Exhibit "1."

DATED this 19th day of August, 2008.

HEENAN LAW FIRM

/s/ John Heenan

John Heenan
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 19th, 2008 a copy of the foregoing document was served on the following persons by U.S. Mail:

John E. Boyer
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
283 West Front St., Suite 201
Missoula, MT 59807-7729

RECEIVED 07/08/2008 11:38    4068399092    HEENAN LAW FIRM

Jul 08 08 01:02p    Martin Veraldi    4062457074    p.2

# DONNA MARY VERALDI

1018 North 30th Street
Billings, MT 59101
(406) 256-8004

## EDUCATION:

Ph.D., Clinical Psychology, University of Montana, 1980.

## PROFESSIONAL LICENSOR AND CERTIFICATION:

Licensed Consulting Psychologist, Minnesota (#LP1303)
Licensed Psychologist, Montana (#125)

## PROFESSIONAL ORGANIZATIONS:

Fellow of the American College of Forensic Psychologists (Board Member)
American College of Forensic Psychologists
American Psychological Society

## COMMUNITY ORGANIZATIONS:

Alumni Board - Eastern Montana College (MSU-B), 1989 - 1991

## OFFICE AND DUTIES:

President - Yellowstone Psychological Association (1986 to 1987; 1988 to 1990)
Co-Chair - Montana Psychological Association Legislative Committee (1986 to 1987)
Secretary - Montana Psychological Association (1990 to 1991)

## AFFILIATIONS:

Affiliated Faculty at Eastern Montana College (MSU-B)(1984 to 1986)

## WORKSHOPS AND CLASSES PRESENTED:

Violence in the Workplace
Working with Depression in Latency-Aged Children
Native American Psychology
Assessing and Responding to Suicidality
Methamphetamine
Assessing and Working with Sexually Abused Children
Treating Depression

Donna Mary Veraldi                                    **Page 2**

Introduction to Psychology
General Psychology
Mental Hygiene
Children of Divorce
Adult Psychology
Coaching and Counseling for Managers
Dealing with Stress for Managers
Expert Testimony
Divorce Workshop
Couples Communication
Being a Single Parent
Helping Children Cope with Stress
Treatment Techniques for Adolescents and Children
Normal Childhood Development
Eating Disorders
Neuropsychological Effects of AIDS
Dual Diagnosis of Chemically Dependent Individuals

## PAPERS AND PUBLICATIONS:

Veraldi, D. And Veraldi, L. Does scientific research support regulation of violent television programs? (Paper presented at the American College of Forensic Psychology, April 2008).

Veraldi, D. and Martin, M. Assessment and treatment of an exonerated prisoner: Jimmy Ray Bromgard after 15 ½ years in prison. (Paper presented at the American College of Forensic Psychology, May 2007).

Veraldi, D. And Veraldi, L. Back on Death Row: The Critical Role of the Forensic Psychologist When Mental Retardation Is An Issue (Paper presented at the American College of Forensic Psychology, March 2006).

Gerson, A., Veraldi, D., Hall, D. Ress, R., Kenney, M., and Kastl, A. Aging and Long Term Care (Workshop presented at the American College of Forensic Psychology, April 2005).

Veraldi, D. And Veraldi, L. School Violence: Promising Approaches to Prevention and Mitigation. Psychology of Muder: Readings in Forensic Science (R.E. Geiselman, Ed), 2004.

Veraldi, D. And Veraldi, L. The Death Penalty and the Mentally Retarded: The Role of the Psychologist After Atkins v. Virginia (Paper presented at the American College of Forensic Psychology, April, 2004).

RECEIVED  07/08/2008 11:38    4068399892               HEENAN LAW FIRM

Jul 08 08 01:03p    Martin Veraldi                4062457074          p.4

Donna Mary Veraldi                                    Page 3

Veraldi, D.  Neonaticide: Forensic Issues (Paper presented at the American College of Forensic Psychology, April 2003).

Veraldi, D. and Veraldi, L.  Death Penalty: Role of Behavioral Science in Shaping Public Policy (Paper presented at the American College of Forensic Psychology, April, 2002).

Veraldi, D.  Psychological Profiles of Students Who Take Guns to School (Paper presented at the American College of Forensic Psychology, April , 2001).

Veraldi, D. and Veraldi, L.  School Violence: Promising Approaches for Research and Therapy (Paper presented at the American College of Forensic Psychology, April, 2000).

Veraldi, D. and Veraldi, L.  Liability for PTSD-Related Violence.  American Journal of Forensic Psychology, 2000, 18, 17-25.

Veraldi, D. Violence in the Workplace (Paper presented at American College of Forensic Psychology, April, 1999).

Gerson, A. and Veraldi, D. Psychological Autopsies: Theory and Practice (Paper presented at the American College of Forensic Psychology, May 1998).

Veraldi, L. and Veraldi, D.  Who is Responsible for PTSD-Triggered Violence? (Paper presented at the American College of Forensic Psychology, May 1998).

Veraldi, L. and Veraldi, D. Television Violence: Does the Research support the V-Chip? American Journal of Forensic Psychology.  1998, 16, 25-43.

Veraldi, D.  The Effects of Therapist/Client Sexual Contact: Literature Review (Paper presented at American College of Forensic Psychologists, April, 1997).

Veraldi, L. and Veraldi, D.  Defining Television Violence: What Does the Research Say About What the V-Chip Ought to Block?  (Paper presented at American College of Forensic Psychology, Spring, 1996).

Veraldi, Forsberg, and Rand.  Psychological Screening of Law Enforcement Officers (Panel presented at American College of Forensic Psychologists, Spring, 1995).

Veraldi.  Exposure to Toxins: Use of Neuropsychological Tests in Conjunction with Other Diagnostic Techniques (Paper presented at American College of Forensic Psychologists, May, 1994).

Veraldi.  Neuropsychological Evaluation with a Not Guilty By Reason of Insanity Plea (Paper presented at the American College of Forensic Psychologists, April, 1993).

Donna Mary Veraldi                                 Page 4

Veraldi. Rehabilitation Programs in Women's Prisons (Paper presented at the American College of Forensic Psychologists, April, 1992).

Veraldi. Assessing PTSD in Person Injury Cases, American Journal of Forensic Psychology. 1992, 10, 5-15.

Veraldi. Assessment of PTSD in Personal Injury Cases (Paper presented at the American College of Forensic Psychologists, April, 1992).

Martin and Veraldi. Neuropsychological Effects of Exposure to Toxins in a Work Setting (Paper presented a the American College of Forensic Psychologist, May, 1991).

Veraldi. Borderline and Related Personality Disorders: Management and Treatment Issues, American Journal of Forensic Psychology. 1990, 8, 15-24. (Paper presented at the American college of Forensic Psychology, Spring, 1989).

Bornstein, Hamilton, Carmody, Rychtarik, Veraldi. Reliability Enhancement: Increasing the Accuracy of Self Report Through Mediation Based Procedures. Cognitive and Therapy Research. 1977, 1, 85-98.

"The Effects of Delayed Reinforcement in Aversive Conditioning." Presented at Montana Psychological Association Meeting, Spring, 1971, and given an award for the best undergraduate presentation.

### PRESENT OCCUPATION:

Private Practice, Billings, Montana, 1982 to 1987; 1988 to present.
General practice of adults, families and children.
Psychological evaluations.
Individual and group therapy.
Medical Advisor, Office of Hearing & Appeals, Social Security.
Expert and Legal Testimony.
Consultation to programs.

### PAST EXPERIENCE:

Consulting Psychologist - Indian Health Service: Crow Substance Abuse Program, 1997 to 1998.

Consulting Psychologist, Yellowstone Treatment Centers, 1991 to 1993.

Staff Psychologist for Forensic Mental Health and Diagnostic and Observation Unit at the Federal Medical Center, Rochester, Minnesota, 1987 to 1988.

Donna Mary Veraldi                                          Page 5

Consulting Psychologist, Rivendell of Billings, 1991 to 1993.

Consulting Psychologist, St. Labre Home, Ashland, Montana, 1982 to 1987.

School Psychologist, Lodge Grass, Wyola, and Labre Schools, 1982 to 1987.

Psychologist, Developmental Assessment Services, Glendive, Montana, 1981 to 1982.

Psychologist, Montana Center for Handicapped Children, Eastern Montana College, Billings, Montana, 1978 to 1982.

School Psychologist, Department of Pupil Services, School District #2, Billings, Montana, 1977 to 1978.

Counselor for Sun Valley Ranch, Florence, Montana, 1976.

Psychology Intern, Evaluation and Diagnostic Center, Western Montana Regional Mental Health Center, 1976.

Internship, Camarillo State Hospital, Camarillo, California, 1974 to 1975: Adolescent Unit, Children's Unit, Oxnard Mental Health Center, Adult Psychiatric Unit.

NIMH Trainee, University of Montana, Missoula, Montana, 1973 to 1976.

Psychology Intern, Child Development Center, Missoula, Montana, 1973.

Psychology Student, Practicum at University of Montana, Missoula, Montana, 1972 to 1976.

## REFERENCES:

Available upon request.

RECEIVED  07/08/2008 11:38   4068399092          HEENAN LAW FIRM
Jul 08 08 01:04p     Martin Veraldi                 4062457074          p.7

December 31, 2007


Cases in which I have testified as an expert during the preceding four years are:

Williams v. Williams, Cause No. 04-1205, Child Custody (December 2007)
O'Neill v. O'Neill, Child Custody (November 2007)
Killsback v. Fox, Case No. C2005-339, Child Custody (November 2007)
Anderson v. Anderson, Cause No. DR 04-1612, Parenting Plan (November 2007)
State of Montana v. James Archie Patrick, III, DC 05-0438, Assault (October 2007)
Anderson v. Anderson, Cause No. DR 04-1612, Parenting Plan (September 2007)
Jeffrey R. Smith v. BNSF Railway Company, Worker's Compensation (October 2007)
Robert B. Shipley, CR 07-97-BLG-RFC, Competency (August 2007)
Marlon Stiffarm, CR-06-47-GF-SEH-01, Competency to Stand Trial (March 2007)
Jeremy J. Ricketts, DC-05-02, Competency to Stand Trial (February 2007)
A. S., Cause Nos. DN 06-02, 06-03, 06-04, 06-05, Youths in Need of Care (December
     2006)
Stanley E. Wiggens, Case No. DB-06-07, Guardianship and Conservatorship (November
     2006)
M.C., Case No. DN-04-02, Youth in Need of Care (October 2006)
William Christiansen v. Burlington Northern Santa Fe, Cause No. DV 04-69, Workmen's
     Compensation (September 2006)
Olson v. Morgan v. Tornabeni, Case No. 98-6-470, Child Custody (May 2006)
U.S.A. v. Robert Green, CR-04-87-BLG-RFC (May 2006)
Vera Longee v. U.S.A., Case No. CV 03-098-GF-SHE (April 2006)
State of Montana v. Benjamin Rochin, Cause No. DC-05-034 (March 2006)
Tina Ellison v. Lionel S. Ellison, Cause No. DR-0-07, Child Custody (February 2006)
Cochran v. Schmitt, Child Custody (February 2006)
Dean Johnson v. State of Wyoming, Case No. 21490 (February 2006)
State of Montana v. Timothy Hawthorne, Cause No. DC 2004-24 (February 2006)
State of Montana v. Rusty Rogers, Cause No. DC-05-35 (October 2005) (Sexual Assault)
State of Montana v. T.M. Hendrickson, Cause No. DC-03-370(August, 2005)(Incest)
T.S./State of Wyoming v. Laura Stewart, Cause No. CV-2005-0019 & CV-2005-0020
     (August, 2005) (Parental Rights Termination)
B.S., D.S., M.K., D.B., G.B., E.B.K., Cause No. DN 2005-06; -07; -08; -09; -10, and
     2005-14 (August, 2005) (Parental Rights)
A.A.K.E., Cause No. DN 03-036 (June, 2005) (Parental Rights)
S.T., Cause No. DN-04-01 (June, 2005) (Parental Rights)
Zachary Newman, Cause No. DJ 03-08, DJ 04-01, DJ 05-01 (June, 2005)

RECEIVED  07/08/2008 11:38  4068399092        HEENAN LAW FIRM
Jul 08 08 01:05p    Martin Veraldi            4062457074            p.8

Testimony
Page 2

McKown v. BNSF Railway Company, Cause No. DV-02-1125 (March, 2005) (Personal
     Injury)
J.A.W., Cause No. DN 05-002 (February, 2005) (Parental Rights)
Bunting v. Coine (February, 2005) (Child Custody)
Kioschos v. Kioschos (November, 2004) (February, 2005) (Child Custody)
State of Montana v. LaVerne Breding (October, 2004) (Competency), DC-02-03
B.L.E. and B.M.E. (September, 2004) (Child Custody), DN -1-038
A.J.H. and K.R.H. (September, 2004) (Child Custody), DR 95-839
M.C. (August, 2004) (Child Custody), DN 2003-08
B.D., J.W., D.W., (July, 2004) (Child Custody), DN-00-5
Joseph A. Cruse (May, 2004) (Child Custody)
Ada Ryan (May, 2004) (Child Custody)
B.E. and B.E. (January, 2004) (Child Custody)
Linda Meitzel (December, 2003) (Child Custody)
Carol and Kirk Harshman (April, 2003) (Child Custody)
Amanda Kirkpatrick (March, 2003) (Child Custody)
Grace Hassan (February, 2003) (Child Custody)
A.J.H. & K.R.H. (February, 2003) (Child Custody) DN-02-01
Karyl Rauch (January, 2003) (Child Custody)
Joseph R. Nevin (January, 2003) (Child Custody)

Testimony by deposition:

Jeffrey R. Smith v. BNSF Railway Company, DV 06-0092, Worker's Compensation
     (April 2007)
Francis Mignone v. Lindsay Reynolds, Cause No. DV-0810, Personal Injury (May 2006)
Douglas J. Kratz v. BNSF Railway Company (October, 2005) (Personal Injury) Cause
     No. DV 04-0924
Jim R. Bromgard v. State of Montana, Yellowstone County, et al. (August, 2005)
David L. Selby v. Montana Rail Link (May, 2005) (Personal Injury) Cause DV03-1104
S.G. (November, 2004) (Custody), DN 03-9, 03-10, 03-22
Hice v. DeMaio (November, 2004) (Slander and Libel), DV-03-31
Richard J. Fox (November, 2003) (Job-Related Stress) CV01-105-BL6-RFC
Rodney Obermiller (August, 2003) (Work Injury) CV-02-127-BLG-RWa

RECEIVED  08/18/2008 09:13    4068399092    HEENAN LAW FIRM

Aug 18 08 10:42a    Martin Veraldi    4062457074    p.2

DONNA M. VERALDI, Ph.D.
CLINICAL PSYCHOLOGIST
1018 NORTH 30TH STREET, SUITE A
BILLINGS, MONTANA 59101
(406) 256 8004    FAX (406) 245-7074

# PSYCHOLOGICAL EVALUATION

**NAME:** Tim McCollough
**B/D:** 2/1/56
**C.A.:** 52 Years

**DATE EVALUATED:** 7/18/08; 7/21/08
**EVALUATED BY:** Donna Veraldi, Ph. D.

**REASON FOR REFERRAL:** Mr. McCollough was referred for an evaluation by his attorney, John Heenan. Mr. McCollough is pursuing legal action based on alleged violations of the Federal Fair Debt Collection Practices Act. The purpose of this evaluation is to assess Mr. McCollough's psychological status. Referral questions include assessing Mr. McCollough's pre-existing mental condition, assessing his current psychological status, and describing the probable impact from stress and pressure related to debt collection practices alleged by the plaintiff.

**RECORDS REVIEWED:**

1. Complaint and Demand for Jury Trial (12/14/07)
2. Neuropsychological Evaluation of Tim McCollough by Robert Tompkins, Ed. D. (August, 1990)
Neuropsychological Evaluation of Tim McCollough by Robert Tompkins, Ed. D. (February, 1991)
3. Treatment Notes of Tim McCollough from Billings Behavioral Health from 1993 to 2007
4. Treatment Notes of Tim McCollough from Billings Clinic

**TESTS ADMINISTERED:**

1. Shipley Institute of Living Scale
2. Beck Depression Inventory-II
3. Personality Assessment Inventory
4. Trauma Symptom Inventory
5. Millon Multiaxial Clinical Inventory-III
6. Rorschach (Exner scoring)
7. Interview with Tim McCollough
8. Interview with Dorleen McCollough, wife

RECEIVED  08/18/2008 09:13    4068399892    HEENAN LAW FIRM

Aug 18 08 10:43a    Martin Veraldi    4062457074    p.3

2
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

## BACKGROUND INFORMATION:

Family: Mr. McCollough was born in Billings, where he lived until he was eight. His family then moved to California, due to his father's work. Mr. McCollough lived in the Bay area from the second grade until he completed college.

Mr. McCollough's father is Granville. Granville worked for Safeway and retired as a vice president. According to Mr. McCollough, Granville was instrumental in the development of the bar code system. Granville is now retired, is married to his second wife, Betty, and is living in California.

Mr. McCollough's mother was Pat. She worked as the proof reader for a newspaper. She died of cancer while Mr. McCollough was still in college.

Mr. McCollough's older brother is G. Robert (54). Robert lives in the Bay area and works as a sheriff, running the jail. Robert is married to his third wife. He has one daughter.

Mr. McCollough denied a history of physical or sexual abuse as a child. He recalled that he had a great childhood. His father had a good job and spent time with the family on breaks. While in Montana, Mr. McCollough had many relatives and was especially close to his grandfather. In fact, the only stresses of his young life were related to the deaths of relatives and the loss of his pet dog. Mr. McCollough enjoyed spending time in the country during the summers. After the move to California, Mr. McCollough enjoyed the excitement of living in the Bay area during the 1960s and 1970s.

Mr. McCollough did note that Granville would have only one drink per evening and had trouble stopping his alcohol consumption if he had additional drinks. After retirement, Granville drank heavily for a time and now does not drink at all.

Medical/Developmental: Mr. McCollough was told that his mother was advised not to have a second child. However, she wanted a girl very badly and underwent a second pregnancy. She did not have significant problems with her pregnancy and delivery of Mr. McCollough. He reached developmental milestones normally.

Mr. McCollough reported that he had fungus in his ears as a child and lost his hearing about three times. He had problems with tonsillitis. He reported that he had measles six times.

As an adult, Mr. McCollough reported serious physical injuries. He reported that he sustained first, second, and third degree burns over one fourth of his body while working in Alaska when a steam pipe blew. When asked if he had to be transported to a

RECEIVED 08/18/2008 09:13   4068399092          HEENAN LAW FIRM

Aug 18 08 10:43a    Martin Veraldi              4062457074              p.4

3
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

hospital for the sort of extensive care that such injuries would require, he responded that he was not. He ran to a brine freeze tank and got in immediately. He then spent three days in a bunk with his back in the air. He was able to treat his own injuries without medical care and was able to return to work.

Mr. McCollough reported that he had suffered six knife wounds at various times and places. When asked if he had medical treatment for his injuries, he responded that none of his wounds were life-threatening.

Mr. McCollough reported that he had sustained two bullet wounds. Upon further inquiry, he acknowledged that he was wearing heavy clothes and that the .22 caliber bullets left welts but did not penetrate his skin.

Mr. McCollough reported having had 27 broken bones, including six broken ribs and a split sternum. His most recent injury occurred last month when he broke his little toe by stubbing it against a door in the dark.

Mr. McCollough reported having sustained head injuries. The most serious one occurred while Mr. McCollough was working in 1990. Mr. McCollough allegedly was assaulted while at work but no charges were ever filed. Mr. McCollough refused medical treatment at the scene but later did go the to emergency room at St. Vincent's Hospital. A CAT scan failed to show abnormalities of the brain, and a post concussive disorder was diagnosed. Neuropsychological testing was administered on two occasions, with an indication of some cognitive abnormalities, which showed improvement on retest. These test results were consistent with a history of head trauma.

Mr. McCollough reported that he had been receiving psychiatric treatment through Deaconess Behavioral Clinic. He indicated that he was no longer taking medications for his psychiatric problems or for his headaches. He further explained that he was not happy with his medical providers.

Education: Mr. McCollough did not ever repeat any grades. He indicated that he was in the gifted program and a special education reading program, both at the same time. He reported that he got "A" and "B" grades in high school, where he also received seven varsity letters. He graduated from Clayton Valley High School in 1974.

Mr. McCollough then went straight to college, at Los Modanos. He dropped out of school without completing a degree because his grandfather died and he felt a need to return to Billings to help his grandmother.

At the same time that Mr. McCollough attended Los Modanos, he also was involved with the American Conservatory of Theater. He spent one year in classes and one year

RECEIVED 08/18/2008 09:13    4068399092              HEENAN LAW FIRM
Aug 18 09 10:44a    Martin Veraldi              4062457074              p.5

4
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

touring with a Shakespearean Tour Group.

Mr. McCollough completed mail order courses so that he could receive an honorary doctorate.

Mr. McCollough has also completed training for licenses in heating, air conditioning, and ventilation, in being a seaman apprentice, in air conditioning and refrigeration, and in stage lifting. He completed one more license but cannot recall what it was for.

Military: Mr. McCollough was in the Navy Reserves from 1984 until 1990. He reached the rank of Second Class Petty Officer and was honorably discharged. Mr. McCollough alluded to some type of classified government work, perhaps when he was attached to Naval intelligence.

Vocational: Mr. McCollough has done various types of work. He worked as a livestock foreman. He worked for the government. He had his own print shop. He worked for a tree trimming business. He worked for a fishing fleet and then a cold storage unit in Alaska. He worked at various grocery stores on and off. He had a business as a groundskeeper.

Mr. McCollough's final job was for School District 2. He worked as a custodian and then a maintenance engineer. He was reportedly attacked while at work. He had a Workman's Compensation Claim, which provided him with payments until 1994. He applied for Social Security Disability Insurance in 1992 on the basis of his head injury and also migraine headaches. He was granted benefits back to 1991.

Mr. McCollough is currently not working.

Alcohol/Drugs: Mr. McCollough reported occasional alcohol use. He indicated that he would have a beer to "thin out his blood" when he was hot. Or he might have a couple of shots of tequila with chili peppers to ease his headaches.

Mr. McCollough denied any recreational drug use or any tobacco use.

Legal: Mr. McCollough denied a history of legal problems.

Marital: Mr. McCollough has only one serious relationship in his life, with Dorleen, whom he married in 1990. Mr. McCollough has no children of his own. Dorleen has two adult children from a previous marriage.

Mental Health: Records from Billing Deaconess indicate that Mr. McCollough completed a neurological work-up after his reported head injury. No physical

PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

abnormalities were noted, but Mr. McCollough was diagnosed with post concussive syndrome. His first neuropsychological evaluation was done in 1990. Although many of his test results were normal, there were pathognomic indicators suggesting problems dealing with competing response sets and divided attention as well as some higher level reasoning and executive functioning. There were some changes in personality, namely more irritability and explosive mood. Mr. McCollough was diagnosed with Organic Psychosyndrome of Nonpsychotic Severity, apparently secondary to closed head injury.

On retest, in 1991, executive skills seemed to have improved somewhat. IQ scores were higher, with the possibility of a practice effect. Memory was below what would be expected in some areas. There was a continued problem in dealing with competing response sets and with sequencing.

Emotionally, Mr. McCollough displayed symptoms of depression and considerable distress about his body functioning. He was suffering from chronic anxiety and a heightened tendency to react towards others as if they were threatening him. He seemed to be avoiding stressful situations. He continued to describe rage reactions.

Mr. McCollough was diagnosed with Organic PsychoSyndrome of Nonpsychotic Severity, Major Depression, Single Episode, Severe, Chronic Post-Traumatic Stress Disorder, Dysthymic Personality, and Rule/out Impulsive Personality Disorder. Records indicate that Mr. McCollough was seen briefly for counseling by Dr. Tompkins.

Mr. McCollough obtained psychiatric care from Deaconess Behavioral, starting in 1991. He worked with several different psychiatrists. He first saw Dr. O'Neil who noted problems with anger control, irritability, and mood disturbance. He next was interviewed by Dr. Yelvington in 1993. He described problems with being around people. He felt that being around people would trigger violence in him. He was trying to be able to be around people without being dangerous. He also reported problems with black-outs, memory lapses, anxiety attacks, and horrible memory. He had repeated periods during which he experienced rage. He had become isolative and paranoid since his attack. He admitted that he experienced a great deal of affective instability and impaired impulse control. His emotional stability was also compromised by severe headaches, which caused him to be grumpy and irritable. Dr. Yelvington diagnosed Mr. McCollough as having an organic personality syndrome. He recommended that Mr. McCollough continue counseling with Steve Tobin. He also recommended that Mr. McCollough work with another psychiatrist because Dr. Yelvington did not believe that he could provide treatment for Mr. McCollough's problems.

It appears from the records that Mr. McCollough next was referred to Dr. Whitworth in 1993. Dr. Whitworth again noted the concerns that Mr. McCollough and his wife voiced about the potential for Mr. McCollough to take violent actions against people whom he

6
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

believed treated him unfairly before and after the physical attack at the Vo-Tech center where he worked. Dr. Whitworth diagnosed Mr. McCollough with a Rule/out Organic Affective Disorder, Dysthymia, and a Mixed Personality Disorder with antisocial and narcissistic features.

It appears that Mr. McCollough was next treated by Dr. Carlson. Anxiety and sleep problems were noted during 1998. Paranoia, grandiosity, and irritability were discussed in 1999, with a question about possible bipolar disorder. Later, there was a reference to flashbacks.

By 2003, Dr. Carlson noted that he considered Mr. McCollough to be somewhat of an enigma. There were continued sleep problems and complaints of fatigue. About every six weeks, Mr. McCollough would have an episode of shakiness, paranoia, and marked difficulty with sleep. Mr. McCollough was reluctant to take psychotropic medication. Instead, he managed his symptoms by making his environment as low stress as possible. His diagnosis at that time was mild dementia, generalized anxiety disorder, and probable post-traumatic stress disorder. Later that year, Mr. McCollough was reportedly somewhat more depressed and perhaps more irritable.

In 2004, Mr. McCollough was described as not worse and perhaps a bit better. By the end of that year, Dr. Carlson believed that Mr. McCollough's condition was relatively stable.

By 2005, Mr. McCollough was reporting intermittent periods with severe headaches and grumpiness.

In 2006 and 2007, Mr. McCollough was treated by Dr. Klein. An organic affective disorder with a mildly anxious mood was noted. He appeared to have a depressive episode during the summer of 2006. In 2007, Mr. McCollough reported affective lability but refused medication.

Mr. McCollough is not currently receiving mental health treatment. He reports current symptoms of anxiety attacks, including difficulty with his chest when he goes outside, being bothered by light, being over-reactive to sudden noise, being antsy, and being extremely irritable.

When Mr. McCollough was asked about the stress from the debt collection process, he indicated that he had several credit cards at the time of his head injury in 1990. He was having physical and psychological problems after the head injury and was unable to work. He made arrangements to pay the balances on his credit cards. Unfortunately, he had trouble with his payments from Workman's Compensation and was dropped from the program several times. Therefore, he would be unable to make his credit card

7
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM


payments. Penalties and interest was added to his credit card debt.

Mr. McCollough decided that the stress from this situation was so detrimental to his health that he had to stop talking to the card companies. In 1998, he thought that the statute of limitations had expired. As well, Mr. McCollough's income was his disability payments, which he believed was exempt from the collection process. Contrary to what Mr. McCollough thought, the credit card companies sued him. Mr. McCollough won the lawsuit and, again, thought that the issue was settled. Unfortunately, the credit card companies sued him several more times, taking him out of small claims court and into district court. Mr. McCollough found that he became sick every time another legal action was initiated against him. He finally decided that he would have to retain a lawyer to assist him in his defense.

This examiner also interviewed Dorleen, Mr. McCollough's wife, in order to assess Mr. McCollough's mental status. Dorleen thought that the original head injury changed Mr. McCullough a great deal. She thought that his cognitive abilities really deteriorated after the injury. She also thought that he was over-medicated during the time that he was receiving treatment. Dorleen and Mr. McCollough consulted with Mr. McCollough's brother and decided to wean Mr. McCollough from his medication. According to Dorleen, Mr. McCollough finally learned how to control his temper without the medication. She did note that he has stress headaches. At times, he is unable to think properly. At times, he has "cotton ball days" when he is in a fog. He often seems to be tense and under stress. He does not interact with people outside his household.


TEST RESULTS AND INTERPRETATION:

Shipley: This quick screen indicates that Mr. McCollough has average intelligence.

Beck: Mr. McCollough reports symptoms consistent with a mild level of depression. He denies suicidal ideation. He reports vegetative signs of reduced sleep, little appetite, increased fatigue, reduced energy, impaired concentration, and reduced libido.

Mr. McCollough additionally reports symptoms of increased irritability and restlessness. He is less interested in other people or things than he once was. He cannot get pleasure from things he used to enjoy. He feels guilty over things he has done or should have done and feels more discouraged about his future than he used to be.

Personality Assessment Inventory: Mr. McCollough's validity scales reflect a tendency on his part to respond inconsistently. Carelessness, confusion, or reading problems could cause this response pattern. It did not happen to the degree that it would invalidate clinical results, but it does suggest that some caution should be used in

8
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

interpreting test results.

Mr. McCollough's validity scales also indicate that he did not attempt to portray a more negative picture of his symptoms than would be warranted by his condition. As well, he did not attempt to present an unrealistically favorable impression of himself.

Somatic Complaints: Mr. McCollough endorsed items consistent with his having significant concerns about his somatic functioning. He probably feels impaired by his physical symptoms and feels that his health is not as good as that of others his age. He may believe that his health problems are complex and difficult to treat successfully. He may be viewed as unhappy, complaining, and pessimistic. He may use his health problems to control his world.

Mr. McCollough is typically preoccupied with his health. His self-image may be influenced by beliefs that his is handicapped by poor health. He may experience frequent physical symptoms and chronic pain. His physical symptoms may often be accompanied by depression and anxiety.

Anxiety: Mr. McCollough's responses indicate few complaints about anxiety and tension.

Anxiety-Related Disorders: Mr. McCollough reported little general distress but, perhaps, some specific fears and little self-confidence.

Depression: Mr. McCollough's responses suggest that he may be unhappy, sensitive, pessimistic, or self-doubting. He has a tendency to experience and express depression in somatic form. When he is down, he will experience a change in his level of physical functioning, activity, and energy. Vegetative signs of depression will appear.

Mania: Mr. McCollough may have times during which he is active, outgoing, ambitious, and self-confident. His thought content may be characterized by inflated self-esteem, expansiveness, or grandiosity.

Paranoia: Mr. McCollough may be rather sensitive, tough-minded, and skeptical. He may closely monitor his environment for evidence that others are trying to harm him.

Schizophrenia: Mr. McCollough may be seen as someone who is withdrawn, aloof, and unconventional. He may have times of confused thinking and difficulties in concentration. Symptoms of depression, a history of brain injury, or side effects of medication could contribute to this presentation.

Borderline Features: Mr. McCollough reports being emotionally stable with stable

9
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM


relationships.

Antisocial Features: Mr. McCollough reports that he is reasonably empathic and warm in his relationship with others. He would be expected to exhibit reasonable control over his impulses and behavior.

Alcohol: Mr. McCollough reports moderate alcohol use with few adverse consequences.

Drugs: Mr. McCollough does not report problems with drug use.

Aggression: Mr. McCollough reports that he has reasonable control over his anger and hostility.

Suicidal Ideation: Mr. McCollough denies thoughts of death or suicide.

Stress: Mr. McCollough reports that his life is stable, predictable, and uneventful.

Nonsupport: Mr. McCollough believes that he has close, generally supportive relationships with family and friends.

Treatment Rejection: Mr. McCollough acknowledges the need to make some changes and has a positive attitude toward personal change.


Trauma Symptom Inventory: Mr. McCollough's manner of responding to this inventory indicated that his clinical scales can be interpreted. Mr. McCollough did not report symptoms that would reflect the presence of Posttraumatic Stress Disorder.

Millon Clinical Multiaxial Inventory-III: Mr. McCollough's responses to this inventory reflect an outer façade of coolness and seeming indifference that cover inner tension and resentment. Emotions tend to be denied. Clinical results were modified to account for the defensiveness and psychic tension.

Mr. McCollough's profile suggests the presence of long term personality dysfunction. He tries to maintain a veneer of sociability, maturity, and self-assurance in order to hide a fear of genuine autonomy and feelings of deep antagonism. His interpersonal maneuvers are an attempt to gain recognition and social approval. He may experience intense anxiety when such approval is not forthcoming.

Mr. McCollough seems to make an effort to repress his own awareness of his inner sense of inadequacy and dependency. He will try to adapt his behavior to conform to the desires of others, but he may experience times when he verbally expresses his anger.

10
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

Mr. McCollough feels satisfied when he can make public displays of his admirable traits and accomplishments, which may make him appear to be egotistical, inconsiderate, or arrogant. He has a need to have a special status and special admiration from others. He may act in a grandiose manner, even when his achievements do not support his attitude.

Mr. McCollough's testing suggests narcissistic and schizotypal personality features.

Mr. McCollough's responses also indicated that presence of a Generalized Anxiety Disorder. Mr. McCollough endorsed items having to do with his being in a tense and agitated state. He may have muscular pains, headaches, unexplained perspiration, and chest palpitations. He may feel jumpy, ill-at-ease, weak, and fatigued. These symptoms may be prompted by recent failures, an inability to get things to go his way, and a feeling that a disparity between having things as he is accustomed, and the presence of events that now preclude his more usual and successful manipulations.

Rorschach: Mr. McCollough provided sufficient responses so that his protocol could be scored and interpreted. His manner of responding did not indicate severe psychopathology, such as Major Depression, Coping Deficits, or Psychosis.

Mr. McCollough's testing suggests adequate psychological resources to allow him to cope comfortably with the demands made on him by ordinary life. His stress tolerance seems to be based on his being less influenced than most people by needs and feelings. Thus, he may be able to remain remarkably calm and unflustered in a crisis situation that would distress others because he ignores or minimizes the implications of the event. Mr. McCollough may be quite capable of controlling his behavior and avoiding emotional outbursts or impulsive behavior. This tendency to ignore things may serve Mr. McCollough well in some types of crises but may also result in his being able to deal effectively with other important situations.

Testing does indicate the presence of situation-related stress, consisting primarily of emotional demands that are contributing to symptoms of anxiety and dysphoria. Mr. McCollough may experience apprehension, a general sense of malaise, and a reduced motivation to carry on with everyday activities. He may feel rather hopeless about the future. He may feel rather ambivalent towards people and events in his life.

Mr. McCollough tends to make decisions based on thinking, although he exhibits flexibility in his approach to problem-solving. He seems to be experiencing a modest amount of intrusive or unpleasant thinking, which may be caused by situational stress. He can be rather rigid in his belief-system. He generally displays the ability to think logically and coherently.

Aug 18 08 10:46a     Martin Veraldi              4062457074           P.12

11
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

Mr. McCollough displays the ability to form accurate impressions of his world and to recognize conventional modes of response. He may be rather cautious and precise, with a perceptual style that is rather perfectionist.

Mr. McCollough appears able to focus his attention and to synthesize information. At times, it may be difficult for him to shift his attention from one matter to another. He is highly motivated to grasp complex concepts. Unfortunately, he may tend to take in more information than he can organize efficiently and to examine situations more thoroughly than is useful. He typically devotes considerable energy to keeping alert to what is going on around him, and he is much more concerned than most people with surveying situations thoroughly enough to notice their every feature. This excessive scrutiny identifies a hypervigilant personality style that is likely to engender suspicion and mistrust in his everyday transactions with people. Thus, he may experience strained relationships.

In interpersonal relationships, Mr. McCollough demonstrates a hypervigilant personality style. He keeps himself constantly on the alert for potential sources of threat to his safety and security. Close interpersonal relationships are viewed with alarm. People are approached with caution and often with suspicion. At the same time that he is hypervigilant, Mr. McCollough may be rather dependent, with greater need for direction and support than most. He may harbor naïve expectations about how tolerant others may be of his needs and, thus, may often feel resentful towards or disappointed by relationships. It is hard for Mr. McCollough to get close to people. On a social level, he is interested in people. He expects that people will interact in a spirit of cooperation and will try to be agreeable. He has the ability to demonstrate adaptive interpersonal behavior.

Mr. McCollough does not appear to be introspective. He does not possess much self-awareness and may be at risk for adjustment difficulties. He may be purposely ignoring himself because he suffers from low self-esteem. He has trouble identifying comfortably with real people in his life and may not have a stable sense of himself.

Mr. McCollough does not suffer from Major Depression. He is experiencing considerable emotional stress that is interfering with is pleasure in life and that is causing him to have symptoms of anxiety and dysphoria. It is hard for him to process his emotions. He may be rather oppositional and angry. He demonstrates a high degree of psychological complexity. He may function in different ways at different times and behave in ways that are not always easy to understand. It may be difficult to determine what is going on with Mr. McCollough. His complexity may be related to situational concerns.

12
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

SUMMARY AND CONCLUSIONS:

Mr. McCollough is an individual whose testing suggests long standing personality dysfunction. Despite experiencing some difficulties, he had a job, was married, and was not in any legal trouble. His circumstances seem to have changed in 1990.

According to Mr. McCollough, he was attacked at work and hit over the head with an iron bar. No charges were ever filed. Medical examination did not substantiate injury. A post concussive syndrome was diagnosed. Neuropsychological testing indicated mild cognitive impairment, consistent with head injury. Additionally, Mr. McCollough seemed to be depressed, anxious, and irritable. He had complaints of affective instability and rage reactions. He was diagnosed with a Posttraumatic Stress Disorder after the accident. He received psychiatric treatment until about 2007. He is currently not taking any psychotropic medication. In order for Mr. McCollough to manage his psychiatric symptoms, which are believed to have an organic basis, he has to maintain a very low level of stress in his life.

Mr. McCollough was awarded disability benefits going back to 1991 on the basis of his psychological problems and his migraine headaches.

Current psychological testing indicates that Mr. McCollough still shows signs of personality dysfunction. He has narcissistic and schizotypal personality features. There is evidence that he has learned to control his emotional lability and rage reactions by covering up his inner insecurities and tensions. He has developed adequate coping skills by learning to ignore or minimize much of what goes on around him and by maintaining a low stress lifestyle.

Although Mr. McCollough continues to experience emotional distress and dysphoria, there is no indication of a Major Depressive Disorder. Mr. McCollough may tend to experience symptoms of depression in terms of somatic symptoms, including reduced energy and motivation. He may also experience chronic pain and increased physical complaints under stress.

Mr. McCollough reports symptoms associated with Posttraumatic Stress Disorder, such as a tendency to startle easily and sleep problems. His test results do not support a current diagnosis of a full-blown Posttraumatic Stress Disorder. Instead, there is evidence of a generalized anxiety disorder and a tendency to be hypervigilant to potential threats and danger. Situation-related stress appears to play a significant role in Mr. McCollough's current anxiety-spectrum disorders.

Mr. McCollough reports that he has had to rely heavily on keeping a low pressure daily routine since his accident in order for him to reduce his level of anxiety. At the time of

PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

his injury, he had several credit cards. He made arrangements to pay off those cards but often had problems with his Workman's Compensation payments. By 1998, he believed that he could not handle the stress of dealing with the problems related to his unpaid credit cards, including penalties and interest. By that time, he was also on disability.

The credit card companies sued Mr. McCollough for the balance on the cards, but Mr. McCollough prevailed. Unfortunately, the problems were not resolved with the one lawsuit. Mr. McCollough reports that the companies continued to pursue him legally for payment. He would get sick every time a new action would be brought. Since the lawsuits continued, despite favorable judgments for Mr. McCollough, he was finally forced to seek his own attorney in order to try to resolve the situation.

Any type of chronic and overwhelming stress, including financial stress, is known to have an effect on both mental and physical well-being. Furthermore, an individual, like Mr. McCollough, who is already compromised by impaired cognitive functioning and mental health problems, is more vulnerable to the effects of chronic stress. Current stress, even if it is not of a traumatic nature, can trigger old trauma issues and can result in the resurgence of traumatic reactions, such as sleep problems, hyperarousal, and hypervigilance.

It is very difficult to sort out the contributions of earlier stress from current ones. Mr. McCollough's current condition is, no doubt, due to a combination of factors. Nevertheless, he reports somatic complaints, vegetative(physical) signs consistent with depression, and a generalized anxiety disorder. Recent stressors seem to play a significant role in his current condition. One recent, severe, and chronic stressor has been Mr. McCollough's ongoing problems with credit card debt and efforts by law firms to sue him over this debt on multiple occasions. Since Mr. McCollough was disabled and unable to work during this time period, the stress would have been likely to have felt overwhelming, since Mr. McCollough would not personally have been able to raise the money to satisfy the debt. Therefore, it is more probable than not that the stress from the collection process has been a significant factor in Mr. McCollough's current situational stress and symptoms of depression and anxiety.

DIAGNOSIS:

Axis I:      309.0 Adjustment Disorder with Depressed Mood
             300.02 Generalized Anxiety Disorder
             History of Post concussive Syndrome and Mild Cognitive Impairment
Axis II:     301.9 Personality Disorder NOS (Schizotypal and Narcissistic features)
Axis III:    Reported history of head trauma and migraine headaches
Axis IV:     Occupational problems

14
PSYCHOLOGICAL EVALUATION
MCCOLLOUGH, TIM

Axis V:     GAF: 50, serious

RECOMMENDATIONS:

1. Mr. McCollough should continue to meet with his psychiatrist as recommended and should discuss whether lower doses of medication could be helpful in addressing his current symptoms.

2. Mr. McCollough should follow a daily routine that is designed to increase his sense of security and control and to decrease the level of stress in his life.

3. Mr. McCollough needs to continue to find ways to adapt his mental functioning so that he is able to control his irritability and rage reactions.

4. Mr. McCollough may be re-evaluated as requested.

Donna Veraldi, Ph. D.
Psychologist