John E. Bohyer
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
283 West Front, Suite 201
Post Office Box 7729
Missoula, Montana 59807-7729
Telephone: (406) 532-7800
Facsimile: (406) 549-2253
Email: mail@bstlawfirm.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

-------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| TIMOTHY McCOLLOUGH, | ) | Cause No. CV-07-166-BLG-CSO |
| | ) | **THE HON. CAROLYN S. OSTBY** |
| Plaintiffs, | ) | |
| | ) | |
| -vs.- | ) | **REPLY BRIEF IN SUPPORT** |
| | ) | **OF MOTION FOR** |
| JOHNSON, RODENBURG & | ) | **RECONSIDERATION** |
| LAUINGER, | ) | |
| | ) | |
| Defendant. | | |

-------------------------------------------------------------------------------------------------

Defendant Johnson, Rodenburg & Lauinger, by and through its counsel

of record, files this reply brief in support of its motion for reconsideration.

## ARGUMENT

### 1.    McCollough's advance pay demands make the offset issue ripe.

McCollough's position that production of the settlement agreement is premature until the jury assesses damages against JRL is entirely inconsistent with the advance payment demands he has submitted to JRL.  Following entry of the Court's orders granting McCollough partial summary judgment on his various FDCPA liability theories, McCollough's counsel has twice sent written demand to JRL's counsel that JRL's insurer make advance payment of McCollough's attorney's fees and costs based on his contention that McCollough is the "prevailing consumer" and is therefore entitled to recovery of his attorney's fees and costs.  Copies of those demands dated February 6, 2009 and February 19, 2009 are attached as Exhibits A and B, respectively.

In his letter of February 6, McCollough's counsel stated:

> As you are aware, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3), requires the payment of costs and reasonable attorney's fees to a prevailing consumer.  The Court has now found Johnson, Rodenburg & Lauinger liable under the Fair Debt Collection Practices Act for several discrete violations, and has further ruled that the affirmative defense of "bona fide error" is unavailable. . . . Consequently, liability is now reasonably clear with

> respect to Johnson, Rodenburg & Lauinger's obligation to pay Mr. McCollough's attorneys fees and costs. To that end, I am enclosing herein detailed statements of Mr. McCollough's fees and costs relating to his Fair Debt Collection Practices Act claim through January of 2009, which total 68,702.76. Kindly remit payment.

Exhibit A.

JRL's counsel responded to McCollough's demand and declined his request for payment. McCollough's counsel responded by his letter of February 19 and renewed his demand for payment of fees costs, even threatening that JRL's insurer was violating Montana law by its refusal to make advance payments. After citing authority which purportedly stands for the proposition that attorney's fees should be awarded to a plaintiff who prevails on liability under the FDCPA even without proving damages, counsel's letter continued:

> In the interim, Judge Ostby's rulings dictate that liability is now established and Minnesota Mutual has an obligation as a Montana insurer to pay those damages which are reasonably clear at present.
>
> *    *    *
>
> The point is Minnesota Mutual now knows that liability is reasonably clear and that it will have to pay some amount of fees and costs. . . Minnesota

> Mutual is acting contrary to Montana law by refusing to pay any amount of attorney's fees or costs at this juncture in spite of the fact that liability is reasonably clear.

Exhibit B, p. 2.

McCollough's demand letters leave no room for doubt that even if the jury doesn't award him a penny in damages on his FDCPA claim, he considers himself the prevailing party under the FDCPA and will pursue recovery of his attorney's fees through post-trial motions. Accordingly, given McCollough's stated position on his right to recover attorney's fees and costs even in the absence of an award of damages, the offset issue is ripe such that the settlement agreement is discoverable at this stage of the proceedings.

**2.    There is no strong public policy preventing the discovery of "confidential" settlement agreements.**

McCollough's second argument is that there is a strong public policy interest in enforcing the terms of a confidential settlement agreement. McCollough cites three cases, none of which support his argument. In *Hannah*, the plaintiff sought the production of a confidential settlement agreement between Ronald Elwell and General Motors regarding Elwell's ability to consult or testify as an expert in product liability cases against GM

since he had been a GM employee for thirty years.  *Hannah v. General Motors Corp.*, 969 F.Supp. 554, 555-56 (D.Ariz. 1996).  GM objected to the production of the settlement agreement arguing there was a strong public policy interest in preventing the discovery of confidential settlement agreements, citing the court to *Haworth v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993).  *Id.* at 558.  Nowhere does the court in *Hannah* state that there is a strong public policy interest in protecting the discovery of confidential settlement agreements.  McCollough has cited the Court to GM's argument and represented it as authoritative law.

The court in *Hannah* did not compel production of the settlement agreement for several reasons after conducting an *in camera* review.  The court found the terms of the settlement agreement were irrelevant to the issues in the case before it.  *Id.*  Additionally, the court noted that no other court had ever found the Elwell/GM settlement agreement discoverable.  *Id.*  Although the *Hannah* court reached this conclusion, its facts are easily distinguishable from the case at bar.  *Hannah* was seeking to discover a settlement agreement that was reached between the parties to an entirely different lawsuit.  The settlement agreement was reached in a suit between Elwell and GM that dealt

with the terms of his separation from GM. *Id.* at 555-56. The settlement had nothing to do with the lawsuit filed by *Hannah*.

The *Haworth* case cited by McCollough does not support his argument that there is a strong public policy against discovery of confidential settlement agreements. *Haworth* was a patent infringement case in which Herman Miller, Inc. sought to obtain information, including settlement agreements, about every prior patent infringement lawsuit filed by Haworth[1]. *Haworth*, 998 F.2d at 976-77. Herman Miller served Allsteel, Inc. with a subpoena to obtain all of the documents related to an earlier, unrelated lawsuit filed against it by Haworth. *Id.* at 976. Allsteel produced thousands of documents but refused to produce the settlement agreement between it and Haworth. *Id.* at 977. Herman Miller filed a motion to compel which was denied by the district court. The district court held that Herman Miller should first seek to obtain the settlement agreement from Haworth. That way, any objections to production of the settlement agreement could be determined by the judge

---

[1]The *Haworth* case was an ancillary proceeding which was filed in a different jurisdiction from the one where the lawsuit was pending. Herman Miller served Allsteel, Inc. with a subpoena to obtain documents related to its earlier settlement with Haworth in an unrelated lawsuit. Herman Miller filed a motion to compel with the court in the jurisdiction where Allsteel was located. Thus, the *Haworth* opinion was not an appeal from the underlying lawsuit between Haworth and Herman Miller.

presiding over the case.  *Id.*  Herman Miller appealed and the decision was affirmed.  The appeals court concluded the district court did not err by requiring Herman Miller to seek production of the settlement agreement from Haworth.  *Id.* at 977-78.  Nowhere in the opinion does the court ever state that there is a strong public policy preventing the discovery of confidential settlement agreements.

Finally, McCollough cites the Court to *Hudspeth v. Commissioner of the IRS*, 914 F.2d 1207 (9th Cir. 1990), a case in which discovery of a settlement agreement was not an issue.  In *Hudspeth*, there was a dispute between the IRS and some taxpayers as to the value of timber.  *Id.* at 1210.   The taxpayers hired an expert to value the timber.  *Id.*  Their expert's report on value relied on information he used to value similar timber in a different case between the IRS and Pine Products Corp[2].  *Id.*  The IRS moved to exclude the taxpayers' valuation since it relied on the information from the Pine Products case.  *Id.* The tax court agreed and excluded the valuation report.  *Id.*

---

[2]The IRS's case against Pine Products was settled with no deficiency assessment against Pine Products.  The final settlement contained substantially higher tree values than those asserted by the IRS against Hudspeth.  *Hudspeth*, 914 F.2d at 1210.

On appeal, the Ninth Circuit examined whether the valuation report was admissible under Fed. R. Evid. 408. *Id.* at 1213. The court held that Rule 408 excluded the evidence since the taxpayers were attempting to prove the value of their timber with information from a different case. *Id.* at 1214. However, the court went on to provide:

> The taxpayers also sought to admit the Pine Products valuation data for the purpose of showing bias on the part of the Commissioner. Rule 408 specifically provides for the admissibility of compromise and settlement negotiations for the purpose of showing bias or prejudice of a witness.
>
> In both the Pine Products case and the Taxpayers' case, the same valuation expert handled the valuation issues. FN9. However, the figures arrived at in the two cases were quite disparate even though the taxpayers in both cases were similarly situated. The data was relevant to the issue of whether there was bias, especially given the wide disparity between the two figures and should have been admitted by the trial court.
>
> > FN9  The valuation expert for the Commissioner was Mr. Ken Taylor. Mr. Taylor approved the Pine Products timber values contained in the Pine Products settlement. Mr. Taylor was also the Commissioner's valuation expert for the Taxpayers' trial.
>
> * * *
>
> While the Pine Products valuation data was irrelevant for the purpose of showing the value of the timber, the evidence was relevant to show bias on the part of the Commissioner's valuation expert. Since the Commissioner's case hinged on the credibility

and reliability of his valuation expert, the tax court's exclusion of the Pine Products valuation data was prejudicial.  We hold that the tax court's refusal to consider the Pine Products valuation data was an abuse of discretion.
*Id.* at 1214-15.

*Hudspeth*, like *Haworth* and *Hannah*, does not support McCollough's argument that there is a strong public policy that confidential settlement agreements cannot be discovered.  In fact, *Hudspeth* held that the tax court erred when it excluded the evidence because it was admissible under Rule 408 to show bias.  Under this reasoning, JRL has a right to discover the settlement agreement between McCollough and CACV; it may be admissible to show bias in his testimony.

**3.    Plaintiff's potential bias makes the settlement agreement discoverable**.

McCollough's third argument is that his obvious bias as a plaintiff overcomes JRL's ability to seek discovery of the settlement agreement. McCollough relies on *Reichenbach v. Smith* to support his argument even though *Richenbach* expressly states that the existence of a settlement agreement goes directly to the issue of credibility.  Although McCollough quoted the opinion at length, he neglected to include the most important language:

Rule 408 of the new Federal Rules of Evidence specifically states that while evidence of a compromise is not admissible to prove liability, "this rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness ...."  Although the evidence rules did not formally become effective until July of 1975, several months after the trial in January, 1975, Rule 408 codifies a trend in case law that permits cross-examination concerning a settlement for the purpose of impeachment.

\* \* \*

In deciding whether to permit or limit cross-examination of a party, here Ms. Reichenbach, concerning a settlement with a codefendant, the trial court must balance the policy of encouraging settlements with the need for evaluating the credibility of the witnesses.  McCormick, supra at 665.  We appreciate possible tensions created by these policies which Rule 408 now formally recognizes.  The importance of informing the jurors fully so that they can carefully judge the credibility of each witness in making their fact determination may in some situations outweigh the desire to encourage settlements.  But this choice must be made in the first instance by the trial judge.

\* \* \*

In this instance, aware of the broad discretion of the trial judge to run the trial, we are unable to find harmful error. (Citations omitted.)  But we emphasize that this affirmance is not to be considered an approval for the future of the trial court's approach.  ***The existence of a settlement agreement goes directly to the issue of credibility and usually the better approach is that codified in Rule 408***.
*Id.* at 1075-76 (emphasis added).

*Reichenbach* obviously does not support McCollough's argument since the court expressly stated that the existence of a settlement agreement goes directly to the issue of credibility. Thus, a settlement agreement is discoverable and may be admissible. The cases cited in JRL's initial brief establish that the "majority rule" holds that settlement agreements are discoverable and may be admissible under Rule 408. Therefore, the Court should grant the motion for reconsideration and compel McCollough to produce his settlement agreement with CACV.

**4.      The settlement amount may be admissible**.

McCollough's final argument is that the amount of the settlement should not be disclosed to the jury. This argument places the cart well before the horse. JRL's motion for reconsideration seeks discovery of the settlement agreement, not a ruling that it is admissible. It is JRL's position that the settlement agreement is discoverable since it may be relevant and admissible under Rule 408 on the issue of McCollough's bias, and because it is also relevant to the issue of offset. However, the issue of admissibility cannot be determined until after the settlement agreement is produced and McCollough testifies at trial.

If the Court orders production of the settlement agreement, it should not be persuaded by McCollough's argument on this issue. The case cited by McCollough was decided by a Louisiana state appellate court, not a Court applying Federal Rule of Evidence 408. Moreover, the Montana Supreme Court has held that the amount of a settlement may be admissible as relevant to show bias. *Tripp v. Jeld-Wen, Inc.*, 2005 MT 121, ¶ 10, 327 Mont. 146, 112 P.3d 1018. Therefore, if the Court orders McCollough to produce the settlement agreement, the terms of the agreement as well as the amount of the settlement may be admissible under Rule 408.

## CONCLUSION

For the reasons set forth above, the Court should grant JRL's motion for reconsideration and compel McCollough to produce the settlement agreement he reached with CACV.

DATED this 30th day of March, 2009.

       /s/ Fred Simpson
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(d)(2)(E)

This brief complies with the type-volume limitation of Local Rule 7.1(d)(2)(E) [6500 words for briefs; 3250 words for reply briefs], and contains 2,316 words, excluding the caption and certificates of service and compliance.

DATED this 30th day of March, 2009.

/s/Fred Simpson
Fred Simpson
BOHYER SIMPSON & TRANEL, P.C.
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, the undersigned, a representative of the law firm of Bohyer Simpson & Tranel, P.C., hereby certify that I served a true and complete copy of the foregoing *Reply Brief in Support of Motion for Reconsideration* on the following persons by the following means:

| | |
|---|---|
| 1,2 | CM/ECF |
| | Hand Delivery |
| | Mail |
| | Overnight Delivery Service |
| | Fax |
| | E-Mail |

1.    Clerk, U.S. District Court

2.    John C. Heenan, Esq.
      HEENAN LAW FIRM
      2602 1st Ave N, Suite 305
      PO Box 2278
      Billings, MT 59103
      **Attorneys for Plaintiffs**

DATED this 30th day of March, 2009.


         /s/ Fred Simpson     
Fred Simpson
BOHYER, SIMPSON & TRANEL, P.C.
Attorneys for Defendant