1                    IN THE U.S. DISTRICT COURT.
                  FOR THE DISTRICT OF MONTANA
2                      BILLINGS DIVISION
                  CAUSE NO. CV-07-166-BLG-CSO
3
     ----------------------------------------------
4
     TIMOTHY McCULLOUGH              :
5                                    :
           Plaintiff                 :   **COURT TRANSCRIPT**
6                                    :
        vs.                          :
7                                    :
     JOHNSON, RODENBURG & LAUINGER:
8                                    :
           Defendant                 :
9
       ----------------------------------------------
10
            April 14, 2009
11
       ----------------------------------------------
12   R E P O R T E D   B Y:

13     VIRGINIA LEYENDECKER, Certified Shorthand

14   Reporter, (NJ License No. 1701) and Notary Public, on

15   the above date, commencing at 8:30  a.m., at the

16   James F. Battin United States Courthouse, 316 North

17   26th Street, Billings, Montana.

18

19   BEFORE: Hon. Carolyn S. Ostby

20

21

22

23

24

25

```
 1    A P P E A R A N C E S:

 2        HEENAN LAW FIRM
          BY:  JOHN HEENAN, ESQUIRE
 3             For the Plaintiff

 4        BOHYER, SIMPSON & TRANEL, P.C.
          BY:  FRED SIMPSON, JR., ESQUIRE
 5        and JOHN BOHYER, ESQUIRE
               For the Defendant
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           THE COURT:  So we will now begin

2     with the opening statements.  And Mr. Heenan, do

3     you wish to open for the plaintiff.

4           MR. HEENAN:  Yes, please, Your

5     Honor.

6           THE COURT:  You may proceed.

7           MR. HEENAN:  Thank you, Your

8     Honor.

9           May it please the Court, counsel,

10    ladies and gentlemen of the jury.  In North

11    Dakota, there is a regional debt collection firm

12    called Johnson Rodenburg.  Johnson Rodenburg has

13    two offices, one in Bismarck and one in Fargo.

14    From those offices in North Dakota, Johnson

15    Rodenburg operates as a debt collector.  As a

16    typical debt collector, the employees at Johnson

17    Rodenburg make phone calls to people, trying to

18    collect debts.  They write letters to people

19    trying to collect debts.

20          Johnson Rodenburg is also a law

21    firm.  It's owned by lawyers.  It employs

22    lawyers.  Specifically, it employs lawyers who

23    are admitted to practice law in the various

24    states that it collects debts in.  One of those

25    states is Montana.  Johnson Rodenburg has four

1    lawyers who have sat for the Montana Bar and are

2    admitted to practice law in the state of Montana.

3              Johnson Rodenburg, as part of its

4    collection activity business, uses the court

5    system.  What do I mean by, "uses the court

6    system"?  Johnson Rodenburg sues people; dozens a

7    day, hundreds a month, thousands a year, in all

8    of the states that it collects debts in.

9              Why does Johnson Rodenburg use

10   the court system?  The court system has very

11   powerful tools for people who are trying to

12   collect money from someone else.  Let me explain

13   some of those tools.

14             Once you get a judgement against

15   someone, it's an automatic lien on the real

16   property they own.  So if a lawsuit is filed, a

17   judgement is obtained.  There's an automatic lien

18   on the person's property.  Once there's a

19   judgement, Johnson Rodenburg is able to garnish

20   wages, able to file paperwork with the court and

21   take a portion of the person's wages that they

22   have sued.  Johnson Rodenburg is able to submit

23   people to what's called a debtor's examination,

24   where the people they have sued are required to

25   come into court and are given an oath, just like

1    you ladies and gentlemen have done, and then they

2    are examined about their personal finances,

3    trying to uncover sources of collection.

4              Once there's a judgement, Johnson

5    Rodenburg is able to attach that judgement to

6    people's bank accounts.  They can go in and what

7    is called sweep the account, take the money out

8    of it.

9              So who are all the people Johnson

10   Rodenburg sues as part of its collection

11   activity?  I want to kind of explain.  Johnson

12   Rodenburg collects purchased debt.  It's a

13   specialized industry of the overall collection

14   industry.  It's call purchased debt industry.

15             Brad, if I could have that up?

16             I think everybody in voir dire

17   said they have credit cards.  Presumably we all

18   have balances on that credit card.

19             Let's assume that a person

20   doesn't make their payment.  The credit card

21   company tries to collect.  They will try to

22   collect for months or even years.  At some point,

23   if they decide their efforts at collection aren't

24   working, they are not getting the person to pay

25   back the money, they will sell them to a company

1     called a debt buyer.

2                    The credit cards don't sell one

3     account at a time.  They sell them in batches,

4     bundles.  There are hundreds, sometimes

5     thousands, sometimes tens of thousands, of people

6     on these lists.  And the debt buyers bid on and

7     purchase these lists of old charged-off credit

8     card debt.  The debt buyers, as the evidence will

9     show, purchase this debt for pennies on the

10    dollar.  The credit cards have been unable to

11    collect it for months or years themselves, so

12    they turn around and sell it to the debt buyers.

13                    The debt buyers oftentimes get no

14    more information than you would see on a

15    spreadsheet or would fit on a sticky note;

16    personal name, address, Social Security number,

17    phone number, the amount of the charged-off debt,

18    the interest rate.  That's it.  No documents.

19                    The debt buyer in turn takes the

20    spreadsheet information in those batches and

21    sends it to Johnson Rodenburg for collection.

22    Johnson Rodenburg takes those people's names,

23    addresses, Social Security numbers, the

24    spreadsheet information, and puts together

25    lawsuits with the information they need to fill

1     in the blanks to sue people.

2                    So Johnson Rodenburg files a

3     lawsuit.  They file the lawsuit for the face

4     value of the credit card balance, not what the

5     debt buyer paid for it.  Johnson Rodenburg also

6     adds interest.  Johnson Rodenburg also adds fees,

7     attorneys' fees, and then they sue people.  And

8     when they sue people, because Johnson Rodenburg

9     are lawyers and they know the law, they know that

10    the overwhelming majority of the people they sue

11    aren't going to have lawyers, and they will win.

12                    Subsequently Johnson Rodenburg

13    gets a judgement against the people.  Usually

14    it's a rather fast process.  They get a judgement

15    for the face value of the debt plus whatever

16    interest and fees they have tacked on.  And once

17    Johnson Rodenburg has that judgement, then they

18    are able to use the tools of the legal system to

19    collect from the person.  And again, those tools,

20    they are able to sweep people's bank accounts, go

21    in and take out whatever money is in there.  They

22    are able to garnish people's wages, file

23    paperwork and get a portion of every paycheck

24    they get and they are able to get a lien on their

25    home.

1                    So how does Johnson Rodenburg use

2     the courts?  I told you they file lawsuits.  They

3     file lots of lawsuits.  They are lawyers, so that

4     makes sense that they file lawsuits.  Johnson

5     Rodenburg's set up for quantity.  They are set up

6     for volume.  You're going to hear that they are a

7     factory that makes lawsuits, that makes

8     judgements.

9                    And how do they do that?  Johnson

10    Rodenburg uses a sophisticated computer program

11    called Collection Master.  Collection Master is

12    able to interface with the debt buyers'

13    computers, and I'm not going to do justice to the

14    technology of how this works, but Johnson

15    Rodenburg's Collection Master hooks up with the

16    debt buyers' computers, they download the

17    spreadsheet information about the people, and

18    that gives them enough information to sue people.

19                    Johnson Rodenburg employs a staff

20    of non-lawyers who are able to crank out

21    lawsuits.  You're going to hear that Johnson

22    Rodenburg has one person full time, not an

23    attorney, whose sole job it is to draft these

24    Complaints for the lawyers at Johnson Rodenburg

25    to sign and file.

1               The overwhelming majority of the

2    lawsuits Johnson Rodenburg files result in what

3    is called default judgement --

4               MR. SIMPSON:  I object.  I think

5    this goes beyond the scope of the Court's

6    pretrial ruling with respect to other litigation.

7               THE COURT:  Overruled.

8               MR. HEENAN:  What a default

9    judgement is, you win because the other side

10   doesn't show up.  Just like in a basketball game

11   when only one team shows up; when the other team

12   doesn't show up, then the team that made it to

13   the arena wins the game.

14               That's how Johnson Rodenburg wins

15   the overwhelming majority of its lawsuits is

16   through default judgement.  You will hear some of

17   the reasons for why people don't respond.  A lot

18   of people are unable to respond.  They are not

19   familiar with the court system.  They don't know

20   how it works.  They might have physical problems

21   that prevent them from researching the law,

22   finding out what you're supposed to do when you

23   get sued.

24               Of the small fraction of people

25   that actually do respond to the lawsuits that

1    Johnson Rodenburg files, a very, very, very small

2    percentage of them appear through counsel.  Most

3    of the people are trying to represent themselves.

4    And the logistics of it are such that Johnson

5    Rodenburg knows they are not going to be able to

6    get lawyers.  When you're suing someone, for

7    instance, Mr. McCullough who is sued for $3800,

8    you're going to be hard pressed to hire a lawyer

9    who is able to defend your case and not charge

10   you much more than the $3800 you've been sued on.

11   And Johnson Rodenburg knows that.  Johnson

12   Rodenburg knows how to win cases without having

13   any evidence in its file to prove that the person

14   owes anything.

15             How can you win a case without

16   evidence?  Let me explain one way.

17             Exhibit 4-2, please.  One of the

18   ways Johnson Rodenburg, when people do respond

19   and they are trying to defend themselves and

20   represent themselves, the judge will give them a

21   trial date.  People assume, okay, I will show up

22   at my trial.  I will defend myself.  Well, in the

23   interim, Johnson Rodenburg sends out what are

24   called requests for admissions.  And requests for

25   admissions are a tool that lawyers use in

1    lawsuits to ask the other side to admit things

2    that they think ought to be admitted, to

3    basically carve out what is for dispute at trial

4    and get rid of the stuff that everybody can agree

5    should agree on.

6                         Please blow up this portion.

7                         THE COURT:  Are all of the

8    monitors working?

9                         A JUROR:  This one is not, 68.

10                        THE COURT:  Michael, can you

11   check and see what the problem is there?  Excuse

12   me for interrupting.

13                        Thank you, Michael.

14                        You may proceed, Mr. Heenan.

15                        MR. HEENAN:  Thank you, Your

16   Honor.

17                        One of the tools that Johnson

18   Rodenburg employs when the party they have sued

19   is trying to defend themselves, they send out

20   what are called requests for admissions.  They

21   ask the person they have sued to admit certain

22   things.  And Johnson Rodenburg, in its requests

23   for admissions, puts together this kind of

24   detailed explanation of what a request for

25   admission is.  And it's largely what I've

1    characterized as legal mumbo jumbo.  Not

2    contained anywhere in this language is the most

3    important part.  If you don't respond to a

4    request for admission within 30 days, then it's

5    considered admitted automatically and you lose.

6    So they send out the requests for admission.

7    They don't tell the people they have sent them

8    to, who aren't lawyers, what happens if they

9    don't respond within 30 days.  They wait 30 days,

10   if there is no response to these requests, then

11   they will file paperwork with the judge and say,

12   aha, we won.  See, Judge, they admitted it.

13                  That's the way, or one of the

14   ways, Johnson Rodenburg wins lawsuits without

15   having any evidence whatsoever in its own file.

16                  Now, one of Johnson Rodenburg's

17   biggest suppliers of people to sue is a company

18   called CACV of Colorado.  CACV is a debt buyer.

19   They purchase the debts in bundle from the credit

20   card companies for pennies on the dollars.

21   Sometimes CACV gets information from the credit

22   card companies, sometimes they don't.  But when

23   they get the spreadsheet, people's names,

24   addresses, amount owed, they turn it over to

25   Johnson Rodenburg for collection.  And you're

1    going to see, contained in one of the batches

2    that CACV sent to Johnson Rodenburg in 2006 was

3    my client, Timothy McCollough.  CACV sent Johnson

4    Rodenburg Mr. McCullough's name, his address, his

5    Social Security number, his phone number, the

6    amount they said he owed on a Chase Manhattan

7    credit card, the interest rate and the date of

8    last payment.  Now, that was all, again,

9    information that fits on a sticky note.  No

10   actual documents.  What do I mean by documents?

11   What do I mean by evidence?  As you're going to

12   hear, the actual credit card contract that the

13   person has that applies to their credit card,

14   that would be evidence that would prove what the

15   person owes the debt, account statements showing

16   that they use the card, when they used it, how

17   much they charged on it.  That would be evidence

18   that the person owes the debt.

19                   As you're going to hear, these

20   accounts, when they get purchased by the debt

21   buyers, are cheaper the older they are.  That's

22   because of the statute of limitations.  What that

23   means is, sometimes an account becomes so old

24   that you can't collect on it anymore.  You can't

25   sue someone for it because it's past the statute

 1   of limitations.  When we talk about what evidence
 2   would be important for the statute of
 3   limitations, a payment receipt, some kind of a
 4   stub showing that someone made a payment so the
 5   person can see, okay, the person made a payment
 6   three or four years ago so we are within the
 7   statute of limitations.  You're going to hear
 8   within Montana, the statute of limitations is
 9   five years, five years from the date of last
10   payment.
11                  So Mr. McCullough, as part of
12   this batch from CACV, his name and that limited
13   spreadsheet information was turned over to
14   Johnson Rodenburg.
15                  Exhibit 103, please.  Now,
16   there's a contract between this debt buyer CACV
17   and Johnson Rodenburg about what Johnson
18   Rodenburg's obligations are when they get these
19   people's account information for collection.
20                  Blow up this part here, please.
21                  Let me explain a little bit.
22   CACV doesn't actually have any employees.  It's a
23   subsidiary of a national debt collector called
24   Collect America, Limited, and apparently there is
25   some arrangement between Collect America, Limited

1    and CACV as to who owns the actual accounts.  CA,

2    LTD is Collect America, the debt buyer.  They

3    forward to local counsel, which here is Johnson

4    Rodenburg, an offer:  Will you sue the person for

5    us?  And go on to page two, please.  And they

6    tell Johnson Rodenburg, When you get the file,

7    when you get the information that we have, you as

8    lawyers assess the completeness of that

9    information and the materials and then let us

10   know whether you want any additional materials or

11   information.

12               In this case, Johnson Rodenburg

13   didn't request anything about Mr. McCullough.

14   They didn't ask for a contract that applied to

15   him.  They didn't ask for any account statements

16   showing when or if he even used this credit card.

17   They didn't request any documentation showing

18   when he would have stopped paying on the credit

19   card, if he even used it.  They didn't request

20   any information as to who even owned this credit

21   card.  They asked for no more information.

22               And then Exhibit 67, please.

23               So Collect America offered to

24   place Mr. McCullough's account.  Pull up that

25   part, please.  Top part.  They told Johnson

1    Rodenburg the original creditor was Chase

2    Manhattan, the debtor's name was Tim McCullough,

3    type of debt, credit cards.  Take that down,

4    please, and blow up this bottom part.

5                    Now, remember, Collect America

6    wasn't Mr. McCullough's credit card company.

7    They are nobody's credit card company.  They have

8    no firsthand knowledge of how these people use

9    credit cards, how much they use the credit cards

10   for, they have no firsthand knowledge.  So

11   Collect America tells Johnson Rodenburg, We make

12   no warranty as to the accuracy or validity of the

13   information we provide, and no warranty made

14   concerning the collectability.  It's kind of like

15   a quick claim.  Like in real estate, you don't

16   sell the person the house.  You just agree that

17   you don't own it.  What they are saying is, We

18   make no representations.  That's up to you,

19   Johnson Rodenburg, as collectors and lawyers.

20   You need to do your own investigation.

21                    So they send off Mr. McCullough's

22   account.  They provide no information whatsoever.

23   They tell Johnson Rodenburg, Don't rely on what

24   we are telling you.  You have an obligation

25   independently to make sure it's appropriate to

1       sue this person.

2                      Johnson Rodenburg, as you will

3       hear, makes no independent effort to verify that

4       it's legally appropriate to sue Mr. McCullough.

5       They don't request information from the credit

6       card company.  They don't request information

7       even from their own client saying, Hey, do you

8       have anything more you can give us, any evidence

9       that we might need to show a judge after we sue

10      the person to show that he owes the debt?  They

11      don't ask for any of that.  They just sue Mr.

12      McCullough.

13                     Exhibit 2-1, please.  When

14      Johnson Rodenburg sues Mr. McCullough, they

15      demand $3800 -- let me back up.  When they sue

16      Mr. McCullough, it was past the statute of

17      limitations.  It was in violation of Montana law

18      for them to sue him at that point.  That's not

19      going to be an issue for you to decide.

20                     Johnson Rodenburg not only sued

21      Mr. McCullough for the face value of the credit

22      card, $3800, but then they also tacked on $5500

23      in interest and approximately $500 in attorneys'

24      fees.

25                     As you're going to hear, in

1       Montana, unless you have a contract that gives

2       you the right to claim attorneys' fees, it's

3       illegal to demand them.  And Johnson Rodenburg

4       didn't have any contract, didn't have any

5       contractual right to claim attorneys' fees, yet

6       they tacked them on anyway and asked for about

7       $500.

8                       Now, remember that Johnson

9       Rodenburg doesn't know anything about the people

10      that it sues.  These people in these batches,

11      they just file these lawsuits and collect

12      judgements and collect the judgements.  They

13      don't know whether someone is a farmer, whether

14      they are a single mother, whether they are a

15      widower, unable to work, they don't know or care

16      to know the people's stories or circumstances.

17      So when they sued Mr. McCullough, they didn't

18      know anything about him.

19                      Here's what Johnson Rodenburg

20      would have found out if they bothered to ask what

21      was going on with Mr. McCullough.  Tim was a

22      custodian here in the Billings School District.

23      He worked out at the vo-tech.  In May of 1990, he

24      was cleaning one evening and he was struck in the

25      head by an intruder.

1            After Mr. McCullough was struck

2    in the head, he had all sorts of mental problems.

3    He was diagnosed with posttraumatic stress

4    syndrome.  He was diagnosed with stress disorder,

5    anxiety disorder.  He has terrible migraines all

6    the time.  He rarely leaves his house, by choice,

7    because he can't deal with any stress whatsoever.

8    And Johnson Rodenburg didn't know that and they

9    didn't care to know that.  So when Johnson

10   Rodenburg sued Mr. McCullough, they had no idea

11   what was going to happen when they employed a

12   process server, a deputy sheriff, to come out to

13   Mr. McCullough's house and hand him a Complaint

14   and say, You've just been served.  You've just

15   been sued.

16           Let me tell you what else Johnson

17   Rodenburg didn't know because they didn't bother

18   to conduct an investigation.  The CACV had

19   already sued Mr. McCullough two years previously

20   through a different law firm.  They sued Mr.

21   McCullough.  He defended himself, or tried to,

22   and just before trial CACV dismissed the case.

23   And Mr. McCullough hadn't gotten the dismissal

24   paperwork in the mail before he gets a letter

25   from another debt collection law firm saying, You

```
1    owe this money.  When are you going to pay this
2    money?
3                    Mr. McCullough writes a letter
4    back to this debt collection law firm.  He says,
5    I already got sued, the case got dismissed,
6    please leave me alone.  It's the last he hears
7    from that debt collection law firm but it's not
8    the last he hears from this account.
9                    Then he gets hit from a second
10   law firm from Johnson Rodenburg who is the third
11   law firm assigned to this account trying to
12   collect the same old debt.  And Tim, despite his
13   mental condition, despite his problems, he knows
14   that he needs to respond.  He knows he needs to
15   defend himself.  So he goes down to the
16   courthouse and files an answer.
17                   Please bring up his answer.
18                   Here's what he writes:  Forgive
19   my spelling.  I have a head injury.  Writing does
20   not come easy.  The statute of limitations is up.
21   I have not had any dealings with any credit cards
22   in well over eight and a half years.  I am
23   disabled.  I get $736 a month from Social
24   Security.  My mortgage is $724 a month.  I'm now
25   a diabetic.  I have no money, no insurance but
```

1    Medicare.

2              Next page, please.

3              When workman's comp stopped

4    paying, I ran out of money.  Chase would not work

5    with me.  They passed it on to debt collectors.

6    They lied to me, insulted me, used bad language.

7    They called around the clock so I could not rest.

8    They got me so wound up and confused the healing

9    of my head injury stopped.  They were hurting me

10   so I had to stop dealing with them so I could

11   recover.  I'm still recovering.  The pain they

12   caused and the new medical bills are worth more

13   than the money they want.  This is the third time

14   they brought me to court on this account.  The

15   first two times with Judge Hernandez.  When will

16   it stop?  Do I have to sue them so I can live

17   quietly in pain?

18             So Mr. McCullough files his

19   answer, sends it to Johnson Rodenburg.  Johnson

20   Rodenburg lawyers look at his answer and don't do

21   anything about it.  They do not follow up.  They

22   don't say, Hey, this guy says he is on Social

23   Security disability and we are never going to be

24   able to collect Social Security disability

25   payments under the law.  They don't do any

1    follow-up on that.  Is he really on Social

2    Security disability?  If they would have done

3    some follow-up, they would have found, yeah, he

4    is on Social Security disability.  He's been on

5    disability since the head injury back in 1990.

6    Johnson Rodenburg doesn't follow up and say, hey

7    what is this guy talking about statute of

8    limitations?  Maybe we should get this

9    documentation.  They didn't do any of that.

10                   THE COURT:  Two minutes, counsel.

11                   MR. HEENAN:  Thank you, Your

12   Honor.

13                   And they certainly don't drop the

14   case.

15                   I'm going to speed things up a

16   little bit here.  So not only do they not drop

17   the case, they continue to pursue it.  They send

18   him these requests for admissions that we just

19   looked at and talked about.  They are trying to

20   win anyway.

21                   CACV, their client, sent them an

22   e-mail and said, We made an mistake.  They say,

23   We made a mistake.  We told you he made a payment

24   in 2004.  Actually that was wrong.  That was

25   costs or unused costs.

1              So their own client is saying, We

2     made a mistake.

3              Johnson Rodenburg doesn't drop

4     the case.  They are pushing it.  They send him

5     these requests for admission.  Tim comes to me.

6     He shows me the information.  He hires a lawyer.

7     I make an appearance in the case and immediately

8     Johnson Rodenburg dismisses it.

9              And as you're going to see, and I

10    won't have time to show you now, internally the

11    Johnson Rodenburg lawyers sent an e-mail to the

12    effect of, oh, shoot, we got caught.  There's a

13    lawyer on the other side.  We need evidence.  We

14    need documents.  CACV writes back and says, We

15    told you, there is no evidence, no documents

16    about this guy.

17             Now, let me explain, given the

18    short length of time.  We went through a process,

19    prior to you ladies and gentlemen coming here for

20    trial, called summary judgement and we presented

21    to Her Honor the facts, as you're going to hear

22    in the trial, and she made certain rulings.  And

23    she found that Johnson Rodenburg violated the

24    federal Fair Debt Collection Practices Act four

25    different ways by suing Mr. McCullough on a

1    time-barred debt which was illegal to bring, by

2    continuing to process the time-barred debt even

3    though their own client gave them information

4    showing it was time-barred, and by trying to

5    collect on attorneys' fees which were

6    inappropriate to collect under Montana law, and

7    by using this request for admission form which

8    Her Honor found to be unfair and deceptive and a

9    violation of the federal law.

10                   So why are we here?  Because

11   Johnson Rodenburg's also a lawyer.  They are a

12   law firm.  And they are required to play by the

13   rules of law they have to play by in Montana.  So

14   we are going to put on evidence to show you that

15   they did not follow the rules here, with Mr.

16   McCullough or as a business practice in the

17   people they are suing in this state.

18                   Number two, based on the judge's

19   findings, the judge's rulings that this law firm

20   broke the law, you're going to be asked to award

21   some damages.  We will explain to you the nature

22   of those damages.  One of them is going to be

23   punitive damages, damages to punish this law firm

24   for the conduct towards Mr. McCullough and in the

25   context of the business practice in the state of

1    Montana and all the lawsuits they are filing

2    against people in the state of Montana.

3                    The one lawyer that sued Mr.

4    McCullough, as you're going to hear, he sues

5    approximately 2,000 people a year.

6                    THE COURT:  That's time, Counsel.

7                    MR. HEENAN:  Thank you, Your

8    Honor.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       C E R T I F I C A T E   O F   O F F I C E R.

2

3       I, Virginia Leyendecker, a Certified Shorthand

4    Reporter and Notary Public, do hereby certify that

5    the foregoing is a true and accurate transcript of

6    the testimony as taken stenographically by and before

7    me at the date, time and location aforementioned.

8       I do further certify that I am neither a relative

9    nor employee, nor attorney or counsel to any parties

10   involved; that I am neither related to nor employed

11   by any such attorney or counsel, and that I am not

12   financially interested in the action.

13

14

15

16   /s/Virginia E. Leyendecker, CSR

17   Notary Public

18   My Commission expires May 3, 2010

19   NJ C.S.R. License No. XI-1701

20

21

22

23

24

25