IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHNSON, RODENBURG & LAUINGER,<br><br>    Defendant. | CV-07-166-BLG-CSO<br><br>ORDER RE: JUDGMENT |

This matter was tried to a jury on April 14, 15, and 16, 2009. The jury returned a verdict in favor of plaintiff Timothy McCollough, finding that defendant Johnson, Rodenburg &Lauinger ("JRL") violated the Montana Unfair Trade Practices Act ("UTPA"), maliciously prosecuted McCollough, and abused the legal process. Court's Doc. No. 161. The jury awarded McCollough $250,000 in

1

compensatory damages and $1,000 in Fair Debt Collection Practices Act ("FDCPA") statutory damages. Id. The jury also found that punitive damages were warranted, id., and awarded McCollough $60,000 in punitive damages against JRL. Court's Doc. No. 162.

The Court must resolve several issues before the Clerk may enter judgment. McCollough requests that his actual damages be trebled under the UTPA. He argues that JRL should not receive an offset in the amount of his earlier settlement with a different defendant. McCollough also requests $93,100 in attorney's fees under the FDCPA and UTPA. Additionally, McCollough requests $22,687.22 in costs and expenses. JRL disputes McCollough's position on each issue. Finally, the Court must review the jury's punitive damages award.

Both parties waived any right to a hearing on these matters. See Court's Doc. No. 181.

I.   TREBLE DAMAGES UNDER THE UTPA

Under the UTPA, the Court may treble the actual damages the jury found. Vader v. Fleetwood Enterprises, Inc., 2009 MT 6, ¶47, 348 Mont. 344, 201 P.3d 139; Mont. Code Ann. § 30-14-133(1). Under

2

Montana law, a court's decision to increase damages under the UTPA is purely discretionary; unlike many other states, Montana law does not identify particular criteria for judicial consideration. Plath v. Schonrock, 2003 MT 21,¶ 23, 314 Mont. 101, 64 P.3d 984.

Trebling damages is primarily a compensatory, not punitive, measure. Vader, ¶ 47. The purpose of the trebling provision "is to promote or encourage private individuals to pursue violations of [the UTPA] by making it more economically feasible to pursue those claims where actual damages are minimal." Id., ¶ 46 (quoting Plath, ¶ 28). The court "should be guided by the overall purpose of the [UTPA] itself, which is to protect the public from unfair or deceptive practices engaged in by trade or commerce." Id., (quoting Plath, ¶ 28). Finally, as McCollough argues, the Montana Supreme Court has rejected the notion that minimal actual damages are a requirement for trebling. Id., ¶ 47.

Here, the Court, in its discretion, will not increase the actual damages the jury found. The jury's award adequately compensates McCollough and itself furthers the purposes of the UTPA. The jury's award demonstrates the feasibility of UTPA claims to potential

parties, as well as to their counsel. McCollough is correct that having been awarded more than minimal damages does not prevent increasing his award. The Court is also mindful of the risk and effort McCollough and his counsel invested in prosecuting this case through trial. But in the final analysis, the jury's verdict accomplishes the twin considerations identified by the Montana Supreme Court – compensating McCollough and furthering the purpose of the UTPA – without enhancement by the Court.

## II.   SETTLEMENT OFFSET

Under Montana law, "when a joint tort-feasor settles with a claimant, the claimant's recovery against the remaining tort-feasor is to be reduced dollar-for-dollar by the consideration paid by the settling tort-feasor." Plath v. Schonrock, 2003 MT 21,¶67, 314 Mont. 101, 64 P.3d 984 (quoting Schuff v. A.T. Klemens & Son, 2000 MT 357, ¶104, 303 Mont. 274, 16 P.3d. 1002); see also Mont. Code Ann. § 27-1-703. This rule applies when two or more joint tortfeasors cause a single indivisible harm. Id.

As McCollough argues, a Montana state district court has refused to offset a settlement for intentional torts against a

subsequent verdict based on intentional torts.  Court's Doc. No. 78-1 (<u>Ammondson v. Northwestern Corp</u>., DV-05-97, Mont. Second. Judicial Dist. Ct.,Order Denying Mot. to Amend Judgment (April 7, 2007)).  In <u>Ammondson</u>, the state court noted that § 27-1-703, expressly applies to negligence claims, rather than intentional torts.  <u>Id.</u> at 3.  Absent a statutory right, any offset would be based on equity.  <u>Id.</u> at 4.  The state court then concluded that an intentional tortfeasor was not entitled to an equitable offset.  <u>Id.</u>

The <u>Ammondson</u> opinion is well-reasoned.  But as that court acknowledged, the Montana Supreme Court has not yet answered the question of whether an offset is allowed when there is joint liability for intentional misconduct.

And although § 27-1-703 only addresses negligence claims, the Montana Supreme Court has framed the reasons for "pro tanto" award reduction more broadly.  For example, where a plaintiff argued that a defendant was not entitled, in equity, to an offset because of defendant's discovery violations, the court upheld reduction of the jury verdict by the amount of a prior settlement and noted the plaintiff's argument "ignores the underlying principle of the pro tanto, or "dollar-

5

for-dollar" award reduction – that an injured party is entitled to but a single satisfaction for a single injury." Schuff, ¶ 105.  Further, the Montana Supreme Court has indicated that the "single satisfaction" principle controls even in the context of intentional misconduct.  In Boyken v. Steele, the plaintiff, injured in a barroom fight, sued the bar for negligence and his assailant for intentional torts.  256 Mont. 419, 420, 847 P.2d 282, 283 (1993).   Prior to trial, the bar settled for $5,000.  Id., 847 P.2d at 283.  The plaintiff then obtained a $2,500 verdict against his assailant.  Id., 847 P.2d at 283.  The court reversed the district court's refusal to offset the settlement against the verdict, concluding:

> we need not address the issue raised by [Defendant] regarding whether it was proper to apply comparative negligence in this situation, because we conclude that [Plaintiff] was fully compensated for his injuries by the bar and is not entitled to recover an additional damage award under any legal theory.

Id. at 421, 847 P.2d at 284.

McCollough makes no other argument, such as divisible injury, against an offset.  The Court thus concludes that the current controlling Montana law requires an offset here.  CACV paid $10,000

to McCollough and therefore McCollough's award will be offset by that amount.[1]

## III.  ATTORNEY'S FEES

The Court will award McCollough the full amount of attorney's fees requested.  The FDCPA requires payment of attorney's fees and costs to a successful plaintiff.  15 U.S.C. § 1692k(a)(3).  Also, the Montana UTPA provides a successful plaintiff a discretionary award of attorney's fees and costs.  Mont. Code Ann. § 30-14-133(3).  Fees are calculated according to the lodestar method, which requires multiplying the hours reasonably spent by a reasonable hourly rate. McCown v. City of Fontana, __ F.3d ___, 2009 WL 1098893, *3 (9th Cir. 2009); Laudert v. Richland County Sheriff's Dept., 2001 MT 287, ¶14, 307 Mont. 403, 38 P.3d 790.  Under federal law, the Court must first explain its determination of the lodestar amount.  McCown, *3.  The Court should next examine the reasonableness of the award in light of the results obtained.  Id., *4.  This involves two questions: (1) whether

---

[1] The Court previously ordered the parties to hold this settlement amount confidential.  See Court's Docket No. 134 at 4-5.  Because the Court has determined that an offset is appropriate, however, the amount must be stated.

the plaintiff failed to prevail on claims unrelated to the claims on which he or she succeeded; and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Id.; Laudert, ¶ 18.

A. LODESTAR DETERMINATION

First, JRL does not dispute the reasonableness of McCollough's counsel's hours spent (465.5), or his hourly rate($200).[2] The Court concludes that McCollough's counsel's hours and rate are reasonable. This case was vigorously litigated, and counsel briefed several substantive issues on motions prior to trial. Counsel had to prepare for trial, and then tried the case for three days. Thus, the hours spent are reasonable in light of the amount of work required. Also, McCollough's counsel has submitted materials indicating that $200/hour is a reasonable rate in this locale, and that a state court has

---

[2]The Montana Supreme Court has identified seven factors to be considered in determining attorney's fees. Plath, ¶ 36. Where the hourly rate and time spent are undisputed, however, the court has proceeded directly to the federal analysis. Laudert, ¶¶ 10, 15. Also, a court may focus on results obtained where a party's claims involve a common core of facts. Plath, ¶ 37. Thus, the Court need not separately analyze the award under the seven Montana factors.

8

ordered him compensated at this rate.  See Court's Doc. No. 172, 172-3 at 9, 173.  Accordingly, the initial lodestar amount is $93,100.00 in attorney's fees.

### B.  REASONABLENESS OF AWARD IN LIGHT OF RESULTS

Next, the Court must examine the reasonableness of the lodestar amount.  A plaintiff is not entitled to fees for time spent on unsuccessful claims unrelated to the claim that provides for fees.  McCown, *4; Laudert, ¶ 19.  Where the plaintiff's different claims for relief are based on a common core of facts, "the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis."  McCown, *4; see also Laudert, ¶ 19.

Here, McCollough prevailed on his related claims.  Additionally, no party has argued that McCollough's different legal claims are not based on the same core of facts.  JRL's only argument is that the attorney's fee award should be half that requested because two of McCollough's causes of action – abuse of process and malicious prosecution – do not provide for attorney's fees.  Court's Doc. No. 180 at 7.  JRL's argument is contrary to both federal and Montana law, which provide that the Court should not divide attorney's fees on a

claim-by-claim basis where the claims are all based on the same core of facts and the plaintiff has succeeded on all claims. Further, <u>Evans v. Teakettle Realty</u> does not support JRL's argument because there, the court simply chose not to disturb the district court's denial of attorney's fees where there was no record on appeal and the court could not evaluate the basis for the district court's decision. 226 Mont. 363, 367, 736 P.2d 472, 474 (1987). And <u>Evans</u> provides no analysis of the issue JRL raises, and the question is clearly answered by more recent authority from the Ninth Circuit and Montana Supreme Court. The Court will not reduce the lodestar amount based on McCollough's related claims.

The final question is whether McCollough's success makes the hours reasonably expended a satisfactory basis for the fee award. A fee award should be adjusted downward where a plaintiff has achieved limited success on the claims he or she pleads, and – at least in the context of § 1983 claims – the result does not give a meaningful public benefit. <u>McCown</u>, *5. A court should compare the damages awarded to the damages sought. <u>Id.</u> But "[a]n attorney should receive fees for the full services provided where a plaintiff has obtained excellent

10

results." Laudert, ¶ 20 (citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

Where a civil rights plaintiff prevailed on one of three claims – settling for $20,000 after demanding $251,000 – the Ninth Circuit held that the district court should have considered whether to reduce the $200,000 in attorney's fees it awarded based on limited success. McCown, * 5.

Here, the results McCollough obtained justify a full attorney's fee award. McCollough's counsel did request one million dollars in closing argument, and received just over a quarter of that in compensatory and statutory damages. But McCollough prevailed on all four of his claims. And the total damages McCollough received can be deemed a substantially successful result under the facts of the case, despite being less than requested. The Court also notes that if McCollough and his counsel had a typical contingent fee agreement, counsel would receive slightly more compensation than he will under the lodestar calculation. Thus, the attorney's fees are proportionate to the result obtained. Finally, this result likely confers a meaningful public benefit by discouraging illegal debt collection in Montana.

In conclusion, under both the FDCPA and the Montana UTPA, McCollough's counsel is awarded attorney's fees of $93,100.00, as calculated under the lodestar method (465.5 hours x $200/hour).

## IV.   COSTS AND EXPENSES

As noted above, 15 U.S.C. §1692k(a)(3) provides that a debt collector is liable to a successful plaintiff for "the costs of the action" in addition to a reasonable attorney's fee as determined by the court. Under fee shifting statutes such as the FDCPA and 42 U.S.C. § 1988(b), a plaintiff "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994); see also Giovannoni v. Bidna & Keys, 2007 WL 3283611, *2 (9th Cir.) (failure to award as costs under §1692k(a)(3) out-of-pocket expenses that would normally be charged to fee paying client was abuse of discretion). These costs, however must be incidental and necessary to the representation, and not part of the attorney's ordinary overhead. Larsen v. JBC Legal Group, P.C., 588 F.Supp.2d 360, 365 (E.D. N.Y. 2008).

As the above discussion makes clear, JRL's argument that

McCollough is limited to costs taxable under Local Rule 54.1 and Montana law (see Court's Doc. No. 180 at 8-13) is incorrect. Under the FDCPA McCollough is entitled to out-of-pocket expenses "[e]ven though not normally taxable as costs ... that would normally be charged to a fee paying client." Giovannoni, *2. Here, McCollough's counsel has submitted a declaration that the costs requested meet the above criteria, except that counsel does not address the issue whether any of these costs would customarily be absorbed as overhead by lawyers in this market. Court's Doc. No. 172, ¶¶ 8, 10, 11.

Having reviewed McCollough's revised request for $22,867.22 in costs, however, the Court finds that they are costs typically charged a fee paying client, were reasonable and necessary – JRL does not contend otherwise – and are thus recoverable under the FDCPA, with one exception noted below. Compare Court's Doc. No. 172-6 with Larsen, 588 F.Supp.2d at 365. Additionally, a review of these claimed costs convinces the Court that these costs are not typical attorney overhead in this market. McCollough has voluntarily excluded several questioned expenses, as JRL argued he should, including one of the two $28 charges for serving his complaint. See Court's Doc. No. 182 at

13

10.  McCollough has not included a bill for time spent by counsel's staff, Court's Doc. No. 172, ¶ 8, even though courts have included these expenses in a fee award under the FDCPA.  Larsen, 588 F.Supp.2d at 365.

One problem remains: the question of McCollough's expert fees.  Because Congress has enacted a specific statute dealing with expert witness fees, "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."  Arlington Central School Dist. Bd. of Ed. v. Murphy, 548 U.S. 291, 301 (2006).  Further, "the term 'attorney's fees', standing alone, is generally not understood as encompassing expert fees." Id. at 303.  In Arlington, the Court held that the provision in the Individuals with Disabilities Education Act  – "in any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs," –  did not include expert fees.  Id. at 297.

Here, because §1692k(a)(3) does not expressly provide for expert witness fees, McCollough is limited to the statutory $40.00 per day per

14

witness for the days his experts testified at trial. See also <u>West Virginia University Hospitals v. Casey</u>, 499 U.S. 83, 97 (1991) (overruled by statute) (holding that 1988 edition of § 1988 did not empower court to award expert fees to prevailing party); National Consumer Law Center, Fair Debt Collection, 290 (5th ed. 2004); 28 U.S.C. § 1821. Thus, the Court must subtract from McCollough's costs $3,610 ($3,650 minus $40) for Dr. Veraldi, and $4,587.05 ($4,627.05 minus $40) for Mr. Patten. Thus, McCollough is entitled to $14,670.17 ($22,867.22 minus $3,610 minus $4,487.05) in costs and expenses typically charged to fee paying clients.

Finally, expert witness fees under 28 U.S.C. § 1821, and other costs listed by McCollough, may be properly taxed by the Clerk of Court under Local Rule 54. The Court cannot determine from McCollough's submitted costs which costs could be taxed by the Clerk. In the interest of efficiency, and because it makes no pecuniary difference to the parties, the Court will include all McCollough's awardable costs in his attorney's fee and costs award set forth above. Thus, McCollough must not apply to the Clerk for taxation of costs under Local Rule 54 for any taxable costs included in Court's Doc. No.

172-6 and allowed herein as part of the judgment.

## V.  PUNITIVE DAMAGES REVIEW

Under Montana law, the Court must review the jury's punitive damages award, considering each matter listed in Mont. Code Ann. § 27-1-221(7)(b).  Mont. Code Ann. § 27-1-221(7)(c).  Those matters are:

   (i)    the nature and reprehensibility of the defendant's wrongdoing;

   (ii)   the extent of the defendant's wrongdoing;

   (iii)  the intent of the defendant in committing the wrong;

   (iv)   the profitability of the defendant's wrongdoing, if applicable;

   (v)    the amount of actual damages awarded by the jury;

   (vi)   the defendant's net worth;

   (vii)  previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

   (viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

   (ix)   any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

§ 27-1-221(7)(b).  After considering the matters listed above, a "judge shall clearly state the reasons for increasing, decreasing, or not

16

increasing or decreasing the punitive damages award of the jury in findings of fact and conclusions of law, demonstrating consideration of each of the factors[.]" Id. at (c). The court's findings of fact must be supported by substantial evidence, and not inconsistent with findings implicit in the jury's verdict. Marie Deonier & Assoc. v. Paul Revere Life Ins. Co., 2004 MT 297, ¶38, 323 Mont. 387, 101 P.3d 742.

The Court, in its pretrial orders, found as fact that: (1) On April 17, 2007, JRL filed a time-barred lawsuit against McCollough; (2) by August 6, 2007, JRL had information from its client demonstrating that the lawsuit was time-barred; (3) JRL prosecuted the time-barred lawsuit against McCollough until December 7, 2007. Court's Doc. No. 76 at 14. The evidence supporting these findings is cited in that order and present in the record.[3]

The Court later concluded as a matter of law that JRL's conduct in prosecuting the time-barred claim against McCollough was "abusive, unfair, and unconscionable." Court's Doc. No. 96 at 20.

Though these conclusions were in the context of federal, rather

---

[3] The Court does not reference the trial transcript because, at the time this order was prepared, the full transcript was not yet available.

than Montana, law, they are consistent with the jury's award of punitive damages and are pertinent to factors (i), (ii), and (iii) of Mont. Code Ann. § 27-1-221(7)(b).  With respect to factor (iv), the evidence at trial suggested that JRL has filed many other debt-collection lawsuits in Montana and that a majority of these lawsuits resulted in default judgments.  Although the Court does not assume that each of those defaults occurred where the debts were time-barred, it is reasonable to conclude that if JRL's business practices were not profitable, JRL would not pursue them.

As to factor (v), the Court finds that the jury awarded $251,000 in actual and statutory damages.  The evidence of damages at trial was sufficient to support the jury's damages determination. McCollough realized substantial success on his claim for actual damages, and the Court concludes that the ratio of actual to punitive damages awarded indicates that the jury rationally assessed punitive damages.

As to factor (vi), the Court finds that the parties offered scant evidence regarding JRL's net worth.  From the evidence provided, the jury could reasonably conclude that JRL's net worth was

approximately $2,000,000 dollars. See Plaintiff's Exhibit 112. The Court concludes that the jury, as it was entitled to do, assessed the maximum allowable punitive damages of 3% of JRL's net worth. Mont. Code. Ann. § 27-1-220 (3).

As to factors (vii), (viii), and (ix), the Court again finds scant relevant evidence, and concludes that none of these factors weighs in favor of increasing or decreasing the jury's punitive damages award.

In conclusion, after consideration of the statutory factors listed above, the Court finds no reason to increase or decrease the jury's punitive damages award. The Court also notes that neither McCollough nor JRL have argued that the award should be increased or decreased. Accordingly, the judgment will reflect the jury's $60,000 punitive damages award.

## VI.   CONCLUSION

Based on the foregoing, IT IS ORDERED that the Clerk of Court shall enter judgment in favor of McCollough in the amount of $301,000.00 in damages, and $107,770.17 in attorney's fees and costs. The Clerk shall not assess costs against JRL under Local Rule 54 for any taxable costs included in Court's Doc. No. 172-6, as these costs are

already included in McCollough's attorney fee award.

DATED this 3rd day of June, 2009.

                                         /s/ *Carolyn S. Ostby*
                                         Carolyn S. Ostby
                                         United States Magistrate Judge