John Heenan
HEENAN LAW FIRM
P.O. Box 2278
Billings, MT 59103
Telephone: (406) 839-9091
Facsimile:   (406) 839-9092
john@heenanlawfirm.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>                          Plaintiff,<br><br>vs.<br><br>JOHNSON, RODENBURG & LAUINGER.<br><br>                          Defendant. | Cause No. CV-07-166-BLG-CSO<br><br>Judge Carolyn S. Ostby<br><br>**BRIEF IN OPPOSITION TO MOTION FOR NEW TRIAL AND TO ALTER OR AMEND THE JUDGMENT** |

Plaintiff responds and opposes Defendant JRL's Motion for New Trial and to Alter/Amend Judgment as follows:

**1.     Legal Standard Under Rule 59.**

This Court has set forth the applicable standard as follows:

Under Rule 59, after a jury trial, the trial court may grant a new trial on all or some of the issues.  The decision whether to grant a new trial rests in the trial judge's sound discretion.

Rule 59 does not expressly list the grounds for which the trial court may grant a new trial. However, the Ninth Circuit has identified certain grounds … that permit a trial judge to grant a new trial.

> First, the trial court may grant a new trial where the verdict is against the clear weight of the evidence or is based on false evidence, or to prevent a miscarriage of justice. "[A] district court may not grant a new trial simply because it would have arrived at a different verdict."Rather, before granting a new trial on these bases, the trial court, after having given full respect to the jury's determination, must be "left with the definite and firm conviction that a mistake has been committed [by the jury]."The Ninth Circuit has made clear that "[i]t is not the courts' place to substitute our evaluation for those of the jurors."
>
> Second, the trial court may grant a new trial where there exists newly discovered evidence. The party seeking a new trial on the basis of newly discovered evidence must establish that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case."
>
> Third, the trial court may grant a new trial where there is evidence that improper conduct by either an attorney or the court unfairly influenced the verdict. For a claim of judicial misconduct to survive, the misconduct must be reflected in the record as "actual bias" on the part of the trial court, or leave the "abiding impression that the jury perceived an appearance of advocacy or partiality" by the trial judge.
>
> Rule 59(e) also permits the trial court to alter or amend its judgment. The decision whether to grant a motion to alter or amend the judgment also is left to the trial judge's discretion. "Amendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law."

*Watson v. Montana*, 2006 WL 2850583, *2-*3 (D.Mont. 2006) (citations omitted).

JRL does not assert either newly discovered evidence or judicial/attorney misconduct as a basis for a new trial.

## 2.  The Court Properly Allowed Evidence of JRL's Business Practices to be Submitted to the Jury.

This Court properly allowed Plaintiff to present pattern and practice evidence of JRL's conduct, including the volume of lawsuits JRL filed in Montana and other individuals JRL had sued on time-barred debts (Kerri Henan and Ken Lucero).

One of the issues the jury needed to determine was the amount of statutory damages to award under the FDCPA.  Under the FDCPA, factors to be considered in the determination of statutory damages include:

> (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional …

15 U.S.C. § 1692k(b)(2).  Thus, pattern and practice evidence was directly relevant to the jury's consideration of FDCPA statutory damages.

Likewise, evidence of the number of suits filed was relevant to Plaintiff's proof of punitive damages.  As made clear by the United States Supreme Court, the reprehensibility of the defendant's conduct is an important factor in a jury's evaluation of punitive damages.  *See Campbell v. State Farm Mut. Auto. Ins. Co.*, 538 U.S. 408 (2003).  The Court in *Campbell* identified factors to consider in assessing reprehensibility, including whether the conduct involved repeated actions or was only an isolated incident.  *Campbell*, 538 U.S. at 419.

In *Philip Morris USA v. Williams,* 549 U.S. 346 (2007), the Supreme Court clarified:

> We have explained why we believe the Due Process Clause prohibits a State's inflicting punishment for harm caused strangers to the litigation. At the same time, we recognize conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility.

*Id.,* 549 U.S. at 356; *see also In re Exxon Valdez*, 296 F. Supp. 2d 1071, 1093 (D. Alaska 2004) (out-of-state conduct is admissible to show recklessness) *vacated, remanded on other grounds,* 472 F.3d 600 (9th Cir. 2006); *Eden Elec. Ltd. V. Amana Co.*, 370 F.3d 824 (8th Cir. 2004) (no error for jury to consider out-of-state conduct that furthered in-state fraudulent scheme.)

JRL further argues that the Court should not have allowed witnesses Ken Lucero and Kerri Henan to testify. But, JRL does not point out any specific objectionable testimony. This Court strictly limited the extent of both Ms. Henan and Mr. Lucero's testimony so that it had a nexus to the specific harm suffered by the plaintiff. *Campbell*, *supra* at 422. The Court's evidentiary rulings in this regard were appropriate and correct.

**3.     This Court Properly Submitted Plaintiff's UTPA Claim to the Jury, The Unanimous Jury So Agreed.**

This Court, by Order dated January 8, 2009, denied JRL's Motion for Partial Summary Judgment as to Plaintiff's Montana UTPA claim and allowed the claim

to be submitted to the jury.  *McCollough v. Johnson, Rodenburg & Lauinger,* 610 F.Supp.2d 1247, 1251-52 (D.Mont. 2009).  This Court's ruling in this regard was well-reasoned and explained.  JRL has offered this Court no intervening change in law or clear legal error which justifies why this Court should disturb its legally correct ruling.

At trial, Plaintiff presented evidence that JRL is a debt collector which was collecting on a credit card account.  Plaintiff demonstrated that he was a consumer under the Montana UTPA by virtue of his relationship to the original creditor, testifying he used the credit card at issue for consumer purposes including paying for groceries and medical services.  (McCollough Test. at 19-20 attached as Exhibit "1".)

**4.    This Court Properly Submitted Plaintiff's Malicious Prosecution and Abuse of Process Claims to the Jury, The Unanimous Jury So Agreed.**

This Court, by Order dated January 8, 2009, denied JRL's Motion for Partial Summary Judgment as to Plaintiff's abuse of process and malicious prosecution claims, and allowed the claims to be submitted to the jury.  610 F.Supp.2d at 1252-53.  This Court's ruling in this regard was well-reasoned and explained.

"Ninth Circuit authority discourages post-trial review of previously denied summary judgment motions."  *Watson, supra* at *4 *citing De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) ("[a]n appellate court will not review a denial of summary judgment after there has been a trial on the merits

and an adverse jury verdict. At that stage, the propriety of the district court's denial of summary judgment motion is an "academic question.")

JRL argues insufficient evidence of probable cause and malice were presented to the jury. As the Court noted in its January 8th Order, here "there was a paucity of information supporting JRL's lawsuit against McCollough. CACV expressly made 'no warranty as to the accuracy or validity of the data provided ...' and required JRL to determine its 'legal and ethical ability to collect' the account." 610 F.Supp.2d at 1253. At trial, JRL lawyer Charles Dendy testified that JRL did not have any documentation concerning McCollough's account when JRL sued him. (Dendy Test. at 39 attached as Exhibit "2".) The collection notes JRL was provided by its client, CACV, indicated that McCollough had been sued previously by CACV and that the previous lawsuit had been dismissed because "statute of limitations had expired." (*Id.* at 44.) The jury reasonably considered all of the evidence and concluded that JRL committed the torts of abuse of process and malicious prosecution. A new trial is not warranted.

### 5. The Jury's Compensatory Damage Award was Supported by the Evidence, Neither Remittitur Nor a New Trial is Warranted.

JRL argues that the jury's award of $250,000 in compensatory damages was grossly excessive and "shocking to the conscience." The record demonstrates that the jury exercised its collective best judgment and entered an appropriate damage award which the Court should not second-guess.

Both the FDCPA and Montana law provide for an award of emotional distress damages. Neither the FDCPA or Montana law sets a fixed or definite standard in determining emotional distress damages. *See* 15 U.S.C. § 1692k(a) and MPI2d 25.02.

In *Seltzer v. Morton,* 2007 MT 62, 336 Mont. 225, 154 P.3d 561, the jury awarded $1.1 million in damages for emotional distress and reputation damages against a defendant who committed malicious prosecution and abuse of process. The defendant, as JRL does here, sought to have the award reduced. The Montana Supreme Court made clear that to do so would be improper:

> As a remedy, Defendants request that the compensatory award be "set aside or significantly reduced." Yet, the Defendants offer no authority or other guidance as to how this Court could legitimately determine a reduction of the award. Nor do the Defendants' speculative assertions noted above-i.e., that the compensatory award was meant to punish the Defendants and was not based on the actual harm to Seltzer-provide any justification for this Court to take the extraordinary step of setting aside the award altogether. In fact, reducing or setting aside the compensatory award would require us to usurp the jury's role-in other words, we would have to weigh all the evidence presented at trial, resolve any conflicts in the evidence, judge the credibility of the witnesses based on the cold transcripts, and ultimately make factual findings. However, doing so would be entirely inconsistent with the limited scope of proper appellate review, as these tasks are properly left to the jury.

2007 MT 62 at ¶ 118.

The jury was properly instructed as to the role and determination of emotional distress damages. The unanimous jury concluded that $250,000 was

appropriate. This award is less than one quarter of the award which the Montana Supreme Court refused to disturb in *Seltzer*. JRL has offered this Court no formula for a legitimate or appropriate reduction.

The jury's award was supported by the evidence at trial. Plaintiff, on social security disability because of a head injury and resulting mental problems, testified that JRL's conduct towards him was "the straw that broke the camel's back," causing his adrenalin and pain to increase, and forcing him to be "down" for days at a time with migraine headaches. (McCollough Test. at 43-45.) Dr. Donna Veraldi examined Plaintiff and testified that he was particularly vulnerable to the misconduct perpetrated against him by JRL:

> Q.  Do you have an opinion, Dr. Veraldi, about what the impact would have been on Mr. McCullough with respect to this ongoing collection of this credit card?
>
> A.  Well, yes. The stress would have – and there certainly was indication from my testing and in my report, that there was what we call situational stress with Mr. McCullough, that something about his life circumstances was making him feel worse, and it wasn't his ongoing problems. It was some specific situation or situations. So we would expect that any symptoms he had might get worse. If he tends to experience physical stress symptoms such as headaches, those might get worse. If he is prone to anxiety, that will get worse. If he is a bit paranoid, that will get worse. If he has trouble relating to people, that will probably get worse. It will take the symptoms that he has and make them worse.

(Veraldi Test. at 23-24 attached as Exhibit "3".) The Court, consistent with *Seltzer*, should refuse JRL's invitation to usurp the jury's role.

**6.     Plaintiff Should be Awarded Post-Judgment Attorney's Fees and Costs in Responding to this Motion.**

The undersigned spent 13 hours researching and responding to JRL's Motion, and incurred $304 in costs associated with ordering copies of transcripts to respond to this Motion. (Heenan Declaration attached hereto as Exhibit "4".) Plaintiff therefore respectfully requests that the Court award him post-judgment attorney's fees of $2,600 (13 hours x $200/hour) and expenses of $304.

Dated this 29th day of June, 2009.

> HEENAN LAW FIRM
>
> */s/ John Heenan*
> John Heenan
> Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), the undersigned hereby certifies that this Brief is less than 6500 words, excluding caption and certificate of service and compliance.

> By:   */s/ John Heenan*
>        Attorney for Plaintiff