IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TIMOTHY McCOLLOUGH,<br><br>       Plaintiff,<br><br>vs.<br><br>JOHNSON, RODENBERG &<br>LAUINGER,<br><br>       Defendant. | CV-07-166-BLG-CSO<br><br>ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR A NEW TRIAL AND<br>TO AMEND THE<br>JUDGMENT |

Pending before the Court is Defendant Johnson, Rodenberg & Lauinger's ("JRL") motion for a new trial and to alter/amend the judgment under Fed.R.Civ.P. 59. Court's Doc. No. 186. For the reasons set forth below, the Court will deny JRL's motion.

I.    BACKGROUND

This matter was tried to a jury on April 14, 15, and 16, 2009. The jury returned a verdict in favor of McCollough, finding that JRL violated the Montana Unfair Trade Practices Act ("UTPA"), maliciously prosecuted McCollough, and abused the legal process. Court's Doc. No. 161. Prior to trial, the Court had determined that JRL violated the

1

federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692e, as a matter of law.  Court's Doc. Nos. 75, 96.

The jury awarded McCollough $250,000 in compensatory damages

and $1,000 in FDCPA statutory damages.  Id.  The jury also awarded

McCollough $60,000 in punitive damages against JRL.  Court's Doc.

No. 162.  On June 3, 2009, the Court entered  judgment against JRL in

the total amount of $408,770.17 – $301,000 in damages, and

$107,770.17 in fees and costs.  Court's Doc. No. 183.

## II.   PARTIES ARGUMENTS

JRL requests a new trial on three grounds: (1) that the Court

erred when it allowed evidence of the number of lawsuits filed in

Montana by JRL and evidence concerning other lawsuits against JRL

based on JRL's debt collection activities in Montana; (2) that the Court

erred when it allowed the UTPA cause of action to go to the jury

because McCollough did not present sufficient evidence to support it;

(3) that the Court erred when it allowed the abuse of process and

malicious prosecution claims to go to the jury because McCollough did

not present sufficient evidence to support either of them.  Court's Doc.

No. 187 at 2-3.  Finally, JRL asks the Court to alter or amend the

judgment to reduce the $250,000 emotional distress damages awarded McCollough because that amount is not supported by the evidence, is grossly excessive, and shocks the conscience.  Id. at 3.

In support, JRL argues, first, that evidence that JRL filed approximately 2700 other lawsuits in Montana in 18 months was not relevant to any issue.  Id. at 4-5.  Under the FDCPA, a debt collector's noncompliance with the law as to the plaintiff, not others, is relevant.  Court's Doc. No. 199 at 3-7.  Likewise, harm to others cannot be used to determine punitive damages.  Id. at 7-9.  Further, this error was prejudicial, given the outcome of the case.  Court's Doc. No. 187 at 5.

Second, JRL argues that at trial, no evidence was presented that McCollough was a consumer in relation to JRL, or suffered a loss of money or property as a result of JRL's actions.  Thus, the Court should not have submitted the Montana UTPA claim to the jury.  Id. at 5-8; Court's Doc. No. 199 at 9-11.

Third, JRL argues that no evidence supports either McCollough's malicious prosecution or abuse of process claims.  Regarding malicious prosecution, McCollough failed to present evidence that JRL lacked probable cause to file a lawsuit against him or that JRL was actuated

by malice.  Id. at 9-10.  As to abuse of process, McCollough presented no evidence that JRL filed the underlying lawsuit to coerce him into taking an action that could be obtained via ordinary legal proceedings. Id. at 10-12; Court's Doc. No. 199 at 11-13.

Finally, JRL argues that the evidence of McCollough's emotional distress shows, at most, "some minor flare-ups of McCollough's pre-existing problems," and thus the $250,000 verdict for emotional distress damages is grossly excessive, unsupported by the evidence, and must be reduced.  Id. at 12-19; Court's Doc. No. 199 at 13-15.

McCollough responds, first, that evidence of the other lawsuits JRL has filed was relevant to the jury's consideration of FDCPA statutory damages, as the text of the statute makes pattern and practice evidence relevant.  Court's Doc. No. 191 at 3-4. Also, evidence of the number of lawsuits was relevant to prove punitive damages, as it shows the reprehensibility of JRL's conduct.  Id.  And the testimony of two other persons subject to JRL's debt collection activities was strictly limited to have a nexus to the specific harm suffered by McCollough. Id.

Second, McCollough showed at trial that he was a consumer

4

under the Montana UTPA in relation to the original creditor by testifying that he used a credit card for consumer purposes.  Id. at 4-5.

Third, at trial there was evidence presented that JRL had little basis to file suit against McCollough, and the jury properly concluded that JRL committed the torts of malicious prosecution and abuse of process.  Id. at 5-6.

Finally, the evidence at trial supports the jury's emotional distress damages award, and it should not be disturbed.  Id. at 6-8.

McCollough's counsel also requests fees and costs for his work responding to JRL's motion.  Id. at 9.

III.    DISCUSSION

A.    Rule 59 Motion for New Trial

Under Rule 59, after a jury trial, the trial court may grant a new trial on all or some of the issues.[1]  The decision whether to grant a new trial rests in the trial judge's sound discretion.  Defenders of Wildlife v. Bernal, 204 F.3d 920, 928-29 (9th Cir. 2000).  Although Rule 59 does not

---

[1] Rule 59(a) provides, in relevant part: The court may, on motion grant a new trial on all or some of the issues ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court ...."

expressly list the grounds for which the trial court may grant a new trial, the Ninth Circuit has identified certain grounds that permit a trial judge to grant a new trial.

First, the trial court may grant a new trial where the verdict is against the clear weight of the evidence or is based on false evidence, or to prevent a miscarriage of justice.  Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001); Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987). "[A] district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, 251 F.3d at 819 (citation omitted).  Rather, before granting a new trial on these bases, the trial court, after having given full respect to the jury's determination, must be "left with the definite and firm conviction that a mistake has been committed [by the jury]." Landes Const. Co., 833 F.3d at 1371-72 (citations omitted).  The Ninth Circuit has made clear that "[i]t is not the courts' place to substitute our evaluation for those of the jurors." Union Oil Co. of Cal. v. Terrible Herbst, Inc., 331 F.3d 735, 743 (9th Cir. 2003) (reversing trial court order granting new trial).

Second, the trial court may grant a new trial where there exists

6

newly discovered evidence.  The party seeking a new trial on the basis of newly discovered evidence must establish that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." Defenders of Wildlife, 204 F.3d at 928-29.

Third, the trial court may grant a new trial where there is evidence that improper conduct by either an attorney or the court unfairly influenced the verdict.  See e.g., Wharf v. Burlington N. Railroad Co., 60 F.3d 631, 637-38 (9th Cir. 1995) (granting new trial in case in which counsel was permitted to read to jury an untruthful stipulated fact).  For a claim of judicial misconduct to survive, the misconduct must be reflected in the record as "actual bias" on the part of the trial court, or leave the "abiding impression that the jury perceived an appearance of advocacy or partiality" by the trial judge. Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted).

As JRL does not assert newly discovered evidence or misconduct

as a basis for a new trial, the question is whether JRL should be
granted a new trial because the verdict is against the clear weight of
the evidence or is based on false evidence, or to prevent a miscarriage
of justice.   The Court will address each of JRL's contentions in turn.

### 1.  Evidence of Other Lawsuits

At trial, the Court admitted Exhibit 106, a document that listed
approximately 2700 other debt collection lawsuits that JRL had filed in
Montana over the course of 18 months.  See Transcript of Proceedings,
Court's Doc. No. 196, at 224-226.  The Court also admitted testimony
from two persons regarding JRL's debt collection activities against
them, but this testimony was brief [2] and was strictly limited to "have a
nexus to the specific harm suffered by the plaintiff."  State Farm Mut.
Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422 (2003).

As set forth below, the Court concludes that a new trial is not
required on this basis for three reasons:  (a) this evidence was
admissible to prove actual malice for McCollough' malicious prosecution

---

[2]Ms. Henan's entire direct testimony consumes only five pages of
transcript (Court's Doc. No. 195 at 182-187).  Mr. Lucero's entire direct
testimony consumes only 13 pages (Court's Doc. No. 196 at 4-27).

and punitive damages claims; (b) this evidence was admissible under

State Farm; and (c) JRL has not shown that admission of this evidence

under 15 U.S.C. § 1692k(b)(1) caused a miscarriage of justice,

### a.   Admissibility to Show Malice

Evidence of other lawsuits filed by JRL was properly admitted

because it was relevant to the element of malice that McCollough had

to prove to recover on his malicious prosecution and punitive damages

claims.

The fourth element of a civil action for malicious prosecution is

that the defendant was actuated by malice.  Hughes v. Lynch, 2007 MT

177, ¶ 12, 338 Mont. 214, 164 P.3d 913.  Malice under malicious

prosecution law includes: (1) "a wish to vex, annoy, or injure another

person or an intent to do a wrongful act," or (2) when a "defendant has

knowledge of facts or intentionally disregards facts that create a high

probability of injury to the plaintiff and ... deliberately proceeds to act

in conscious or intentional disregard of the high probability of injury to

the plaintiff; or ... deliberately proceeds to act with indifference to the

high probability of injury to the plaintiff."  Plouffe v. Mont. Dept of

Health & Human Services, 2002 MT 64, ¶¶ 28-29, 309 Mont. 184, 45

9

P.3d 10.  Evidence that JRL was filing an average of 150 lawsuits per month, particularly when combined with the evidence that JRL did not verify the merits of those lawsuits even when its contract required it to do so, could tend to show that JRL proceeded to act with indifference to the high probability of injury to Plaintiff.

The evidence also was relevant to a jury's consideration of punitive damages.  JRL does not challenge the amount of punitive damages awarded by the jury, nor the instructions given on punitive damages.  For a punitive damages claim, a defendant must be found guilty of actual malice.  Mont. Code Ann. § 27-1-221(1)(2007).

> A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> > (a)   deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
> >
> > (b)   deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

§ 27-1-221(2).  The jury was so instructed.  See Instruction No. 39 (Court's Doc. No. 159 at 27).  Again, the large number of lawsuits JRL

filed in Montana in the relevant time period, and testimony from two witnesses that the lawsuits filed against them by JRL were similarly baseless, is relevant to a jury's consideration of these elements and thus was properly admitted.

> b.   Admissibility under State Farm

It is well-settled that "punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." Phillip Morris USA v. Williams, 549 U.S. 346, 352 (2007) (quoting BMW of North America, Inc. v Gore, 517 U.S. 559, 568 (1996).  There are, however, "procedural and substantive constitutional limitations on these awards." State Farm, 538 U.S. at 416.  Courts reviewing punitive damages must consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418.

JRL argues that, under State Farm and Phillip Morris, the Court should not have admitted the evidence of lawsuits against other alleged

11

debtors.  The Court concludes, however, that this evidence was strictly limited by the Court to the issues relevant to McCollough's lawsuit and thus was properly admitted.

In State Farm, the U.S. Supreme Court stated that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." State Farm, 538 U.S. at 418 (quoting Gore, 517 U.S. at 575).[3]  In determining reprehensibility, "[a] defendant's dissimilar acts, independent from the acts on which liability was premised, may not serve as a basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not be being an unsavory individual or business." Id., 538 U.S. at 422-23.  But State Farm itself makes clear that similar conduct directed at others may properly be considered.  Id.

This holding was reaffirmed in Phillip Morris.  There, the Court stated:

> Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages

---

[3]The reprehensibility of the defendant's wrongdoing is also to be considered by the court pursuant to the state statute.  See M.C.A. § 27-1-221(7)(b)(i).

constitutional equation, namely, reprehensibility.  That is to say, harm to others shows more reprehensible conduct.  <u>Philip [sic] Morris</u>, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility.  Nor do we.

<u>Id.</u> at 355 (emphasis added).  The Supreme Court explained its holding as follows:  "At the same time we recognize that conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few.  And a jury consequently may take this fact into account in determining reprehensibility."  <u>Id.</u> at 357.

It follows that evidence of JRL's similar acts directed at others was admissible to show reprehensibility.  The specific harm alleged by McCollough is that he was sued on a time-barred debt by JRL because JRL took a "factory" approach to litigation, filing a high volume of lawsuits against alleged debtors based upon scant, often unverified information.  The evidence of number of lawsuits JRL filed in Montana, which was limited to an 18-month time period relevant to this litigation, thus has "a nexus to the specific harm" suffered by McCollough.  <u>State Farm</u>, 538 U.S. at 422.  Likewise, the testimony of witnesses Kerri Henan and Kenneth Lucero was brief and was carefully limited to ensure a nexus to the harm suffered by McCollough.

13

Kerri Henan testified that she, like McCollough, was sued by JRL on a time-barred debt. Court's Doc. No. 195 at 187. Ken Lucero testified that he, like McCollough, was sued by JRL on a purchased debt he did not owe. Court's Doc. No. 196 at 6-7. Under the U.S. Supreme Court precedents discussed above, this evidence of JRL's actions directed at others was properly admitted as evidence relevant to the reprehensibility of JRL's actions.

Finally, JRL's argument that, even if this evidence was admissible to show reprehensibility, it should have been admitted only in a separate hearing to determine the amount of punitive damages, is unavailing. The Court followed the procedure dictated under the state law that requires a separate phase of the trial after a jury returns its verdict allowing punitive damages. At this second phase, the Court may receive evidence regarding "a defendant's financial affairs, financial condition, and net worth...." M.C.A. § 27-1-221(7)(a).

JRL's argument overlooks the fact that the jury had to decide, at the conclusion of the initial phase of trial, whether punitive damages were warranted at all. See Court's Doc. No. 161 (Jury Verdict Form). To make that determination, the jury had to consider whether

14

McCollough suffered injury through the malice of JRL.  Court's Doc.
No. 159, Instruction No. 37, 39.  JRL has not cited a case in support of
its argument that a jury should only consider evidence of the
reprehensibility of a defendant's conduct in the separate proceeding on
the punitive damages amount.  Here, evidence of allegedly
reprehensible conduct was properly admitted for the jury to consider in
deciding whether to award punitive damages.

<u>c.</u>   <u>Admissibility under 15 U.S.C. § 1692k(b)(1)</u>

The FDCPA provides:

> In determining the amount of liability in any
> action under subsection (a) of this section
> [regarding statutory damages], the court shall
> consider, among other relevant factors –
>
> (1) in any individual action under subsection
> (a)(2)(A), <u>the frequency and persistence of
> noncompliance by the debt collector</u>, the nature of
> such noncompliance, and the extent to which
> such noncompliance was intentional....

15 U.S.C. § 1692k(b)(1)(emphasis added).  The question here is whether
the phrase  "frequency and persistence of noncompliance" refers only to
the plaintiff or also to other debtors.

In its reply brief, JRL argues, for the first time, that this phrase

applies only to the plaintiff.   JRL submitted its first three briefs on this issue – two in support of a pre-trial motion in limine and its opening brief on the instant motion – without citing a case interpreting § 1692k(b)(1), or making the argument that "frequency and persistence of noncompliance" was as to the plaintiff only.  See Court's Doc. Nos. 101 at 7-10; 124 at 2-8; 187 at 4-5.  This argument comes too late.  A party may not seek a new trial on the basis of a theory not urged before the verdict was rendered.  See Sequa Corp. v. GBJ Corp, 156 F.3d 136, 144 (2d Cir. 1998)(holding that it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories...or otherwise taking a 'second bite at the apple'"); Ciralsky v. C.I.A., 355 F.3d 661, 673 (D.C.Cir. 2004) (holding that Rule 59 motions are not granted where they are used by a losing party to request the trial judge to reopen proceeding in order to consider a new defensive theory which could have been raised during the original proceedings); American Nat. Fir Ins. Co. v. Mirasco, 2004 WL 1110414 (S.D.N.Y. 2004).  See also 11 Federal Practice & Procedure § 2805.  Nonetheless, the Court has reviewed the cases newly cited by JRL.

Some cases have held that "frequency and persistence of

noncompliance" pertains only to the debt collector's noncompliance with respect to the plaintiff. See, e.g., <u>Powell v. Computer Credit, Inc.</u>, 975 F.Supp. 1034, 1039 (S.D. Ohio 1997); <u>Dewey v. Associated Collectors, Inc.</u>, 927 F.Supp.1172, 1175 (W.D.Wisconsin 1996). Other courts, in assessing statutory damages, appear to have considered the debt collector's noncompliance as to other debtors. See, e.g., <u>Masuda v. Thomas Richards &Co.</u>, 759 F.Supp. 1456, 1459, 1467 (C.D.Cal. 1991); <u>Riveria v. MAB Collections, Inc.</u>, 682 F.Supp. 174, 179 (W.D.N.Y. 1988). The question appears undecided in the Ninth Circuit, which has thus far declined to consider it. <u>King v. International Data Services</u>, 2004 WL 1257714, **1 (9th Cir.).

Whether or not the consideration of "frequency and persistence of noncompliance" is limited to the JRL's actions toward McCollough in assessing statutory damages, the Court concludes that submitting the evidence of JRL's conduct toward other debtors did not cause a miscarriage of justice such that JRL is entitled to a new trial. Even though it appears that the greater weight of authority lies against admitting this evidence under 15 U.S.C. § 1692k(b)(1), JRL's argument is unavailing, because the evidence was admissible for other purposes.

17

The Court concludes that this argument comes too late and that, in any event, admission of the evidence did not cause a miscarriage of justice.

    2.    The Montana UTPA Claim

    In a pretrial ruling, the Court denied JRL's motion for summary judgment on McCollough's Montana UTPA Claim.  There, the Court set forth in some detail why, under Montana law, JRL's motion could not be granted because the Montana UTPA could apply to the debt collection activities in this case.  See Court's Doc. No.  At 96 at 7-10. This legal determination will not be revisited here.

    Here, the jury has resolved the factual issues of the Montana UTPA claim in McCollough's favor.  The Court cannot conclude that this verdict was against the clear weight of the evidence or based on false evidence.  McCollough presented evidence that JRL was a debt collector collecting on his credit card account. Court's Doc. No. 196 at 193-94. And McCollough presented evidence that he was a consumer under the Montana UTPA through his relationship to the original creditor, testifying that he used the credit card for consumer purposes. Id. at 184-85.

    Finally, JRL argues that there is  no evidence that McCollough

18

suffered an ascertainable loss of money or property.  The jury instruction on this cause of action simply stated that the jury had to find that JRL's conduct caused McCollough damages as an element of the UTPA claim.  Court's Doc. No. 159, Instruction No. 22.  JRL objected to this instruction, "again, on the grounds that the [UTPA] has no application here and we have already briefed that issue[.]" Court's Doc. No. 197 at 10.  JRL did not request that "damages" be defined more specifically, nor did it submit a proposed instruction on the UTPA.  There is ample evidence from which the jury could reasonably conclude that McCollough suffered "damages" as an element of his UTPA claim. The jury's verdict in this regard was not against the clear weight of the evidence.  JRL's argument that the jury should have found more specific UTPA damages is entitled to little weight when that argument was not specifically raised when settling jury instructions and JRL did not propose such an instruction.  Also, as to loss of money, McCollough specifically testified that, among other things, he paid a paid a filing fee to answer JRL's complaint against him and mailed that answer to JRL by certified mail.  Court's Doc No. 196 at 200.  Thus, the Court cannot say that a miscarriage of justice

19

will occur if JRL is not granted a new trial on this basis.

3.    Malicious Prosecution and Abuse of Process

In a pretrial ruling, the Court also denied JRL's motion for summary judgment on McCollough's malicious prosecution and abuse of process claims.  Again, the Court set forth in some detail why, under Montana law, JRL's motion could not be granted.  See Court's Doc. No. 96 at 10-14.  Again, these legal determinations will not be revisited here.

The jury resolved the factual issues on the malicious prosecution and abuse of process claims in favor of McCollough.  The Court cannot conclude that, with respect to the issues raised by JRL, the jury's verdict was against the clear weight of the evidence.

First, ample evidence was presented from which the jury reasonably could have found that JRL lacked probable cause to sue McCollough, and was actuated by malice.  One example, though not the only evidence on this point, is that JRL attorney Charles Dendy testified JRL did not have any documentation regarding McCollough's alleged debt when it sued him.  Court's Doc. No. 196 at 271, lines 11-14. Dendy testified that JRL demanded attorney's fees from McCollough

20

without a basis to do so, and that JRL had "probably" demanded fees in other cases without having a contract giving it that right. Id. at 273-74. But Dendy also testified that he did not think that JRL did anything wrong with respect to its conduct directed at McCollough. Id. at 269. Thus, JRL's argument in this regard is simply re-weighing the evidence rather than pointing to a lack of evidence.

Second, the Court will not revisit its earlier denial of JRL's summary judgment motion with respect to what may constitute an "ulterior purpose" under Montana abuse of process law. See Court's Doc. No. 96 at 13-14. From the evidence presented the jury reasonably could have found that JRL abused the legal process.

In conclusion, the Court cannot say that a miscarriage of justice will occur if JRL is not granted a new trial on account of the malicious prosecution and abuse of process claims being submitted to the jury. The jury's verdict on these claims was supported by substantial evidence. Thus, JRL's motion will be denied in this respect.

B.    Motion to Alter or Amend Judgment

Rule 59(e) also permits the trial court to alter or amend its judgment. This decision is left to the trial court's discretion.

<u>Zimmerman v. City of Oakland</u>, 255 F.3d 734, 737 (9th Cir. 2001).

"Amendment or alteration is appropriate under Rule 59(e) if (1) the

district court is presented with newly discovered evidence, (2) the

district court committed clear error or made an initial decision that was

manifestly unjust, or (3) there is an intervening change in controlling

law." <u>Zimmerman</u>, 255 F.3d at  740 (citing <u>School Dist. No. 1J,</u>

<u>Multnomah County v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993)).

    In the context of jury awards, the Ninth Circuit has said that a

jury's award of damages should generally be upheld, but there are

three exceptions: "(1) where the amount is grossly excessive or

monstrous[4]; (2) where the evidence clearly does not support the damage

award; and (3) where the award could only have been based on

speculation or guesswork." <u>Weyerhaeuser Co., Inc. v. Accurate</u>

<u>Recycling Corp.</u>, 247 F.R.D. 636, 638 (W.D. Wash. 2008); see also <u>In re</u>

<u>First Alliance Mortg. Co.</u>, 471 F.3d 977, 1001 (9th Cir. 2006) (jury's

award of damages entitled to "great deference" and should be upheld

---

    [4]Some courts in the Ninth Circuit have also used the term
"shocking to the conscience."  See<u>Velez v. Roche</u>, 335 F.Supp.2d 1022,
1038 (N.D.Cal. 2004) (citing <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1557 (9th
Cir. 1988)).

unless "clearly not supported by the evidence" or "only based on speculation or guesswork."). The same standard applies to the second exception as to entry of judgment as a matter of law under Rule 50; there must be "a finding that there is no legally sufficient evidentiary basis for the jury's decision." Weyerhaeuser, 247 F.R.D. at 638.

Courts have subjected jury awards to remittitur where the jury has clearly made a mathematical error or based the award on improper consideration of the evidence. In Weyerhauser, the Court ordered reduction of the jury award by $26,001.36 – offering the adversely affected party the option to request a new trial instead – where the jury had clearly accidentally included this figure twice in its damages calculation. 247 F.R.D. at 638. Likewise, in First Alliance Mortg. Co., the Ninth Circuit reversed the district court's denial of a motion for remittitur or new trial where the jury had arrived at its damage award by impermissibly averaging the estimates of each party's damages experts together. 471 F.3d at 1002-03.

In contrast to the clearly ascertainable errors above, "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to

determine injuries not easily calculated in economic terms." Velez v. Roche, 335 F.Supp.2d 1022, 1038 (N.D.Cal. 2004). Substantial emotional distress damages need not be supported by "objective" evidence; the plaintiff's subjective testimony, corroborated by others, may be sufficient. Id. (citing Passatino v. Johnson & Johnson Consumer Prods. Inc., 212 F.3d 493, 513-14 (9th Cir. 2000)). In Velez, the court upheld a jury award of $300,000 in noneconomic damages that was based on the testimony of the plaintiff, corroborated by her husband, that she became depressed, suffered from insomnia, and changed from a person with vitality and energy to one without interest in activities and hobbies she formerly loved. 335 F.Supp. At 1038-39. The plaintiff acknowledged that she did not seek professional help for her emotional difficulties, aside from her husband, and did not take medication for her mental condition. Id. at 1039, 1041. In upholding the award, the court cited numerous examples of courts upholding jury awards of hundreds of thousands of dollars for noneconomic injury. Id. at 1039-40.

Here McCollough's testimony, corroborated by the expert testimony of Dr. Veraldi, provides a legally sufficient evidentiary basis

24

for the jury's award.  McCollough testified that the lawsuit JRL

prosecuted against him "definitely" caused him anxiety, increasing his

temper, pain, adrenalin, and conflict with his wife.  Court's Doc. No.196

at 207.  The lawsuit caused him to spend more time "down" in bed with

severe headaches.  Id.  He thought that the lawsuit was "frivolous" and

"an insult," and he was "being shoved around."  Id. at 208.  The lawsuit

"was the straw that broke the camel's back.  I got mad.  I'm still mad."

Id. at 209.

　　　Dr. Veraldi testified that the lawsuit was a significant stress

factor in McCollough's life.  Court's Doc. No. 196 at 141.  She also

testified that financial stress could have significant physical impacts on

people, including headaches.  Id. at 142.  Dr. Veraldi felt that the

lawsuit caused stress which worsened McCollough's symptoms, such as

headaches, anxiety, paranioa, and difficulty relating to others.  Id. at

143.

　　　There was a legally sufficient basis for the jury's emotional

distress damages award.  JRL has not provided the Court with any

cases in which a substantial jury award for emotional distress damages

was not upheld.  Rather, JRL has provided only its own interpretation

of the evidence.  But the damages determination was within the jury's

sound discretion.  <u>Velez</u>, 335 F.Supp.2d at 1038.  The Court cannot say

that the jury's emotional distress damages award is grossly excessive or

monstrous, shocking to the conscience, clearly not supported by the

evidence, or could only have been based on speculation or guesswork.

Where the jury's verdict is supported by substantial evidence, the Court

"may not weigh the evidence and impose a result [it] finds to be more

preferable."  <u>Los Angeles Memorial Coliseum Com'n v. National</u>

<u>Football League</u>, 791 F.2d 1356, 1360 (9th Cir. 1986).  Thus, JRL's

motion will be denied in this respect.

## IV.  ATTORNEY'S FEES

McCollough's counsel requests attorney's fees for his time spent

responding to this motion, as well as costs.  A court may grant

attorney's fees and costs for work on post-trial motions.  See <u>Agster v.</u>

<u>Maricopa County</u>, 486 F.Supp.2d 1005, 1020 (D.Ariz. 2007) (awarding

fees according to lodestar method, and non-taxable costs, for work on

post-trial motion in federal civil rights action).

McCollough's counsel requests fees and costs of $2,904.00.  The

Court has already determinded that McCollough's counsel is entitled to

fees in this case, and that his hourly rate for the lodestar calculation is reasonable.  JRL does not object to McCollough's request.  Thus, the Court will award the fees and costs requested.

## V.   CONCLUSION

Based on the foregoing, IT IS ORDERED that JRL's motion (Court's Doc. No. 186) is DENIED in its entirety.

IT IS FURTHER ORDERED that McCollough shall recover from JRL an additional $2,904.00 for his fees and costs incurred responding to this motion.

DATED this 27th day of July, 2009.

/s/ *Carolyn S. Ostby*
Carolyn S. Ostby
U.S. Magistrate Judge