**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY MCCOLLOUGH,
            *Plaintiff-Appellee,*

v.

JOHNSON, RODENBURG & LAUINGER,
LLC,

            *Defendant-Appellant.*

No. 09-35767

D.C. No.
1:07-cv-00166-CSO

OPINION

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted
July 29, 2010—Billings, Montana

Filed March 4, 2011

Before: Sandra Day O'Connor, Associate Justice,*
Sidney R. Thomas and William A. Fletcher, Circuit Judges.

Opinion by Judge Thomas

---

*The Honorable Sandra Day O'Connor, Associate Justice of the United
States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C.
§ 294(a).

McCollough v. Johnson, Rodenburg & Lauinger    3121

## COUNSEL

John H. Boyer, Fred Simpson, and Jessie Lundbert, Missoula, Montana, for the appellant.

John Heenan, Billings, Montana, and Richard Rubin, Santa Fe, New Mexico, for the appellee.

3122    McCollough v. Johnson, Rodenburg & Lauinger

**OPINION**

THOMAS, Circuit Judge:

Debt collection law firm Johnson, Rodenburg & Lauinger ("JRL" or "the law firm") appeals from the entry of summary judgment against it under the federal Fair Debt Collection Practices Act ("FDCPA"), and from a subsequent jury verdict awarding damages under the FDCPA, the Montana Unfair Trade Practices and Consumer Protection Act ("MCPA"), and state torts of malicious prosecution and abuse of process. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

I

Tim McCollough, a former school custodian, opened a credit card account with Chemical Bank sometime around 1990. Chemical Bank merged with the Chase Manhattan Bank ("Chase Manhattan") in 1996 and continued business under the Chase Manhattan name. McCollough continued to make purchases on the account.

McCollough and his wife fell behind on their credit card bills after he allegedly suffered a brain injury at work and she underwent surgery. When McCollough made his last payment on the Chase Manhattan account in 1999, an unpaid balance of approximately $3,000 remained. In 2000, Chase Manhattan "charged off" the account on its books.

Collect America, Ltd. ("Collect America"),[1] through its subsidiary, CACV of Colorado, Ltd. ("CACV"), is a purchaser of bad debt portfolios—typically, debts that have been charged off by the primary lender. CACV purchases the debts; Collect America attempts collection.

---

[1] Collect America is now known as "SquareTwo Financial."

MCCOLLOUGH v. JOHNSON, RODENBURG & LAUINGER    3123

In 2001, CACV purchased McCollough's delinquent account from Chase Manhattan. CACV sued McCollough in 2005 for $3,816.80 in state court to collect the debt. Acting pro se, McCollough replied that the "statute of limitations is up." Two weeks later, CACV dismissed the case. CACV documented service of the complaint and McCollough's response in its electronic files.

In 2006, Collect America retained JRL, a law firm specializing in debt collection, to pursue collection of McCollough's outstanding debt. Although JRL is a North Dakota law firm, some of its lawyers are admitted to practice in Montana. Charles Denby was the JRL attorney who handled the law firm's collection cases for Montana. During the period from January 2007 through July 2008, JRL filed 2,700 collection lawsuits in Montana. On an average day, JRL filed five lawsuits in the state; on one day, JRL filed 40 lawsuits. JRL attorney Lisa Lauinger testified that approximately 90% of the collection lawsuits resulted in a default judgment.

The contract between JRL and Collect America contained the following disclaimer: "Collect America makes no warranty as to the accuracy or validity of data provided." In addition, the contract expressly made JRL "responsible to determine [its] legal and ethical ability to collect these accounts." CACV transmitted information about McCollough's account to JRL using debt collection software. CACV also sent the law firm the electronic file.

The law firm's screening procedures flagged a statute of limitations problem with McCollough's debt. On January 4, 2007, JRL account manager Grace Lauinger wrote to CACV: "It appears that the Statute of Limitations has expired on this file as of August 21, 2005. If you can provide us with an instrument in writing to extend the Statute of Limitations." The next day, JRL recorded in the electronic file that "*** NO DEMAND HAS GONE OUT ON THIS FILE *** THIS

3124    McCollough v. Johnson, Rodenburg & Lauinger

IS THE COLLECT AMERICA BATCH THAT WE ARE HAVING PROBLEMS W[ITH]."

On January 23, 2007, CACV responded to JRL attorney Lisa Lauinger in an email entitled "sol extended" that McCollough had made a $75 partial payment on June 30, 2004, and inquired: "Do you need any info from me on this one?" Based on that payment date, the five-year statute of limitations on the claim against McCollough would not have expired until 2009. *See Colo. Nat'l Bank of Denver v. Story*, 862 P.2d 1120, 1122 (Mont. 1993) (holding that Montana's five-year statute of limitation on an account stated commences running from the date of the last payment).

However, the information was incorrect: McCollough had not made a partial payment on June 30, 2004. Rather, as reflected in the electronic file, the event that took place on June 30, 2004, was the return of court costs to CACV for a collection complaint and summons that CACV had prepared in 2003. Lisa Lauinger did not respond to CACV's offer to provide additional documentation of the event.

On April 17, 2007, JRL filed a collection complaint signed by JRL attorney Charles Dendy against McCollough in Montana state court. The complaint sought judgment for an account balance of $3,816.80, interest of $5,536.81, attorney's fees of $481.68, and court costs of $120.00.

Dendy later testified that he reviewed the information in the electronic file before filing suit. At that point, the electronic file indicated the 2000 charge-off date; a June 30, 2004, entry indicating the return of court costs; an entry showing that CACV had previously sued McCollough; and an entry indicating that McCollough had pled a statute of limitations defense in response. Dendy admitted that he made no inquiry into whether a partial payment occurred on June 30, 2004. Instead, he explained: "In this case I relied upon the information that was provided by the client."

McCOLLOUGH v. JOHNSON, RODENBURG & LAUINGER    3125

On June 13, 2007, McCollough filed a pro se answer to the complaint, asserting a statute of limitations defense:

> FORGIVE MY SPELLING I HAVE A HEAD INJURY AND WRITING DOSE NOT COME EASY
>
> (1) THE STACUT OF LIMITACION'S IS UP, I HAVE NOT HAD ANY DEALINGS WITH ANY CREDITED CARD IN WELL OVER 8½ YEARS
>
> (2) I AM DISABLED I GET 736.00 A MONTH S.S.I. . . .
>
> (3) WHEN WORKERS COMP STOPED PAYING I RAN OUT OF MONEY, CHASE WOULD NOT WORK WITH ME, THEY PASSED IT ON TO COLLECTOR'S – THEY LIED TO ME, THEY INSULTED ME, THEY USED BAD LANGUAGE, THEY CALLED AROUND THE CLOCK, SO I COULD NOT REST, THEY GOT ME SO WOUND UP AND CONFUSED THE HEALING OF MY HEAD INJURY STOPED! THEY WERE HURT-ING ME, SO I HAD TO STOP DEALING WITH THEM SO I COULD RECOVER, IM STILL RECOVERING. THE PAIN THEY COSSED AND NEW MED BILLS ARE WORTH MORE THEN THE MONEY THEY WANT.
>
> (4) THIS IS THE THIRED TIME THEY HAVE BROUGHT ME TO COURT ON THIS ACCOUNT, . . . WHEN WILL IT STOP DO I HAVE TO SUE THEM SO I CAN LIVE QUIETLY IN PAIN

One month later, McCollough also telephoned Dendy and left a message indicating that he would be seeking summary judgment on the basis of the statute of limitations.

3126    McCollough v. Johnson, Rodenburg & Lauinger

Dendy noted on July 11, 2007, "[w]e need to get what the client has for docs on hand." The following day, Grace Lauinger sent an email to Collect America asking for documentation. Collect America responded: "[b]ecause of the age of the account, we can't get any more statements (other than what has been sent to you)." Dendy continued to prosecute the suit.

On August 6, 2007, CACV informed Grace Lauinger that McCollough had not made a partial payment on June 30, 2004, as previously stated; rather, the entry on that date "was actually unused costs by another office, not payment." Grace Lauinger testified that she scanned the email into the electronic file to which Dendy had access and that she did not recall whether she directly conveyed the new information to Dendy. Dendy testified that he did not learn of this information until later. He continued to prosecute the suit.

In October 2007, Dendy served on McCollough a list of twenty-two requests for admission that included the following:

> 11. Prior to initiation of this suit, Defendant Tim M. McCollough has never notified plaintiff or any other party in interest in this action of any disputes regarding said Chase Manhattan Bank credit card.
>
> . . . .
>
> 14. There are no facts upon which Defendant Tim M. McCollough relies as a basis for defense in this action.
>
> . . . .
>
> 17. Every statement or allegation contained in plaintiff's Complaint is true and correct.
>
> . . . .

McCollough v. Johnson, Rodenburg & Lauinger   3127

> 21. Defendant Tim M. McCollough made a payment on said Chase Manhattan Bank credit card on or about June 30, 2004 in the amount of $75.00.

The requests for admission did not include an explanation that, under Montana Rule of Civil Procedure 36(a), the requests would be deemed admitted if McCollough did not respond within thirty days.

McCollough retained counsel and timely denied all of the requests. Continuing to prosecute the collection case, Dendy issued a subpoena to Chase in November 2007 seeking production of the operative records from McCollough's account. Chase responded a month later that it had no records of the account.

On December 7, 2007, Dendy sent to CACV an email marked "URGENT." The email read:

> An attorney has appeared in this action and has served discovery requests. . . .
>
> The attorney is one who is anti purchased debt and who attempts to run up costs in an attempt to secure a large cost award against plaintiff. . . .
>
> Please provide me with copies of everything you can get for documentation as soon as possible. We need to request everything available from the original creditor, not just the things that you normally request, etc. Application, statements, cardmember agreement, copies of payments, copies of correspondence. Please have the requests expedited if possible.

CACV emailed in response:

> For this file we are not able to get any more media. The retention rate is seven years from [charge-off],

which was 10/2000. I have sent you all the docs we
have.

CACV also called JRL to explain that the last payment
McCollough had made on the account preceded the 2000
charge-off.

That afternoon, CACV instructed Dendy to dismiss the suit
"asap" because of the "SOL problem." JRL then moved for
dismissal with prejudice and the state court dismissed the
action.

McCollough sued JRL in federal district court alleging vio-
lations of the FDCPA and the MCPA, along with state law
claims for malicious prosecution and abuse of process.

On cross-motions for summary judgment, the district court
found that the following facts were established:

> (1) On April 17, 2007, JRL filed a time-barred law-
> suit against McCollough.

> (2) By August 6, 2007, JRL had information from its
> client demonstrating that the lawsuit was time-
> barred.

> (3) JRL prosecuted the time-barred lawsuit against
> McCollough until December 7, 2007.

The district court granted McCollough partial summary
judgment on his FDCPA claims.

The case was then tried to a jury over the course of three
days. At trial, lay witnesses Keri Henan and Ken Lucero testi-
fied about their experiences being sued by JRL. Michael
Eakin, a consumer law attorney with Montana Legal Services,
testified about the rapid growth of debt-collection lawsuits in
Montana and about JRL's role in that trend; he also testified

that "a vast majority" of JRL's lawsuits against debtors result in default judgments because JRL tries its cases without consideration for the pro se status of most of its defendant-debtors. James Patten, a Montana collection lawyer, described the importance of reasonable pre-suit investigation and testified that it was JRL's "factory" approach of "mass producing default judgments," rather than any mistake, that caused JRL to prosecute the time-barred debt and pursue unlawful attorney's fees against McCollough.

The jury found in favor of McCollough on all remaining claims and awarded him the $1,000 statutory maximum for violations of the FDCPA; $250,000 for emotional distress; and $60,000 in punitive damages.

JRL filed motions for a new trial and amendment of the judgment to reduce the emotional distress damage award. When the district court denied these motions, JRL timely appealed.

II

The district court properly granted summary judgment against JRL on the FDCPA claims. The FDCPA prohibits debt collectors from engaging in various abusive and unfair practices. *See Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). The statute was enacted to eliminate abusive debt collection practices; to ensure that debt collectors who abstain from such practices are not competitively disadvantaged; and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ___ U.S. ___, ___, 130 S. Ct. 1605, 1608-09 (2010). The statute defines a "debt collector" as one who "regularly collects . . . debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), and covers lawyers who regularly collect debts through litigation, *Heintz*, 514 U.S. at 293-94.

## A

**[1]** Although the FDCPA is a strict liability statute, it excepts from liability those debt collectors who satisfy the "narrow" bona fide error defense. *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (quotation omitted). That defense provides that:

> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert*, 531 F.3d at 1006 (citing *Fox v. Citicorp. Credit Servs, Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994)). Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation.

**[2]** The district court correctly concluded that JRL's bona fide error defense failed as a matter of law. JRL argues that it maintained adequate preventive procedures by utilizing a system to flag potential statute of limitations problems. However, the procedures that support a valid bona fide error defense must be " "reasonably adapted' to avoid the specific error at issue.' " *Reichert*, 531 F.3d at 1006 (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). JRL's error in this case was not its failure to catch time-barred cases; indeed, JRL initially spotted the limitations period problem and sent a letter to CACV requesting "an instrument in writing to extend" the limitations period. Instead, JRL erred by relying without verification on CACV's representation and by overlooking contrary information in its electronic file. JRL thus

presented no evidence of procedures designed to avoid the specific errors that led to its filing and maintenance of a time-barred collection suit against McCollough. *Cf. Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (debt collectors maintained "extensive systems" and "elaborate procedures . . . to avoid collecting unauthorized charges," and "insist[ed] that their client[s] verify under oath that each of the charges was true and correct").

**[3]** JRL contends that its reliance on CACV's representation about a June 30, 2004, partial payment created a question of fact for the jury on its bona fide error defense. However, the bona fide error defense "does not protect a debt collector whose reliance on a creditor's representation is unreasonable." *Reichert*, 531 F. 3d at 1006 (citing *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006)). Unwarranted reliance on a client is not a procedure to avoid error. Indeed, in *Reichert*, we held that "[t]he fact that the creditor provided accurate information in the past cannot, in and of itself, establish that reliance in the present case was reasonable and act as a substitute for the maintenance of adequate procedures to avoid future mistakes." 531 F.3d at 1007; *see also Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) (suggesting that one "reasonable preventive measure[ ]" to avoid mistakes is "an agreement with . . . creditor-clients that debts are current"); *Turner v. J.V.D.B. & Assocs., Inc.*, 318 F. Supp. 2d 681, 686 (N.D. Ill. 2004) (on remand from the Seventh Circuit in the above cited case, determining that an "understanding and/or agreement" that the client would only furnish reliable information would have been necessary to showing reasonable reliance).

**[4]** The undisputed evidence established that JRL's reliance on CACV's email was unreasonable as a matter of law. First, Collect America's contract with JRL expressly disclaimed "the accuracy or validity of data provided" and instructed that JRL was "responsible to determine [its] legal and ethical ability to collect" the account. Second, the elec-

tronic file confirmed that the event that took place on June 30, 2004, was the return of "unused costs" rather than a partial payment. Third, the electronic file also indicated that McCollough had asserted a statute of limitations defense to a collection action filed against him in 2005 over the same debt. Finally, McCollough informed JRL that the debt fell outside the limitations period both in his answer to JRL's complaint and in a phone call.

**[5]** For these reasons, the district court properly concluded that JRL's reliance on its client was unreasonable as a matter of law. *Cf. Hyman v. Tate*, 362 F.3d 965, 967-68 (7th Cir. 2004) (reliance was reasonable where debt collector and creditor-client had "understanding" that client would not forward accounts in bankruptcy; error was made in 0.01% of cases; and debt collector immediately ceased collection efforts upon notice from debtor of the mistake); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (the FDCPA "does not require an independent investigation of the debt referred for collection" where, for example, the debt collector's "referral form, completed and signed by [the creditor-client], include[d] specific instructions to claim only amounts legally due and owing"). The district court properly granted summary judgment on JRL's bona fide error defense.

B

The district court did not err in granting McCollough's motion for summary judgment on his claim that JRL violated the FDCPA by requesting attorney's fees in its underlying state collection complaint.

**[6]** JRL does not dispute the district court's determination that the pursuit of unauthorized attorney's fees in a collection suit violates both § 1692f(1) and § 1692e(2) of the FDCPA. Section 1692f(1) prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "[t]he collection of any amount (including any interest, fee,

charge, or expense . . .) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *See Reichert*, 531 F.3d at 1005-07 (violation of § 1692f(1) arising from a debt collector's imposition of an unlawful charge for attorney's fees).

Section 1692e(2) prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . (A) the character, amount, or legal status of any debt; or (B) any . . . compensation which may be lawfully received by any debt collector for the collection of a debt." *See Clark*, 460 F.3d at 1174-77 (possible violation of § 1692e(2) arising from misstatement of an account balance); *Foster v. DBS Collection Agency*, 463 F. Supp. 2d 783, 802 (S.D. Ohio 2006) (holding debt collectors violated § 1692e(2) by seeking attorney's fees not permitted by state law); *Strange v. Wexler*, 796 F. Supp. 1117, 1118 (N.D. Ill. 1992) (same).

JRL argues that the district court erred in two respects. First, JRL characterizes the district court's decision as holding that it violated the FDCPA by requesting attorney's fees without having proof of its entitlement to those fees at the time it filed the complaint. In support, JRL cites the Sixth Circuit's opinion in *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006), which held that no FDCPA violation occurs when a creditor files a valid debt collection action in court without having in its possession adequate proof of its claim. However, in contrast to *Harvey*, JRL's collection action in this case was invalid because JRL presented no admissible evidence establishing its entitlement to collect the fees *at the time of the summary judgment motion* — not at the time it filed suit.

Second, JRL argues that summary judgment was inappropriate because a genuine issue of material fact existed over whether JRL had a contractual entitlement[2] to seek attorney's

---

[2]JRL does not challenge the district court's determination that Montana law did not itself authorize the request for attorney's fees.

fees from McCollough. Before the district court, JRL presented a credit card agreement purportedly belonging to McCollough. JRL now admits that the agreement was not McCollough's and does not contest the district court's exclusion of the evidence.

JRL contends that it presented evidence that attorney's fees are permitted under *all* cardmember agreements, even if it was not able to obtain McCollough's specific agreement. JRL argues that its failure to produce a cardmember agreement applicable to McCollough was not fatal, and that the issue should have gone to the jury for its determination as to whether McCollough's agreement contained such a provision.

**[7]** The district court correctly concluded that JRL failed to meet its burden to show a genuine issue for trial because it presented no admissible evidence of a contract authorizing a fee award. The FDCPA prohibits "[t]he collection of any amount . . . unless such amount is *expressly authorized by the agreement creating the debt* or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). JRL produced no evidence of express authorization of its fee request from McCollough; the presentation of generic evidence that all credit cards contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury. The district court correctly granted summary judgment on the claim.

C

The district court properly held that JRL's requests for admission violated the FDCPA as a matter of law.

1

**[8]** As a threshold matter, JRL contends that the FDCPA should not be read to cover discovery procedures such as requests for admission,[3] although JRL concedes that the

---

[3]JRL's own actions in this case belie its theory. In the very requests for admission at issue, it stated at the bottom: "This is an attempt to collect a debt."

FDCPA covers both the filing of complaints, *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010), and the service of settlement letters during the course of litigation, *Heintz*, 514 U.S. at 293. Our precedents do not support such a distinction. Rather, the FDCPA "applies to the litigating activities of lawyers." *Heintz*, 514 U.S. at 294. The Supreme Court's reasoning in *Heintz* was twofold. First, the Court reasoned that lawyers who collect debts through litigation plainly fall within the statutory language defining " 'debt collector[s]' " to include those who " 'regularly collec[t] or attemp[t] to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another.' " *Id.* (quoting 15 U.S.C. § 1692a(6) (alterations in original)). Second, the Court observed that an earlier version of the FDCPA provided an exemption for lawyers, but that Congress had since repealed that exemption. *See id.* at 294-95; Pub. L. No. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977) (exempting from the definition of the term "debt collector" "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client"); Pub. L. No. 99-361, 100 Stat. 768 (1986) (repealing the exemption); *see also* 15 U.S.C. § 1692a(6)(A)-(F) (listing current exceptions to the definition of "debt collector," none of which cover attorneys).

**[9]** We have reached similar conclusions in two cases. First, in the pre-*Heintz* case of *Fox*, we held that the FDCPA applies to attorneys engaged in "purely legal activities" and thus covers the filing of an application for a writ of garnishment. *See* 15 F.3d at 1511-12; *see also id.* at 1512 ("There is simply no mention of attorneys in the current definition of 'debt collector' or its exceptions; nor is there any distinction drawn between legal and non-legal activities."). More recently, in *Donohue*, we applied *Heintz* and held that the FDCPA covers the service upon a debtor of a complaint to facilitate debt-collection efforts. 592 F.3d at 1031-32. We reasoned in *Donohue* that "[t]o limit the litigation activities that may form the basis of FDCPA liability to exclude complaints . . . would require a nonsensical narrowing of the common

understanding of the word 'litigation.' " *Id*. at 1032 (rejecting a distinction between "lawyers acting in the capacity of debt collectors and those litigating"). There is no principled distinction to be drawn between these types of litigation activities and written discovery.

Our sister circuits agree. The Fourth Circuit has held that the FDCPA applies specifically to statements in written discovery documents. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228, 230-32 (4th Cir. 2007) (holding that the FDCPA applies to allegedly erroneous statements made by the defendant law firm in interrogatories and a summary judgment motion during the course of a state court collection suit) (collecting cases).

JRL asserts that failure to exclude discovery procedures from FDCPA coverage would hinder attorneys' ability to litigate cases. Instead, JRL contends that remedies for improper discovery tactics lie in court rules for civil procedure, and asserts that if its requests for admission complied with the applicable state rules, they ought not subject it to liability under the FDCPA. However, Congress enacted the FDCPA expressly because prior laws for redressing "abusive, deceptive, and unfair debt collection practices" were "inadequate to protect consumers." 15 U.S.C. § 1692(a), (b). The statute preempts state laws "to the extent that those laws are inconsistent with any provision of [the FDCPA]." 15 U.S.C. § 1692n.

**[10]** Moreover, policy reasoning provides no authority to override the clear statutory language of Congress. "[O]ur obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (quotation omitted); *see Jerman*, 130 S. Ct. at 1622 (finding it unremarkable that "the FDCPA imposes some constraints on a lawyer's advocacy on behalf of a client"); *Sayyed*, 485 F.3d at 234 (concluding that, by a simple reading of its text, the FDCPA covers litigation activities, including discovery); *Fox*, 15 F.3d at 1512 ("The plain language of the statute unambiguously

precludes any continued doctrine of special treatment for attorneys under the FDCPA."); *see also Heintz*, 514 U.S. at 296-97 (allowing for the possibility that the FDCPA may contain some "additional, implicit, exception[s]" to account for the potential conflicts that may arise in the application of the FDCPA to litigation activities). In short, the FDCPA does not exclude from its coverage the service of requests for admission.

2

**[11]** The district court correctly held that JRL's service of false requests for admission violated the FDCPA as a matter of law. The FDCPA prohibits a debt collector from using either "unfair or unconscionable means to collect . . . any debt," 15 U.S.C. § 1692f, or "any false, deceptive, or misleading . . . means in connection with the collection of any debt," *id.* § 1692e. The FDCPA measures a debt collector's behavior according to an objective "least sophisticated debtor" standard. *Clark*, 460 F.3d at 1171. This standard " 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking, and the credulous.' " *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993) (alteration and ellipsis in original)). The FDCPA imposes strict liability on creditors, including liability "for violations that are not knowing or intentional." *Reichert*, 531 F.3d at 1005.

**[12]** JRL's requests for admission asked McCollough to admit facts that were not true: that he had never disputed the debt, that he had no defense, that every statement in JRL's complaint was true, and that he had actually made a payment on or about June 30, 2004. JRL had information in its possession that demonstrated the untruthfulness of the requested admissions.

**[13]** The requests for admission did not include an explanation that, under Montana Rule of Civil Procedure 36(a), the

3138   McCollough v. Johnson, Rodenburg & Lauinger

requests would be deemed admitted if McCollough did not respond within thirty days. Because we consider the debt collector's conduct from the standpoint of the least sophisticated debtor, we must conclude that the service of requests for admission containing false information upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes "unfair or unconscionable" or "false, deceptive, or misleading" means to collect a debt. Here, JRL effectively requested that McCollough admit JRL's entire case against him and concede all defenses. The least sophisticated debtor cannot be expected to anticipate that a response within thirty days was required to prevent the court from deeming the requests admitted. The district court properly granted summary judgment on this claim.

D

JRL also challenges the district court's denial of its motions for partial summary judgment and judgment as a matter of law on McCollough's claims under the MCPA. However, given our resolution of the FDCPA claims, we need not reach this issue. The damages McCollough would receive on his MCPA claims are already available to him through his FDCPA claims. Like the FDCPA, the MCPA authorizes actual damages, attorney's fees, and costs. *Compare* 15 U.S.C. § 1692k(a)(1), (3) *with* Mont. Code Ann. § 30-14-133(1), (3). While the MCPA also permits the court in its discretion to award treble damages and any other equitable relief that it considers proper, *id.* § 30-14-133(1), the district court declined to grant McCollough such relief.

McCollough and *amicus curia* the State of Montana have conceded that if the FDCPA claims are upheld, it is not necessary to reach the MCPA issues. If we were to consider the issues, ours would not be a definitive construction of the statute: that prerogative belongs to the Montana Supreme Court. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939

MᴄCᴏʟʟᴏᴜɢʜ ᴠ. Jᴏʜɴsᴏɴ, Rᴏᴅᴇɴʙᴜʀɢ & Lᴀᴜɪɴɢᴇʀ    3139

(9th Cir. 2001) ("federal courts are bound by the pronounce-
ments of the state's highest court on applicable state law" and
"[w]here the state's highest court has not decided an issue, the
task of the federal courts is to predict how the state high court
would resolve it" (quotation omitted)).

Thus, we need not, and do not, reach the MCPA issues. *See
Webb v. Sloan*, 330 F.3d 1158, 1166-67 (9th Cir. 2003)
(declining to reach state law issues where verdict could be
sustained on federal grounds).

## III

We review for abuse of discretion a district court's decision
to admit evidence. *Boyd v. City and County of San Francisco*,
576 F.3d 938, 943 (9th Cir. 2009). We reverse only if we are
" 'convinced firmly that the reviewed decision lies beyond the
pale of reasonable justification under the circumstances.' " *Id.*
(quoting *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir.
2000)). "A party seeking reversal for evidentiary error must
show that the error was prejudicial, and that the verdict was
more probably than not affected as a result." *Id.* (quotation
omitted).

## A

The district court did not abuse its discretion in admitting
the very brief testimony of individual debtors Keri Henan and
Ken Lucero concerning their experiences of being sued by
JRL. JRL argues that the testimony was irrelevant under Fed-
eral Rule of Evidence 401 and that it should have been
excluded on that basis. Alternatively, JRL contends that the
probative value of the evidence was substantially outweighed
by the danger of unfair prejudice and thus that the evidence
should have been excluded under Rule 403.

**[14]** Rule 401 defines relevant evidence as "evidence hav-
ing any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). If evidence is relevant, it is generally admissible under Federal Rule of Evidence 402. *See id*. However, relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403.

**[15]** The district court did not abuse its discretion in concluding that the testimony of JRL's conduct in similar cases was relevant to show intent, absence of mistake, malice, willfulness, and reprehensibility. Pursuant to the FDCPA, McCollough had to prove that JRL's violations were "intentional" to obtain the maximum amount of FDCPA statutory damages and to counter JRL's bona fide error defense. 15 U.S.C. § 1692k(b)(1) (requiring consideration, among other relevant factors, of "the extent to which such noncompliance was intentional"); *id.* at § 1692k(c) (bona fide error defense). McCollough's malicious prosecution and abuse of process claims required proof of malice and willfulness. *See Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 45 P.3d 10, 14 (Mont. 2002) (malicious prosecution); *Hughes v. Lynch*, 164 P.3d 913, 919 (Mont. 2007) (abuse of process). Finally, McCollough's entitlement to punitive damages depended on a showing of reprehensibility. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (requiring consideration of whether the defendant's "conduct involved repeated actions or was an isolated incident"). In addition, JRL defended its conduct on the basis that it simply made a series of mistakes in prosecuting the time-barred lawsuit. Thus, the district court did not abuse its discretion in admitting the testimony.

B

JRL contends that the district court abused its discretion in admitting expert testimony from attorneys Michael Eakin and

McCollough v. Johnson, Rodenburg & Lauinger    3141

James Patten regarding JRL's collection practices in other cases. However, it failed to preserve this claim for appeal by failing to object at trial. *United States v. Archdale*, 229 F.3d 861, 864 (9th Cir. 2000) (holding that filing a motion in limine is insufficient to preserve an issue for appeal absent a further objection at trial). Here, JRL filed a motion in limine challenging admission of the evidence, but the district court denied JRL's motion to exclude the experts' testimony "with leave to renew any objections at trial" and thus did not issue an ultimate ruling on the evidence. JRL did not reassert the objections at trial. JRL thus failed to preserve its objection under *Archdale*.

JRL also claims error in the district court's admission of Exhibit #106, a list of all the lawsuits JRL had filed in the State of Montana from January 2007 through July 2008. However, defense counsel opened the door to consideration of this evidence when he questioned Patten about the number of lawsuits filed during that period. *Byrd v. Maricopa County Sheriff's Dept.*, ___ F.3d ___, No. 07-16640, 2011 WL 13920 at *11 n.10 (9th Cir. Jan. 5, 2011) (en banc). A party's preemptive use of evidence at trial before its introduction by the opposing party constitutes a waiver of the right to challenge the admissibility of the evidence on appeal. *See Ohler v. United States*, 529 U.S. 753, 757-59 (2000); *United States v. Decoud*, 456 F.3d 996, 1011 (9th Cir. 2006).

JRL also failed to preserve its claim on appeal that the district court erred in allowing the attorney expert testimony and the list of cases to be presented at the liability and general damage portions of the trial, rather than at the punitive damages stage.

IV

The district court did not abuse its "broad discretion" in formulating the jury instructions. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 213 (9th Cir. 1988).

JRL first argues that the district court abused its discretion by admitting Exhibit #106 and the testimony of Henan, Lucero, Eakin, and Patten without instructing the jury to limit its use of the evidence to the issue of reprehensibility, and to award punitive damages only for JRL's conduct toward McCollough. JRL argues that the admission of the evidence without proper limiting instructions violated JRL's due process rights. However, JRL failed to preserve this issue on appeal because it did not request an instruction limiting the jury's use of the evidence at trial. Accordingly, the issue is waived. *See id.* ("[I]f an appellant does not request an instruction at trial, the issue is not preserved on appeal.").

JRL likewise argues that it is entitled to a new trial on the ground that the district court instructed the jury that it had previously found JRL's requests for admission to be "abusive, unfair, or unconscionable," rather than by simply stating its legal conclusion that JRL violated the FDCPA. However, JRL did not raise this objection at trial. Indeed, JRL conceded that the instruction correctly summarized the district court's prior order and objected only because it disagreed with the court's prior order. Thus, this challenge is also waived. *See id*.

V

The district court did not err in denying JRL's motion for judgment as a matter of law on McCollough's state law malicious prosecution and abuse of process claims.[4] "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quotation omitted). Substantial evidence supports the jury's findings of liability on both state law claims.

---

[4]JRL also argues that the district court erred in denying its motion for summary judgment on these issues. However, that decision is not reviewable on appeal. *Ortiz v. Jordan*, ___ U.S. ___, No. 07-737, 2011 WL 197801 at *2 (2011).

A

To sustain an action for malicious prosecution under Montana law, a plaintiff must establish six separate elements:

> (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for the plaintiff; and (6) the plaintiff suffered damage.

*Plouffe*, 45 P.3d at 14. JRL contends that McCollough did not present substantial evidence of elements (3) and (4): lack of probable cause and malice.

Probable cause exists when a party "reasonably believes in the existence of the facts upon which the claim is based, and . . . correctly or reasonably believes that under those facts the claim may be valid under the applicable law." *Hughes*, 164 P.3d at 918 (quotation omitted). Probable cause is "determined . . . on the basis of the facts known to the party initiating the legal action." *Plouffe*, 45 P.3d at 15.

[16] McCollough presented substantial evidence that JRL did not reasonably believe in the existence of a June 30, 2004, partial payment that would have rendered its suit timely. JRL's electronic file indicated that the suit was time-barred. CACV expressly disclaimed the accuracy of the account information it gave JRL. Lisa Lauinger ignored the offer of additional "info from me on this one" when she accepted CACV's unsupported statement. Grace Lauinger initially requested supporting documentation from CACV "to extend the Statute of Limitations," but did not follow up when none was submitted. JRL continued to prosecute the collection case for four months after having been explicitly told by CACV

3144    McCollough v. Johnson, Rodenburg & Lauinger

that the June 30, 2004, partial payment never occurred. These facts provide substantial evidence to support the jury's conclusion that JRL sued McCollough without reasonably believing in the suit's timeliness and thus without probable cause.

Substantial evidence also supports the jury's finding of malice. The Montana Supreme Court has not yet defined "malice" in the context of a malicious prosecution action. In *Plouffe*, the Montana Supreme Court cited two possible definitions from Montana law. *See* 45 P.3d at 17. Montana's punitive damages statute provides:

> A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
> (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
>
> (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2). Alternatively, Mont. Code Ann. § 1-1-204(3) defines "malice" as "a wish to vex, annoy, or injure another person or an intent to do a wrongful act." Under either definition, "the plaintiff is not required to prove the subjective intent of the defendant to establish a *prima facie* case for malicious prosecution." *Plouffe*, 45 P.3d at 18. Moreover, a rebuttable presumption of malice arises if the jury finds an absence of probable cause. *Id.* at 17-18.

**[17]** Here, substantial evidence supported the jury's finding under either definition. McCollough presented evidence that JRL knew of or intentionally disregarded facts concerning the timeliness of its collection action. JRL's conduct created a high probability of injury to McCollough, yet JRL

deliberately acted in disregard of such injury. *See* Mont. Code Ann. § 27-1-221(2). Likewise, the evidence of JRL's conduct toward McCollough — as well as the testimony of Henan, Lucero, Eakin, and Patten — supports an inference that JRL acted with a "wish to . . . injure another person or an intent to do a wrongful act." Mont. Code Ann. § 1-1-204(3). Moreover, a rebuttable presumption of malice arose when the jury found an absence of probable cause. *Plouffe*, 45 P.3d at 17-18. Substantial evidence supports the jury's findings of both a lack of probable cause and malice. Accordingly, the district court properly denied JRL's motion for judgment as a matter of law on McCollough's malicious prosecution claim.

B

To sustain an action for abuse of process under Montana law, a plaintiff must establish two elements: "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Hughes*, 164 P.3d at 919 (quotation omitted). Those elements are satisfied where, as here, evidence indicates that the litigant willfully filed a lawsuit "with an ulterior purpose of extracting money from [the opposing party] that he did not owe," and that the litigant "had no valid legal claim against [the opposing party] and knew it, but filed an action . . . nonetheless." *Seipel v. Olympic Coast Invs.*, 188 P.3d 1027, 1032 (Mont. 2008).

[18] Substantial evidence supports the jury's finding of liability on this claim. McCollough presented evidence that JRL filed suit to extract money from McCollough that it could not legally obtain in a collection action and that it filed a baseless action with knowledge that it had no legal claim. McCollough presented evidence that JRL filed and pursued a time-barred lawsuit against him, even though JRL's own electronic file indicated that the suit was time-barred. McCollough presented evidence that JRL continued to prosecute the collection case for four months after having been explicitly told by CACV that the June 30, 2004, payment was not grounds for extend-

ing the statute of limitations. McCollough presented evidence that JRL sought attorney's fees without confirming that McCollough had a contractual fee obligation. The jury could have inferred from this evidence that JRL's purpose in filing the lawsuit was to coerce McCollough to pay awards and fees to which it and CACV were not entitled. The jury's abuse of process verdict was supported by substantial evidence, and the district court properly denied JRL's motion for judgment as a matter of law.

## VI

The district court properly denied JRL's motion for a new trial or amendment of the judgment based on the jury's $250,000 award for actual damages due to emotional distress. In reviewing the district court's denial of a motion for a new trial for abuse of discretion, we defer to a jury's finding of the appropriate amount of damages unless the award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996) (citation omitted). We "may not assess the credibility of witnesses in determining whether substantial evidence exists to support the jury's verdict." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citation omitted).

The FDCPA provides for the award of actual damages. *See* 15 U.S.C. § 1692k(a)(1). At trial, McCollough presented evidence of emotional distress through his own testimony and testimony from a clinical psychologist, Dr. Donna Veraldi, who examined McCollough in July 2008. At the close of the evidence, the trial judge issued the following jury instructions with respect to damages available under the FDCPA:

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure

in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.

The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.

JRL did not object to either instruction.

JRL argues that the $250,000 award was "clearly not supported by the evidence" and "based on speculation and guesswork." In support, JRL contends that the evidence "boils down to [McCollough's] testimony that he was mad . . . and had to lie down"; his testimony concerning pre-existing symptoms that had not worsened due to JRL's conduct; and Dr. Veraldi's testimony about the effects she would hypothetically expect of stress on someone with McCollough's conditions.

**[19]** However, ample evidence exists in the record to support the jury's award. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1039-41 (9th Cir. 2003) (upholding emotional damages of a similar amount based solely on the plaintiff's testimony). Dr. Veraldi described McCollough's condition after he suffered a head injury in 1990 and explained that he

3148    McCollough v. Johnson, Rodenburg & Lauinger

suffered from mixed personality disorder and multiple other afflictions, including post-traumatic stress disorder. Dr. Veraldi further testified that the lawsuit was a significant stress factor in McCollough's life, and noted that McCollough is "somebody who is a more vulnerable individual in negotiating the world," and thus "more vulnerable to any types of problems." She explained that the adverse impacts of JRL's lawsuit may have worsened McCollough's existing symptoms of headaches, anxiety, paranoia, and difficulty relating to others.

McCollough testified as to the adverse impact of being sued by JRL, including the anxiety, stress, and anger that he felt and the "down time" and severe headaches that he suffered as a result. McCollough testified that the lawsuit JRL prosecuted against him "definitely" caused him anxiety, increasing his temper, pain, adrenaline, and conflict with his wife. McCollough acknowledged his disabling pre-existing condition but characterized the impact of JRL's lawsuit on him as "the straw that broke the camel's back." He thought that the lawsuit was "frivolous" and "an insult," and that he was "being shoved around." We thus must conclude that the award was not based on speculation and guesswork, but rather on the jury's valuation of McCollough's emotional distress.

Contrary to JRL's assertions, *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006), does not compel a different result. There, the jury improperly arrived at its damage award by averaging the estimates of the parties' damage experts. 471 F. 3d at 1002-03. No analogous calculation error is evident on this record.

JRL also argues that the $250,000 award was based on an improper desire to punish JRL for its conduct. However, the jury returned both an emotional distress damages award and a punitive damages award; no evidence indicates that the jury improperly blurred the distinction between the two awards.

**[20]** Substantial evidence supports the jury's emotional distress damage award. The district court properly denied JRL's motion for a new trial or amendment of the judgment.

## VII

The district court properly granted summary judgment on the FDCPA claims. The district court did not abuse its discretion in its evidentiary rulings or in formulating jury instructions. Substantial evidence supports the jury's verdict.

We affirm the judgment of the district court.

**AFFIRMED.**